**Constructive Discharge**

251.     After nine years as a Senior Manager with no hope for promotion and four years with no salary increase, Ms. Potter had no choice but to resign from KPMG in July 2006.  Ms. Potter was forced to accept a job for half her exiting salary before finding permanent employment in the financial services industry.

E.     **PLAINTIFF ASHWINI VASUDEVA**

252.     Ms. Vasudeva suffered discrimination in pay, denial of promotional opportunities, and discrimination as a result of pregnancy.  She was ultimately constructively discharged.

253.     KPMG employed Ms. Vasudeva, the mother of a young child, full-time from January 2005 until her constructive discharge from the Company in September 2009.

254.     In the summer of 2004, Ms. Vasudeva began working at KPMG's Mountain View office as an Intern.  She returned to KPMG as a full-time Associate in the same office in January of 2005, first working in the External Audit practice, then in Contracts Compliance Services within the Advisory practice approximately a year and a half later. In June 2007, Ms. Vasudeva was promoted to Senior Associate.

255.     Throughout her nearly five-year tenure, Ms. Vasudeva proved herself to be a stellar performer. During her reviews, Ms. Vasudeva's performance managers consistently rated her as a "strong" or "exceptional performer."  In or around 2005 and 2006, KPMG also awarded Ms. Vasudeva "Encore" awards, reserved for employees who go "above and beyond the call of duty."

**Disparate Pay**

256.     Upon information and belief, KPMG paid Ms. Vasudeva less than similarly situated male employees, despite her exemplary performance.

257.   For example, KPMG paid Ms. Vasudeva less than her male peer Ryan Wood-Taylor, who had comparable tenure and similar job duties as a Senior Associate.   Upon information and belief, Ms. Vasudeva's salary has been lower than that of similarly situated male comparators throughout her employment.

258.   Upon information and belief, KPMG underpays female Professionals at all levels throughout the Company relative to similarly situated male employees.

259.   For   example,   while   Ms.   Vasudeva   was   an   Associate,   she saw the pay stub of male Senior Associate Nishant Shah, who was working with her on a project. She was shocked to discover that he earned approximately $10,000 more than female Senior Associate Kathryn Harris though both held MBA degrees and had the same job duties.

260.   Moreover, KPMG also discriminates in bonus pay.   In 2008, KPMG also denied Ms. Vasudeva a bonus based on the fact that she had taken maternity leave earlier in the year, despite the fact that her overall performance did not decrease.   With the same level of performance in previous years, Ms. Vasudeva had received a bonus.   In addition and upon information and belief, KPMG did not deny bonuses to male employees who had taken leave.

### Denial of Promotions

261.   Despite Ms. Vasudeva's stellar qualifications and performance, KPMG denied her promotions in favor of lesser qualified male employees.

262.   Initially, Ms. Vasudeva progressed along KPMG's standard career track, receiving a promotion to Senior Associate in May 2007.   However, her career progression suddenly stalled once she became pregnant.

263.   After Ms. Vasudeva returned from maternity leave, KPMG placed a number of obstacles in her path, in a seeming attempt to derail her advancement.   Among other things, Ms.

Vasudeva's supervising Principal Matt Behan ("Principal Behan") abruptly removed her from her largest engagement; assigned her to a client an hour and a half away; and regularly imposed unrealistic demands on her.

264.    In May 2009, KPMG promoted Senior Associate Ryan Wood-Taylor, a less experienced male, to Manager instead of Ms. Vasudeva. As a result, Ms. Vasudeva had to report to Manager Wood-Taylor, who had previously been her peer. Manager Wood-Taylor did not have comparable audit experience to Ms. Vasudeva. Manager Wood-Taylor had only worked on one or two software engagements, while Ms. Vasudeva had diverse experiences in a variety of audits.

265.    Senior Associate Bryan Dillon, another male employee, was also promoted to Manager in May 2009 over Ms. Vasudeva, even though the two had comparable experience.

266.    When Ms. Vasudeva asked Director Abhijit Joshi ("Director Joshi"), her male Performance Manager, why her male colleagues were promoted instead of her, Director Joshi told her that Managers Wood-Taylor and Dillon were "friends" with the management, and that was "how things work around KPMG."

267.    Indeed, Senior Associates Dillon and Wood-Taylor, like other male employees at KPMG, were regularly invited to "client-building" events, while their female counterparts toiled away in the office. In 2009 and 2010, when Ms. Vasudeva was staffed on an audit for Engagement Manager Jared Collins ("Manager Collins"), the Partners, Managers and other Senior Associates working on the project, all of whom were male, often went golfing on the Company dime. Ms. Vasudeva, the sole female Senior Associate on the project, as well as the female Associates working on the project, were systematically excluded.

268.     Like Ms. Vasudeva, other female employees in Ms. Vasudeva's practice group have complained to HR and/or through other reporting channels about the Company's "old boys' club." Upon information and belief, since Ms. Vasudeva's constructive discharge from KPMG, several female Associates and Senior Associates from her practice group have left the Company due to frustration about the lack of opportunities.

269.     Upon information and belief, KPMG took advantage of the performance evaluation system's lack of transparency, quality standards and controls, and opportunities for redress by including unfounded criticism against many female employees.

270.     Upon information and belief, KPMG's flawed promotion practices consistently result in males being promoted more rapidly and assigned more frequently to higher level positions than women across the Company.

### Pregnancy/Caregiver Discrimination and Retaliation

271.     From 2007 until her constructive discharge in 2009, KPMG discriminated against Ms. Vasudeva based on her gender and her caregiving responsibilities as a working mother. Because of Ms. Vasudeva's status as a working mother, and her decision to take maternity leave, KPMG made a number of adverse decisions concerning her employment.

272.     In January 2008, Ms. Vasudeva told her Engagement Partner, Principal Behan, that she planned to take maternity leave. Principal Behan told her that, if she took maternity leave, she might not come back at the same level or same pay. When Ms. Vasudeva noted that it was illegal to penalize her for taking maternity leave, Principal Behan replied that "in England that is not the case."

