# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DONNA KASSMAN, LINDA O'DONNELL, SPARKLE PATTERSON, JEANETTE POTTER AND ASHWINI VASUDEVA, individually and on behalf of a class of similarly-situated female employees, | : : : : : : | Hon. Richard J. Holwell<br>Case No. 11-cv-03743 (RJH) (FM) |
| Plaintiffs, | : : : | *Civil Action* |
| v. | : : | |
| KPMG LLP, | : : | |
| Defendant. | : : | |

---

## DEFENDANT KPMG'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN CLAIMS AND TO STRIKE CLASS CLAIMS AS CONTAINED IN THE THIRD AMENDED COMPLAINT

---

Diane M. Saunders
Cheryl M. Stanton
Peter O. Hughes
  *admitted pro hac vice*
Steven W. Moore
  *admitted pro hac vice*
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Attorneys for Defendant

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

PROCEDURAL HISTORY ...................................................................................4

STATEMENT OF FACTS....................................................................................6

ARGUMENT .................................................................................................10

I.     Applicable Standards Under Rule 12(b)(6) and Rule 23(d)(1)(D)..................................10

     A.     Rule 12(b)(6) Permits Dismissal of Claims That Are Not Sufficiently Pled. .......10

     B.     Rule 23(d)(1)(D) Empowers the Court to Strike Plaintiffs' Class Claims. ...........10

II.     Plaintiffs' Failure to Plead A General Policy of Discrimination Requires Dismissal of the
     Class Claims. .........................................................................................12

III.     Plaintiffs' Class Claims Must Be Stricken Under Rule 23................................14

     A.     Plaintiffs Fails to Allege Valid Common Questions of Law or Fact Sufficient
           to Maintain a Class Under Rule 23(a). ..................................................15

     B.     Plaintiffs Cannot Maintain a Class Under Rule 23(b)(2). ..................................19

           1.     Plaintiffs Lack Standing to Certify a Class Under Rule 23(b)(2)..............19

           2.     Rule 23(b)(2) Certification Is Inappropriate Because No Class-Wide
               Injunctive Relief Can Be Granted. ......................................................22

           3.     The Monetary Relief Sought Precludes Rule 23(b)(2) Certification.........23

     C.     Dukes Forecloses Certification of Plaintiffs' Class Claims Under Rule
           23(b)(3).................................................................................................23

           1.     Predominance Will Never Exist in Light of Plaintiffs' Allegations..........24

           2.     A Class Action Is Not Superior to Other Methods for Litigating This Case
               Due to Myriad Individual Proof Issues....................................................28

     D.     Hybrid Certification of Plaintiffs' Class Under Both Rule 23(b)(2) and
           (b)(3) Is Impossible and Would Violate the Rules Enabling Act.........................29

IV.     Individuals Who Did Not Live or Work in New York Cannot Be Members of a
     Class Alleging Violations of New York State or City Laws..............................31

i

V.      Plaintiffs' Disparate Impact Claims Fail As a Matter of Law. ...........................................33

VI.     Plaintiffs' Individual Federal and New York EPA Fail As a Matter of Law. ..................36

        A.      Kassman, Patterson, O'Donnell and Potter's EPA Claims Are Fatally
                Flawed. ........................................................................................36

                1.      Kassman Fails To Identify a Male Comparator Who Performed Equal
                        Work But Who Was Paid More Than Her. ..............................................37

                2.      Potter's NY EPA Claims Fail For the Same Reasons ..............................38

                3.      Patterson and O'Donnell's EPA Claims Are Based on Failure to Promote,
                        and Also Are Fatally Flawed. ...................................................................39

        B.      Plaintiffs' Pay-Related Retaliation Claims Are Not Viable. ................................40

VII.    Patterson's Title VII Claims Are Futile and Should Be Dismissed. ...............................42

        A.      This Court Lacks Jurisdiction Over Patterson's Title VII Claims.........................42

        B.      Patterson Cannot Satisfy Any of the Statutory Requirements for Venue
                in the Southern District of New York.................................................................43

VIII.   Kassman's Claims for Discriminatory Constructive Discharge and Performance
        Evaluations Also Fail As a Matter of Law For Several Reasons. ....................................44

        A.      Kassman's Claims Are Time Barred, and Thus, the TAC Fails to State Viable
                Performance Evaluation Claims Under the Anti-Discrimination Laws. ...............44

        B.      The TAC Does Not State a Constructive Discharge Claim for Kassman. ............45

IX.     O'Donnell, Patterson, Vasudeva and Potter's Claims Are Misjoined and Should Be
        Dismissed or Transferred....................................................................................................46

        A.      Plaintiffs' Claims Do Not Arise Out of the Same Transaction or Occurrence......47

        B.      Plaintiffs' Claims Do Not Share a Common Question of Law or Fact. ................49

CONCLUSION .......................................................................................................49

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accord Levinson v. Primedia, Inc.,*
   2007 WL 2298406 (S.D.N.Y. Aug. 9, 2007) ........................................................................ 32

*Achtman v. Kirby, McInerney & Squire, LLP,*
   464 F.3d 328 (2d Cir. 2006) .............................................................................................. 10

*Akinfaderin v. W.P. Carey & Co., LLC,*
   2011 WL 6961403 (S.D.N.Y. Dec. 28, 2011) ................................................................ 40, 42

*Alexander v. Marriott Int'l, Inc.,*
   2011 WL 1231029 (D. Md. Mar. 29, 2011) ........................................................................ 37

*Allen v. Wright,*
   468 U.S. 737 (1984) .......................................................................................................... 20

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) .............................................................................................. 15,24,28

*Armstrong v. Powell,*
   230 F.R.D. 661 (W.D. Okla. 2005) ................................................................................ 22, 24

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ................................................................................................... 2, 10

*Avritt v. Reliastar Life Ins. Co.,*
   615 F.3d 1023 (8th Cir. 2010) .......................................................................................... 21

*Bacon v. Honda of Am. Mfg., Inc.,*
   370 F.3d 565 (6th Cir. 2004) ............................................................................................ 13

*Barbagallo v. Gen. Motors Corp.,*
   1996 WL 19004 (S.D.N.Y Jan. 17, 1996) .......................................................................... 46

*Bass v. World Wrestling Fed'n Entm't, Inc.,*
   129 F. Supp. 2d 491 (E.D.N.Y. 2001) ................................................................................ 37

*Bastian v. New York City Dep't. of Educ.,*
   2008 WL 2930529 (S.D.N.Y. July 29, 2008) ...................................................................... 37

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................ 2,10, 41

*Bell v. Lockheed Martin Corp.,*
   2011 WL 6256978 (D.N.J. Dec. 14, 2011) ........................................................................ 24

*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986) ................................................................................ 20

*Bolar v. Frank*,
   938 F.2d 377 (2d Cir. 1991) ..................................................................... 43

*Burrell v. Crown Cent. Petroleum, Inc.*,
   197 F.R.D. 284 (E.D. Tex. 2000) ............................................................. 25

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001) ................................................................. 33, 34

*Capruso v. Hartford Fin. Servs. Group, Inc.*,
   2003 WL 1872653 (S.D.N.Y. Apr. 10, 2003) ..................................... 35, 36

*Cestone v. Gen. Cigar Holdings, Inc.*,
   2002 WL 424654 (S.D.N.Y. Mar. 18, 2002) ............................................. 48

*Churchill v. Int'l Bus. Machs., Inc., Nat'l. Serv. Div.*,
   759 F. Supp. 1089 (D.N.J. 1991) .............................................................. 25

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .................................................................................... 20

*Combs v. Grand Victoria Casino & Resort*,
   2008 WL 4452460 (S.D. Ind. Sept. 30, 2008) .......................................... 34

*Cook v. UBS Fin. Servs.*,
   2006 WL 760284 (S.D.N.Y. Mar. 21, 2006) ............................................ 43

*Cooper v. Fed. Reserve Bank of Richmond*,
   467 U.S. 867 (1984) .................................................................................. 26

*Cooper v. S. Co.*,
   205 F.R.D. 596 (N.D. Ga. 2001) .............................................................. 30

*Cooper v. S. Co.*,
   390 F.3d 695 (11th Cir. 2004) .................................................................. 13

*Cooper v. Wyeth Ayerst Lederle*,
   106 F. Supp. 2d 479 (S.D.N.Y. 2000) ...................................................... 46

*Davito v. AmTrust Bank*,
   743 F. Supp. 2d 114 (E.D.N.Y. 2010) ...................................................... 11

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ..................................................................... 21

*Desert Palace, Inc. v. Costa,*
    539 U.S. 90 (2003) ............................................................ 42

*Deshawn E. by Charlotte E. v. Safir,*
    156 F.3d 340 (2d Cir. 1998) .......................................... 20

*Dillon v. Coles,*
    746 F.2d 998 (3d Cir. 1984) .......................................... 31

*Duffy v. Drake Beam Morin,*
    1998 WL 252063 (S.D.N.Y May 19, 1998) .................. 31

*Dukes v. Wal-Mart Stores, Inc.,*
    603 F.3d 571 (9th Cir. 2010), *overruled on other grounds by* 131 S. Ct. 2541 .................. 21

*Dunnigan v. Metro. Life Ins. Co.,*
    214 F.R.D. 125 (S.D.N.Y. 2003) .................................. 28

*Easterling v. Conn. Dep't of Corr.,*
    2011 WL 5864829 (D. Conn. Nov. 22, 2011) .............. 30

*EEOC v. Bloomberg L.P.,*
    778 F. Supp. 2d 458 (S.D.N.Y. 2011) .......................... 36

*EEOC v. Sterling Jewelers Inc.,*
    2011 WL 1560976 (W.D.N.Y. Apr. 25, 2011).............. 27

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) .......................................... 21

*Evancho v. Sanofi-Aventis U.S. Inc.,*
    2007 WL 4546100 (D.N.J. Dec. 19, 2007).................... 33

*Fedotov v. Peter T. Roach and Assocs.,*
    354 F. Supp. 2d 471 (S.D.N.Y. 2005) .......................... 11

*Ferraro v. Kellwood Co.,*
    440 F.3d 96 (2d Cir. 2006) ............................................ 45

*Fisher v. Vassar Coll.,*
    70 F.3d 1420 (2d Cir. 1995) .......................................... 35

*Frasier v. Gen. Elec. Co.,*
    930 F.2d 1004 (2d Cir. 1991) ........................................ 36

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ...................................................... 20

*Garcia v. Veneman,*
211 F.R.D. 15 (D.D.C. 2002) ................................................................. 30

*Gavenda v. Orleans Cnty.,*
1997 WL 662353 (W.D.N.Y. Oct. 24, 1997) ................................... 47, 49

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) ............................................................................... 12

*Greater Indianapolis Chapter of N.A.A.C.P. v. Ballard,*
741 F. Supp. 2d 925 (S.D. Ind. 2010) .................................................... 35

*Hammell v. Banque Paribas,*
1993 WL 426844 (S.D.N.Y. Oct. 19, 1993) .......................................... 32

*Harris v. Initial Sec., Inc.,*
2007 WL 703868 (S.D.N.Y. Mar. 7, 2007) ....................................... 22,25

*Hart v. Dresdner Kleinwort Wasserstein Secs., LLC,*
2006 WL 2356157 (S.D.N.Y. Aug. 8, 2006) ......................................... 32

*Hayden v. Paterson,*
594 F.3d 150 (2d Cir. 2010) .................................................................. 10

*Hayles v. Advanced Travel Mgmt. Corp.,*
2004 WL 26548. (S.D.N.Y. Jan. 5, 2004) ............................................. 46

*Heerwagen v. Clear Channel Commc'ns.,*
435 F.3d 219 (2d Cir. 2006) .................................................................. 24

*Hoffman v. Parade Publ'ns,*
933 N.E.2d 744 (N.Y. 2010) .................................................................. 31

*Holowecki v. Fed. Express Corp.,*
440 F.3d 558 (2d Cir. 2006) .................................................................. 42

*Hsin Ten Enter. USA, Inc. v. Clark Enters.,*
138 F. Supp. 2d 449 (S.D.N.Y. 2000) ................................................... 43

*In re Currency Conversion Fee Antitrust Litig.,*
230 F.R.D. 303 (S.D.N.Y. 2004) ........................................................... 24

*In re Vivendi Universal, S.A.,*
242 F.R.D. 76 (S.D.N.Y. 2007) ............................................................. 28

*Jackson v. Motel 6 Multipurpose, Inc.,*
130 F.3d 999 (11th Cir. 1997) ............................................................... 25

*Jaffe v. Capital One Bank*,
  2010 WL 691639 (S.D.N.Y. Mar. 1, 2010).................................................. 11

*Jefferson v. Ingersoll Int'l Inc.*,
  195 F.3d 894 (7th Cir. 1999) .................................................................. 29

*Jones v. Flagship Int'l*,
  793 F.2d 714 (5th Cir. 1986) .................................................................. 36

*Kamm v. Cal. City Dev. Co.*,
  509 F.2d 205 (9th Cir. 1975) .................................................................. 12

*Kasten v. Saint-Gobain Performance Plastics Corp.*
  131 S. Ct. 1325 (2011) .......................................................................... 41

*Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*,
  596 F. Supp. 2d 821 (S.D.N.Y. 2008) ..................................................... 47

*Kolstad v. Am. Dental Ass'n*,
  527 U.S. 526 (1999) .............................................................................. 27

*Kulkarni v. City Univ. of New York*,
  2002 WL 1315596 (S.D.N.Y. June 14, 2002) .......................................... 34

*Lee v. ITT Corp.*,
  275 F.R.D. 318 (W.D. Wash. 2011) .................................................... 29,30

