**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------  :

DONNA KASSMAN, LINDA
O'DONNELL, SPARKLE PATTERSON,
JEANETTE POTTER AND ASHWINI
VASUDEVA, INDIVIDUALLY AND ON
BEHALF OF A CLASS OF SIMILARLY-
SITUATED FEMALE EMPLOYEES,

        Plaintiffs,

v.

KPMG LLP,

        Defendant.

----------------------------------------------------------------  :

      Hon. Richard J. Holwell
    Case No.: 11-cv-03743 (RJH) (FM)

       *Civil Action*

---

**DEFENDANT KPMG'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CERTAIN CLAIMS AND TO STRIKE CLASS CLAIMS AS CONTAINED IN THE
THIRD AMENDED COMPLAINT**

## TABLE OF CONTENTS

DEFENDANT KPMG'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
    CERTAIN CLAIMS AND TO STRIKE CLASS CLAIMS AS
    CONTAINED IN THE THIRD AMENDED COMPLAINT ...................................... 1

TABLE OF AUTHORITIES ......................................................................................... III

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 3

I.     PLAINTIFFS' FAILURE TO PLEAD A GENERAL POLICY OF
      DISCRIMINATION REQUIRES DISMISSAL OF THE CLASS
      CLAIMS UNDER RULE 12(B)(6). ................................................................. 3

II.    KPMG'S MOTION TO STRIKE CLASS CLAIMS PURSUANT TO
      RULE 23(D)(1)(D) IS PROPERLY BROUGHT AND IS NOT
      PREMATURE. ................................................................................................. 4

III.   PLAINTIFFS' CLASS CLAIMS MUST BE STRICKEN UNDER
      RULE 23. ......................................................................................................... 6

      A.    Plaintiffs' Allegations of Subjective Decisionmaking Are Wholly
           Insufficient to Maintain a Class Under Rule 23(a). ........................... 6

      B.    Plaintiffs Cannot Maintain a Class Under Rule 23(b)(2). ............................. 9

           1.    Plaintiffs Lack Standing to Certify a Class Under Rule
                  23(b)(2). ................................................................................... 9

           2.    Rule 23(b)(2) Certification Is Inappropriate Because No
                  Class-Wide Injunctive Relief Can Be Granted. ................................. 10

           3.    The Monetary Relief Sought Precludes Rule 23(b)(2)
                  Certification. ......................................................................... 11

      C.    Plaintiffs Cannot Maintain a Class Under Rule 23(b)(3). ............................. 11

           1.    Plaintiffs' Highly Individualized Claims Preclude a
                  Finding of Predominance. ...................................................... 11

            2.    Plaintiffs' Individualized Questions Preclude a Finding of
                  Superiority. .......................................................................... 14

      D.    Hybrid Certification Under Rule 23(c)(4) Is Impossible. ............................. 14

IV.     THE NY EPA PROVIDES NO PROTECTION FOR A PUTATIVE
        NATIONWIDE CLASS. ........................................................................................... 15

V.      PLAINTIFFS' DISPARATE IMPACT CLAIMS FAIL AS A MATTER
        OF LAW. ................................................................................................................. 15

VI.     PLAINTIFFS' FEDERAL AND NEW YORK EPA CLAIMS ARE
        INSUFFICIENT AS A MATTER OF LAW. ........................................................... 16

VII.    THIS COURT LACKS JURISDICTION AND VENUE OVER
        PATTERSON'S CLAIMS. ....................................................................................... 17

VIII.   KASSMAN'S CLAIMS FOR PERFORMANCE EVALUATIONS AND
        DISCRIMINATORY CONSTRUCTIVE DISCHARGE ALSO FAIL AS
        A MATTER OF LAW. .............................................................................................. 18

IX.     O'DONNELL, PATTERSON, VASUDEVA AND POTTER'S CLAIMS
        ARE NOT PROPERLY JOINED AND SHOULD BE SEVERED. .......................... 20

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

Abbatiello v. Monsanto Co.,
    522 F. Supp. 2d 524 (S.D.N.Y. 2007)......................................................................3

Alli v. Boston Mkt. Co.,
    2011 WL 4006691 (D. Conn. Sept. 8, 2011) ........................................................5

Allison v. Citgo,
    151 F.3d 402 (5th Cir. 1998) ...............................................................................11

Arma v. Buyseasons, Inc.,
    591 F. Supp. 2d 637 (S.D.N.Y. 2008).....................................................................3

Artis v. Deere & Co.,
    276 F.R.D. 348 (N.D. Cal. 2011)............................................................................5

Barnhart v. Town of Parma,
    252 F.R.D. 156 (W.D.N.Y. 2008)..........................................................................20

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................3, 16, 19

Birkholz v. City of New York,
    2012 WL 580522 (E.D.N.Y. Feb. 22, 2012)........................................................19

Blesedell v. Mobil Oil Co.,
    708 F. Supp. 1408 (S.D.N.Y. 1989)......................................................................18

Boykin v. KeyCorp.,
    521 F.3d 202 (2d Cir. 2008)..................................................................................16

Brown v. Kelly,
    609 F.3d 467 (2d Cir. 2010)..................................................................................13

Byrnie v. Town of Cromwell, Bd. of Educ.,
    243 F.3d 93 (2d Cir. 2001)....................................................................................15

Chen-Oster v. Goldman, Sachs & Co.,
    2011 WL 2671813 (S.D.N.Y. July 7, 2011) ..........................................................5

Chen-Oster v. Goldman, Sachs & Co.,
    2012 WL 205875 (S.D.N.Y. Jan. 19, 2012) ............................................5, 8, 9, 10

Churchill v. Int'l Bus. Machs., Inc., Nat'l Serv. Div.,
    759 F. Supp. 1089 (D.N.J. 1991) .........................................................................12

*Coffey v. Cushman & Wakefield*,
    2002 WL 1610913 (S.D.N.Y. July 22, 2002) ........................................................19

*Cokely v. N.Y. Convention Ctr. Operating Corp.*,
    2004 WL 1152531 (S.D.N.Y. May 20, 2004) ........................................................12

*Connolly v. Manufacturers Hanover Trust Co.*,
    1990 WL 129186 (S.D.N.Y. Aug. 31, 1990) ........................................................18

*Connor B. v. Patrick*,
    2011 WL 5513233 (D. Mass. Nov. 10, 2011) ..........................................7, 8, 15, 16

*Cook v. UBS Fin. Servs.*,
    2006 WL 760284 (S.D.N.Y. Mar. 21, 2006) ........................................................18

*Davito v. AmTrust Bank*,
    743 F. Supp. 2d 114 (E.D.N.Y. 2010) ..................................................................4

*Delprato v. Day Chevrolet Inc.*,
    427 Fed. App'x 86 (3d Cir. May 12, 2011) ........................................................16

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..................................................................................10

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998).................................................................................9

*Duling v. Gristede's Operating Corp.*,
    267 F.R.D. 86 (S.D.N.Y. 2010) ............................................................................10

*Easterling v. Conn. Dep't of Correction*,
    2011 WL 5864829 (D. Conn. Nov. 22, 2011) ....................................................14

*Espinoza v. 953 Assocs.*,
    2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011) ....................................................13