273.     This was not the first discriminatory comment or action made by Principal Behan. For example, in 2007, when Principal Behan noticed that Ms. Vasudeva worked well with her

female colleague, Senior Associate Kathryn Harris, he attempted to sabotage their working relationship.   Speaking with each woman privately, Principal Behan told Ms. Vasudeva and Ms. Harris that one had made negative comments about the other, though neither had done so. Ultimately, the two women reconciled and discovered that Principal Behan had lied to them both. Upon information and belief, Principal Behan's divide and conquer strategy was intended to further marginalize the female Professionals in his group, who already constituted a minority.

274.    Nor was it the last.  In another example of Principal Behan's hostility to women, in July 2009, Principal Behan made overt sexual innuendos to Ms. Vasudeva including a suggestion that, to women, the flavor of Indian food was similar to semen "in their mouth[s]." The comment made Ms. Vasudeva extremely uncomfortable.   Upon information and belief, Principal Behan regularly made degrading comments to and about other women.

275.    In July 2008, when Ms. Vasudeva returned from maternity leave, Principal Behan abruptly removed her from her largest, most lucrative engagement, to which she had been assigned for over a year.  Though Ms. Vasudeva had previously trained staff to work on the client, Principal Behan claimed it was "fully staffed" without her.  Principal Behan reassigned Ms. Vasudeva to a new client in Stockton, CA, nearly an hour and a half from Ms. Vasudeva's home in Union City, CA.  The Stockton client required high volumes of unchallenging work and was not in need of Ms. Vasudeva's skill set.  Further, Ms. Vasudeva had to drive to and from Stockton each day, making her commute three hours per day.  While other employees staffed to the client stayed in Stockton during the week and returned home for the weekends, Ms. Vasudeva had to return home daily to care for her newborn.  Ms. Vasudeva's similarly situated male counterparts in Contracts Compliance Services were not reassigned to new clients.

276.   Two weeks after being reassigned to the Stockton client, Ms. Vasudeva told Principal Behan that she believed the reassignment was unfair. She asked to be removed from the client, but Principal Behan refused to do so. Ms. Vasudeva's request for release was only granted when she asked the Engagement Partner on the Stockton client.

277.   Ms. Vasudeva also expressed her concerns to her Performance Manager, Director Joshi. Shortly after her complaints, KPMG gave Ms. Vasudeva no staff to fill her "team" but nonetheless expected her to achieve results as "Team Leader" for a software audit under Partner Ron Brill ("Partner Brill") and Manager Collins. During the ten-month period that Ms. Vasudeva was staffed on the project, she only received assistance for two weeks, while she was traveling overseas for a client site visit.

278.   Typically, such a project would have been staffed with at least two or three other members of the team. Indeed, Ms. Vasudeva's male counterparts, Senior Associates Wood-Taylor and Dillon, had two to three Senior Associates reporting them, who in turn had three to four Associates reporting to them. Unlike Ms. Vasudeva, who was left to fend for herself on her audit, male Senior Associates had teams of Associates conducting analysis and performing other support tasks for them. Though Manager Collins was directly responsible for Ms. Vasudeva's engagement, he claimed he had "no expertise" and refused to support her. Once again, the Company appeared to be setting Ms. Vasudeva up for failure.

279.   On Manager Collins' project, Ms. Vasudeva was the only female Senior Associate. All Managers and Partners were male. Ms. Vasudeva, without a team to lead, was put at a distinct disadvantage compared to her male peers, who had several people on their teams.

280.   In December 2008, Manager Collins told Ms. Vasudeva that she should sign up for a flex schedule because she was "working only from 9 a.m. to 4:30 p.m.," and Manager

Collins assumed she was struggling as a new mother.  Although Ms. Vasudeva would leave work at 4:30 p.m. to pick up her child from daycare, she would work late at night to compensate for any lost time, typically working twelve hours per day.

281.    After female Partner Vanessa Lo reassured her that she should not go on a flexible plan if she was working full-time hours, Ms. Vasudeva told Manager Collins that she saw no need for her to go on a flex schedule, which would have come with reduced pay, since she worked after hours and completed all her work.  Manager Collins appeared to disapprove of her decision when Ms. Vasudeva told him.  Like Ms. Vasudeva, many female Professionals at KPMG are pressured to move to a flexible schedule after having children because of the Company's tendency to stereotype working mothers as less effective employees and less committed to their careers.

282.    In June 2009, Ms. Vasudeva requested a ninety-day sabbatical because of stress from the unrealistic demands being imposed on her and the lack of opportunities and support. While Principal Behan—who was no longer Ms. Vasudeva's direct supervisor—approved others' sabbatical requests (which often involved time off for recreational activities), he rejected Ms. Vasudeva's because "the client need[ed] [her]." At the time, however, Ms. Vasudeva had no work pending. Indeed, Partner Brill, Ms. Vasudeva's Engagement Partner at the time, had previously approved her sabbatical request because Ms. Vasudeva had completed all her deliverables.

283.    In June 2009, after Principal Behan rejected her sabbatical request, Ms. Vasudeva complained to HR.  In addition to discussing her denied sabbatical request, Ms. Vasudeva complained about the ongoing discrimination she was experiencing.  She also discussed her complaints of discrimination with Ethics and Compliance.  However, KPMG never addressed Ms. Vasudeva's complaints prior to her constructive discharge.

284.     Upon information and belief, during Ms. Vasudeva's tenure with KPMG, she was the only pregnant female at the Associate or Senior Associate level in both the Audit and Advisory Practices at KPMG Mountain View.  The only other pregnant female employee in either practice who Ms. Vasudeva was aware of was Shanti Krishnaswamy, a Director who Principal Behan asked to leave a year after her she gave birth to her child.

285.     Upon information and belief, KPMG has subjected and continues to subject female employees with caregiving responsibilities and/or young children like Ms. Vasudeva to disparate terms and conditions of employment.

### Constructive Discharge

286.     Ms. Vasudeva repeatedly raised her concerns about the Company's discriminatory treatment of her, to no avail.  Ms. Vasudeva brought her concerns to the attention of her managers, HR, and Ethics and Compliance on at least five occasions.  In January 2008, Ms. Vasudeva raised concerns to Principal Behan about his threat that she might not be restored to the same level or pay following her return maternity leave.  In July 2008, Ms. Vasudeva raised concerns to Principal Behan, then to Manager Joshi, about the unrealistic demands they had placed on her following her return from maternity leave.  In June 2009, after her sabbatical was denied, Ms. Vasudeva raised all of her concerns of discriminatory treatment to HR.  She also discussed the Company's discriminatory treatment of her with Ethics and Compliance.