*Levy v. United States Gen. Accounting Office*,
  175 F.3d 254 (2d Cir. 1999) .................................................................. 42

*Lightfoot v. Union Carbide Corp.*,
  1994 WL 184670 (S.D.N.Y. May 12, 1994) ............................................ 32

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................................. 20

*MacIssac v. Town of Poughkeepsie*,
  770 F. Supp. 2d 587 (S.D.N.Y. 2011) .................................................... 19

*MacSweeney v. ING Life Ins. & Annuity Co.*,
  2011 WL 4839086 (S.D.N.Y. Oct. 12, 2011)........................................... 36

*Martin v. Citibank*,
  762 F.2d 212 (2d Cir. 1985) .................................................................. 45

*McClamb v. Rubin*,
  932 F. Supp. 706 (M.D.N.C. 1996) ........................................................ 37

*McDowell v. Morgan Stanley & Co., Inc.*,
  645 F. Supp. 2d 690 (N.D. Ill. 2009) ............................................................. 48

*Minnette v. Time Warner*,
  997 F.2d 1023 (2d Cir. 1993) ......................................................................... 44

*Mooney v. Aramco Servs. Co.*,
  54 F.3d 1207 (5th Cir. 1995) .......................................................................... 42

*Moore v. Painewebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ......................................................................... 24

*Morris v. Fordham Univ.*,
  2004 WL 906248 (S.D.N.Y. Apr. 28, 2004) ................................................. 37

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) ............................................................................ 40

*Nicholas v. CMRE Fin. Servs.*,
  2009 WL 1652275 (D.N.J. June 11, 2009) .................................................... 10

*Oscar v. BMW of N. Am., LLC*,
  274 F.R.D. 498 (S.D.N.Y. 2011) ................................................................... 24

*Pa. State Police v. Suders*,
  542 U.S. 129 (2004) ....................................................................................... 46

*Pena v. Brattleboro Retreat*,
  702 F.2d 322 (2d Cir. 1983) .......................................................................... 45

*Petrosino v. Bell Atl.*,
  385 F.3d 210 (2d Cir. 2004) .......................................................................... 46

*Piasecki v. Shinseki*,
  2011 WL 2516513 (W.D.N.Y. June 23, 2011) .............................................. 42

*Pilgrim v. McGraw-Hill Cos.*,
  599 F. Supp. 2d 462 (S.D.N.Y. 2009) ........................................................... 44

*Price Waterhouse v. Hopkins*,
  490 U.S. 228 (1989) ....................................................................................... 31

*Rahman v. Smith & Wollensky Rest. Group, Inc.*,
  2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) .................................................. 33

*Ramirez v. DeCoster*,
  194 F.R.D. 348 (D. Me. 2000) ....................................................................... 25

*Reeves v. Sanderson Plumbing Prods, Inc.*,
    530 U.S. 133 (2000) ................................................................. 35

*Rehwaldt v. Elec. Data Sys. Corp.*,
    2005 WL 1130480 (W.D.N.Y. Apr. 13, 2005) .................................... 22

*Reilly v. NatWest Mkts. Group, Inc.*,
    178 F. Supp. 2d 420 (S.D.N.Y. 2001) ............................................ 40

*Robins v. Max Mara, U.S.A., Inc.*,
    923 F. Supp. 460 (S.D.N.Y. 1996) ................................................ 32

*Ruggles v. Wellpoint, Inc.*,
    272 F.R.D. 320 (N.D.N.Y. 2011) .................................................. 28

*Ryduchowski v. Port Auth. of New York and New Jersey*,
    203 F.3d 135 (2d Cir. 2000) ....................................................... 36

*Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni*,
    549 F. Supp. 2d 549 (S.D.N.Y. 2008) ............................................ 31

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................... 12

*Schallop v. New York State Dep't. of Law*,
    20 F. Supp. 2d 384 (N.D.N.Y. 1998) ............................................. 35

*Schnellbaecher v. Baskin Clothing Co.*,
    887 F.2d 124 (7th Cir. 1989) ...................................................... 39

*Scott v. Family Dollar Stores, Inc.*,
    2012 WL 113657 (W.D.N.C. Jan. 13, 2012) ............................... passim

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ............................................ 40

*Sherlock v. Montefiore Med. Ctr.*,
    84 F.3d 522 (2d Cir. 1996) ......................................................... 42

*Sherrod v. Prairie View A & M Univ.*,
    2011 WL 843936 (S.D. Tex. Mar. 8, 2011) ...................................... 37

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ................................................................. 33

*Smith v. N. Am. Rockwell Corp. Tulsa Div.*,
    50 F.R.D. 515 (N.D. Okla. 1970) .................................................. 48

*Spagnola v. Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ..................................................................... 11

*Spence v. Maryland Casualty Co.*,
  995 F.2d 1147 (2d Cir. 1993) ...................................................................... 45

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ................................................................................... 27

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ..................................................................................... 21

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................... 20, 21

*Tardd v. Brookhaven Nat'l Lab.*,
  2007 WL 1423642 (E.D.N.Y. May 8, 2007) ............................................. 47, 48

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
  546 F.3d 196 (2d Cir. 2008) ....................................................................... 15

*Teamsters v. United States*,
  431 U.S. 324 (1977) ................................................................................... 30

*Templeton v. Veterans Admin.*,
  540 F. Supp. 695 (S.D.N.Y. 1982) .............................................................. 43

*Thompson v. Merck & Co., Inc.*,
  2004 WL 62710 (E.D. Pa. Jan. 6, 2004) .................................................. 12, 25

*Todaro v. Siegel Fenchel & Peddy, P.C.*,
  2009 WL 3150408 (E.D.N.Y. Sept. 25, 2009) ............................................. 39

*Tompkins v. Allied Barton Sec. Servs.*,
  2010 WL 3582627 (S.D.N.Y. Aug. 2, 2010) ............................................... 39

*Tucker v. Gonzales*,
  2005 WL 2385844 (S.D.N.Y. Sept. 27, 2005) ............................................ 34

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ................................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................ passim

*Wards Cove Packing Co. v. Atonio*,
  490 U.S. 642 (1989) ................................................................................... 33

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ..................................................................29

*Wright v. Goldman, Sachs & Co.*,
   387 F. Supp. 2d 314 (S.D.N.Y. 2005) .........................................................45

*Zapata v. IBP, Inc.*,
   167 F.R.D. 147 (D. Kan. 1996) ...................................................................28

**STATUTES**

28 U.S.C. § 1332(a)(1) ......................................................................................39

28 U.S.C. § 2072(b) ..........................................................................................31

29 U.S.C. § 206(d)(1) ...............................................................................8, 36, 38

29 U.S.C. § 255(a) .............................................................................................37

29 U.S.C. § 2061, *et seq.* ....................................................................................8

42 U.S.C. § 1981 (2011) .....................................................................................28

42 U.S.C. § 2000e-5 .......................................................................................43, 44

N.Y.C. Administrative Code § 8-107 .....................................................................8

N.Y. Lab. Stat. § 198 .........................................................................................37

N.Y. Labor Law § 194 .........................................................................................8

New York Executive Law § 296, *et seq.* ...............................................................8

NY Labor Law § 215 ...........................................................................................40

**RULES**

Fed. R. Civ. P 12(b)(6) .................................................................................passim

Fed. R. Civ. P. 20 ........................................................................................passim

Fed. R. Civ. P. 21 .......................................................................................5, 46

Fed. R. Civ. P. 23 .................................................................................14, 20, 28

Fed. R. Civ. P. 23(a) .........................................................................1, 11, 14, 15

Fed. R. Civ. P. 23(a)(2) ................................................................................................passim

Fed. R. Civ. P. 23(a)(4) ................................................................................................21

Fed. R. Civ. P. 23(b) ................................................................................11, 14, 15, 29

Fed. R. Civ. P. 23(b)(2) ................................................................................................passim

Fed. R. Civ. P. 23 (b)(3) ................................................................................................passim

Fed. R. Civ. P. 23(c)(1)(A) ................................................................................11, 12

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................................passim

## PRELIMINARY STATEMENT

This is an employment case in which five former employees – Donna Kassman, Linda O'Donnell, Sparkle Patterson, Jeanette Potter and Ashwini Vasudeva (collectively, the "Plaintiffs") – purport to bring a class and collective action on behalf of a proposed class consisting of more than ten thousand current and former female employees of KPMG LLP ("KPMG") across the country. KPMG now moves pursuant to Fed. R. Civ. P 12(b)(6) to dismiss the class allegations, as well as several of the individual causes of action asserted by Plaintiffs. KPMG also moves to strike the class allegations pursuant to Fed. R. Civ. P. 23(d)(1)(D).

First, Plaintiffs' class claims alleging class-wide discrimination based on delegated discretion to numerous and widely dispersed decision makers must be dismissed or stricken because even if one assumes that Plaintiffs eventually could prove each of the myriad allegations they make in the 120 pages and 550 paragraphs of their latest pleading, the case cannot be certified as a class. This is not a case where discovery is necessary for the court to decide the issue, because even assuming Plaintiffs' allegations were true – i.e., that discovery eventually would fully support everything they allege – they are precisely the claims that the Supreme Court held improper for class certification in the recent landmark decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

*Dukes* signaled the "death knell" for claims such as those made in Plaintiffs' TAC. *See Scott v. Family Dollar Stores, Inc.*, 2012 WL 113657, at *5 (W.D.N.C. Jan. 13, 2012). Specifically, *Dukes* clarified that to meet the definition of commonality under Rule 23(a), class claims must be premised on a theory that an employer had a "general policy of discrimination" that "manifested itself" across the proposed class "in the same general fashion." *Dukes*, 131 S. Ct. at 2553. A "'policy' of ***allowing discretion*** by local supervisors over employment matters. . . is just the opposite of a uniform employment practice that would provide the commonality

needed for a class action; it is a policy *against having* uniform employment practices," and is not

a theory under which class claims can be brought. *Id.* at 2554. Plaintiffs' class claims thus must

be dismissed pursuant to Rule 12(b)(6) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiffs' inadequate pleading also constitutes the

rare circumstance in which striking class allegations is appropriate under Rule 23(d)(1)(D).

Second, Kassman and Patterson (the only two named Plaintiffs alleging Title VII claims)

are both former employees of KPMG who simply lack standing to bring class claims for

injunctive relief under Rule 23(b)(2). Because Kassman and Patterson are unable to seek all

forms of available relief (i.e. injunctive relief) on behalf of current employees, their interests

conflict with the class as a whole. This not only makes them inadequate representatives for the

class, but also precludes injunctive relief that would apply to all class members equally, as

required under Rule 23(b)(2). It similarly precludes Plaintiffs from meeting the strict

requirements of showing predominance and superiority under Rule 23(b)(3).

Realizing these failings, Plaintiffs attempt to certify a class under a contorted hybrid

theory – *i.e.* alleging that the predominant form of relief sought is injunctive or declaratory under

Rule 23(b)(2) – while also seeking monetary damages under Rule 23(b)(3). However, Plaintiffs

already have all but conceded they cannot seek primarily to certify a class under Rule 23(b)(2).

Hybrid certification *fails as a matter of law* where plaintiffs cannot simultaneously meet the

requirements of both Rule 23(b)(2) and (b)(3), something no amount of discovery can cure.

Third, Plaintiffs' class claims based on New York State and City law for putative class

members who neither live nor work in New York State or City also must be dismissed because

such New York laws only apply to New York residents and workers.

Fourth, Plaintiffs' individual and class disparate impact claims similarly fail as a matter of law because Plaintiffs do not point to the existence of a specific, facially neutral policy that disparately impacts women.  Rather, Plaintiffs point to alleged "flaws" or missing components in KPMG's policies that individual managers supposedly use to exercise gender bias.  Such broad-based challenges to general policies, however, are insufficient to state a disparate impact claim.

Fifth, Kassman, O'Donnell, Patterson and Potter have failed to allege a plausible claim for relief under either the federal or state Equal Pay Act (EPA) because they have not identified a valid male comparator, and, in the case of O'Donnell and Patterson, their claims are really discriminatory promotion claims that are not actionable under either the federal or state EPA.  No Plaintiff alleges any facts to demonstrate that she ever made any complaints about violations of these statutes, such that they would be protected from retaliation under federal and state law.

Sixth, there are fatal flaws in both Kassman and Patterson's (the only named Plaintiffs for the Title VII retaliation claims) individual discrimination claims.  Regarding Patterson, this Court does not have jurisdiction or venue over any of Patterson's Title VII claims because she cannot "piggyback" on Kassman's claims, she failed to timely file a lawsuit, and she cannot meet any of the mandatory venue provisions under Title VII.  Regarding Kassman, every negative performance evaluation she alleges she received is outside the statute of limitations under Title VII as well as the state and local anti-discrimination laws, and her allegations of constructive discharge simply are not actionable.

Finally, Plaintiffs' claims must be severed because they do not arise out of the same transaction or occurrence, nor do they involve common questions of fact or law (both as required under Rule 20).  In fact, in the TAC:

- Potter's claims arise under the New York EPA (even though she fails to allege any facts to support diversity jurisdiction over these state law claims).

- Patterson attempts to join Kassman's Title VII claims despite filing her own EEOC Charge (and untimely filing suit by joining this case), which forecloses this Court from jurisdiction over her claims, and even though this Court does not have venue for her claims under Title VII's special venue provision.

- Patterson introduces an individual race discrimination claim (under Section 1981) – a claim and legal theory brought by no other named Plaintiff.

- Patterson, O'Donnell and Vasudeva bring individual claims under the Family and Medical Leave Act ("FMLA") – a theory of liability wholly new to this lawsuit.