*Ewing v. Coca Cola Bottling Co. of N.Y.*,
    2001 WL 767070 (S.D.N.Y. June 25, 2001) ......................................................12

*Faibisch v. Univ. of Minnesota*,
    304 F.3d 797 (8th Cir. 2002) ..............................................................................10

*Fedotov v. Peter T. Roach and Assocs.*,
    354 F. Supp. 2d 471 (S.D.N.Y. 2005)..................................................................4

*Finkelshteyn v. Staten Island Univ. Hosp.*,
    687 F. Supp. 2d 66 (E.D.N.Y. 2009) ..................................................................19

*Fisher v. Vassar College*,
    70 F.3d 1420 (2d Cir. 1995)...................................................................................16

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    730 N.Y.S.2d 46 (N.Y. App. Div. 2001) ............................................................15

*Hizer v. South Bend Tribune*,
    2012 WL 639923 (N.D. Ind. Feb. 24, 2012).......................................................17

*Hockeson v. N.Y. Office of Gen. Servs.*,
    188 F. Supp. 2d 215 (N.D.N.Y. 2002).................................................................19

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y. 2008).................................................................10

*Holowecki v. Fed. Express Corp.*,
    440 F.3d 558 (2d Cir. 2006).................................................................................18

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997) .............................................................................12

*Jones v. Capital Cities/ABC*,
    168 F.R.D. 477 (S.D.N.Y. 1996) ..........................................................................1

*Jones v. St. Jude Med. S.C., Inc.*,
    2011 WL 4543837 (S.D. Ohio Sept. 29, 2011) ..................................................17

*Kalow & Springut, LLP v. Commence Corp.*,
    2011 WL 3625853 (D.N.J. Aug. 15, 2011) ..........................................................5

*Karim v. AWB Ltd.*,
    2008 WL 4450265 (S.D.N.Y. Sept. 30, 2008).....................................................10

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    131 S. Ct. 1325 (2011).........................................................................................17

*Katz v. Beth Isr. Med. Ctr.*,
    2001 WL 11064 (S.D.N.Y. Jan. 4, 2001) ...........................................................19

*Levin v. Madigan*,
    697 F. Supp. 2d 958 (N.D. Ill. 2010) ..................................................................10

*Levy v. U.S. Gen. Accounting Office*,
    175 F.3d 254 (2d Cir. 1999).................................................................................18

*Levy v. U.S. Gen. Accounting Office*,
    1998 WL 193191 (S.D.N.Y. Apr. 22, 1998)........................................................18

*Lomotey v. Conn. Dep't of Transp.*,
  2012 WL 642744 (D. Conn. Feb. 28, 2012) ...................................................................7

*MacSweeney v. ING Life Ins. & Annuity Co.*,
  2011 WL 4839086 (S.D.N.Y. Oct. 12, 2011) ............................................................16

*Mark v. Mt. Sinai Hosp.*,
  85 F. Supp. 2d 252 (S.D.N.Y. 2000)........................................................................19

*Mattera v. Clear Channel Commc'n*,
  239 F.R.D. 70 (S.D.N.Y. 2006) ...............................................................................15

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)......................................................................................15

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2012 WL 592745 (7th Cir. Feb. 24, 2012) .......................................................2, 8, 16

*Murray v. Auslander*,
  244 F.3d 807 (11th Cir. 2001) ..................................................................................11

*Norflet v. John Hancock Life Ins. Co.*,
  2007 WL 2668936 (D. Conn. Sept. 6, 2007) ............................................................13

*Oakley v. Verizon Commc'ns Inc.*,
  2012 WL 335657 (S.D.N.Y. Feb. 1, 2012)........................................................ passim

*Puricelli v. CNA, Ins. Co.*,
  185 F.R.D. 139 (N.D.N.Y. 1999) .............................................................................20

*Ramirez v. DeCoster*,
  194 F.R.D. 348 (D. Me. 2000) ..................................................................................12

*Reap v. Cont'l Cas. Co.*,
  199 F.R.D. 536 (D.N.J. 2001) ...................................................................................14

*Robertson v. Sikorsky Aircraft Corp.*,
  2000 WL 33381019 (D. Conn. July 5, 2001) ...........................................................14

*Roe v. City of New York*,
  151 F. Supp. 2d 495 (S.D.N.Y. 2001)......................................................................20

*Rogers v. Capital One Servs., LLC*,
  2011 WL 873312 (D. Conn. Feb. 19, 2011) .........................................................4, 12

*Rossini v. Ogilvy & Mather, Inc.*,
  798 F.2d 590 (2d Cir. 1986).................................................................................12, 13

*Schallop v. New York State Dep't of Law,*
   20 F. Supp. 2d 384 (N.D.N.Y. 1998) .................................................................16

*Scott v. Family Dollar Stores, Inc.,*
   2012 WL 113657 (W.D.N.C. Jan. 13, 2012) ......................................................5

*Sherlock v. Montefiore Med. Ctr.,*
   84 F.3d 522 (2d Cir. 1996).................................................................................18

*Spagnola v. Chubb Corp.,*
   264 F.R.D. 76 (S.D.N.Y. 2010) ..........................................................................4

*Spence v. Md. Cas. Co.,*
   995 F.2d 1147 (2d Cir. 1993).............................................................................19

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009)............................................................................................9

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002)..........................................................................................16

*Teoba v. Trugreen Landcare, L.L.C.,*
   2011 WL 3555729 (W.D.N.Y. Aug. 1, 2011) ...................................................5

*Turbeville v. Casey,*
   525 F. Supp. 1070 (D.D.C. 1981) .....................................................................18

*Ugas v. H & R Block Enters.,*
   2011 WL 3439219 (C.D. Cal. Aug. 4, 2011) .....................................................6

*United States v. City of New York,*
   276 F.R.D. 22 (E.D.N.Y. 2011) ........................................................................13

*Velez v. Novartis Pharms. Corp.,*
   2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ..................................................11

*Vulcan Soc. of Westchester Cnty. v. Fire Dep't of White Plains,*
   82 F.R.D. 379 (S.D.N.Y. 1979) .......................................................................20

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011)................................................................................ passim

*Weigmann v. Glorious Food, Inc.,*
   169 F.R.D. 280 (S.D.N.Y. 1996) ......................................................................10

*Winfield v. Citibank, N.A.,*
   2012 WL 266887 (S.D.N.Y. Jan. 30, 2012) ......................................................4

*Wright v. Family Dollar, Inc.,*
    2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ..........................................................................4


**STATUTES**

29 U.S.C. § 216(b) ...........................................................................................................................10

28 U.S.C. § 2072(b) .........................................................................................................................11


**RULES**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................1, 3, 19

Fed. R. Civ. P. 23 ....................................................................................................................4, 5, 6, 7

Fed. R. Civ. P. 23(a) ................................................................................................................2, 5, 6, 7

Fed. R. Civ. P. 23(a)(2) ....................................................................................................................5, 8

Fed. R. Civ. P. 23(b)(2) ...............................................................................................9, 10, 11, 14, 15

Fed. R. Civ. P. 23(b)(3) .....................................................................................................11, 12, 14, 15

Fed. R. Civ. P. 23(c)(4) ...............................................................................................................14, 15

Fed. R. Civ. P. 23(d)(1)(D) ...............................................................................................................1, 4

## <u>INTRODUCTION</u>

Plaintiffs' Opposition woefully fails to identify, let alone explain, a plausible theory of discrimination under *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), which rejects nationwide class claims based on a system of decentralized subjective decisionmaking, absent a specific policy of discrimination that serves as the "glue" that ties all class members together. Instead, in their Opposition, Plaintiffs gesture generally toward garden-variety personnel policies without specifically explaining what is wrong with them, how they disadvantage women, and, most importantly, how each proposed female class member has suffered the same injury as a result of each such policy. Plaintiffs do point to discretion exercised by male managers at KPMG but *Dukes* holds that such firm-wide subjectivity is not legally sufficient to find that an employer operated under a policy of discrimination.