287.     Because KPMG's discrimination had escalated to the point of being unbearable, and because it was clear that the Company had no interest in addressing the unlawful conduct, Ms. Vasudeva was forced to resign in September 2009.

## V.    CLASS ACTION ALLEGATIONS

288.    Class Representatives Donna Kassman, Linda O'Donnell, Sparkle Patterson, Jeanette Potter and Ashwini Vasudeva and the class of female employees they seek to represent have been subjected to a pattern and practice of gender discrimination, and employment policies and practices which have had a continuing, unlawful disparate impact on them and their employment opportunities.  Such gender discrimination includes (a) paying female Professionals less than their male counterparts; (b) denying female Professionals promotion and advancement opportunities in favor of male employees; (c) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers; and (d) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination and pregnancy/caregiver discrimination in the workplace.

289.    KPMG, in effect, bars female employees from better and higher-paying positions which have traditionally been held by male employees.  The systemic means of accomplishing such gender-based stratification include, but are not limited to, KPMG's assignment, development, promotion, advancement, compensation and performance evaluation policies, practices and procedures.  These practices and procedures all suffer from a lack of: transparency, adequate quality standards and controls; careful implementation; upper management/HR review; and opportunities for redress or challenge. As a result, employees are evaluated, compensated, developed, and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage or reward employees.

290.    In addition, KPMG cultivates a hostile environment in which the Company regularly retaliates against women who have brought gender discrimination complaints to their attention.

291.   In all, KPMG demonstrates a reckless disregard – a deliberate indifference – to its female employees by overlooking or otherwise dismissing even blatant evidence of gender discrimination.

292.   KPMG's compensation, promotion and maternity/flexible schedule policies, practices, and procedures, as well as its failure to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender and pregnancy/caregiver discrimination, have had a disparate impact on the Class Representatives and the members of the class.   Such procedures are not valid, job-related, or justified by business necessity.

293.   Because of Defendant's pattern-or-practice of gender discrimination, the Class Representatives and class they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, promotion and other advancement opportunities, employment benefits and non-economic damages.

294.   KPMG has failed to impose adequate discipline on managers and employees who violate equal employment opportunity laws and has failed to create adequate incentives for its managerial and supervisory personnel to comply with such laws regarding the employment policies, practices, and procedures described above.

295.   The Class Representatives and the class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief.   The Class Representatives and the class have suffered, and will continue to suffer, irreparable injury from KPMG's ongoing, unlawful policies, practices, and procedures as set forth herein unless those policies, practices, and procedures are enjoined by this Court.

**A.      General Facts Relevant to Class Claims and Class Definition**

296.      The Class Representatives seek to maintain claims on their own behalf and on behalf of a class of current and former female exempt Client Service and Support Professionals at KPMG.

297.      The class consists of all female exempt Client Service and Support Professionals, including but not limited to Associates, Senior Associates, Managers, Senior Managers and Managing Directors (collectively "Professionals"), who are, or have been, employed by KPMG nationwide during the applicable liability period until the date of judgment.   Upon information and belief, there are thousands of such employees in the proposed class.

298.      The Class Representatives seek to represent all of the female employees described above.   The systemic and disparate impact gender discrimination described in this Complaint has been, and is, continuing in nature.

**B.      Efficiency of Class Prosecution of Common Claims**

299.      Certification of a class of female Professionals is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class.

300.      The individual claims of the Class Representatives require resolution of the common question of whether KPMG has engaged in a systemic pattern and/or practice of gender discrimination against female Professionals.   The Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, career and working conditions, and in the lives, careers and working conditions of the proposed class members, and to prevent continued gender discrimination in the future.

301.    Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on female employees generally.  In order to gain such relief for themselves, as well as for the class members, Plaintiffs will first establish the existence of systemic gender discrimination as the premise for the relief they seek.

302.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Certification of the proposed class of females is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the proposed class, and Defendant KPMG.

**C.      Numerosity and Impracticability of Joinder**

303.    The class which the Class Representatives seek to represent is too numerous to make joinder practicable.  Upon information and belief, the proposed class consists of thousands of current and former female Professionals during the liability period.

304.    KPMG's pattern and/or practice of gender discrimination also makes joinder impracticable by discouraging females from applying for or pursuing promotional, training, or transfer opportunities, thereby making it impractical and inefficient to identify many members of the class prior to determination of the merits of KPMG's class-wide liability.

**D.      Common Questions of Law and Fact**

305.    The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the putative class they seek to represent.

306.    The common questions of law include, *inter alia:* (a) whether KPMG has engaged in unlawful, systemic gender discrimination in its compensation, assignment, selection,

performance evaluation, promotion, advancement, transfer, training and discipline policies, practices and procedures, and in the general terms and conditions of work and employment; (b) whether the failure to institute adequate quality controls in compensation, evaluation, development and promotion systems violate Title VII; (c) whether the lack of transparency and of opportunities for redress in those systems violates Title VII; (d) whether senior management and HR's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates Title VII; and (e) whether KPMG is liable for a continuing systemic violation of Title VII, and/or other statutes; and a determination of the proper standards for proving a pattern or practice of discrimination by KPMG against its female Professionals.

307.    The common questions of fact include, *inter alia*: whether KPMG has, through its policies, practices, and procedures: (a) compensated female Professionals less than similarly-situated males through the use of salary, bonuses, and/or other perks; (b) precluded or delayed the selection, assignment and promotion of female Professionals into higher level jobs traditionally held by male employees; (c) instituted evaluation systems that fairly measured and rewarded female and male employee performance; (d) developed male and female employees equitably; (e) treated pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers;   (f) minimized, ignored, or covered up evidence of gender discrimination and harassment in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination and harassment brought to the attention of senior management, the human resources department, or other reporting channels; and (g) trained, coached, and disciplined senior management on EEO principles and compliance.

308.    The employment policies, practices, and procedures to which the Class

Representatives and the class members are subjected are set at KPMG's corporate level and apply universally to all class members. These employment policies, practices and procedures are not unique or limited to any department; rather, they apply to all departments and, thus, affect the Class Representatives and class members in the same ways no matter the facility, department, or position in which they work.