- Patterson, O'Donnell and Vasudeva's federal EPA claims are unrelated to Kassman's, because each of these women worked in different departments for different supervisors at different times and in different positions.

In sum, this is not an appropriate class or collective action, or even appropriate as a multiple-plaintiff case.  Rather, the TAC simply presents five individuals from widely different circumstances, in widely different locations, asserting widely different claims about actions by completely different decision makers. The only thing these plaintiffs have in common is that they worked, at various times, for the same employer.  Consequently, and as a matter of law, class certification cannot be granted, and the claims should be severed for each to pursue separately, if they so choose.  If this motion is granted, the only claims remaining in this case will be Kassman's individual claims under Counts I-III and V-X (except for her disparate impact and performance evaluation claims, which must be dismissed for the reasons set forth below).

## PROCEDURAL HISTORY

Kassman filed her initial Complaint in this Court on June 2, 2011, and a First Amended Complaint ("FAC") on June 6, 2011.  KPMG waived service of the FAC on September 20, 2011.

On September 29, 2011, Kassman filed a Motion for Leave to File a Second Amended Complaint ("SAC") to add four named Plaintiffs (Linda O'Donnell, Sparkle Patterson, Jeanette Potter and Ashwini Vasudeva) as well as nine new counts.  The SAC also sought to add three new theories of liability for individual Plaintiffs (not for a purported class): (1) violation of the

FMLA for O'Donnell, Patterson and Vasudeva; (2) retaliation under the FMLA for O'Donnell, Patterson and Vasudeva; and (3) race discrimination under 42 U.S.C. § 1981 for Patterson.

KPMG filed a letter with the Court on or about November 21, 2011, seeking a pre-motion conference regarding its intent to file a motion under Rule 12(b) and 23(d)(1)(D) in response to the Plaintiff's FAC.  A pre-motion conference was held on December 8, 2011.  At that pre-motion conference, the Court granted leave to Plaintiffs to file an amended complaint and to include within it whatever additional factual allegations, legal theories, or additional parties Plaintiffs wanted to add.  The Court also granted KPMG permission to file a motion under Rules 12(b)(6), 21 and 23(d)(1)(D), with a memorandum of law up to 50 pages in length.

On January 6, 2012, Plaintiffs filed their Third Amended Complaint ("TAC").  The TAC contains the same plaintiffs and the same causes of action as the SAC.  But in an effort to end run the implications of *Dukes*, the TAC cleverly attempts to modify Plaintiffs' theory to obtain class relief; Kassman's initial Complaint alleged discrimination based on several of the presently challenged policies and claimed that such policies were "subjective." (Dkt. #3). Following *Dukes*, when it became clear that the words "subjective" or "subjectivity" were radioactive in seeking class certification, Kassman's proposed SAC simply substituted descriptive terms (lack of transparency, quality standards and controls, and opportunities for redress) for the word "subjective."  (Dkt. #7). The TAC added to the list of descriptive terms by asserting that the policies lack "sufficient implementation metrics."  (¶395.)  The meaning, however, has not changed.  Plaintiffs' claims remain that KPMG policies allow subjectivity and leave too much discretion to individual decision makers.

## STATEMENT OF FACTS

Plaintiffs purport to bring this action on behalf of a class consisting of "thousands" of "female exempt Client Service and Support Professionals, including but not limited to Associates, Senior Associates, Managers, Senior Managers and Managing Directors (collectively 'Professionals'), who are, or have been, employed by KPMG nationwide during the applicable liability period until the date of judgment."  (¶383.)[1]  Plaintiffs assert that KPMG discriminated against them and the proposed class in assignments, development, promotions, advancement, compensation and performance evaluations.  (¶372.)

Plaintiffs' class theory is that KPMG's mostly male managers took advantage of "flaws" in KPMG's policies and practices when making employment decisions.  (*See* ¶372 ("These practices and procedures all suffer from a lack of transparency, adequate quality standards and controls; sufficient implementation metrics; upper management/HR review; and opportunities for redress or challenge."); ¶15 ("Because KPMG employs a compensation system that lacks transparency, utilizes highly subjective criteria and commonly allows stereotypes to dictate pay decisions, its compensation practices have had a disparate impact on the Company's female employees."); ¶395 (KPMG's assignment, compensation, promotion, performance evaluation and other systems "lack meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress" and "through the use of [those] system[s] of assignment" KPMG managers discriminate against women).  *Accord* ¶¶14, 18, 19, 25, 100, 181, 216, 230, 236, 249, 276, 290, 335, 350 (mostly male managers "systematically took advantage of flaws in" or had "discretion" within the systems to harm women or mothers)).

---

[1] Please note:  all references to a "¶__" refer to the TAC, unless otherwise noted.

Plaintiffs' Prayer for Relief asks that the putative class be awarded nominal, compensatory and punitive damages "in excess of 400 million dollars" (Prayer for Relief ¶L), back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits (¶N), appropriate lost earnings and benefits, and other affirmative relief (¶O), and any additional and further relief as the Court deems just and proper (¶Q).

More than 325 paragraphs in the TAC allege purported individual discrimination experienced by Plaintiffs, highlighting the distinct circumstances of each Plaintiff:

**Donna Kassman.**  Kassman resides in New York and worked at KPMG from April 1993 through October 2010. (¶63.)  Kassman held various positions in KPMG's Employment Tax practice during her employment, including: Associate (April 1993-1995), Senior Associate (1995-1997), Manager (1997-1999) and Senior Manager (1999-Oct. 2010). (¶¶70-72.)  Kassman resigned from her employment with KPMG on October 1, 2010.  (¶143.)

**Linda O'Donnell.**  O'Donnell is a Georgia resident who was employed from September 2006 through April 2009 in KPMG's Transactional Services Group in Atlanta, Georgia.  (¶¶64, 155.)  She held the position of Senior Associate (Sept. 2006-April 2009). (¶¶64.)

**Sparkle Patterson.**  Patterson is a Florida resident who was employed from June 2007 through November 2010 in KPMG's Atlanta, Georgia office.  (¶65.)  She was an Associate in KPMG's Federal Tax and then in the IES Tax Groups.  (¶197.)

**Jeanette Potter.**  Potter is a New York resident who was employed from July 1995 through July 2006 in KPMG's New York office.  (¶66.)  She was a Manager (July 1995-June 1996) and then a Senior Manager (June 1996-June 2006) in the Tax practice.  (¶¶269, 270.)

**Ashwini Vasudeva.**  Vasudeva is a California resident who was employed from January 2005 through September 2009 in KPMG's Mountain View, California office.  (¶¶67, 315.)  She

was an Associate (Jan. 2005-June 2007) and Senior Associate (June 2007-Sept. 2009) in the Contracts Compliance Service Group within the Advisory function.  (¶¶67, 315.)

The TAC sets forth nineteen counts, brought both on behalf of Plaintiffs and the putative class, and on behalf of individual Plaintiffs, including (1) FMLA claims (O'Donnell, Patterson and Vasudeva); (2) retaliation claims under the FMLA (O'Donnell, Patterson and Vasudeva); and (3) a Section 1981 race discrimination claim (Patterson):

| Statute | Kassman | O'Donnell | Potter | Patterson | Vasudeva | Class Claims |
|---|---|---|---|---|---|---|
| Title VII[2] | X | | | X | | X |
| EPA[3] | X | X | | X | X | X |
| NY EPA[4] | X | X | X | X | X | X |
| NYSHRL[5] | X | | | | | X |
| NYCHRL[6] | X | | | | | X |
| FMLA[7] | | X | | X | X | |
| Section 1981[8] | | | | X | | |

In addition to asserting different causes of action, Plaintiffs also assert the following different kinds of adverse employment actions were taken against each of them:

---

[2] The Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* claims are Counts I-III and XII.
[3] The Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.,* claims are Counts IV-XIII.
[4] The New York Equal Pay Law, N.Y. Labor Law § 194, claims are Counts XI-XVI.
[5] The New York State Human Rights Law, New York Executive Law § 296, *et seq.*, claims are Counts V-VII and XIV.
[6] The New York City Human Rights Law, New York City Administrative Code § 8-107, subd. 1(a), claims are Counts VIII-X and XV.
[7] The Family and Medical Leave Act, 29 U.S.C. § 2061, *et seq.*, claims are Counts XVII -XVIII.
[8] The Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") claim is Count XIX.

| Alleged Adverse Employment Action | Kassman | Potter | O'Donnell | Patterson | Vasudeva |
|---|---|---|---|---|---|
| Failure to promote | ¶¶69, 96 | ¶¶267, 298 | ¶¶38, 174 | ¶¶37, 189 | ¶332 |
| Salary reduced while on maternity leave | ¶81 | | | | |
| Termination | | | ¶¶27, 193 | | |
| Lack of pay increase | | ¶28 | | | |
| Placement on performance improvement plan | ¶107 | | | | |
| Removal from project | | | | ¶¶232, 247 | ¶¶35, 340 |
| Work load decrease | | | | ¶244 | |
| Constructive discharge | ¶¶69, 150 | ¶¶268, 315 | | ¶262 | ¶¶358-70 |
| Reduction in pay | ¶¶69, 50 | | | | |
| Misclassification in position resulting in lower pay | | | ¶168 | ¶¶207, 217 | |
| Negative performance review | ¶¶105, 108 | | ¶174 | | ¶247 |
| Failure to provide office space due to reduced work schedule | ¶114 | | | | |
| Hostile work environment | ¶¶69, 119-131 | ¶¶299, 312 | ¶¶185-86 | | ¶361 |
| Retaliation for complaining about discrimination | ¶¶133, 141 | | ¶187 | | |
| Retaliation for taking pregnancy leave | | | | | ¶362 |
| Failure to transfer | ¶139 | | | | |
| Demotion following international transfer | | | ¶154 | | |
| Failure to award sabbatical | | | | ¶214 | ¶354 |
| Failure to pay while on unapproved sabbatical | | | | ¶214 | |
| Required to work part time or transfer | | | | ¶224 | |
| Failure to hire at appropriate level | | ¶274 | | | |
| Denial of bonus | | | | | ¶324 |
| Lack of mentoring | | | | ¶234 | |
| Race discrimination | | | | ¶195 | |

<u>ARGUMENT</u>

I.   **Applicable Standards Under Rule 12(b)(6) and Rule 23(d)(1)(D).**

    A.   **Rule 12(b)(6) Permits Dismissal of Claims That Are Not Sufficiently Pled.**

To survive a Rule 12(b)(6) motion under the standards established by *Twombly* and *Iqbal*, the TAC must provide the "grounds" for the Plaintiffs' entitlement to relief, and not simply rely on labels, conclusions, and "formulaic recitation of the elements" of the claim.  *See Twombly*, 550 U.S. at 555.  Plaintiffs cannot rely on mere "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949; *see also Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss") (internal quotations omitted).

*Iqbal* set forth a two-pronged approach for assessing the viability of a complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1950 ("legal conclusions . . . must be supported by factual allegations").  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  This standard also applies to class claims.  *Nicholas v. CMRE Fin. Servs.*, 2009 WL 1652275, at *4 (D.N.J. June 11, 2009).

    B.   **Rule 23(d)(1)(D) Empowers the Court to Strike Plaintiffs' Class Claims.**

Courts are authorized to dismiss or strike class claims if the allegations, on their face, cannot satisfy Rule 23's requirements:  "the court may issue orders that … require that the pleadings be amended to ***eliminate allegations about representation of absent persons*** and that

the action proceed accordingly …." Fed. R. Civ. P. 23(d)(1)(D) (emphasis added). In turn, Rule 23(c)(1)(A) directs that "[a]t an early practicable time …, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

Courts frequently rely on Rule 23(c)(1)(A)'s language to grant a defendant's motion to deny class certification, even before class discovery is completed. *See Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92, 96, 98-99 (S.D.N.Y. 2010) (preemptive motion to deny class certification granted where plaintiffs could not satisfy Rule 23(a) and (b)); *Fedotov v. Peter T. Roach and Assocs.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (defendant's "preemptive strike" against a purported class action proper where plaintiff had no standing to pursue class claims); 5-23 James Wm. Moore, et al., Moore's Federal Practice 3d § 23.82 ("defendant need not wait for the plaintiff to act, however. The defendant may move for an order denying class certification.").

The same rationale behind a preemptive motion to deny class certification applies to a preemptive motion to strike class allegations. Several district courts within the Second Circuit have held "such motions [to strike] may be addressed 'prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear.'" *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 116 (E.D.N.Y. 2010) (citations omitted); *see also Jaffe v. Capital One Bank*, 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010); 5 Moore's Federal Practice 3d § 23.145 ("A court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims.").

Significantly, after *Dukes*, courts have cited the "death knell imposed by *Dukes*" in dismissing or striking class allegations resting on a theory of subjective decisionmaking. *See, e.g., Scott v. Family Dollar Stores, Inc.*, 2012 WL 113657, at *4-5 (W.D.N.C. Jan. 13, 2012)

11

("[A]fter *Dukes*, it would be futile to allow plaintiffs to conduct discovery **because plaintiff's theory for class certification is simply foreclosed by Dukes**") (emphasis added).

Even prior to *Dukes*, however, courts frequently held that an early motion to strike class allegations is appropriate where, as here, the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *See, e.g., Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 207-13 (9th Cir. 1975) (affirming striking of class allegations); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (motion to strike class allegations not premature) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim….")); *Thompson v. Merck & Co., Inc.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (striking class allegations where "[i]t is clear from the allegations … that plaintiffs' claims cannot satisfy the requirements of Rule 23(b)(2) or (b)(3)" and that "[n]o amount of additional class discovery will alter this conclusion"). As further stated in *Wright*:

> It is true that where the dispute is factual and discovery is needed to determine whether a class should be certified, it may be premature to strike class allegations. But when the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained. Particularly given that Rule 23(c)(1)(A) instructs courts to determine whether a class may be certified "[a]t an early practicable time," courts may – and should – address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained.