Indeed, Plaintiffs admit that they are not aware at this time of any discriminatory policy at KPMG that would support a finding of commonality, and that if they do not find such a policy, they may not move to certify a class at all. (Opp'n at 15.) That is, Plaintiffs want to undertake massive, nationwide discovery at tremendous expense to find out if they have a cause of action and, if they do not, they will simply say, "never mind." But Rules 12(b)(6) and 23(d)(1)(D) are designed to prohibit precisely this kind of "sue first, determine facts later" strategy. "The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *Jones v. Capital Cities/ABC,* 168 F.R.D. 477, 480 (S.D.N.Y. 1996).

The instant case is a blueprint of the fact pattern rejected in *Dukes* – Plaintiffs present a sprawling class theory focused on decentralized, subjective decisionmaking, involving thousands of employees with different job classifications and duties and hundreds of managers and supervisors making thousands of independent, discretionary personnel decisions, year after year, all the while cutting across various offices, divisions, practices, and business units

1

geographically dispersed throughout the country. Like the plaintiffs in *Dukes*, Plaintiffs here do not identify any "glue" or policy of discrimination tying the putative class members together. To the contrary, Plaintiffs confess they know of no such policy.

Plaintiffs refuse to accept the fact that *Dukes* is intervening case law that bars them from advancing subjectivity-dependent class claims. Instead, they simply changed the wording in their Third Amended Complaint ("TAC") from "subjectivity" to synonyms such as "discretion," pretending that *Dukes* has no application to their case. Plaintiffs also present inapplicable legal arguments in their Opposition, including their misplaced reliance on *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2012 WL 592745 (7th Cir. Feb. 24, 2012) – a factually narrow case that the Seventh Circuit differentiated from *Dukes* because the *McReynolds* plaintiffs did identify a specific neutral policy. Plaintiffs here have alleged no firm-wide policy of discrimination other than a lawful exercise of discretion by local managers.

Moreover, in a recent decision ***from this jurisdiction*** applying *Dukes* in denying class certification, Judge Colleen McMahon expressly makes clear that identifying several distinct employment policies – even if they all relate to violations of the same statute – does not "make the questions in each class member's case common to the others." *Oakley v. Verizon Commc'ns Inc.*, 2012 WL 335657, at *14 (S.D.N.Y. Feb. 1, 2012) ("In other words, the possibility that the same law was violated in a variety of ways does not lead to the 'common answers' that make class litigation a productive endeavor."). As in *Dukes* and *Oakley*, Plaintiffs' allegations of an "undifferentiated mass of violations of a single statute" are wholly insufficient to present the sort of common question required by Rule 23(a). *See id.* (citing *Dukes*, 131 S. Ct. at 2551).

Aside from these class issues, Plaintiffs' Opposition presents no cogent arguments that would stave off dismissal of the other claims challenged by KPMG. Notably, as to the state and

federal Equal Pay Act claims, Plaintiffs fail to identify any male comparators who earned higher compensation within the meaning of the law. As to the disparate impact claim, Plaintiffs fail to identify any specific neutral policy that falls more harshly on female employees. The other claims also should be dismissed because they are either venued inappropriately, time-barred, lacking extraterritorial application outside of New York, misjoined, or wanting factual averments sufficient to withstand a basic challenge under Rule 12(b)(6).

## ARGUMENT

I.   **Plaintiffs' Failure to Plead a General Policy of Discrimination Requires Dismissal of the Class Claims Under Rule 12(b)(6).**

KPMG moved to dismiss Plaintiffs' class claims under *Iqbal* and *Twombly* and Rule 12(b)(6) based on Plaintiffs' failure to allege that "[KPMG] operated under a general policy of discrimination" that "manifested itself" across the class "in the same general fashion" as required to state an actionable class claim. *See Dukes*, 131 S. Ct. at 2553. Plaintiffs do not point to any general policy of discrimination in the TAC and, despite being challenged on this ground in KPMG's Motion ("MTDS"), fail to identify such a policy in their Opposition. Thus, this Court should grant KPMG's MTDS. *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 642-43 (S.D.N.Y. 2008); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 530 (S.D.N.Y. 2007).

Moreover, Plaintiffs even admit that they are not aware at this time of a policy of discrimination but seek discovery in search of such policy. "Plaintiffs agree that if, at the time for filing a motion for class certification, they can identify **no** common policy, practice or procedure other than a non-discrimination policy, no motion should be filed." (Opp'n at 15) (emphasis in original). Plaintiffs' unsupported allegation cannot be a basis for using discovery to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## II.     KPMG's Motion to Strike Class Claims Pursuant to Rule 23(d)(1)(D) Is Properly Brought and Is Not Premature.

Even Plaintiffs admit in their Opposition that Rule 23(d)(1)(D) motions to strike are permitted in certain circumstances, such as where (as here) the basis for the motion is distinct from the inquiry that would be made at the class certification stage and resolution of the motion is clear. (*See* Opp'n at 6); *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-16 (E.D.N.Y. 2010); *Rogers v. Capital One Servs., LLC*, 2011 WL 873312, at *7 (D. Conn. Feb. 19, 2011).

After *Dukes*, resolution of the instant motion is more than clear. The inquiry at this stage does not mirror – and in fact differs completely from – the inquiry that would be made at the class certification stage: the basis for KPMG's Motion is that Plaintiffs' TAC, **on its face**, is insufficient to satisfy Rule 23.[1] *See Winfield v. Citibank, N.A.*, 2012 WL 266887, at *9 (S.D.N.Y. Jan. 30, 2012) (motion to strike class allegations requires court to preemptively terminate class aspects based "solely on the basis of what is alleged in the complaint"); *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[C]ourts may – and should – address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained").[2]

In pushing for a deferral until this court has a "full factual record," Plaintiffs rely on cases – *none of which deal with Title VII or discrimination and all but one of which were decided prior to Dukes* – where class discovery was necessary to determine whether plaintiffs could meet

---

[1] In contrast, the inquiry at the certification stage would be whether the evidence obtained during class discovery supports class certification under the legal theory Plaintiffs set forth.

[2] Plaintiffs either conspicuously ignore or improperly distinguish KPMG's authority – from this jurisdiction – that "preemptive" motions to deny class certification should be granted when it is clear from the pleadings that plaintiffs cannot satisfy Rule 23. *See Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92, 98-99 (S.D.N.Y. 2010); *Fedotov v. Peter T. Roach and Assocs.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005). Plaintiffs' attempt to distinguish other cases cited by KPMG as inconsistent with Second Circuit precedent or factually dissimilar also is unavailing. In each of these cases, courts struck allegations or granted preemptive motions to deny certification where, as here, it was clear from the face of the complaint that plaintiffs could not satisfy Rule 23.