309.    Throughout the liability period, a disproportionately large percentage of the managers and officers at KPMG have been male.

310.    The systemic means of accomplishing such gender-based stratification include, but are not limited to, KPMG's assignment, development, promotion, advancement, compensation and performance evaluation policies, practices and procedures. These practices and procedures all suffer from a lack of: transparency, adequate quality standards and controls; careful implementation; upper management/HR review; and opportunities for redress or challenge. As a result, employees are evaluated, compensated, developed, and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage or reward employees.

311.    As a result, male employees have advanced and continue to advance more rapidly to better and higher-paying jobs than do female employees. KPMG's policies, practices, and procedures have had an adverse impact on female Professionals seeking selection for, or advancement to, better and higher-paying positions. In general, the higher the level of the job classification, the lower the percentage of female employees holding it.

E.    **Typicality of Claims and Relief Sought**

312.    The claims of the Class Representatives are typical of the claims of the class. The relief sought by the Class Representatives for gender discrimination complained of herein is also typical of the relief which is sought on behalf of the class.

313.   Like the members of the class, the Class Representatives are Professionals who worked at KPMG during the liability period.

314.   Discrimination in selection, assignment, performance evaluation, promotion, advancement, and training affects the compensation of the Class Representatives and all the employee class members in the same or similar ways.

315.   KPMG has failed to create adequate incentives for its management to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, practices, and procedures referenced in this Complaint, and has failed to discipline adequately its managers and other employees when they violate the Company policy or discrimination laws.   These failures have affected the Class Representatives and the class members in the same or similar ways.

316.   The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the class members in this case.

317.   The Class Representatives seek the following relief for their individual claims and for those of the members of the proposed class: (a) a declaratory judgment that KPMG has engaged in systemic gender discrimination against female Professionals by (1) paying female Professionals less than their male counterparts, (2) denying female Professionals promotion and advancement opportunities in favor of male employees, (3) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers, and (4) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination and pregnancy/caregiver discrimination in the workplace; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of KPMG's assignment, promotion, transfer, training, performance evaluation,

compensation, and discipline policies, practices, and procedures – so that female Professionals will be able to compete fairly in the future for promotions, transfers, and assignments to better and higher-paying classifications with terms and conditions of employment traditionally enjoyed by male employees; (d) back pay, front pay, and other equitable remedies necessary to make the female Professionals whole from the Defendant's past discrimination; (f) punitive and nominal damages to prevent and deter KPMG from engaging in similar discriminatory practices in the future; (g) compensatory damages; (h) pre- and post-judgment interest; and (i) attorneys' fees, costs and expenses.

### F.   Adequacy of Representation

318.   The Class Representatives' interests are co-extensive with those of the members of the proposed class which they seek to represent in this case. The Class Representatives seek to remedy KPMG's discriminatory employment policies, practices, and procedures so that female Professionals will no longer be prevented from advancing into higher-paying and/or more desirable higher-level positions.  Plaintiffs are willing and able to represent the proposed class fairly and vigorously as they pursue their individual claims in this action.

319.   The Class Representatives have retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.  The combined interests, experience, and resources of Plaintiffs' counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

### G.    Requirements Of Rule 23(b)(2)

320.    KPMG has acted on grounds generally applicable to the Class Representatives and the class by adopting and following systemic policies, practices, and procedures which are discriminatory.  Gender discrimination is KPMG's standard operating procedure rather than a sporadic occurrence.  KPMG has refused to act on grounds generally applicable to the class by, *inter alia*: (a) failing to pay female Professionals on par with similarly-situated male employees; (b) denying female Professionals promotion and advancement opportunities in favor of male employees; (c) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers; and (d) failing to prevent, respond to, adequately investigate, and/or appropriately resolve claims of gender discrimination and pregnancy/caregiver discrimination.

321.    The systemic means of accomplishing such gender-based stratification include, but are not limited to, KPMG's assignment, development, promotion, advancement, compensation and performance evaluation policies, practices and procedures.  These practices and procedures all suffer from a lack of: transparency, adequate quality standards and controls; careful implementation; upper management/HR review; and opportunities for redress or challenge.  As a result, employees are evaluated, compensated, developed, and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage or reward employees.

322.    KPMG's systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the class as a whole.

323.    Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of KPMG's individual and class-wide liability and the essential predicate for the Class Representatives' and the class members' entitlement to monetary and non-monetary remedies at Stage II of such trial.  Entitlement to declaratory and injunctive relief flows directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female Professionals at KPMG.

324.    In addition, entitlement to declaratory and injunctive relief forms the factual and legal predicate for recovery by the Class of punitive damages.

**H.    Requirements of Rule 23(b)(3)**

325.    The common issues of fact and law affecting the claims of the Class Representatives and proposed class members, including, but not limited to, the common issues previously identified herein, predominate over any issues affecting only individual claims.  These issues include whether KPMG has engaged in gender discrimination against female Professionals by (a) paying female Professionals less than their male counterparts, (b) denying female Professionals promotion and advancement opportunities in favor of male employees, (c) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers, and (d) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination and pregnancy/caregiver discrimination in the workplace.

326.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the proposed class.

327.    The cost of proving KPMG's pattern and practice of discrimination makes it

impracticable for the Class Representatives and members of the proposed class to prosecute their claims individually.

328.    By virtue of the pattern and practice of discrimination at KPMG, Class Representatives and Class members are eligible for monetary remedies for losses caused by the systemic discrimination, including backpay, compensatory damages, and other nominal and punitive damages.

## VI.    COLLECTIVE ACTION ALLEGATIONS (EQUAL PAY ACT)

329.    Plaintiffs incorporate by reference the allegations from the previous paragraphs of this Complaint alleging class-based discrimination against similarly-situated female employees.

330.    Plaintiffs bring collective violations of the Equal Pay Act ("EPA") as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) on behalf of all members of the gender class – e.g. current, former, and future female Managers, during the liability period.  The EPA action includes female Professionals who (a) were not compensated equally to males who had substantially similar job classifications, functions, families, titles and/or duties, (b) were not compensated equally to males who performed substantially similar work, and (c) who were denied promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified male employees.