2010 WL 4962838, at *1.

## II. Plaintiffs' Failure to Plead A General Policy of Discrimination Requires Dismissal of the Class Claims.

Plaintiffs have failed to plead their class claims sufficiently under *Iqbal* and *Twombly* and no amount of discovery will save such claims.

Plaintiffs' class claims are actionable *only* if Plaintiffs allege facts that support that "[KPMG] operated under a general policy of discrimination" that "manifested itself" across the proposed class "in the same general fashion."[9]  *Dukes*, 131 S. Ct. at 2553 (citations omitted). But Plaintiffs do not identify such a general policy of discrimination, or how such policy manifests across the proposed class in the same general fashion.  Rather, Plaintiffs' only allegation that KPMG had a general policy of discrimination is nothing more than an unsupported conclusion, which simply does not meet the standard set forth in *Iqbal* and *Twombly*.  *See Scott,* 2012 WL 113657, at *6 (allegations of "corporate-imposed policies and practices" insufficient to allege facts to establish that employer had policy that discriminated on the basis of gender in a common manner across the proposed class); *see also Cooper v. S. Co.*, 390 F.3d 695, 712-13 (11th Cir. 2004) (bare allegation of discrimination "neither determines whether a class action may be maintained . . . nor defines the class that may be certified") (quoting *Falcon*, 457 U.S. at 147); *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 571 (6th Cir. 2004) ("Conclusory allegations and general assertions of discrimination are not sufficient to establish commonality.").

Plaintiffs' reference to "flawed policies, practices and procedures which emanate from the Company's . . . . headquarters" (¶374) does not save the class claims – and in fact demonstrates that Plaintiffs' theory is the exact theory rejected in *Dukes.*  Plaintiffs repeatedly allege that KPMG managers take advantage of "flaws" in KPMG's policies and practices when making decisions – at its heart an allegation that KPMG's policies and procedures give managers discretion in making employment decisions. But a "'policy' of *allowing discretion* by local supervisors over employment matters. . . is just the opposite of a uniform employment practice

---

[9] The other theory for class claims recognized by the Supreme Court is where a test prejudices a class, *Dukes*, 131 S. Ct. at 2553 (citations omitted), but no such test is alleged here.

13

that would provide the commonality needed for a class action; it is a policy ***against having*** uniform employment practices," and is not a theory of liability under which Plaintiffs can bring class claims. *Dukes*, 131 S. Ct. at 2554 (emphasis in original).

Moreover, as Plaintiffs admit, KPMG has policies ***against*** discrimination: "KPMG has failed to create adequate incentives for its managers to comply with its own policies and equal employment opportunity laws . . . and has failed to discipline adequately its managers and other employees when they violate the Company policy or discrimination laws. . . ." (¶403.)  Where there is a company policy against discrimination, the mere delegation of discretion does nothing to establish that individual managers acted in a common, discriminatory fashion. *See Dukes*, 131 S. Ct. at 2553 (finding no "significant proof" that Wal-Mart "operated under a general policy of discrimination" particularly where Wal-Mart's announced policy forbade sex discrimination). Discovery would not cure this fatal flaw in Plaintiffs' pleading, and thus Plaintiffs' class claims must be dismissed under Rule 12(b)(6) and *Iqbal* and *Twombly*.

**III.    Plaintiffs' Class Claims Should be Stricken Under Rule 23(d)(1)(D).**

After the Supreme Court's holding in *Dukes*, there is no scenario that permits – and no discovery that can save – Plaintiffs' theory for class recovery.

Rule 23 requires two analyses be met for class certification.  First, the party seeking class certification must show that Rule 23(a) has been met:  (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").  Fed. R. Civ. P. 23(a).

Second, the party seeking class certification also must show that the proposed class action fits into one of the three categories of class actions in Rule 23(b), including whether (1)

prosecution of separate actions by individual parties either would create a risk of inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class action is superior to other available methods for adjudication.  Fed. R. Civ. P. 23(b).  Plaintiffs must satisfy each of Rule 23's requirements in all respects by a preponderance of the evidence. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

A.     **Plaintiffs Fail to Allege Valid Common Questions of Law or Fact Sufficient to Maintain a Class Under Rule 23(a).**

Plaintiffs' TAC demonstrates that Plaintiffs cannot point to the "questions of law or fact common to the class" necessary to establish commonality under Rule 23(a)(2):

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean that they have all suffered a violation of the same provision of law . . . .
>
> What matters to class certification . . . is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 131 S. Ct. at 2551 (internal citations omitted) (emphasis in original).  The crux of the inquiry is "the reason for a particular employment decision." *Id.* at 2552 (internal citation omitted).  "Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question ***why was I disfavored***." *Id.* (emphasis in original).

As discussed, Plaintiffs must – but do not here – allege facts to show they can elicit "significant proof" in discovery that KPMG's policies operate as a "general policy of

discrimination." *Id.* Alleging policies permitting **subjective decisionmaking** is, by itself, inadequate to satisfy commonality, but does demonstrate that there is no common question of fact to be addressed by class litigation. *Id.* at 2554. As the Supreme Court noted:

> we have recognized that, "in appropriate cases," giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory – since an employer's undisciplined system of subjective decisionmaking can have precisely the same effects as a system pervaded by impermissible intentional discrimination. But the recognition that this type of Title VII claim "can" exist does not lead to the conclusion that every employee in a company using a system of discretion has such a claim in common . . . . A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.

*Id.* (internal citations omitted).

Plaintiffs in the present case focus on allegedly common questions that are similar to the types of questions that the *Dukes* Court expressly rejected. Specifically, Plaintiffs pose a series of "common" questions of fact asking whether various systems (i.e. assignment, compensation, development and mentoring, performance evaluations, maternity and flex time and HR/EEO/Ethics systems) "lack meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress" that allegedly permit managers to discriminate against women as compared to similarly situated male employees. (¶395.)

Plaintiffs' allegations simply assert the subjectivity theory rejected in *Dukes*. Plaintiffs littered their original Complaint and the First Amended Complaint (which were filed shortly before the *Dukes* decision was issued) with references to subjective decisionmaking and judgments. (*See, e.g.,* FAC ¶125 ("Selection, assignment, promotion, and advancement opportunities are driven by [*inter alia*] **subjective decision-making**. . ."); ¶109 (KPMG's policies, practices and procedures relied upon "**subjective judgments, procedures, and criteria** which permit and encourage the incorporation of gender stereotypes and biases by KPMG's

16

predominately male executive, managerial and supervisory staff in making promotion, performance evaluation, and compensation decisions")).  In the wake of *Dukes*, Plaintiffs simply scrubbed their allegations clean of references to the word "subjectivity" in a transparent attempt to conform their pleading to the Supreme Court's holding, but have asserted exactly the same substantive claim substituting different words.  Plaintiffs' attempt to recast their claims must not be overlooked, however.  *See Scott*, 2012 WL 113657, at *5, 7 (plaintiffs' amended complaint, recast to avoid dismissal under *Dukes*, suffered from the same "fatal defects" as the original complaint where "even the allegations in the amended complaint ultimately point to subjective, individualized decisions rather than pointing to any uniform company-wide policy that discriminates against Store Managers").

Similarly, here, Plaintiffs' class allegations still depend entirely on the premise that KPMG leaves employment decisions in the hands of KPMG managers, who allegedly "systematically [take] advantage of the flaws in the system" to discriminate against women. (¶¶25, 86, 100, 163, 181, 216, 230, 236, 249, 276, 290, 305, 335, 350.)  In fact, Plaintiffs' "common" allegation is really nothing more than: "KPMG managers use their ***discretion*** to make subjective employment decisions regarding compensation, performance, assignment, development, and promotions."  (*See, e.g.,* ¶¶14, 18) (emphasis added).  This is exactly the sort of individualized decisionmaking that *Dukes* confirmed does not meet Rule 23(a)(2)'s commonality test.  *See Dukes*, 131 S. Ct. at 2554 ("Wal-Mart's 'policy' of allowing ***discretion*** by local supervisors over employment matters. . .[o]n its face. . .is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy ***against having*** uniform employment practices.") (emphasis in original).

17

Plaintiffs' TAC is flawed at its core, and cannot be cured by discovery, because Plaintiffs' class theory cannot unite thousands of individual decisions (made in unique factual situations in different practice units by different managers and for myriad reasons) into a question common to the class.  Plaintiffs do not allege discrimination with regard to one manager, or even one job classification or employment practice.   Instead, they allege discrimination against a class consisting of thousands of female employees nationwide, who worked for thousands of managers in a variety of positions in distinct business units, divisions, practices and locations having different skill sets.  The decisions run the gamut from allegedly assigning an employee to a lower position following an international transfer from an independent KPMG member firm in a foreign country to the US KPMG member firm, (¶154), to giving a pay decrease after maternity leave (¶81), to excluding African-American women from opportunities in favor of Caucasian women (¶¶205-06, 218-20).  Plaintiffs' allegations simply are too individualized and varied to lend themselves to class treatment.  Indeed, without any "glue" holding together the alleged reasons for the thousands of distinct employment decisions alleged in this case, it will be impossible to say that examination of all of the putative class members' claims for relief "will produce a common answer to the crucial question of why [they were] disfavored." *Id.* at 2552.

Plaintiffs would like to engage in expensive and wasteful class-wide discovery in an attempt to dig up additional accusations to aim at KPMG, but Plaintiffs cannot justify such tactics based merely on the suggestion that the employment decisions affecting putative class members were subjective.  No amount of discovery can reform Plaintiffs' conclusory allegations

that boil down to the question "Did KPMG violate Title VII, and if so, how much do we recover?"[10]  *Dukes* explicitly rejects that such conclusory question:

> [A]ny competently crafted class complaint literally raises common "questions" . . . . For example:  Do all of us plaintiffs indeed work for [the defendant]?  Do our managers have discretion over pay?  Is that an unlawful employment practice?  What remedies should we get?  Reciting these questions is not sufficient to obtain class certification . . . . [T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once.

*Id*. at 2551.  Instead, the *Dukes* majority left no doubt that far more is required by Rule 23(a)(2):

> [plaintiffs'] claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id*.  Plaintiffs' list of "were we mistreated" questions falls well short of a common question sufficient to satisfy Rule 23(a)(2).  Discovery will not change this.

### B.    Plaintiffs Cannot Maintain a Class Under Rule 23(b)(2).

#### 1.    Plaintiffs Lack Standing to Certify a Class Under Rule 23(b)(2).

Despite being afforded a third opportunity to amend their complaint, Plaintiffs fail to add a new plaintiff who is presently employed by KPMG and who would thus have standing to sue for injunctive relief to support certification under Rule 23(b)(2).  Kassman and Patterson are the

---

[10] The TAC also identifies five allegedly common questions of law: 1) whether KPMG has engaged in a pattern and practice of unlawful, systemic gender discrimination by using these policies and procedures; 2) whether the failure to institute "adequate standards, quality controls, implementation metrics, or oversight" in the procedures violates Title VII or other statutes; 3) whether the "lack of transparency and of opportunities for redress" in those systems violates Title VII or other statutes; 4) whether senior managers and HR's failure to prevent, investigate or properly respond to complaints of discrimination violates Title VII or other statutes; and 5) whether KPMG is liable for a continuing systemic violation of Title VII or other statutes. (¶394.)  These proffered questions reiterate that the only common question posed by Plaintiffs is whether KPMG violated Title VII, which as explained by *Dukes*, is insufficient.

Case 1:11-cv-03743-JMF   Document 37   Filed 02/03/12   Page 33 of 64

only two Plaintiffs advancing Rule 23 class claims but both, as former employees of KPMG,

lack standing to seek Rule 23(b)(2) injunctive relief.

A party seeking to "invoke the jurisdiction of the federal courts must satisfy the

threshhold requirement imposed by Article III of the Constitution by alleging an actual case or

controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "The Art. III doctrine that

requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most

important of [the case or controversy] doctrines." *Allen v. Wright*, 468 U.S. 737, 750 (1984).

"Standing, broadly speaking, requires a plaintiff to demonstrate a 'personal stake in the outcome

of the litigation.'" *MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 593 (S.D.N.Y.

2011) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543-44 (1986)).

> To satisfy constitutional standing requirements, a plaintiff must show:
>
> (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and
> (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly
> traceable to the challenged action of the defendant; and (3) it is likely, as opposed
> to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)

(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). With respect to standing to

seek injunctive relief, the Supreme Court has explained:

> plaintiff must show that he is under threat of suffering 'injury in fact' that is
> concrete and particularized; the ***threat must be actual and imminent, not
> conjectural or hypothetical***; it must be fairly traceable to the challenged action of
> the defendant; and it must be likely that a favorable judicial decision will prevent
> or redress the injury.

*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added); *see also Deshawn E.*

*by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or

declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a

likelihood that he or she will be injured in the future.")

20

Courts must determine whether Article III jurisdiction exists prior to considering the merits of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89-101 (1998). Once a defendant moves to dismiss under for lack of standing, plaintiffs bear the burden to establish jurisdiction of the federal court over their claims. *Lujan*, 504 U.S. at 561.