Rule 23 requirements. But here discovery could produce no facts to make Plaintiffs' class claims viable because their entire case rests on a theory that has been rejected by the Supreme Court. *See Scott v. Family Dollar Stores, Inc.*, 2012 WL 113657, at *4-5 (W.D.N.C. Jan. 13, 2012) ("futile to allow plaintiffs to conduct discovery" where *Dukes* forecloses plaintiff's class theory).

     While Plaintiffs are correct that *Dukes* did not alter the standard applied to motions to strike, significantly, they do not dispute that *Dukes* holds that allegations of subjective decisionmaking are insufficient to satisfy the commonality requirement of Rule 23(a). *See Dukes*, 131 S. Ct. at 2554. Applying *Dukes* to this case, Plaintiffs' allegations of subjective decisionmaking are insufficient – on their face – to satisfy Rule 23.[3] While Plaintiffs cite a laundry list of cases to argue that *Dukes* should not be applied broadly, those cases are distinguishable because none addresses a motion to strike class claims alleging a system of subjective decisionmaking, where no amount of discovery would alter the court's conclusion. *See Chen-Oster v. Goldman, Sachs & Co.*, 2012 WL 205875, at *4 (S.D.N.Y. Jan. 19, 2012) (*Chen-Oster II*) (denying motion to strike where plaintiffs identified specific employment practices); *Kalow & Springut, LLP v. Commence Corp.*, 2011 WL 3625853, at *1, 3 n.5 (D.N.J. Aug. 15, 2011) (*Dukes* not applicable to partial certification of a class under Computer Fraud and Abuse Act); *Chen-Oster v. Goldman, Sachs & Co.*, 2011 WL 2671813, at *5 n.4 (S.D.N.Y. July 7, 2011) (*Chen-Oster I*) (*Dukes* not relevant to determination of whether to compel arbitration); *Artis v. Deere & Co.*, 276 F.R.D. 348, 354 (N.D. Cal. 2011) (motion to compel); *Alli v. Boston Mkt. Co.*, 2011 WL 4006691, at *5 n.3 (D. Conn. Sept. 8, 2011) (conditional certification in FLSA action); *Teoba v. Trugreen Landcare, L.L.C.*, 2011 WL 3555729, at *1 (W.D.N.Y. Aug. 1,

---

[3] Plaintiffs' attempt to distance their case from *Dukes*—on the basis that the potential class here is less expansive than that in *Dukes*—falls short. The size of the class is irrelevant to *Dukes*' holding regarding what is necessary to satisfy the commonality requirement of Rule 23(a)(2).

2011) (addressing motion to amend, not motion to strike); *Ugas v. H & R Block Enters.,* 2011 WL 3439219, at *10 (C.D. Cal. Aug. 4, 2011) (conditional certification in FLSA action).

In sum, Plaintiffs' allegations do not satisfy Rule 23 no matter how much discovery Plaintiffs might conduct. KPMG's MTDS is procedurally proper and should be granted.

## III.     Plaintiffs' Class Claims Must Be Stricken Under Rule 23.

### A.     Plaintiffs' Allegations of Subjective Decisionmaking Are Wholly Insufficient to Maintain a Class Under Rule 23(a).

Plaintiffs claim that the TAC describes a pattern and practice of discrimination "in great detail" and identifies "several company-wide policies that raise class-wide questions of law and fact," but nowhere do Plaintiffs identify any one policy that operates as a "general policy of discrimination." *See Dukes*, 131 S. Ct. at 2553. In *Dukes*, the plaintiffs identified general personnel policies including (1) a compensation system where managers exercised discretion by setting compensation within preestablished ranges; and (2) a promotion system comprising objective criteria (performance ratings, tenure, willingness to relocate) but where managers also applied their own subjective criteria. *Id.* at 2547. Significantly, such policies were not sufficient to tie all class members' claims together, as "[o]ther than the bare existence of delegated discretion, respondents have identified no 'specific employment practice'. . . ." *Id.* at 2555.

Similarly, Plaintiffs here merely gesture to general, benign policies without explaining what is wrong with them, or to systems that have "insufficient standards, quality controls, implementation metrics, and lack transparency and opportunities for redress or challenge." (*See, e.g.,* ¶¶16, 24, 30-31.) These repetitive allegations regarding a lack of standards and controls are nothing more than an allegation that KPMG's policies permit managers to use their discretion to make subjective employment decisions. Curiously, however, ***Plaintiffs do not respond to KPMG's argument that they have simply recast allegations of subjective decisionmaking using***

*substituted language scoured clean of the word "subjectivity."* Plaintiffs' conspicuous disregard of this issue is telling, because they do not – and cannot – dispute that after *Dukes*, alleging a policy allowing managers to use discretion is insufficient as a matter of law to state a class claim.

Further, courts in the Second Circuit have recently applied *Dukes* to find allegations like Plaintiffs' insufficient to satisfy commonality. *See, e.g., Oakley v. Verizon Commc'ns Inc.*, 2012 WL 335657, at *14 (S.D.N.Y. Feb. 1, 2012) (allegations of nine different discriminatory policies – rather than a single uniform policy – were "not the right kind of common questions" and failed to meet Rule 23(a) commonality requirements); *Lomotey v. Conn. Dep't of Transp.*, 2012 WL 642744, at *2-3 (D. Conn. Feb. 28, 2012) (pattern and practice allegations were conclusory and insufficient because plaintiff's failure to hire and to promote claims were "factually and legally distinct analyses" and plaintiff "[did] not allege that the discriminatory practice and bias was on the part of the same supervisor or group of supervisors and thus fails to demonstrate that the purported class' claims depend upon a common contention").

In an attempted end-run around Rule 23's commonality requirement, Plaintiffs rely on *Connor B. v. Patrick*, 2011 WL 5513233 (D. Mass. Nov. 10, 2011), to argue that deficient systems are not the equivalent of a policy allowing discretion. But *Connor B.* is distinguishable from *Dukes* (and the instant case) in almost every way imaginable. *See id.* at *3 ("[T]he decision in *Wal-Mart*, while generally relevant, has little explicit application to this much different case."). *Connor B.* is not a discrimination case at all, and the plaintiffs were not required to prove that there was discrimination or even intentional harm. Instead, plaintiffs argued the Massachusetts Department of Children and Families had overarching systemic deficiencies (i.e. excessive caseloads and an insufficient number of foster homes) that in and of themselves injured children. *Id.* at *1, 5. Notably, the *Connor B.* plaintiffs did not allege that these systemic

deficiencies allowed case workers exercising discretion to intentionally harm class members. *See id.* at \*4. Here, on the other hand, Plaintiffs seek to show that a series of allegedly insufficient standards allow local managers to use discretion, and that some of these managers use this discretion to intentionally discriminate against women. Again, that is exactly the theory the Supreme Court rejected in *Dukes*. For these reasons, Plaintiffs may not invoke *Connor B.* to avoid the undesirable fact that all of their allegations regarding KPMG's practices are in fact based on a subjective decisionmaking theory.