331.    Questions of law and fact common to the EPA Collective Action Plaintiffs as a whole include but are not limited to the following: (a) whether Defendant unlawfully failed and continues to fail to compensate female Professionals at a level commensurate with similarly situated male employees; (b) whether Defendant unlawfully failed and continues to fail to promote and advance female Professionals in a fashion commensurate with similarly qualified

69

males; (c) whether Defendant's policy and practice of failing to compensate female Professionals on a par with comparable male employees as a result of (a) and (b) violates applicable provisions of the EPA; and (d) whether Defendant's failure to compensate female Professionals on a par with comparable male employees as a result of (a) and (b) was willful within the meaning of the EPA.

332.    Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA Collective Action Plaintiffs because the claims of Plaintiff are similar to the claims of the EPA Collective Action Plaintiffs.

333.    Plaintiffs and the EPA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar job classifications, functions, families, titles and/or duties; and (c) are subject to Defendant's common policy and practice of gender discrimination in (i) failing to compensate female Professionals on par with men who perform substantially equal work and/or hold equivalent levels and positions, and (ii) failing to provide female Professionals equal pay by denying opportunities for promotion and advancement to them comparable to those afforded to males who perform substantially equal work.

## CLASS AND COLLECTIVE ACTION COUNTS

### COUNT I
### (INDIVIDUAL AND CLASS CLAIMS)

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") –**
**PAY DISCRIMINATION**
**42 U.S.C. § 2000e, *et seq.***

334.   Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

335.   This Count is brought on behalf of Plaintiffs Ms. Kassman, Ms. Patterson, and all members of the class.

336.   Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting them to different treatment on the basis of their gender.  Plaintiffs have suffered both disparate impact and disparate treatment as a result of Defendant's wrongful conduct.

337.   Defendant has discriminated against Plaintiffs and all members of the class by subjecting them to discriminatory pay, discriminatory denials of pay raises, and discriminatory performance evaluations that affect pay, in violation of Title VII.

338.   Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiffs and all members of the class, entitling Plaintiffs and all members of the class to punitive damages.

339.   By reason of the continuous nature of Defendant's discriminatory conduct, which persisted throughout the employment of Plaintiffs and the members of the class, Plaintiffs and the members of the class are entitled to application of the continuing violations doctrine to all violations alleged herein.

71

340.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and the members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

341.    Defendant's policies, practices and/or procedures have produced a disparate impact on Plaintiffs and the members of the class with respect to the terms and conditions of their employment.

342.    By reason of Defendant's discrimination, Plaintiffs and the members of the class are entitled to all remedies available for violations of Title VII, including an award of punitive damages.

343.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT II**
**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") -**
**PROMOTION DISCRIMINATION**
**42 U.S.C. § 2000e, *et seq.***

344.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

345.    This Count is brought on behalf of Ms. Kassman, Ms. Patterson, and all members of the class.

346.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting them to different treatment on the basis of their gender.  Plaintiffs have suffered both disparate impact and disparate treatment as a result of Defendant's wrongful conduct.

347.    Defendant has discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees, and by subjecting them to discriminatory denials of promotions, discriminatory denials of developmental opportunities, and discriminatory performance evaluations that affect promotions in violation of Title VII.

348.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiffs and all members of the class, entitling Plaintiffs and all members of the class to punitive damages.

349.    By reason of the continuous nature of Defendant's discriminatory conduct, which persisted throughout the employment of Plaintiffs and the members of the class, Plaintiffs and the members of the class are entitled to application of the continuing violations doctrine to all violations alleged herein.

350.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and the members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

351.    Defendant's policies, practices and/or procedures have produced a disparate impact on Plaintiffs and the members of the class with respect to the terms and conditions of their employment.

352.    By reason of Defendant's discrimination, Plaintiffs and the members of the class are entitled to all remedies available for violations of Title VII, including an award of punitive damages.

353.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**COUNT III**
**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") –
PREGNANCY AND CAREGIVER DISCRIMINATION
42 U.S.C. § 2000e, *et seq.***

354.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

355.    This Count is brought on behalf of Ms. Kassman, Ms. Patterson, and all similar members of the class.

356.    Defendant KPMG has discriminated against Plaintiffs and all members of the Class in violation of Title VII by subjecting them to different treatment on the basis of their gender.  The members of the Class have been disparately impacted and disparately treated as a result of KPMG's wrongful conduct and its policies, practices and procedures.

357.    KPMG has discriminated against the class members bringing this claim by treating them differently from and less preferably than similarly-situated male employees and female employees without primary caregiving responsibilities, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotional and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of Title VII.

358.    KPMG's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Plaintiffs and the members of the proposed class, entitling the Plaintiffs and the members of the class to punitive damages.

359.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and the members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, and non-economic damages.

360.    By reason of Defendant's discrimination, Plaintiffs and members of the class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

361.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

<u>COUNT IV</u>
**(INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938,
AS AMENDED BY THE EQUAL PAY ACT OF 1963 – 29 U.S.C. §§ 206, *et seq.*
DENIAL OF EQUAL PAY FOR EQUAL WORK**

362.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

363.    This Count is brought on behalf of Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Vasudeva, and the EPA Collective Action Class, including all EPA Collective Action Plaintiffs who "opt in" to this action.

364.    Defendant, an employer of Plaintiffs and the EPA Collective Action Plaintiffs within the meaning of the Equal Pay Act, has discriminated against Plaintiff and EPA Collective Action Plaintiffs in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, et seq., as amended by the Equal Pay Act of 1963 ("EPA"), by subjecting them to unequal pay on the basis of sex.

365.    Defendant has discriminated against Plaintiffs and EPA Collective Action Plaintiffs by treating them differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and which

were performed under similar working conditions.   Defendant so discriminated by subjecting them to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, discriminatory denials of promotions and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the Equal Pay Act.

366.     Defendant caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the Equal Pay Act.   Moreover, Defendant knew of or showed reckless disregard for the fact that its conduct was in violation of the Equal Pay Act.

367.     As a result of Defendant's conduct alleged in this Complaint and/or Defendant's willful, knowing and intentional discrimination, Plaintiffs and EPA Collective Action Plaintiffs have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

368.     Plaintiffs and EPA Collective Action Plaintiffs are therefore entitled to all remedies available for violations of the EPA, including liquidated damages for all willful violations.