Because Plaintiffs are no longer KPMG employees, they lack standing to seek injunctive relief. *Dukes*, 131 S. Ct. at 2560 ("about half the members of the class . . . [*i.e.*, the former employees] have no claim for injunctive or declaratory relief at all"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 988 (9th Cir. 2011) ("As the Supreme Court explained [in *Dukes*], only current employees have standing to seek injunctive relief."); *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 623 (9th Cir. 2010), *overruled on other grounds by* 131 S. Ct. 2541 ("class members who were no longer ... employees at the time Plaintiffs' complaint was filed do not have standing to pursue injunctive or declaratory relief"). Kassman and Patterson seek declaratory and injunctive relief related to KPMG's employment policies and practices. As former employees, however, they are not subject to KPMG's policies, and thus any threat of injury is "conjectural or hypothetical" and cannot support injunctive relief. *See Summers*, 555 U.S. at 493.

Related to this point, Kassman and Patterson cannot purport to represent a class of persons (KPMG's former employees) who lack the ability to bring suit themselves under Rule 23(b)(2). *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir. 2006) (federal courts cannot certify a class "that contains members lacking Article III standing"); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) ("a named plaintiff cannot represent a class of persons who lack the ability to bring suit themselves").

Additionally, Kassman and Patterson's status as former employees presents conflicts of interest that render them inadequate representatives under Rule 23(a)(4), which is another ground

for striking the class allegations at this time.  "For instance, a putative class representative who is entitled to only monetary relief may not be able to adequately represent class members who are entitled to monetary and equitable relief: the proposed representative would have an incentive to maximize monetary recovery even if doing so requires sacrificing the strength of equitable relief available to the other class members."  Newberg on Class Actions, § 3:59; *see also Harris v. Initial Sec., Inc.*, 2007 WL 703868, at *6 (S.D.N.Y. Mar. 7, 2007) (plaintiffs no longer employed by defendant would not benefit from any injunctive relief, and therefore plaintiffs' interest in receiving damages would prevent them from adequately protecting interests of class members still employed by defendant); *Rehwaldt v. Elec. Data Sys. Corp.*, 2005 WL 1130480, at *3 (W.D.N.Y. Apr. 13, 2005) (plaintiff could not be adequate class representative because as former employee, she had no interest in injunctive relief).

### 2.  Rule 23(b)(2) Certification Is Inappropriate Because No Class-Wide Injunctive Relief Can Be Granted.

In addition to the constitutional defect of lack of standing, Plaintiffs' proposal for Rule 23(b)(2) certification also fails because no class-wide injunction can be granted as a result of the type of discrimination theory Plaintiffs advance.  There simply is no allegation of any "glue" linking alleged acts of individual discrimination across time, divisions, practices and geographical limitations into an identifiable firm-wide discrimination practice.  Thus, the grant of a single injunction is impossible. "Absent an identifiable company-wide practice of discrimination, it is difficult to envision an injunction that could rectify the alleged discrimination." *Armstrong v. Powell*, 230 F.R.D. 661, 680 (W.D. Okla. 2005).  In fact, *Dukes* instructs:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a ***different***

22

injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

131 S. Ct. at 2557 (emphasis in original).

### 3.   The Monetary Relief Sought Precludes Rule 23(b)(2) Certification.

Rule 23(b)(2) certification also is improper because Plaintiffs primarily seek monetary relief.   Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule (b)(2) certification "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23(b)(2), Advisory Comm. Notes 1966 Amendments.  The Supreme Court has now made clear that claims for individualized relief (i.e. back pay) cannot satisfy Rule 23(b)(2).  *Dukes*, 131 S. Ct. at 2557-59.

Here, even though the TAC states that "injunctive, declaratory and affirmative relief are the predominant relief sought in this case" (¶411), as in *Dukes*, Plaintiffs seek substantial individualized relief in the form of monetary damages for back pay, front pay, lost benefits and other damages (Prayer for Relief ¶N).  And Plaintiffs seek additional forms of individualized monetary damages – compensatory and punitive damages – that the *Dukes* plaintiffs did not seek.  (¶L)  Plaintiffs' pursuit of these damages claims precludes Rule 23(b)(2) certification.  *See Dukes*, 131 S. Ct. at 2557 ("[A]t a minimum, claims for ***individualized*** relief (like the backpay at issue here) do not satisfy the Rule.") (emphasis in original).

### C.   *Dukes* Forecloses Certification of Plaintiffs' Class Claims Under Rule 23(b)(3).

Knowing certification under Rule 23(b)(2) is impossible, Plaintiffs purport to proceed under Rule 23(b)(3).  Plaintiffs' proposed class allegations cannot meet the rigorous 23(b)(3)

requirements that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  No matter what facts Plaintiffs adduce through discovery, they will never meet this standard.

### 1. Predominance Will Never Exist in Light of Plaintiffs' Allegations.

If the TAC does not satisfy commonality under Rule 23(a)(2), then it cannot satisfy predominance under Rule 23(b)(3).  *Amchem*, 521 U.S. at 623-24 (Rule (b)(3)'s "predominance criterion is far more demanding" than Rule 23(a)(2)'s commonality standard); *Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  A finding of predominance "necessarily requires an antecedent finding that there is at least one common question of law or fact in the first place" under Rule 23(a)(2).  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1269 (11th Cir. 2009); *Bell v. Lockheed Martin Corp.*, 2011 WL 6256978, at *5 (D.N.J. Dec. 14, 2011) (*Dukes* did not address the applicability of Rule 23(b)(3) because "plaintiffs c[ould] not cross the 'commonality' line set by Rule 23(a)(2)") (quoting *Dukes*, 131 S. Ct. at 2562).  *See also Armstrong*, 230 F.R.D. at 681 (class claims did not predominate for the reasons the court did not find commonality, "because no company-wide practice of discrimination has been identified").

In determining predominance, courts consider whether the elements of each cause of action can be satisfied by common, classwide proof.  *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 309-10 (S.D.N.Y. 2004).  Classwide questions predominate only if plaintiffs show that legal or factual questions subject to generalized proof are more substantial than, and outweigh, issues subject to individualized proof.  *Moore*, 306 F.3d at 1252; *Heerwagen v. Clear Channel Commc'ns.*, 435 F.3d 219, 226 (2d Cir. 2006); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011).  Significantly, predominance will be found only if Plaintiffs are able to challenge a policy or practice without depending on heavily individualized

24

evidence. *See, e.g., Harris*, 2007 WL 703868, at *7 (where plaintiffs sought to represent class alleging discrimination in promotions, class certification held to be inappropriate because "[e]ach individual claim would have its own provable set of facts and measure of damages"); *Thompson* 2004 WL 62710, at *5 (denying certification under Rule 23(b)(3) because "[s]imply put, no two plaintiffs were discriminated against in the same manner"); *Burrell v. Crown Cent. Petroleum, Inc.*, 197 F.R.D. 284, 291 (E.D. Tex. 2000) (issues common to the class as a whole were "subordinate to the specific circumstances surrounding each individual plaintiff's claim for compensatory and punitive damages" because the court would have to engage in a highly individualized inquiry into the specific circumstances of each plaintiff's claims); Fed. R. Civ. P. 23(b)(3), Advisory Comm. Notes to 1966 Amendments (no predominance where a Rule 23(b)(3) class would eventually "degenerate in practice into multiple lawsuits separately tried").

Discrimination claims challenging decentralized, locally autonomous decisionmaking practices at various locations present predominantly individual issues that preclude Rule 23(b)(3) certification. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (no predominance where the "common" issue of whether employer had a practice or policy of discrimination broke down into "an unmanageable variety of individual legal and factual issues"); *Ramirez v. DeCoster*, 194 F.R.D. 348, 353 (D. Me. 2000) ("Because each worker's exposure to this subjective decision-making … will vary in nature and degree, any trial on 'class' issues will quickly erode into a series of individual trials focused on issues specific to each worker."); *Churchill v. Int'l Bus. Machs., Inc., Nat'l. Serv. Div.*, 759 F. Supp. 1089, 1103 (D.N.J. 1991) (denying class certification where hiring, promotion and salary decisions were made on highly individualized basis).

Thus, even if Plaintiffs articulated a common question (which they have not), such question would not necessarily predominate.   Rather, the Court must conduct a highly individualized analysis to determine whether liability exists for each named Plaintiff (and then for each putative class member).   Taking just some of the named Plaintiffs' allegations as examples, these highly individualized assessments include:

- why Plaintiffs were assigned to various positions and paid the salaries that they earned (which allegedly were less than males' salaries) (*see, e.g.,* ¶¶79, 164-68, 205-08);

- why Kassman's base salary was decreased while she was on maternity leave (¶81);

- whether Kassman allegedly was removed from the promotion track for 2010, and if so, why, and whether a male employee replaced her on that track (¶¶94-96);

- whether O'Donnell was retaliated against for complaining of harassment and unequal treatment (¶¶185-86);

- why O'Donnell was demoted when she began working in the Atlanta office (¶160);

- why Potter resigned in July 2006 (¶312);

- whether KPMG considered Patterson's race in making employment decisions (¶¶205-06; 218-20; 544-50); and

- why Vasudeva was removed from a project in July 2008.  (¶340)

***These individual issues would be replicated across the claims of thousands of putative class members (and KPMG's defenses thereto), and would require resolution of an exponentially larger number of additional individual questions not susceptible to common proof.***  "That is so because, in resolving an individual's Title VII claim, the crux of the inquiry is 'the reason for [the] particular employment decision'" at issue.   *Dukes*, 131 S. Ct. at 2552 (quoting *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984)).  Moreover, in a pattern and practice case such as Plaintiffs', KPMG has "the right to raise any individual affirmative defenses it may have . . . ."  *See id.* at 2560-61 (Title VII prevents order for back pay "if the employer can show that it took an adverse employment action against an employee for

26

any reason other than discrimination") (citation omitted). KPMG's individualized defenses to liability predominate over any common questions among class members.

Plaintiffs' compensatory damages request for the putative class also requires individualized trials, making Rule 23(b)(3) certification impossible in a way discovery cannot cure. *See Thompson*, 2004 WL 62710, at *4. ("[C]laims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the case as a whole: what kind of discrimination was each plaintiff subjected to, how did it affect each plaintiff emotionally and physically, at work and at home; what medical treatment did each plaintiff receive and at what expense; and so on and so on") (internal quotation omitted).[11]

Finally, calculating punitive damages would require individualized determinations for each putative class member. To obtain punitive damages, an individual plaintiff must make the individualized, fact specific showing that the defendant possessed a reckless indifference to her federally protected rights. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544-46 (1999); *see also EEOC v. Sterling Jewelers Inc.*, 2011 WL 1560976, at *7-8 (W.D.N.Y. Apr. 25, 2011) (punitive damages recovery necessarily turns on recovery of compensatory damages, and must be determined only after proof of liability to individual class members). And punitive damages awards must be proportionate to the harm suffered by a plaintiff. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 426 (2003). Thus, the individualized inquiries necessary to determine punitive damages awards further preclude certification under Rule 23(b)(3).

---

[11] The *Dukes* Court held that the Ninth Circuit erred by approving a method of calculating back pay in which a special master would calculate the class back pay recovery by multiplying the average back pay award for a sample set of class members by the number of presumptively valid claims of the remaining class members. 131 S. Ct. at 2561.

2.      **A Class Action Is Not Superior to Other Methods for Litigating This Case Due to Myriad Individual Proof Issues.**

The allegations in the TAC also preclude a finding of class action superiority.  Rule 23(b)(3)'s superiority requirement is designed to ensure that a class action does not "sacrific[e] procedural fairness or bring[ ] about other undesirable results."  *Amchem*, 521 U.S. at 615.  To evaluate superiority, a court examines whether "another method" (such as an individual action) is available "which has greater practical advantages."  Fed. R. Civ. P. 23, Advisory Comm. Notes 1966 Amendments; *see In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 91 (S.D.N.Y. 2007) ("The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication.").  A court must consider, *inter alia*, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action."  *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 142 (S.D.N.Y. 2003) (citing Fed. R. Civ. P. 23(b)(3)).

A class action will ***not*** be found to be superior to other available methods where – as here – individualized proof is required to prove each plaintiff's damages.  *See id.* ("class action is not a feasible, let alone superior, method for the fair, efficient, and manageable adjudication of the putative class's claims for interest" where court is required to conduct series of mini-trials to determine whether each putative class member is entitled to relief); *Ruggles v. Wellpoint, Inc.*, 272 F.R.D. 320, 341 (N.D.N.Y. 2011) (class action not superior mechanism for adjudicating plaintiffs' claims because individualized proof necessary to determine correctness of defendant's actions).  Nor will courts find superiority where there are other viable means of providing plaintiffs with relief, such as individual actions.  *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 163 (D.

Kan. 1996) (no superiority where request for emotional distress damages required individualized and subjective analysis).

Here, a class action is not the best means of adjudicating the putative class claims.  There is no conceivable way that this action – or any part of it – could be efficiently and manageably tried.  To the contrary, class certification would result in thousands of jury trials on each putative class member's individual claims because Plaintiffs seek compensatory and punitive damages, entitling KPMG to a jury determination of the individual employment circumstances of each named Plaintiff and each putative class member.  *See* 42 U.S.C. § 1981a(c) (2011) ("If a complaining party seeks compensatory or punitive damages, under this section – (1) any party may demand a trial by jury.").  Certification under Rule 23(b)(3) thus is improper.

### D.    Hybrid Certification of Plaintiffs' Class Under Both Rule 23(b)(2) and (b)(3) Is Impossible and Would Violate the Rules Enabling Act.