In addition, Plaintiffs' preoccupation with and overreliance on *McReynolds*, 2012 WL 592745, is misplaced, as that case involves completely different allegations than those in *Dukes* or this case. Plaintiffs in that factually narrow case identified ***a specific neutral policy***, a corporate-wide "teaming policy" that permitted employee brokers – not managers – to form their own teams, which then allegedly led to black brokers being disfavored. 2012 WL 592745, at \*7. The Seventh Circuit expressly distinguished its ruling from *Dukes*, finding that *Dukes* did not preclude a class action challenge to the defendant's neutral "teaming policy" because it was a policy "of Merrill Lynch, rather than [a policy] that local managers can choose or not at their whim." *Id.* Here, on the other hand, as in *Dukes*, Plaintiffs have not alleged any firm-wide policy or practice other than local managers exercising their discretion. *See id.* (*Dukes* "helps . . . to show on which side of the line that separates a company-wide practice from an exercise of discretion by local managers this case falls.").

Plaintiffs also cite *Chen-Oster II* to argue for discovery to allow them to identify KPMG's practices that meet the requirements of Rule 23(a)(2), but this Court should disregard that case because it is factually dissimilar from this case in several crucial ways. While Plaintiffs allege a system that lacks controls and standards, the *Chen-Oster II* plaintiffs alleged that the

employer relied on "illegitimate and unvalidated systems and criteria." 2012 WL 205875, at *2. Plaintiffs here, like in *Dukes*, allege no one common policy of discrimination, but an "undifferentiated mass of violations of a single statute," *see Oakley*, 2012 WL 335657, at *14, which boils down to the allegation that managers use discretion to make subjective employment decisions. The plaintiffs in *Chen-Oster II* alleged specific employment practices, such as the policy of using "360 degree reviews," algorithms and quartile rankings to determine performance scores, as well as how such policies allegedly created a disparate impact. *Id.* at *2, 5. The magistrate judge in that case ultimately recommended that the defendant's motion to strike be denied and that plaintiffs be able to conduct discovery[4] based upon the plaintiffs' ability, unlike Plaintiffs here, to identify "a number of specific employment practices."  *Id.* at *5.

### B.      Plaintiffs Cannot Maintain a Class Under Rule 23(b)(2).

### 1.      Plaintiffs Lack Standing to Certify a Class Under Rule 23(b)(2).

None of the plaintiffs can maintain a class under Rule 23(b)(2) because, as former employees, they lack standing to seek injunctive relief. *See Dukes*, 131 S. Ct. at 2560. They are not subject to KPMG's policies so any threat of injury is too "conjectural or hypothetical" to support injunctive relief. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). Plaintiffs allege no facts showing injury would recur upon their return, what the injury would be, or what so-called policy of discrimination would cause the injury.

Plaintiffs' argument that they have standing because they seek reinstatement fails because

---

[4]   *Chen-Oster II* also should not be relied upon by this Court because as a report and recommendation, it is not binding upon this Court. *See id.* In addition, the magistrate's report is contrary to the fundamental import of *Dukes*, which clearly establishes, as a matter of law, that an alleged policy permitting managers' discretion is insufficient to satisfy Rule 23(b)(2)'s commonality requirement. *See Dukes*, 131 S. Ct. at 2554. The defendant in *Chen-Oster II* has filed objections to this report and recommendation, which have not been ruled upon at this time.

none actually seek reinstatement. Paragraph 388 of the TAC states that "proper relief" for Plaintiffs "can include" reinstatement, but nowhere does the TAC claim that they actually seek reinstatement or that they have any desire or plan to return.[5]

Plaintiffs urge deferral of the standing analysis until after class certification under the theory that certification issues are logically antecedent to Article III concerns, citing *Winfield*, 2012 WL 266887. However, the logically antecedent rule does not apply where certification does not extinguish the entire case. *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 531 (S.D.N.Y. 2008) ("Plaintiffs' case cannot be entirely disposed of by merely addressing class certification, and accordingly the constitutional question cannot be avoided by merely addressing the issue of class certification."); *AllianceBernstein Mut. Fund Excessive Fee Litig.*, 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005). Because Plaintiffs have other claims that do not depend on class certification,[6] the Court must address constitutional standing objections at this stage.

### 2.     Rule 23(b)(2) Certification Is Inappropriate Because No Class-Wide Injunctive Relief Can Be Granted.

Plaintiffs' disjointed class action claims are not susceptible to class-wide injunctive relief under Rule 23(b)(2). Indeed, Plaintiffs' failure to aver any single policy of discrimination – or

---

[5] Moreover, Plaintiffs cannot represent former employee class members who have an attenuated interest in injunctive relief. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *Karim v. AWB Ltd.*, 2008 WL 4450265, at *5 n. 4 (S.D.N.Y. Sept. 30, 2008) ("[A] plaintiff may not use the procedural device of a class action to bootstrap himself into standing he [otherwise] lacks.") (quotation omitted). Their interest is even more attenuated than Plaintiffs' because the class claims do not involve termination-related claims, and thus, such employees are not entitled to reinstatement (and would lack standing). The cases Plaintiffs cite to suggest that a reinstatement request supports standing for former employees do not apply to former employee class members who themselves fail to assert termination-related claims. *See, e.g., Chen-Oster II*, 2012 WL 205875 (not addressing this issue); *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86 (S.D.N.Y. 2010) (not addressing standing); *Weigmann v. Glorious Food, Inc.*, 169 F.R.D. 280 (S.D.N.Y. 1996) (same); *Faibish v. Univ. of Minnesota*, 304 F.3d 797 (8th Cir. 2002) (not class action case); *Levin v. Madigan*, 697 F. Supp. 2d 958 (N.D. Ill. 2010) (same).
[6] *I.e.*, Plaintiffs' EPA claims which are analyzed under the opt-in framework of 29 U.S.C. § 216(b), Family Medical Leave Act claims, and other individual claims.

glue – that links all of the class members together makes it impossible for the Court to craft a focused injunction that provides relief to every class member as required by *Dukes*. *See* 131 S. Ct. at 2557. In their Opposition, Plaintiffs similarly fail to explain what possible indivisible injunction could be crafted for their hydra-like class action.