369.     Attorneys' fees should be awarded under 29 U.S.C. §§ 216, et seq.

## COUNT V
### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296, subd. 1(a) – PAY DISCRIMINATION

370.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

371.     This Count is brought on behalf of Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Vasudeva, and all members of the class.

372.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Section 296, subdivision 1(a) of the New York Executive Law, by subjecting them to different treatment on the basis of their gender.

373.    Defendant has discriminated against Plaintiffs and all members of the class by subjecting them to discriminatory pay, discriminatory denials of pay raises, and discriminatory performance evaluations that affect pay, in violation of the New York Executive Law.

374.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

375.    By reason of Defendant's discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York Executive Law.

## COUNT VI
### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296, subd. 1(a) – PROMOTION DISCRIMINATION

376.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

377.    This Count is brought on behalf of Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Vasudeva, and all members of the class.

378.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Section 296, subdivision 1(a) of the New York Executive Law, by subjecting them to different treatment on the basis of their gender.

379.    Defendant has discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees, and by subjecting them to discriminatory denials of promotions, discriminatory denials of developmental opportunities, and discriminatory performance evaluations that affect promotions in violation of the New York Executive Law.

380.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

381.    By reason of Defendant's discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York Executive Law

## COUNT VII
## (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296, subd. 1(a) – PREGNANCY AND CARETAKER DISCRIMINATION

382.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

383.    This Count is brought on behalf of Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Vasudeva, and all similar members of the class.

384.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Section 296, subdivision 1(a) of the New York Executive Law, by subjecting them to different treatment on the basis of their gender.

385.    KPMG has discriminated against the class members bringing this claim by treating them differently from and less preferably than similarly-situated male employees and

female employees without primary caregiving responsibilities, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotions and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of the New York Executive Law.

386.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

387.    By reason of Defendant's discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York Executive Law.

**COUNT VIII**
**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 1(a) –**
**PAY DISCRIMINATION**

388.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

389.    This Count is brought on behalf of Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Vasudeva, and all members of the class.

390.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting them to different treatment on the basis of their gender.

391.    Defendant has discriminated against Plaintiffs and all members of the class by subjecting them to discriminatory pay, discriminatory denials of pay raises, and discriminatory performance evaluations that affect pay, in violation of the New York City Administrative Code.

392.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

393.    By reason of Defendant's discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

## COUNT IX
### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 1(a) – PROMOTION DISCRIMINATION

394.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

395.    This Count is brought on behalf of Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Vasudeva, and all members of the class.

396.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting them to different treatment on the basis of their gender.

397.    Defendant has discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees, and by subjecting them to discriminatory denials of promotions, discriminatory denials of developmental

opportunities, and discriminatory performance evaluations that affect promotions in violation of the New York City Administrative Code.

398.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

399.    By reason of Defendant's discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

**COUNT X**
**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 1(a) –**
**PREGNANCY AND CAREGIVER DISCRIMINATION**

400.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

401.    This Count is brought on behalf of Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Vasudeva, and all similar members of the class.

402.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting them to different treatment on the basis of their gender.

403.    KPMG has discriminated against the class members bringing this claim by treating them differently from and less preferably than similarly-situated male employees and female employees without primary caregiving responsibilities, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to

discriminatory denials of fair compensation, discriminatory denials of promotions and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of the New York City Administrative Code.

404.     As a result of Defendant's conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

405.     By reason of Defendant's discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

## COUNT XI
## (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF THE NEW YORK EQUAL PAY LAW–
### N.Y. LABOR LAW § 194
### DENIAL OF EQUAL PAY FOR EQUAL WORK

406.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

407.     This Count is brought on behalf of Plaintiffs and all members of the class.

408.     Defendant, an employer of Plaintiffs and all members of the class within the meaning of the New York Equal Pay Law, has discriminated against Plaintiffs and all members of the class in violation of the New York Labor Law § 194, by subjecting them to unequal pay on the basis of sex.

409.     Defendant has discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed

82

under similar working conditions.   Defendant so discriminated by subjecting them to discriminatory pay, discriminatory denials of promotions and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the New York Equal Pay Law.

410.   Defendant caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the New York Equal Pay Law. Moreover, Defendant willfully violated the New York Equal Pay Law by intentionally paying women less than men.

411.   Plaintiffs and all members of the class are therefore entitled to all remedies available for violations of N.Y. Labor Law § 194, including liquidated damages and attorneys' fees and costs for all willful violations.

## INDIVIDUAL COUNTS

### COUNT XII
### (INDIVIDUAL CLAIM – PLAINTIFFS KASSMAN AND PATTERSON)

### VIOLATION OF TITLE VII – RETALIATION
### 42 U.S.C. § 2000e-3

412.   Plaintiffs Kassman and Patterson re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

413.   In their final years of employment with Defendant, Ms. Kassman and Ms. Patterson repeatedly voiced concerns about KPMG's discriminatory treatment of them, complaining through various reporting channels, including the Office of Ethics and Compliance, the Office of General Counsel, and Human Resources.

414.    In retaliation for their complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against Ms. Kassman and Ms. Patterson.

415.    Defendant retaliated against Ms. Kassman by, *inter alia*, giving her a disciplinary "coach," failing to provide her equal pay or promote her, and subjecting her to stressful meetings and interrogations based on baseless accusations.  Defendant ultimately bullied Ms. Kassman into resigning by subjecting her to escalating gender discrimination and harassment.

416.    Defendant retaliated against Ms. Patterson by, *inter alia*, subjecting her to unfounded criticism, refusing to give her billable work, and denying her the pay and promotion she deserved.

417.    Upon information and belief, other women at KPMG who opposed or complained about unlawful gender discrimination were similarly retaliated against.

418.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Kassman and Ms. Patterson, entitling them to punitive damages.

419.    As a result of Defendant's conduct alleged in this Complaint, Ms. Kassman and Ms. Patterson have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

420.    By reason of Defendant's retaliation, Ms. Kassman and Ms. Patterson are entitled to all remedies available for violations of Title VII, including an award of punitive damages.