After *Dukes*, Plaintiffs cannot cure the defect in their pleading by seeking certification of their claims for injunctive relief under Rule 23(b)(2), while simultaneously seeking certification of claims for back pay and monetary relief under Rule 23(b)(3).  *See Scott*, 2012 WL 113657, at *4 ("[P]laintiffs cannot state class claims for individualized monetary relief, such as back pay, punitive damages, and liquidated damages – under any combination of the procedural mechanisms available under Rule 23(b) because the Supreme Court unanimously held in *Dukes* that such relief is not available under Rule 23(b)(2).").

Moreover, it is black letter law that such ***hybrid certification requires satisfaction of both Rule 23(b)(2) and (b)(3)***.  *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1359-60 (11th Cir. 2009) (court can certify hybrid class only if Rule 23(b)(3) certification is proper); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 899 (7th Cir. 1999) (hybrid class certification appropriate only "assuming that certification under Rule 23(b)(3) otherwise is sound"); *Lee v. ITT Corp.*, 275

F.R.D. 318, 325 (W.D. Wash. 2011) (denying hybrid certification where plaintiffs failed to satisfy the requirements of Rule 23(b)(3), decided post-*Dukes*); *Garcia v. Veneman*, 211 F.R.D. 15, 24 (D.D.C. 2002) (denying request for hybrid certification where "it is out of the question that this class could be certified under Rule 23(b)(3), because of the predominance issues discussed above, so the proposed class would not really be a hybrid, but rather a Rule 23(b)(2) class with a different name"); *Cooper v. S. Co.*, 205 F.R.D. 596, 631 (N.D. Ga. 2001) (hybrid certification unavailable when "common elements of proof would not predominate in any event so as to meet the requirements of (b)(3)"); *cf. Easterling v. Conn. Dep't of Corr.*, 2011 WL 5864829, at *309 (D. Conn. Nov. 22, 2011) (hybrid certification permitted where plaintiff's claims satisfied both Rule 23(b)(2) and 23(b)(3)). Here, hybrid certification is not available because Plaintiffs cannot meet the requirements either of Rule 23(b)(2) or (b)(3).

Further, to the extent Plaintiffs propose hybrid certification under Rule 23(b)(2) as to "liability" and (b)(3) as to "damages," such a strained plan fails as a matter of law because it ignores the individual adjudications of liability that take place within the unique bifurcated procedure associated with Title VII pattern and practice cases. First, Plaintiffs have the burden in stage one to prove that discrimination was the firm's standard operating procedure. *Teamsters v. United States*, 431 U.S. 324, 336 (1977). If Plaintiffs prevail there, then the case proceeds to stage two where all class members are entitled to a rebuttable presumption that they are entitled to relief. *Id.* at 361. In this stage two proceeding, KPMG would have the right to raise any individual affirmative defenses it may have against each class member, and to demonstrate that the class member was denied an employment opportunity due to "lawful reasons." *Dukes,* 131 S. Ct. at 2561; *Teamsters*, 431 U.S. at 362. Plaintiffs' loose description of Rule 23(b)(3) certification for "damages" is really a misnomer because the second phase of a pattern and

practice case involves individual adjudications concerning liability and defenses as to each class member.  Indeed, as explained by Justice O'Connor in her concurrence in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *superseded in part by statute*, Civil Rights Act of 1991, "[i]t is misleading to speak of the additional proof required by an individual class member for relief as being part of the damage phase, that evidence is actually an element of the liability portion of the case."  490 U.S. at 266 (quoting *Dillon v. Coles*, 746 F.2d 998, 1004 (3d Cir. 1984)).

Plaintiffs' contorted certification plan also runs afoul of *Dukes'* criticism of the Ninth Circuit that a "Trial by Formula" can somehow sidestep these individual adjudications.  *Dukes,* 131 S. Ct. at 2561.  As explained by Justice Scalia, the Rules Enabling Act, 28 U.S.C. § 2072(b), prohibits certification of a class where a defendant is denied the ability to litigate these statutory defenses to its claims. *Id.*  Plaintiffs' hybrid certification plan does not account for these individual adjudications, and, as a result, violates the Rules Enabling Act.  Given the thousands of individual liability adjudications that would take place during the Rule 23(b)(3) certification phase, Plaintiffs' plan fails as a matter of law, requiring dismissal of the class claims.

## IV.   Individuals Who Did Not Live or Work in New York Cannot Be Members of a Class Alleging Violations of New York State or City Laws.

Plaintiffs cannot maintain a nationwide class under the NYSHRL, the NYCHRL or the NY EPA because they have not alleged that "nationwide" putative class members lived or worked in New York State or City.  Thus, class claims in Counts V-XI must be stricken.

The NYSHRL "affords no remedy to a non-New York resident who suffers discrimination outside New York State." *Duffy v. Drake Beam Morin,* 1998 WL 252063, at *12 (S.D.N.Y May 19, 1998); *see also Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 747 (N.Y. 2010) (non-resident invoking NYSHRL must show impact of discrimination was felt within New York); *Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni*, 549 F. Supp. 2d 549,

551 (S.D.N.Y. 2008).   The NYCHRL putative class claims similarly cannot apply to alleged class members living outside of or not working in New York City.  *Hoffman*, 933 N.E.2d at 747; *Duffy*, 1998 WL 252063, at *11 ("plaintiff must allege that he was discriminated against . . . within New York City").   Alleging that the allegedly discriminatory decisions were made in New York State or City (*see, e.g.,* ¶396) is not sufficient for Plaintiffs to maintain their NYSHRL or NYCHRL putative nationwide class claims.  *See Hoffman*, 933 N.E.2d at 747; *Lightfoot v. Union Carbide Corp.*, 1994 WL 184670, at *5 (S.D.N.Y. May 12, 1994) (dismissing Connecticut plaintiff's NYCHRL claim even where alleged decision to adopt early retirement program was made in defendant's New York City headquarters).

The NY EPA does not apply to class members who did not work in New York. *Hart v. Dresdner Kleinwort Wasserstein Secs., LLC*, 2006 WL 2356157, at *7 (S.D.N.Y. Aug. 8, 2006) (dismissing NY EPA claims for time plaintiff worked outside New York even though (1) one of plaintiff's supervisors was in New York; (2) plaintiff's duties and reporting lines did not change when she left New York; (3) plaintiff worked in New York approximately four weeks of the year and serviced clients in New York; and (4) plaintiff and employer believed assignment outside New York was temporary); *Hammell v. Banque Paribas*, 1993 WL 426844, at *1 (S.D.N.Y. Oct. 19, 1993) (NY EPA meant "***clearly to protect workers laboring in New York***") (emphasis added).  *Accord Levinson v. Primedia, Inc.*, 2007 WL 2298406, at *12 (S.D.N.Y. Aug. 9, 2007).

New York choice-of-law rules similarly require that the laws of the state with the most contact or greater relationship to the alleged issue – such as the state in which each putative class member is employed – apply.  *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 465 (S.D.N.Y. 1996) ("controlling effect is given 'to the law of the jurisdiction which, because of its

relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation.'") (citations omitted).

Striking these improper New York State and City putative class claims under Rule 23(d)(1)(D) is appropriate. *See, e.g., Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008); *Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (striking class allegations relating to untenable state law claims).

## V.   Plaintiffs' Disparate Impact Claims Fail As a Matter of Law.

Kassman and Patterson purport to assert disparate impact claims under Title VII (Counts I-III), but fail to identify any specific, facially neutral policy or practice that caused any disparate impact.  Courts routinely dismiss disparate impact claims where plaintiffs (like the two Plaintiffs here) fail to identify such a specific employment practice. "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact."  *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (affirming summary judgment where plaintiff failed to identify specific aspect of employer's pay plan having disparate impact). "Rather, the employee is 'responsible for isolating and identifying the ***specific*** employment practices that are allegedly responsible for any [disparate impact].'" *Id.* (emphasis in original) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)).  Without such a requirement, employers could be held "liable for 'the myriad of innocent causes that may lead to statistical imbalances. . . .'" *Id.* (quoting *Wards Cove,* 490 U.S. at 656).

 "Simply gesturing towards the hiring process as a whole will not satisfy the requirement that the plaintiff identify a 'specific employment practice'" that is the cause of the disparate impact.  *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111-12 (2d Cir. 2001) (affirming summary judgment where plaintiff did not connect statistical evidence to specific employment practice as to one claim and did not identify specific employment practice as to

33

other claim); *Tucker v. Gonzales*, 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005) (dismissing disparate impact claim due to "Plaintiffs' failure to identify challenged policies and/or their allegedly disparate impact");[12] *Kulkarni v. City Univ. of New York*, 2002 WL 1315596, at *1-2 (S.D.N.Y. June 14, 2002) (dismissing disparate impact claims where plaintiffs did not "identify a specific employment practice to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (internal citations omitted).

Plaintiffs do not identify a specific employment practice, but rather point generally to alleged "flaws" (lack of sufficient standards, quality controls, implementation metrics, transparency, and opportunities for redress) in a series of KPMG's employment policies and practices.  (*See, e.g.,* ¶378.)  Plaintiffs' vague and general assertions that KPMG's employment systems permit subjective discretion by managers fail to provide KPMG with fair notice of Plaintiffs' disparate impact claims.  *See Dukes*, 131 S. Ct. at 2555 ("[M]erely proving that [a] discretionary system has produced a . . . disparity **is not enough**.  [T]he plaintiff must begin by identifying the specific employment practice that is challenged.") (emphasis in original) (quotations omitted); *Combs v. Grand Victoria Casino & Resort*, 2008 WL 4452460, at *3 (S.D. Ind. Sept. 30, 2008) (granting defendant's motion to dismiss because plaintiffs' "vague claims of subjective decision-making cannot be considered a specific test, requirement, or practice").

Indeed, a closer reading of Plaintiffs' allegations shows that Plaintiffs simply are asserting discriminatory treatment dressed up as deficient disparate impact.  Disparate impact claims must be based on facially neutral policies that result in a disparate impact.  *See Byrnie*,

---

[12] The plaintiffs in *Tucker* specifically asserted: "the policies, practices and procedures of the [employer] . . . have operated to have a disparate impact on African-American and Hispanic [employees] with regard to performance appraisal reports . . . , the conduction [sic] of file reviews, the assignment of equipment, in-service and outside training opportunities, case assignments, duty assignments, availability and accountability practices, investigative support and awards, bonuses and other forms of official recognition."  2005 WL 2385844, at *5.

243 F.3d at 111.  But Plaintiffs never allege that any of the policies about which they complain are facially neutral.  Even more damaging, Plaintiffs' disparate impact claims rest on allegations that the policies are applied in a discriminatory way – i.e. that managers take advantage of "flaws" or "discretion" in the policies to apply their gender biases or stereotypes.   Given Plaintiffs' theory, they are not asserting disparate impact but rather intentional discriminatory treatment claims.  *Greater Indianapolis Chapter of N.A.A.C.P. v. Ballard*, 741 F. Supp. 2d 925, 939 (S.D. Ind. 2010) ("So, rather than alleging a specific ***neutral*** employment policy that results in unintended but adverse consequences, the plaintiffs here instead allege a practice that results in ***intended*** consequences . . . .") (emphasis in original) (internal citations omitted).  Accordingly, Plaintiffs' disparate impact claims must be dismissed as a matter of law.

Plaintiffs' attempts to point to KPMG's Alternative Work Arrangement ("AWA") policy (which allows employees to work a flexible or reduced schedule) to support their disparate impact claim fail as well.  Plaintiffs do not allege (as they must) that the AWA policy has a disparate impact on females who elect to use it ***as compared to*** males who make the same election.  *See Capruso v. Hartford Fin. Servs. Group, Inc.*, 2003 WL 1872653, at *5 (S.D.N.Y. Apr. 10, 2003) ("Title VII does not prohibit discrimination based solely on one's choice to work part time."); *Schallop v. New York State Dep't. of Law*, 20 F. Supp. 2d 384, 403 (N.D.N.Y. 1998) ("Comparing women working part-time with men working full-time provides no guidance because it is impossible to discern from those statistics whether any disparity is based on gender or on part-time status, a classification not protected.").  *Accord Fisher v. Vassar Coll.*, 70 F.3d 1420, 1448 (2d Cir. 1995) *on reh'g in banc*, 114 F.3d 1332 (2d Cir. 1997) *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133 (2000) ("A policy may discriminate between those employees who take off long periods of time in order to raise

children" and those who "are able to raise [children] without an appreciable career interruption. That is not inherently sex specific and does not give rise to a claim under Title VII."); *EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 481 (S.D.N.Y. 2011) ( "evidence does not make a relevant comparison between women who took leave for pregnancy-related reasons and other employees who took leave for any reason").

Indeed, the TAC alleges only that employees who work a flexible schedule are forced to accept reduced pay "while still working full-time schedules and being held to virtually full-time standards." (¶29.) Plaintiffs do not compare females who participate in the AWA program to males who also participate in such program and, as such, Plaintiffs cannot premise a disparate impact claim on the AWA program.

## VI. Plaintiffs' Individual Federal and New York EPA Claims Fail As a Matter of Law.

### A. Kassman, Patterson, O'Donnell and Potter's EPA Claims Are Fatally Flawed.

Plaintiffs have not alleged sufficient facts to show KPMG has violated the EPA and/or NY EPA (Counts IV and XI).[13]  *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007-08 (2d Cir. 1991) (bald assertion that plaintiff was not receiving equal pay for equal work too conclusory). Plaintiffs simply failed to plead that: (1) KPMG pays different wages to women than men; (2) Plaintiffs performed equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs were performed under similar working conditions.  *See* 29 U.S.C. § 206(d)(1); *Ryduchowski v. Port Auth. of New York and New Jersey*, 203 F.3d 135, 142 (2d Cir. 2000).