### 3.    The Monetary Relief Sought Precludes Rule 23(b)(2) Certification.

In response to KPMG's argument that Plaintiffs cannot obtain Rule 23(b)(2) certification under *Dukes* because they seek primarily individualized monetary relief, Plaintiffs appear to confess that they do not plan to seek class certification for individualized damages under Rule 23(b)(2). Plaintiffs instead rely on pre-*Dukes* dicta from *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010), for the strained proposition that their Rule 23(b)(2) certification proposal can include claims for punitive damages. But the *Velez* decision did not address whether punitive damages can be certified as incidental to injunctive relief under Rule 23(b)(2). Courts that have considered the issue conclude that punitive damages in an employment discrimination case are not incidental to Rule 23(b)(2) injunctive relief, and thus cannot be the basis for Rule 23(b)(2) certification. *See e.g., Murray v. Auslander*, 244 F.3d 807, 812-13 (11th Cir. 2001); *Allison v. Citgo*, 151 F.3d 402, 416-18 (5th Cir. 1998).[7]

### C.    Plaintiffs Cannot Maintain a Class Under Rule 23(b)(3).

### 1.    Plaintiffs' Highly Individualized Claims Preclude a Finding of Predominance.

Plaintiffs note that the *Dukes* decision did not directly address the issue of predominance,

---

[7] Plaintiffs' suggestion that punitive damages can be decided under Rule 23(b)(2) for the whole class also runs afoul of *Dukes*' condemnation of any formulaic approaches or other litigation short-cuts that violate the Rules Enabling Act, 28 U.S.C. § 2072(b). *See Dukes*, 131 S. Ct. at 2561 (rejecting "Trial By Formula" approach because it denies defendant the ability to litigate individual questions concerning liability and defenses as to each class member under *Teamsters v. United States* framework for pattern and practice class cases). Punitive damages cannot even be determined in a stage I proceeding under *Teamsters* because claimant eligibility is reserved for stage II where individual liability and defenses questions for each class member are decided.

yet readily admit that a finding of predominance under Rule 23(b)(3) requires a finding of commonality. (Opp'n at 23 n.17.) It undeniably follows that the Supreme Court's analysis of commonality in *Dukes* necessarily informs any predominance analysis; for the same reasons that the allegations in the TAC do not satisfy commonality, they similarly do not satisfy the predominance prong of Rule 23(b)(3).[8]

Even if Plaintiffs somehow make it past the commonality inquiry, their unique discrimination claims, based on their allegations that KPMG uses a system permitting managers to use discretion to make thousands of different subjective employment decisions, are far too individualized to satisfy Rule 23(b)(3). Where (as here) plaintiffs challenge locally autonomous decisionmaking practices at various locations, such claims entail predominantly individual issues that preclude Rule 23(b)(3) certification. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997); *Ramirez v. DeCoster*, 194 F.R.D. 348, 353 (D. Me. 2000); *Churchill v. Int'l Bus. Machs., Inc., Nat'l Serv. Div.*, 759 F. Supp. 1089, 1103 (D.N.J. 1991).

Plaintiffs' reliance on *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986), to argue that the Second Circuit has rejected KPMG's legal authority is completely misplaced. First, *Rossini* predates *Dukes*, and thus any reliance upon a "standardless, subjective evaluation system," *id.* at 599, is no longer sufficient to constitute a common question. *See Dukes*, 131 S. Ct. at 2554. Moreover, *Rossini* did not involve claims involving locally autonomous decisionmaking practices at various locations. To the contrary, the *Rossini* court expressly noted

---

[8] For all of the reasons set forth in Section II, KPMG's MTDS is properly brought at this juncture based on KPMG's contention that the TAC, on its face, is insufficient to show that common issues of law or fact predominate. None of the authority cited by Plaintiffs addresses a motion to strike where the court's determination was limited to the pleadings because further discovery would have been futile. *See, e.g., Ewing v. Coca Cola Bottling Co. of N.Y.*, 2001 WL 767070 (S.D.N.Y. June 25, 2001); *Rogers*, 2011 WL 873312; *Cokely v. N.Y. Convention Ctr. Operating Corp.*, 2004 WL 1152531 (S.D.N.Y. May 20, 2004).

that the employment decisions at issue "were made by the same, central group of people" within the company – indicating that the employer discriminated against all plaintiffs "in the same general fashion." 798 F.2d at 598. Based on those facts, which are the opposite of the allegations in this case, the court found that common issues predominated.

As recognized by the authority KPMG cited, allegations (such as Plaintiffs') that implicate thousands of different employment decisions made by hundreds of different managers at scores of locations across the country – versus one single policy – cannot result in a common issue that predominates over individual issues.[9] Moreover, at least one court within this jurisdiction has held, post-*Dukes*, that where individualized questions of causation and damages would consume most of the proceedings, any common questions that might exist would not predominate over individualized questions. *See Oakley*, 2012 WL 335657, at *16-18.

The massive amount of individual compensatory and punitive damages that would have to be calculated in this case – where each class member's alleged damages would differ based on her particular circumstances and the reason for the particular employment decision alleged – also would preclude certification. While Plaintiffs argue to the contrary, they do not provide the Court with any authority where a court addressed compensatory or punitive damages in making a predominance determination, or where class allegations were based on a system of subjective decisionmaking. *See, e.g., Espinoza v. 953 Assocs.*, 2011 WL 5574895 (S.D.N.Y. Nov. 16, 2011) (no compensatory or punitive damages requested); *City of New York*, 276 F.R.D. at 47 (policy at issue was single allegedly discriminatory testing procedure, not system of subjectivity);

---

[9] In contrast, the cases cited by Plaintiffs involved allegations of a clear, single element of a policy. *See, e.g., United States v. City of New York*, 276 F.R.D. 22, 47 (E.D.N.Y. 2011) (discriminatory testing procedure); *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) (class consisted of individuals arrested or prosecuted under a particular New York statute); *Norflet v. John Hancock Life Ins. Co.*, 2007 WL 2668936, at *1 (D. Conn. Sept. 6, 2007) (no-solicitation and no-commission policies with respect to sales of insurance policies to African-Americans).

*Easterling v. Conn. Dep't of Correction*, 2011 WL 5864829 (D. Conn. Nov. 22, 2011) (not addressing compensatory or punitive damages).

Courts routinely conclude that calculating compensatory and punitive damages, as opposed to back pay, for thousands of class members is an individualized and overwhelming task that precludes Rule 23(b)(3) certification. *See, e.g., Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 549 (D.N.J. 2001) ("individual issues would predominate over common ones during the damages phase of the trial" because of individualized task of calculating compensatory and punitive damages); *Robertson v. Sikorsky Aircraft Corp.*, 2000 WL 33381019, at *10-12 (D. Conn. July 5, 2001) (where plaintiffs alleged system of subjectivity, trials of individual liability and compensatory and punitive damages claims constituted "overwhelming task").

### 2.   Plaintiffs' Individualized Questions Preclude a Finding of Superiority.

Plaintiffs' argument that individualized questions will not be unmanageable is flawed because it is based on the assumption that their allegations are sufficient to show that common questions predominate. As pointed out in the MTDS, class litigation could not be efficiently or manageably tried in this case, and therefore would not be superior to individual actions. *See Oakley*, 2012 WL 335657, at *18 (holding, post-*Dukes*, that classwide litigation of sub-issues would be of extremely limited usefulness and class treatment would not be superior to individual actions where plaintiffs alleged nine different discriminatory policies). Plaintiffs' proposed class action would be particularly difficult to manage in light of all of the different policies, practices, managers, and locations alleged. *See id.* (proposed class unmanageable where "parties have not even begun to suggest how the overarching class posited by plaintiffs would have to be sliced and diced so that commonality and typicality could be satisfied in a post-*Dukes* world").