421.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT XIII
### (INDIVIDUAL CLAIM – PLAINTIFFS KASSMAN, O'DONNELL, PATTERSON, AND VASUDEVA)

### VIOLATIONS OF THE EQUAL PAY ACT,
### U.S.C. § 215(a)(3)-RETALIATION

422.　Plaintiffs Kassman, Patterson, Vasudeva and O'Donnell re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

423.　While employed by Defendant, Plaintiffs voiced concerns about KPMG's discriminatory treatment of them, complaining through various reporting channels, including the Office of Ethics and Compliance, the Office of General Counsel, Human Resources, and management.

424.　In retaliation for their complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against Ms. Kassman, Ms. Patterson, Ms. Vasudeva and Ms. O'Donnell.

425.　Defendant retaliated against Ms. Kassman by, *inter alia*, giving her a disciplinary "coach," failing to provide her equal pay or promote her, and subjecting her to stressful meetings and interrogations based on baseless accusations. Defendant ultimately bullied Plaintiff into resigning by subjecting her to escalating gender discrimination and harassment.

426.　Defendant retaliated against Ms. Patterson, Ms. Vasudeva, and Ms. O'Donnell by, *inter alia*, subjecting them to unfounded criticism, denying them the pay and promotions they deserved, and ultimately terminating them or forcing them to resign.

427.　By reason of Defendant's conduct as alleged herein, Ms. Kassman, Ms. Patterson, Ms. Vasudeva and Ms. O'Donnell are entitled to all remedies available under the EPA, including liquidated damages for all willful violations.

428.     Attorneys' fees should be awarded under 29 U.S.C. § 216, et seq.

## COUNT XIV
### (INDIVIDUAL CLAIM – PLAINTIFF KASSMAN)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296
### RETALIATION

429.     Plaintiff Kassman re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

430.     In the final year of her employment with Defendant, Ms. Kassman repeatedly voiced concerns about KPMG's discriminatory treatment of her, complaining to the Office of Ethics and Compliance, the Office of General Counsel, and Human Resources.

431.     In retaliation for Ms. Kassman's complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against her, including giving her a disciplinary "coach," failing to provide her equal pay or promote her, and subjecting her to stressful meetings and interrogations based on baseless accusations.  Defendant ultimately bullied Ms. Kassman into resigning by subjecting her to escalating gender discrimination and harassment.

432.     By reason of Defendant's conduct as alleged herein, Ms. Kassman is entitled to all remedies available under the New York Executive Law.

## COUNT XV
### (INDIVIDUAL CLAIM – PLAINTIFF KASSMAN)

### VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 7 –
### RETALIATION

433.     Plaintiff Kassman re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

434.   In the final year of her employment with Defendant, Ms. Kassman repeatedly voiced concerns about KPMG's discriminatory treatment of her, complaining to the Office of Ethics and Compliance, the Office of General Counsel, and Human Resources.

435.   In retaliation for Ms. Kassman's complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against her, including giving her a disciplinary "coach," failing to provide her equal pay or promote her, and subjecting her to stressful meetings and interrogations based on baseless accusations.  Defendant ultimately bullied Ms. Kassman into resigning by subjecting her to escalating gender discrimination and harassment.

436.   By reason of Defendant's retaliation, Ms. Kassman is entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

### COUNT XVI
### (INDIVIDUAL CLAIM – PLAINTIFFS KASSMAN AND POTTER)

### VIOLATION OF THE NEW YORK EQUAL PAY LAW–
### N.Y. LABOR LAW § 215 – RETALIATION

437.   Plaintiffs Kassman and Potter re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

438.   In retaliation for Ms. Kassman and Ms. Potter's complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against them.

439.   Among other things, Defendant failed to provide Ms. Kassman and Ms. Potter equal pay or promotional opportunities after they complained about the Company's gender discrimination.  Defendant ultimately forced them to resign by subjecting them to escalating gender discrimination and harassment.

440.    By reason of Defendant's conduct as alleged herein, Ms. Kassman and Ms. Potter are entitled to all remedies available under the New York Equal Pay Law.

**COUNT XVII**
**(INDIVIDUAL CLAIM – PLAINTIFFS O'DONNELL, PATTERSON AND VASUDEVA)**

**VIOLATION OF FAMILY AND MEDICAL LEAVE ACT ("FMLA")**
**29 U.S.C. § 2601, et seq.**

441.    Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

442.    KPMG discriminated against Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell on the basis of their pregnancy, childbirth, and related conditions in violation of the Family and Medical Leave Act ("FMLA").

443.    Under the FMLA, an employee must be restored by the employer to the same position held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

444.    After Ms. Patterson returned from maternity leave, KPMG refused to give her billable work, suggested she work part-time or move to a different practice, and denied her equal pay and promotional opportunities, ultimately forcing Ms. Patterson to leave the Company.

445.    After Ms. Vasudeva returned from maternity leave, KPMG reassigned her to less desirable projects, refused to provide her with staffing support, and denied her equal pay and promotional opportunities, ultimately forcing Ms. Vasudeva to leave the Company.

446.    After Ms. O'Donnell returned from maternity leave, KPMG terminated her employment on her very first day back in the office.

447. Defendants acted willfully, intentionally, and with reckless disregard for Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell's rights under the FMLA.

448. As a direct and proximate result of defendants' actions, Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell suffered injury and monetary damages, including but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, expenses and costs, and are entitled to all legal and equitable remedies available.

449. By reason of KPMG's discrimination, Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell are entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617.

## COUNT XVIII
### (INDIVIDUAL CLAIM – PLAINTIFFS O'DONNELL, PATTERSON AND VASUDEVA)
### VIOLATION OF FAMILY AND MEDICAL LEAVE ACT ("FMLA") - RETALIATION
### 30 U.S.C. § 2601, et seq.

450. Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

451. KPMG discriminated against Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell on the basis of their pregnancy, childbirth, and related conditions in violation of the Family and Medical Leave Act ("FMLA").

452. KPMG retaliated against Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell for taking their FMLA-protected leave by adversely and materially changing the terms and conditions of their employment. KPMG retaliated against Ms. Vasudeva and Ms. Patterson by, *inter alia,* denying them career advancement opportunities, making inaccurate statements harmful to their

professional careers, pressuring them to move to a part-time or flex-time schedule and/or to switch practices, and otherwise creating an environment hostile to pregnancy and the taking of statutorily protected leave.  KPMG retaliated against Ms. O'Donnell by, *inter alia*, terminating her employment the day she returned from maternity leave.