Plaintiffs' general and conclusory allegations that males are paid more are insufficient; each Plaintiff must allege that a specific, identified male, i.e., a "comparator," was paid more than she. *See Jones v. Flagship Int'l*, 793 F.2d 714, 723 (5th Cir. 1986) ("The [EPA] necessarily

---

[13] The EPA and the NY EPA are "nearly identical" and can be evaluated under the same standards. *See MacSweeney v. ING Life Ins. & Annuity Co.,* 2011 WL 4839086, at *6 n.3 (S.D.N.Y. Oct. 12, 2011); *Capruso,* 2003 WL 1872653, at *3 n.6.

requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated."); *Bastian v. New York City Dep't. of Educ.,* 2008 WL 2930529, at *5 (S.D.N.Y. July 29, 2008) (plaintiff must identify a comparator "employed by the same employer and of the opposite gender"); *Morris v. Fordham Univ.,* 2004 WL 906248, at *4 (S.D.N.Y. Apr. 28, 2004) ("[T]he identification of a comparator employed by the same employer and of the opposite gender is an indispensable requirement for a plaintiff bringing an [EPA] claim."); *Bass v. World Wrestling Fed'n Entm't, Inc.,* 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001) (dismissing EPA claim where plaintiff did not "offer a male counterpart with a higher salary"); *see also Alexander v. Marriott Int'l, Inc.*, 2011 WL 1231029, at *5 (D. Md. Mar. 29, 2011) ("Because [plaintiff's] Amended Complaint fails to identify a male comparator who performed substantially equal work for more pay, [her] Equal Pay Act claim must be dismissed."); *Sherrod v. Prairie View A & M Univ.*, 2011 WL 843936, at *9 (S.D. Tex. Mar. 8, 2011) (dismissing EPA claim where plaintiff stated no facts to show "which male employees [were] being paid higher wages for performing 'equal work'"); *McClamb v. Rubin*, 932 F. Supp. 706, 720 (M.D.N.C. 1996) (summary judgment where plaintiff failed to identify male comparator).

### 1.  Kassman Fails To Identify a Male Comparator Who Performed Equal Work But Who Was Paid More Than Her.

Kassman never alleges that Senior Manager John Montgomery earned more than her for performing the same work, as required under the EPA.  Rather, Kassman complains that her base salary was cut in 2003 (outside the statute of limitations period under both EPA and NY EPA)[14] by $20,000 when she was on maternity leave, and that her unidentified male colleagues did not experience similar cuts. (¶81.)  She broadly alleges that she was paid less than her male

---

[14] The statute of limitations under the federal EPA is two years (three years in the case of a "willful" violation).  29 U.S.C. § 255(a).  The statute of limitations under the NY EPA is six years.  N.Y. Lab. Stat. § 198.  The Complaint was filed on June 2, 2011.

colleagues who did not experience such a cut (*Id.*), but she fails to allege who these unidentified males are.  She further complains that Montgomery's pay was not similarly cut in 2003, but she never alleges he was paid more than her after the cut took effect.  (¶82.)

Kassman also never alleges that she and Montgomery were paid at a different rate of pay for performing equal work when her less than full-time schedule was taken into account. Kassman alleges throughout the TAC that she worked a "reduced" schedule, *i.e.* less than her full-time male and female counterparts, after she returned from maternity leave.  (*See, e.g.,* ¶¶41, 42).  She then alleges that Montgomery worked under the same Partner, worked on engagements for similar clients, performed the same tasks as her, ***but fails to allege any facts that he was on a "reduced" schedule***. (¶82.)  This is not accidental; Kassman knew that Montgomery worked full time.  Since Montgomery worked full-time, it would be necessary to annualize Kassman's salary to make a valid comparison of their salaries, since the EPA requires Kassman to allege that she and any male comparator were performing equal work on jobs "performed under similar working conditions."  29 U.S.C. § 206(d)(1).

Based on these deficiencies, Kassman has not met her burden under the EPA and NY EPA, and accordingly, Counts IV and XI as to Kassman must be dismissed.

### 2.   Potter's NY EPA Claims Fail For the Same Reasons.

Potter similarly fails to identify a male comparator who allegedly earned more than she did for performing the same work.  Potter claims that her pay was frozen in October 2002 (well outside the statute of limitations), and that similarly-situated males did not have their pay frozen and continued to receive raises.  (¶¶280, 281.)  Critically, however, Potter never alleges that this pay freeze caused her to receive less pay than similarly-situated males.  Rather, she alleges upon "information and belief" that Senior Manager David Buchner continued to receive pay raises

after 2002.  (¶283.)  But Potter does not specifically claim that David Buchner's alleged pay raises caused him to earn more than she did.

The TAC also does not establish that this Court has diversity jurisdiction over Potter's NY EPA claim.  Potter pled facts defeating any diversity of citizenship, and she has failed to allege the necessary amount in controversy.  (*See* ¶¶59, 66); 28 U.S.C. § 1332(a)(1) ("the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states").  Accordingly, Potter's NY EPA claim is fatally flawed, and Counts IV and XI as to Potter must be dismissed.

### 3. Patterson and O'Donnell's EPA Claims Are Based on Failure to  Promote, and Also Are Fatally Flawed.

Patterson and O'Donnell's EPA claims (also Counts IV and XI) assert a failure to promote (not a pay disparity), ignoring the fact that the EPA does not recognize failure to promote claims.  Discriminatory promotion claims are beyond the scope of the EPA, which focuses only on the issue of unequal pay.  *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 130 (7th Cir. 1989) (promotion claim beyond EPA's scope); *see also Todaro v. Siegel Fenchel & Peddy, P.C.,* 2009 WL 3150408, at *7 (E.D.N.Y. Sept. 25, 2009) (EPA's scope is "significantly narrower than Title VII's"); *Tompkins v. Allied Barton Sec. Servs.*, 2010 WL 3582627, at *11-12 (S.D.N.Y. Aug. 2, 2010) (rejecting EPA claim where complaint centered on fact plaintiff was not promoted to and paid at higher level).

Yet, Patterson and O'Donnell's EPA claims are premised on KPMG's alleged "discriminatory denials of promotions."  (¶¶453, 497.)  Patterson complains she was not promoted to the higher paid position of Senior Associate in July 2009 while a woman without children (Anna Bankston) and men (Stephan Rabbit) were promoted.  (¶¶218-220.)  O'Donnell, a Senior Associate, similarly complains that she was not promoted to the higher paid position of

Manager but that men and women without children were promoted.[15]  (¶177.)  Patterson and O'Donnell's attempts to repackage their failure to promote claims into pay discrimination claims under the EPA clearly fail as a matter of law.  Accordingly, Patterson and O'Donnell's claims in Count IV should be dismissed for failure to state a claim.

**B.  Plaintiffs' Pay-Related Retaliation Claims Are Not Viable.**

Plaintiffs' EPA and NY Labor Law § 215 retaliation claims (Count XIII and XVI) are inadequately pled and must be dismissed.  As a preliminary matter, Potter's NY Labor Law claims are barred by Section 215's two-year statute of limitations.  *See* NY Labor Law § 215(2)(a); *Reilly v. NatWest Mkts. Group, Inc.*, 178 F. Supp. 2d 420, 427 (S.D.N.Y. 2001).

The other Plaintiffs' EPA retaliation claims must be dismissed because they fail to state causes of action as a matter of law.  To assert retaliation, Plaintiffs must allege "(1) participation in protected activity known to the defendant, like the filing of [an EPA] lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010).  The test under the NY EPA is the same.  *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 166 (W.D.N.Y. 2007) ("claims for retaliation under the New York Labor Law require that the employee specifically inform her supervisor that the employer's pay practices violate particular provisions of the New York Labor Law").  Oral complaints may constitute protected activity, but such oral complaint must be sufficiently clear and detailed for a reasonable employer to understand it (in light of both content and context) ***as an assertion of rights protected by the EPA.***  *Akinfaderin v. W.P. Carey & Co., LLC*, 2011 WL 6961403, at *5

---

[15] O'Donnell does allege one male Manager – Krupal Mehta – received higher pay than she did, but she concedes he was in a different position than her and had a different pay band.  (¶¶168, 169.)  As such, O'Donnell's real complaint is not pay discrimination but KPMG's failure to promote her to a Manager position.  (¶¶453, 497.)

(S.D.N.Y. Dec. 28, 2011), *citing Kasten v. Saint-Gobain Performance Plastics Corp.* 131 S. Ct. 1325, 1335 (2011)  (dismissing EPA retaliation claim because plaintiff complained to supervisor that she was paid less than promised, and not "about any gender-based disparity").

Plaintiffs claim generally that they "voiced concerns about KPMG's discriminatory treatment of them, complaining through various reporting channels, including Office of Ethics and Compliance, the Office of General Counsel, Human Resources, and management" (¶511), but none of the Plaintiffs allege that they complained about conduct that would constitute a violation of the EPA or NY EPA.  Plaintiffs have not provided the crucial *factual* support necessary to cross the threshold of plausibility – that their complaints were sufficiently clear and detailed to put KPMG on notice that they believed they were being paid less than their male counterparts performing comparable work.  *See Twombly,* 550 U.S. at 555.

For instance, Kassman does not claim that she complained to anyone at KPMG about being paid less than any male counterpart; she only alleges that she complained about her salary being cut in 2003. (¶26.)  Patterson and Vasudeva each allege that she complained through various reporting channels about the discrimination and retaliation she was experiencing, but neither alleges that she ever specifically complained about her pay in relation to a male comparator, or made any other complaint that would constitute protected activity under the EPA. (¶¶250, 355.)  O'Donnell makes no allegations whatsoever regarding any complaints she made during the course of her employment.  Potter alleges that she asked Principal Gibbons about her frozen pay in May 2006, and asked which Senior Managers earned more than her.  (¶84.)

None of these allegations describe complaints that were "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of

rights protected by the [EPA] and a call for their protection." *See Akinfaderin*, 2011 WL 6961403, at *5.

**VII.  Patterson's Title VII Claims Are Futile and Should Be Dismissed.**

  **A.    This Court Lacks Jurisdiction Over Patterson's Title VII Claims.**

The Court lacks jurisdiction over Patterson's Title VII claims (Counts I-III, XII) because Patterson cannot point to an EEOC Charge that fulfills her exhaustion requirements.  Though Patterson did file an EEOC charge, she failed to file a lawsuit within 90 days of receiving the Right to Sue letter from the EEOC.[16]  Patterson cannot rely on Kassman's EEOC Charge (as she attempts in ¶62) to establish jurisdiction over Patterson's claims because Patterson filed her own EEOC Charge.  *See* Exhibit A; *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 564 (2d Cir. 2006) ("individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge"); *Levy v. United States Gen. Accounting Office,* 175 F.3d 254, 255 (2d Cir. 1999); *see also Piasecki v. Shinseki*, 2011 WL 2516513, at *2-4 (W.D.N.Y. June 23, 2011) (rejecting plaintiffs' attempts to use single filing rule to make claims timely); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1224 (5th Cir. 1995) (plaintiff who has filed his own EEOC charge "is bound by the parameters of his own EEOC charge, and cannot subsequently utilize the single filing rule to avoid the statute of limitations"), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003).  Because the Court lacks jurisdiction over Patterson's Title VII claims, Patterson cannot be a named Plaintiff for any Title VII claims.

---

[16] The Notice of Right to Sue was issued on June 13, 2011.  *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996).  Patterson never filed her own lawsuit.  Kassman's Motion to Amend, seeking to add Patterson as a plaintiff – even if sufficient for purposes of the statute of limitations – was not filed until September 29, 2011.  *See* Dkt. #7, Exhibit B.

**B.** **Patterson Cannot Satisfy *Any* of the Statutory Requirements for Venue in the Southern District of New York.**

Patterson has not alleged sufficient facts to demonstrate that the Southern District of New York has venue over her Title VII claims.  Title VII actions only may be brought in judicial districts (1) in the State in which the unlawful employment practice is alleged to have been committed; (2) in which the employment records relevant to such practice are maintained and administered; or (3) in which the aggrieved person would have worked but for the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(f)(3).  "Claims under Title VII are strictly governed by these venue provisions. . . ." *Templeton v. Veterans Admin.,* 540 F. Supp. 695, 696 (S.D.N.Y. 1982); s*ee also Bolar v. Frank*, 938 F.2d 377, 378-79 (2d Cir. 1991).

Where a proposed plaintiff (like Patterson) asserts a Title VII claim on behalf of a class, she must satisfy the venue requirements.  *See Cook v. UBS Fin. Servs.*, 2006 WL 760284, at *3 (S.D.N.Y. Mar. 21, 2006) (Title VII does not permit class representative to bring suit in jurisdiction where he cannot personally satisfy venue requirements); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000).

Patterson has failed to allege facts establishing venue in this Court.  First, Patterson concedes that all of the events about which she complains occurred in Atlanta (not in New York).  (¶¶195-266.)  *See, e.g,. Cook,* 2006 WL 760284, at *3-4 (Title VII venue not met where alleged discrimination had not occurred in New York.)  Second, she does not allege that her employment records are maintained or administered in New York.  Finally, she has not alleged that she would have worked in New York but for the alleged unlawful employment practices.  (*See* ¶¶195-266.) [17]  Patterson's Title VII claims thus must be dismissed.[18]

---

[17] The "principal place of business" prong of Title VII's venue provision need not be considered because it "applies only when none of the other three bases is satisfied by any other district."