### D.   Hybrid Certification Under Rule 23(c)(4) Is Impossible.

Rule 23(c)(4) permits courts to certify issues under Rules 23(b)(2) and (b)(3), but as

admitted by Plaintiffs, such hybrid certification requires satisfaction of **both** Rules 23(b)(2) and (b)(3). (Opp'n at 29 n.23.) Plaintiffs are unable to satisfy either rule, making hybrid certification of their claims impossible.[10]

### IV.    The NY EPA Provides No Protection for a Putative Nationwide Class.

Plaintiffs are mistaken that the NY EPA applies to employees who never worked in New York. *Mattera v. Clear Channel Commc'n*, 239 F.R.D. 70, 80 (S.D.N.Y. 2006) (employees residing and working outside New York have no standing to raise New York wage claims). Under New York law, no state legislation, unless expressly stated otherwise, is presumed to be intended to operate outside the state. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 730 N.Y.S.2d 46, 47 (N.Y. App. Div. 2001); McKinney's Cons. Laws of N.Y., Book 1, Stats. §149 at 305.

### V.    Plaintiffs' Disparate Impact Claims Fail As a Matter of Law.

Plaintiffs assert in conclusory fashion that they have identified specific, facially neutral policies (as required for their disparate impact claims), but neither the TAC nor their Opposition identifies such a policy. Plaintiffs instead nod toward various policies and allege that "flaws" in these policies have a disparate impact. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001) ("simply gesturing towards" a "process as a whole" insufficient).

Further, as explained in Section III.A. herein, Plaintiffs' reliance on *Connor B.*, 2011 WL 5513233, is misplaced, as the systemic deficiencies alleged in that case are in no way comparable to the "flaws" alleged by Plaintiffs here that merely result in a system of subjectivity

---

[10] Further, Plaintiffs cannot circumvent the predominance requirement of Rule 23(b)(3) through hybrid certification under Rule 23(c)(4) because the phase II remedial proceedings under the *Teamsters* framework, which would be addressed under Rule 23(b)(3), would degenerate into a litigant-by-litigant inquiry into each class member's claims and KPMG's individual defenses to liability and damages. The Second Circuit has rejected such issue or hybrid certification where "the number of questions that would remain for individual adjudication" is so significant that "issue certification would not reduce the range of issues in dispute and promote judicial economy." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008).

that is insufficient to support a disparate impact claim. *See* 2011 WL 5513233, at *1, 5. Also, Plaintiffs' assertion that policies supposedly alleged in the TAC mirror those discussed in *McReynolds v. Merrill Lynch* is erroneous. As explained in Section II above, the allegations in that case are completely different from the claims made in *Dukes* or in this case.[11]

## VI.   Plaintiffs' Federal and New York EPA Claims Are Insufficient as a Matter of Law.

Plaintiffs identify the wrong pleading standard for their federal and New York EPA claims (collectively, the "EPA claims")[12] by pointing to *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). (Opp'n at 31.) *Swierkiewicz* is limited to claims analyzed under the *McDonnell Douglas* burden-shifting framework, *Boykin v. KeyCorp.*, 521 F.3d 202, 212 (2d Cir. 2008), but EPA claims are not analyzed under such framework, *Fisher v. Vassar College*, 70 F.3d 1420, 1452 (2d Cir. 1995). The *Iqbal* and *Twombly* pleading standards thus apply to Plaintiffs' EPA claims. *See Delprato v. Day Chevrolet Inc.*, 427 Fed. App'x 86, 88 (3d Cir. May 12, 2011).

The TAC does not identify a male who was allegedly paid more money than Plaintiffs for performing substantially equal work on jobs requiring equal skill, effort, and responsibility under similar working conditions (as the TAC must to survive a motion to dismiss under *Iqbal* and *Twombly*). Kassman now attempts to point to John Montgomery as a comparator, asserting it does not matter that she worked a reduced hour schedule while Montgomery worked a full, unabridged schedule because they shared the same "responsibilities." However, common sense (and case law) dictate that a comparison of the total compensation of full and reduced-schedule

---

[11] Plaintiffs also misunderstand how the disparate impact analysis applies to KPMG's Alternative Work Arrangement program ("AWA"). (Opp'n at 16 n.10.) Plaintiffs must compare women participating in the AWA to men participating in the AWA, otherwise "it is impossible to discern . . . whether any disparity is based on gender or on part-time status, a classification not protected." *Schallop v. New York State Dep't of Law*, 20 F. Supp. 2d 384, 403 (N.D.N.Y. 1998). Plaintiffs do not aver that the AWA falls more harshly on women participants than on men participants, but rather compare female participants to male non-participants.
[12] The EPA and NY EPA can be evaluated under the same standards. *See MacSweeney v. ING Life Ins. & Annuity Co.*, 2011 WL 4839086, at *6 n.3 (S.D.N.Y. Oct. 12, 2011).

employees will necessarily result in a lawful wage disparity. *See Hizer v. South Bend Tribune,* 2012 WL 639923, at *5 (N.D. Ind. Feb. 24, 2012) (female part-time plaintiff's "claim that she should be paid the same as the full-time [employees] while working part-time fails as a matter of law"). *See also Jones v. St. Jude Med. S.C., Inc.*, 2011 WL 4543837, at *50 (S.D. Ohio Sept. 29, 2011) ("focus must be on [male and female's] respective rates of pay, rather than their total compensation") (citation omitted). Potter, Patterson and O'Donnell present similarly irrelevant "facts" in support of their respective EPA claims, claiming they were denied "titles" equal to their male counterparts even though the EPA does not provide recourse to women with different titles than men, further highlighting Plaintiffs' deficient pleading of their EPA claims. KPMG did not "misconstrue" Potter, O'Donnell and Patterson's EPA claims – they clearly alleged claims for "discriminatory denials of promotion" under the EPA. (¶¶453, 497). Their attempt to characterize these as claims for unequal "titles" is merely subterfuge for their actual (and unavailable) argument that they were denied promotions.

Kassman and Patterson try to salvage their EPA and NY EPA retaliation claims by citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011) for the proposition that the EPA protects "oral complaints." However, Plaintiffs ignore a relevant part of the holding in *Kasten – i.e.* oral complaints are protected only if the complaint is "sufficiently clear and detailed" for a reasonable employer to understand it as an assertion of EPA-protected rights. 131 S. Ct. at 1335. But the only complaints Kassman and Patterson allege in the TAC were not about their pay in relation to a male comparator, or in any way related to the EPA such that they would be "sufficiently clear and detailed" enough to constitute protected activity under that statute. (¶¶26, 82, 133, 134, 138, 251-54, 256.) Plaintiffs' EPA retaliation claims thus are untenable.

**VII.   This Court Lacks Jurisdiction and Venue Over Patterson's Claims.**

No EEOC charge exists to fulfill Patterson's Title VII exhaustion requirement, nor can

she "piggyback" onto Kassman's EEOC charge. *See Levy v. U.S. Gen. Accounting Office*, 175 F.3d 254, 255 (2d Cir. 1999); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 564 (2d Cir. 2006) ("An individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge").[13] Patterson cannot rely on her own EEOC Charge, because her lawsuit would then be untimely.[14] Pendent venue does not confer venue over Patterson's Title VII claims to this Court because Title VII has a specific venue provision and Patterson's Title VII claims predominate over her other claims. *See Cook v. UBS Fin. Servs.*, 2006 WL 760284, at *5 (S.D.N.Y. Mar. 21, 2006) (Title VII specific venue provision controls); *Turbeville v. Casey*, 525 F. Supp. 1070, 1071 (D.D.C. 1981) (Title VII's venue provision controls over EPA's general venue provision when plaintiffs put forth same theory of liability as Plaintiffs in this case).[15]

## VIII.   Kassman's Claims for Performance Evaluations and Discriminatory Constructive Discharge Also Fail As a Matter of Law.