453.    Defendant acted willfully, intentionally, and with reckless disregard for Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell's rights under the FMLA.

454.    As a direct and proximate result of Defendant's actions, Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell suffered injury and monetary damages, including but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, expenses and costs, and are entitled to all legal and equitable remedies available.

455.    By reason of KPMG's discrimination, Ms. Vasudeva, Ms. Patterson and Ms. O'Donnell are entitled to all legal and equitable remedies available for violations of the FMLA, including an award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617.

**COUNT XIX**
**(INDIVIDUAL CLAIM – PLAINTIFF PATTERSON)**

**VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866 –**
**RACE DISCRIMINATION**
**42 U.S.C. § 1981, *et seq.*, AS AMENDED**

1.    Ms. Patterson re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

1.    KPMG has discriminated against Ms. Patterson, an African-American, in the terms and conditions of their employment on the basis of her race, denying her  the same right to make and enforce contracts as enjoyed by white citizens employed by KPMG, including rights involving the making, performance, modification and termination of contracts with KPMG, as

well as the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C § 1981, *et seq.*, as amended.

2.     KPMG discriminated against Ms. Patterson by subjecting her to discriminatory pay, discriminatory denial of promotions, discriminatory performance evaluations, disparate terms and conditions of employment, and other forms of discrimination, in violation of Section 1981.

3.     In the employment practices described above, KPMG intentionally engaged in discriminatory practices with malice or with reckless indifference to Ms. Patterson's federally protected rights, entitling her to punitive damages.

4.     As a result of Defendant's discriminatory conduct, Ms. Patterson has suffered and continues to suffer harm, including, but not limited to, lost earnings, lost benefits, other financial loss, and non-economic damages.

5.     By reason of Defendant's discrimination, Ms. Patterson is entitled to all remedies available for violations of Section 1981, including an award of punitive damages.

6.     Attorneys' fees should be awarded under § 1981, *et seq.*

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, on their own behalf and on behalf of the class and collective action members, pray that this Court:

A.     Certify the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed Plaintiff class, and designate Ms. Kassman, Ms. O'Donnell, Ms. Patterson, Ms. Potter, and Ms. Vasudeva  as the representatives of this class and their counsel of record as class counsel;

B.      Designate this action as a collective action on behalf of the proposed EPA Collective Plaintiffs (asserting EPA claims) and

(i) promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the EPA Opt-In Class, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely EPA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b); and

(ii) tolling the statute of limitations on the claims of all members of the FLSA Opt-In Class from the date the original complaint was filed until the Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Plaintiffs;

C.      Designate Plaintiffs Kassman, O'Donnell, Patterson, and Vasudeva as representatives of the EPA Collective Action;

D.      Declare and adjudge that Defendant's employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Class Representatives and members of the class under Title VII of the Civil Rights Act of 1964, as amended, the New York Executive Law, the New York City Administrative Code, the New York Labor Law, the Equal Pay Act, and the Family and Medical Leave Act;

E.      Issue a permanent injunction against the Defendant and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives and any and all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiffs, class members, and collective action plaintiffs, and those similarly situated as secured by 42 U.S.C. §§ 2000e *et seq.*, and order such injunctive relief as will prevent Defendant from continuing its discriminatory practices and protect others similarly situated;

F.      Issue a permanent injunction against Defendant and its partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives and any and all persons acting in concert with them from engaging in any further unlawful practices, policies, customs, usages, gender discrimination or retaliation by the Defendant as set forth herein;

G.      Order Defendant to initiate and implement programs that will: (i)  provide equal employment opportunities for female Professionals; (ii) remedy the effects of the Defendant's past and present unlawful employment policies, practices and/or procedures; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

H.      Order Defendant to initiate and implement systems of assigning, training, transferring, evaluating, compensating, developing and promoting female Professionals in a non-discriminatory manner;

I.      Order Defendant to establish a task force on equality and fairness to determine the effectiveness of the programs described in G through H above, which would provide for: (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in G through H above;

J.      Order Defendant to adjust the wage rates and benefits for Plaintiffs, class members and collective action plaintiffs to the level that they would be enjoying but for the Defendant's discriminatory policies, practices and/or procedures;

K.      Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that Defendant has remedied the practices complained of herein and is determined to be in full compliance with the law;

93

L.      Award nominal, compensatory and punitive damages to Plaintiffs, class members and collective action plaintiffs, in excess of 400 million dollars;

M.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Plaintiffs, the class members, and the collective action plaintiffs;

N.      Award back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by Plaintiffs, class members and collective action plaintiffs to be determined at trial;

O.      Order Defendant to make whole Plaintiffs, class members and collective action plaintiffs by providing them with appropriate lost earnings and benefits, and other affirmative relief;

P.      Award any other appropriate equitable relief to Plaintiffs, class members and collective action plaintiffs; and

Q.      Award any additional and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable of right by jury.

Dated: September 29, 2011

Respectfully submitted,

Jeremy Heisler (JH-0145)
Steven L. Wittels (SLW-8110)
Siham Nurhussein (SN-9379)
Deepika Bains (DB-4935)
**SANFORD WITTELS & HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 723-2947
Facsimile:  (646) 723-2948
swittels@swhlegal.com

94

David W. Sanford (D.C. Bar No. 457933)
Katherine M. Kimpel (D.C. Bar No. 493028)
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, N.W., Suite 300
Washington, DC 20009
Telephone: (202) 742-7777
Facsimile:  (202) 742-7776
dsanford@swhlegal.com

Janette Wipper (CA Bar No. 275264)
**SANFORD WITTELS & HEISLER, LLP**
555 Montgomery Street, Suite 1206
San Francisco, CA 94111
Telephone: (415) 391-6900
Facsimile:  (415) 391-6901
jwipper@swhlegal.com

*Counsel for Plaintiffs Donna Kassman, Linda
O'Donnell, Sparkle Patterson, Jeanette Potter,
Ashwini Vasudeva, and the Class and Collective
Action Plaintiffs*