**VIII.   Kassman's Claims for Discriminatory Constructive Discharge and Performance Evaluations Also Fail As a Matter of Law For Several Reasons.**

      **A.   Kassman's Claims Are Time Barred, and Thus, the TAC Fails to State Viable Performance Evaluation Claims Under the Anti-Discrimination Laws.**

Kassman's discriminatory performance evaluation claims under Title VII, the NYSHRL and the NYCHRL (Counts I-II, V-VI and VIII-IX) are time barred.  Kassman filed her EEOC charge on August 19, 2010 and as such, she can bring Title VII claims for evaluations she received after October 29, 2009, and NYSHRL and NYCHRL claims for evaluations provided after June 2, 2008.  *See* 42 U.S.C. § 2000e-5(e)(1); *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 474 (S.D.N.Y. 2009) (NYSHRL and NYCHRL "allow a party three years from the date of any allegedly discriminatory act to file suit").

Kassman concedes that any negative or discriminatory performance evaluations were given to her prior to June 2, 2008, and long before October 29, 2009.  Plaintiff cites to her "stellar performance" reviews several times in the TAC (*see e.g.* ¶¶73-78), and raises only three possible negative discriminatory reviews: (1) in March 2004 Kassman received her "first negative review at the Company for not meeting her goals" (¶106); (2) Kassman received a sixty-day performance improvement plan ("PIP") in 2004 (¶107); and (3) "[t]wo years [after the 2004 performance evaluation and the PIP], Principal Schapiro again penalized Plaintiff for taking maternity leave when she had her second child" (¶109.)   All three of these allegedly negative evaluations occurred far outside the applicable statute of limitations under Title VII, the NYSHRL and NYCHRL, and thus are time barred.

---

*Cook*, 2006 WL 760284, at *4; *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

[18] If the Court is inclined to transfer Patterson's claims to another District in lieu of dismissal, ***all*** of Patterson's claims (not just her Title VII claims) should be transferred for judicial economy.

### B.       The TAC Does Not State a Constructive Discharge Claim for Kassman.

Kassman fails to allege sufficient facts to support a constructive discharge claim under Title VII, the NYSHRL or the NYCHRL (Counts XII, XIV, and XV).   Kassman alleges "Defendant bullied Ms. Kassman into resigning by subjecting her to escalating gender discrimination and harassment" (¶¶503, 519, 523), but such allegations do not rise to the Second Circuit's strict constructive discharge standards.[19]   Rather, Kassman is required to allege that KPMG "**deliberately** [made her] working conditions so **intolerable** that [she was] **forced** into an involuntary resignation." *Wright v. Goldman, Sachs & Co.*, 387 F. Supp. 2d 314, 325 (S.D.N.Y. 2005) (emphasis in original) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)).   As held in *Spence v. Maryland Casualty Co.*, 995 F.2d 1147 (2d Cir. 1993):

> [A] constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of his work, or did not receive a raise, or preferred not to continue working for that employer.   Nor is the test merely whether the employee's working conditions were difficult or unpleasant.

995 F.2d at 1156.   Instead, Kassman must show that the work conditions were "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006) (quoting *Pa. State Police v. Suders*,

---

[19] Kassman specifically claims:
As a result of KPMG's campaign of discrimination and harassment, Plaintiff's work environment became unbearable.   She could barely eat or sleep, and feared walking into the office.   To avoid running into her tormentors, Plaintiff made a habit of taking the back elevators at work. *** Because of her torment and desperation at work, anxiety and depression also spread into her home life. Her relationship with her husband became strained, and she lacked energy to care for her children. She experienced daily headaches, neck pain, back pain, and weight loss. *** Because Ms. Kassman's previous experience had taught her that KPMG would not properly address its employees' unlawful conduct, she felt that she no recourse against the pervasive harassment and discrimination. *** On October 1, 2010, Plaintiff resigned from KPMG, stating in her letter of resignation, "By ignoring my requests to put an end to the discriminatory treatment, KPMG has forced me to either continue to endure an intolerable work environment or end my employment.   I therefore have no choice but to leave the Firm."   (¶¶145-150.)

542 U.S. 129, 141 (2004)).  "[A] working environment can be far from perfect and yet will not

be held to be intolerable."  *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 497 (S.D.N.Y.

2000) (citing *Martin v. Citibank*, 762 F.2d 212, 221 (2d Cir. 1985)).

> KPMG's alleged "campaign" of providing Kassman a coach, not providing her an office
> in Stamford and removing her from a promotional track at best describe unpleasant work
> conditions, but not a claim for constructive discharge.  (*See* ¶¶48, 123, 126, 141, 149); *Petrosino
> v. Bell Atl.*, 385 F.3d 210, 218, 230-32 (2d Cir. 2004) (no constructive discharge even though
> Plaintiff was to be transferred to new location with fewer promotional opportunities).  Further,
> the described purported consequences of any "campaign" (loss of sleep and appetite, and
> Kassman's avoidance of certain elevators) do not amount to the intolerable work environment
> necessary to support a constructive discharge claim.  *Hayles v. Advanced Travel Mgmt. Corp.*,
> 2004 WL 26548. at *17-18 (S.D.N.Y. Jan. 5, 2004) (dismissing constructive discharge claim
> even when employee developed stress-related health problems from demands of position or
> performance criticisms); *Barbagallo v. Gen. Motors Corp.,* 1996 WL 19004, at *4-5 (S.D.N.Y
> Jan. 17, 1996) (no constructive discharge despite plaintiff's claim that his health was adversely
> affected by his substantially increased workload).

> Because Kassman has not met the high threshold to plead a claim of constructive
> discharge, her claims for retaliatory discharge in Counts XII, XIV and XV should be dismissed.

## IX.   O'Donnell, Patterson, Vasudeva and Potter's Claims Are Misjoined and Should Be Dismissed or Transferred.

> In addition to moving to dismiss and/or strike Plaintiffs' class claims, KPMG moves to
> sever the claims of O'Donnell, Patterson, Vasudeva and Potter as misjoined.  Plaintiffs' claims
> neither arise from the same transaction or occurrence, nor allege a common question of law or
> fact, as required under Rule 20's joinder rules.  If a court concludes that parties have been

improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties from the action. *See Tardd v. Brookhaven Nat'l Lab.*, 2007 WL 1423642, at *6 (E.D.N.Y. May 8, 2007). Rule 20(a) dictates two independent prerequisites for joinder – both of which must be met:  (1) a right to relief arising out of the same transaction, occurrences or series of transactions and occurrences; ***and*** (2) a common question of law or fact that requires a logical relationship between the claim alleged and a logical connection among the essential facts.  *See* Fed. R. Civ. P. 20.  Because neither prerequisite is met here, the Court should sever and dismiss the claims of O'Donnell, Patterson, Vasudeva and Potter.

### A.    Plaintiffs' Claims Do Not Arise Out of the Same Transaction or Occurrence.

Courts in the Second Circuit use a case-by-case approach to determine what constitutes a single transaction or occurrence, borrowing heavily from the Rule 13 "transactions or occurrences" analysis.  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008).  Plaintiffs have not, and cannot, show – as they must – that the essential facts of their claims are so logically connected that they arise from the same transaction or occurrence.  The TAC alleges that Plaintiffs worked for different managers, in different geographic locations, often during different time periods, and allege different adverse employment actions and discrimination theories.  None of the Plaintiffs worked in the same department at the same time in the same location.  As such, severance is appropriate.  *See Gavenda v. Orleans Cnty.*, 1997 WL 662353, at *2-3 (W.D.N.Y. Oct. 24, 1997).

Severance is particularly appropriate here because Plaintiffs allege that discriminatory decisions were made by different managers supposedly taking advantage of "flaws" in KPMG's systems.  *See McDowell v. Morgan Stanley & Co., Inc.,* 645 F. Supp. 2d 690, 695-96 (N.D. Ill. 2009) (challenge to discretionary decisions made by individual supervisors under corporate policy is not appropriate for joinder because "the existence of an alleged company-wide policy

likely cannot outweigh the numerous other factors that courts consider in this context"); *Smith v. N. Am. Rockwell Corp. Tulsa Div.*, 50 F.R.D. 515, 522 (N.D. Okla. 1970) ("litigation of even any purported general policy of defendant, as it might affect each plaintiff here, would inevitably focus in detail on the separate work histories of each plaintiff").

Plaintiffs also challenge separate and individual decisions regarding pay, promotions, job assignments, sabbaticals, placement on performance improvement plans, hiring level, and denial of bonuses, under different legal theories and statutes, further destroying any logical connection between their claims.   *See Tardd*, 2007 WL 1423642, at *10 (severing claims alleging "pervasive, company-wide discrimination policy" where plaintiffs worked in different departments for different people and alleged different forms of discriminatory treatment even).

Plaintiffs also concede they come from ***different locations*** across the United States, ***none*** worked in the same department in the same location at the same time, ***none*** worked under the same manager, and many were in different positions when the alleged discrimination occurred. *See, e.g., Cestone v. Gen. Cigar Holdings, Inc.*, 2002 WL 424654, at *3 (S.D.N.Y. Mar. 18, 2002) (severance proper where, *inter alia,* plaintiffs were employed in different capacities).

|  | **Kassman** | **Potter** | **O'Donnell** | **Patterson** | **Vasudeva** |
|---|---|---|---|---|---|
| **Geographic location** | New York; Connecticut ¶63 | New York ¶66 | South Africa; Atlanta ¶64 | Atlanta ¶ 65 | Mountain View, CA ¶ 67 |
| **Practice** | SALT; IES Tax Practice ¶90 | IES Tax practice ¶269 | Transactional Services ¶155 | Federal Tax & IES Practice ¶197 | External Audits ¶315 |
| **Position at end of employment** | Senior Manager ¶63 | Senior Manager ¶270 | Senior Associate ¶37 | Associate ¶36 | Senior Associate ¶35 |
| **Alleged Discriminat-ors** | Rosen Schapiro Montgomery Stone ¶¶83, 96, 97 | Gibbons McLaughlin Brown ¶¶284, 298, 299 | Truc To Coble Evans ¶¶27, 173, 174 | Lusk Yoshida Woofer ¶¶210, 224, 233 | Bahan Abhijit Joshi Collins ¶¶328, 332, 336 |

**B.      Plaintiffs' Claims Do Not Share a Common Question of Law or Fact.**

Rule 20 also requires Plaintiffs to establish that there are common questions of fact or law.  As discussed in Section III(A), Plaintiffs' allegations do not share any common questions of law or fact.  As shown on page 8, only one of the nineteen (19) alleged Counts in the TAC (the EPA claim) applies to all five (5) women.  In contrast, ***only*** Kassman and Patterson have brought sex discrimination claims under Title VII, and Kassman is the only named Plaintiff for the New York State and City anti-discrimination claims.  Patterson, O'Donnell and Vasudeva assert FMLA and FMLA retaliation claims – but even within those claims, these three women have different allegations regarding what occurred when they returned to work from maternity leave.[20]  Finally, Patterson asserts an entirely new theory about what happened to her at KPMG by alleging ***race*** discrimination under Section 1981.  (*See* Count XIX).  *See Gavenda*, 1997 WL 662353, at *3 (joinder not allowed when one plaintiff alleged defamation, while the other alleged disability discrimination).

## CONCLUSION

For the foregoing reasons, KPMG respectfully requests that this Court dismiss (or strike):

- Kassman and Patterson's class claims (Counts I-III, V-XI) because they are not viable in light of the Supreme Court's decision in *Dukes*.

- The nationwide class claims under the NYSHRL, the NYCHRL and the NY EPA (Counts V-XI) because such laws do not apply to all employees nationwide.

- The disparate impact claims (Counts I-III) for failing to allege the existence of a specific, facially neutral policy that had a disparate impact on women.

- Kassman, Patterson, O'Donnell and Potter's EPA and NY EPA claims (Counts IV and XI) and all Plaintiffs' retaliation claims under the EPA and NY EPA (Counts XIII and XVI) for failing to meet the requisite pleading requirements.

---

[20] O'Donnell alleges she was improperly terminated (¶¶27, 151, 193), Patterson alleges she was asked to work part-time and was not paid for time on sabbatical (¶¶209, 224) and Vasudeva claims she was not paid a bonus (¶324).

- Patterson's Title VII claims for lack of jurisdiction and venue (Counts I-III).

- Kassman's untimely discriminatory performance evaluation claims (Counts I-II, V-VI and VIII-IX).

- Kassman's retaliatory discharge claims (Counts XII-XVI) because she has not pleaded facts sufficient to show a constructive discharge.

- The claims of all Plaintiffs other than Kassman (Counts I-XIII, XVI-XIX) as misjoined.

<div align="right">

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
Attorneys for Defendant KPMG LLP

</div>

By:      __s/Cheryl M. Stanton_____
        Diane M. Saunders
        Cheryl M. Stanton
        Peter O. Hughes
         *admitted pro hac vice*
        Steven W. Moore
         *admitted pro hac vice*

Dated:  February 3, 2012

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

DONNA KASSMAN, LINDA O'DONNELL, :
SPARKLE PATTERSON, JEANETTE          :      Hon. Richard J. Holwell
POTTER AND ASHWINI VASUDEVA,         :      Case No. 11-cv-03743 (RJH) (FM)
individually and on behalf of a class of :
similarly-situated female employees,  :
                                      :            *Civil Action*
                    Plaintiffs,       :
                                      :
      v.                              :
                                      :
KPMG LLP,                             :

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2012, I caused a copy of Defendant KPMG's Memorandum of Law in Support of Its Motion to Dismiss Certain Claims and to Strike Class Claims as Contained in the Third Amended Complaint to be filed electronically with the Clerk of the Court and Plaintiffs' counsel in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules and/or the Southern District's Rules on Electronic Service.

The above listed documents are available for viewing and downloading from the ECF.

Dated: February 3, 2012                  /s/ Cheryl M. Stanton
                                            Cheryl M. Stanton