Plaintiffs' Opposition offers an unconventional and expansive definition of what is meant by the term "performance evaluations," by suggesting that they include "ongoing meetings," "coaching," or "other verbal elements." (*See* Opp'n at 42.) Notwithstanding this strained definition, it is clear that Kassman's performance evaluation claims relating to KPMG's formal

---

[13] Plaintiffs' reliance on *Connolly v. Manufacturers Hanover Trust Co.*, 1990 WL 129186 (S.D.N.Y. Aug. 31, 1990) and *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408 (S.D.N.Y. 1989), is misplaced as the Second Circuit's decision in *Levy* was decided ***after*** (and thus overruled) both cases. *See Levy*, 175 F.3d at 255 (affirming *Levy v. U.S. Gen. Acctg. Office*, 1998 WL 193191 (S.D.N.Y. Apr. 22, 1998)).

[14] Patterson was required to file her lawsuit on September 12, 2011 (within 90 days of receipt of her Notice of Right to Sue on June 13, 2011), and has not presented any arguments to warrant tolling the 90-day requirement. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). In fact, by providing KPMG's counsel with an alleged "notice of filing" and filing a Consent to Join the EPA claim, Patterson has demonstrated that there was nothing preventing her from exercising her right to file a timely lawsuit. (*See* Opp'n at 39-40.)

[15] That KPMG allegedly made discriminatory decisions in the New York office would not confer venue over Patterson's claims to this Court because such allegations apply to the putative class, not Patterson's individual Title VII claims. *See Cook*, 2006 WL 760284, at *3.

9-box (5 point) performance evaluation system (¶¶13-16) are altogether time-barred under the applicable statute of limitations.

Plaintiffs also attempt to improperly stretch the theory of constructive discharge to cover ordinary personality conflicts, versus alleging a discriminatorily-charged work environment that rose to the level of being intolerable. Contrary to Plaintiffs' assertions, "the standard is not easily met," *Birkholz v. City of New York*, 2012 WL 580522, at *14 (E.D.N.Y. Feb. 22, 2012), and courts have dismissed deficient constructive discharge claims factually similar to Plaintiffs' claims under Rule 12(b)(6), *see Hockeson v. N.Y. Office of Gen. Servs.*, 188 F. Supp. 2d 215, 220 (N.D.N.Y. 2002) ("mak[ing] out a case of criticism of her job performance" insufficient).[16]

Plaintiffs sensationalize Kassman's constructive discharge allegations by describing Kassman's voluntary move to Connecticut as an attempt to seek "refuge" and her workplace as "marginalizing and degrading," (Opp'n at 44-45), but even these allegations are not sufficient under the Second Circuit's high constructive discharge standard. *See, e.g., Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1149-50 (2d Cir. 1993) (termination threats, "harangu[ing]" plaintiff while pounding on table and "rant[ing] and curs[ing]" causing plaintiff high blood pressure insufficient); *Katz v. Beth Isr. Med. Ctr.*, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) ("employee is not constructively discharged because she does not like her assignments, receives unfair criticism, or is yelled at by supervisors"); *Finkelshteyn v. Staten Island Univ. Hosp.*, 687 F. Supp. 2d 66, 86 (E.D.N.Y. 2009) (lack of additional work or transfer insufficient); *Mark v. Mt. Sinai Hosp.*, 85 F. Supp. 2d 252, 257 (S.D.N.Y. 2000) (denial of personal office insufficient).

---

[16] Plaintiffs cite *Coffey v. Cushman & Wakefield*, 2002 WL 1610913 (S.D.N.Y. July 22, 2002), to suggest that Kassman need only put KPMG on notice of her constructive discharge claims to survive a Motion to Dismiss. However, *Coffey* was decided before *Iqbal* and *Twombly*, and applied the less rigorous notice pleading standards. *Id.* at *5.

**IX.    O'Donnell, Patterson, Vasudeva and Potter's Claims Are Not Properly Joined and Should Be Severed.**

Nothing in Plaintiffs' Opposition shows that their incongruous claims are logically connected or raise common questions of law or fact, as required for joinder. The cases cited by Plaintiffs involve either decisions by the same manager or a single, discrete employment practice resulting in the same adverse employment action.[17] In contrast, the byzantine TAC concedes that Plaintiffs worked for different managers, in different geographic locations, often during different time periods, and alleges different adverse employment actions and dissimilar discrimination theories. (*See generally* MTDS at 8-9, 48.) Moreover, only one of the nineteen (19) alleged Counts in the TAC (the EPA claim) applies to all five (5) Plaintiffs. (*See id.* at 49.) The remaining claims are made by only one or some subset of the Plaintiffs. (*See id*.)

<u>CONCLUSION</u>

For the reasons set forth herein and in KPMG's MTDS, this Court should grant KPMG's requested relief.

Respectfully submitted,

**OGLETREE DEAKINS**
Attorneys for Defendant KPMG LLP

Dated: March 16, 2012                    By:    s/ Cheryl M. Stanton_____
                                               Diane M. Saunders
                                               Cheryl M. Stanton
                                               Peter O. Hughes
                                                  *admitted pro hac vice*
                                               Steven W. Moore
                                                  *admitted pro hac vice*

---

[17] *See, e.g., Puricelli v. CNA, Ins. Co.*, 185 F.R.D. 139, 142-43 (N.D.N.Y. 1999) (supervisor's selective application of new standards); *Roe v. City of New York*, 151 F. Supp. 2d 495, 509 (S.D.N.Y. 2001) (all plaintiffs arrested while participating in needle exchange program); *Vulcan Soc. of Westchester Cnty. v. Fire Dep't of White Plains*, 82 F.R.D. 379, 390 (S.D.N.Y. 1979) (hiring qualification requirements applied to all plaintiffs); *Barnhart v. Town of Parma,* 252 F.R.D. 156, 161 (W.D.N.Y. 2008) (multiple claims involving same department, same supervisor, same time frame, and same type of harassment).

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------

DONNA KASSMAN, LINDA O'DONNELL, SPARKLE PATTERSON, JEANETTE POTTER AND ASHWINI VASUDEVA, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY-SITUATED FEMALE EMPLOYEES,

        Plaintiffs,

v.

KPMG LLP,

        Defendant.

-----------------------------------------------------------------------

Hon. Richard J. Holwell
Case No.: 11-cv-03743 (RJH) (FM)

*Civil Action*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on March 16, 2012, I caused a copy of Defendant KPMG's Reply in Further Support of Its Motion to Dismiss Certain Claims and to Strike Class Claims Contained In Plaintiffs' Third Amended Complaint to be filed electronically with the Clerk of the Court and Plaintiffs' counsel in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules and/or the Southern District's Rules on Electronic Service.

      The above listed documents are available for viewing and downloading from the ECF.

                /s/ Cheryl M. Stanton_____
                Cheryl M. Stanton