UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                       :

DONNA KASSMAN, *et al.*,          :

                    Plaintiffs,    :

                                         :

          -against-          :

                                       :

KPMG LLP,                          :

                    Defendant.   :

                                       :
---------------------------------------------------------- X

11 Civ. 03743 (LGS)

<u>OPINION AND ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/8/14__

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Donna Kassman, Linda O'Donnell, Sparkle Patterson, Jeanette Potter and Ashwini Vasudeva, on behalf of themselves and others similarly situated, bring this action against Defendant KPMG LLP alleging various forms of employment discrimination, including individual and Rule 23 class claims for violations of Title VII; individual and collective action claims for violations of the Fair Labor Standards Act ("FLSA") as amended by the Equal Pay Act ("EPA"); individual and class claims for violations of the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and the New York Equal Pay Law ("NYEPL"); individual claims for violations of the Family and Medical Leave Act ("FMLA"); and an individual claim for a violation of 42 U.S.C. § 1981.

Before the Court are two motions: (1) Plaintiffs' Motion for Conditional Certification and Authorization of Notice ("Motion for Conditional Certification"), and (2) Defendants' Rule 12(b)(1) Motion to Dismiss Plaintiffs' Rule 23 Class Claims in the Third Amended Complaint for Lack of Constitutional Standing ("Motion to Dismiss").  For the reasons discussed below, Plaintiffs' Motion to Certify is granted, and Defendant's Motion to Dismiss is granted in part and denied in part.

### I.      Background

#### A.  Procedural Background

Kassman filed her original Complaint in this action on June 2, 2011, and her Amended Complaint on June 6, 2011.  On September 29, 2011, Kassman filed her Second Amended Complaint, which also named O'Donnell, Patterson, Potter and Vasudeva as Plaintiffs.  Plaintiffs filed their Third Amended Complaint on January 6, 2012.

On February 3, 2012, KPMG filed a Motion to Dismiss Certain Claims and Strike Class Claims as Contained in the Third Amended Complaint.  One of Defendant's arguments, relying on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), was that Plaintiffs lacked standing to pursue injunctive relief under Rule 23(b)(2) because they were no longer employed by KPMG. Judge Jesse Furman issued an Opinion and Order on February 7, 2013 ("Judge Furman's Opinion"), which left the majority of Plaintiffs' individual and class claims intact.  Judge Furman held that the Rule 23 class claims survived because Plaintiffs sought reinstatement at KPMG.

On May 13, 2013, Plaintiffs filed a Motion for Equitable Tolling of the Statute of Limitations for Absent Collective Action Members' Claims under the Equal Pay Act.  At a hearing on August 1, 2013, the Court denied the motion without prejudice to renewal by future opt-in Plaintiffs.  The Court explained that it would allow discovery and notice to be issued as if the motion had been granted.

#### B.  Facts Relevant to the Motions Before the Court

This opinion assumes familiarity with the basic facts of this case, which are detailed in Judge Furman's Opinion.  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 457-59 (S.D.N.Y. 2013).

### i.   Motion for Conditional Certification

The facts are taken from the parties' submissions in connection with Plaintiffs' Motion for Conditional Certification.

Defendant KPMG employs over 23,000 people in over 80 offices.  KPMG divides its operations into Audit, Tax and Advisory functions, which are then further divided into specialized areas.  The proposed collective consists of women employed in KPMG's Tax and Advisory functions in the positions of Associate, Senior Associate, Manager, Senior Manager/Director and Managing Director, which includes more than 7,000 women.

As evidenced by KPMG's Career Snapshots and Job Descriptions, employees with the same job title have substantially similar responsibilities and qualifications.  These descriptions do not include every task an employee might perform, however, and state that additional qualifications may be required for specific specializations.  KPMG's website states that the firm "aim[s] to make it easy for [its employees] to move around at KPMG – geographically, as well as between different job functions."

KPMG's Compensation Guidelines evince that compensation policies are set at high levels and applied across job titles, function groups and geographic locations.  For example, KPMG has a firm-wide policy for awarding merit-based increases in compensation.  Also, KPMG has a policy providing that compensation must be based on the firm's study of the market rate for each position in each geographic location.  Additionally, KPMG has firm-wide salary bands, which establish uniform compensation ranges.

Specific pay amounts are not dictated by these policies, but are determined by the partners in each of KPMG's offices based on factors specific to location and employee.  Compensation is reduced for those employees on reduced schedules.  Partners can set compensation outside the

suggested ranges for a legitimate business reason.  Nonetheless, firm policy provides that all
employee compensation is ultimately decided by persons at the highest level of firm leadership,
who "review compensation recommendations," make "revisions" and "notify [lower level
leadership] when all salary and compensation planning has been approved."

Named Plaintiffs Kassman, Patterson, O'Donnell and Vasudeva[1] were employed by
KPMG as client service professionals in the Advisory and Tax practices.  Plaintiffs allege that
Defendant paid them and similarly-situated female employees less than their male counterparts
for performing substantially equivalent work.

Kassman was employed by KPMG in the New York metro area for over seventeen years.
She started as a Tax Associate (known then as a Tax Specialist) and was promoted to Tax Senior
Manager.  Kassman received positive performance reviews from KPMG.  Nevertheless, KPMG
paid Kassman nearly $50,000 less per year than comparator John Montgomery, even though
Kassman held a law degree and Montgomery did not.  KPMG reduced Kassman's salary by
$20,000 per year while she was on maternity leave, but did not reduce any male comparator's pay
during this time.  When Kassman asked her superior about her pay cut, he told her that she should
consider her past salary a loan and that she did not need the money because she had "a nice
engagement ring."

Patterson was employed by KPMG in its Atlanta, Georgia office as a Tax Associate for
approximately four years.  Patterson received positive performance reviews and received a
"Standing Ovation" award twice, which KPMG gives to employees who go "above and beyond"
in their work.  Patterson performed the same tasks as a Senior Associate, although she was never

_____

[1] Potter does not bring claims under the EPA, as her claims would be time-barred.

4

officially promoted.  KPMG paid Patterson significantly less per year than male comparator Stephan Rabbitt, even though Patterson held a CPA certification and Rabbitt did not.

O'Donnell was employed by KMPG at one of its international offices and at its Atlanta, Georgia office, where she was a Senior Associate in the Advisory function.  O'Donnell was demoted upon her transfer to Atlanta, even though transferred male employees were not demoted. O'Donnell performed Manager-level tasks, but was never officially promoted.  KPMG paid O'Donnell approximately $20,000 less per year than male comparator Krupal Mehta.

Vasudeva was employed by KPMG in its Mountain View, California office as an Advisory Associate and Senior Associate for approximately five years.  KPMG paid Vasudeva significantly less than male comparators Ryan Wood-Taylor and Bryan Dillon.

Plaintiffs' preliminary expert analysis shows that nationwide pay disparities at KPMG attributable to gender are statistically significant at more than eleven standard deviations, meaning that the probability that KPMG's compensation could be gender neutral is less than one in one hundred million.  This analysis shows that, controlling for gender-neutral variables, KPMG paid female employees in the Tax and Advisory practice groups, from 2008 through 2013, approximately 3% less than their male counterparts for doing equivalent work.

### ii.  Motion to Dismiss

The facts are taken from the parties' submissions in connection with Defendant's Motion to Dismiss and, as required on this motion, viewed in the light most favorable to the non-moving party.

### a.  Kassman

The Third Amended Complaint lists reinstatement in its Prayer for Relief.  However, during her deposition on November 4, 2013, in response to the question: "But you're not seeking to be reinstated; are you?" Kassman responded, "No."

During this same deposition, Kassman also testified that she "did want to stay at KPMG," but could not do so due to the discriminatory environment.  She testified that in order to stay at KPMG, she was willing to "move offices," "take[] a pay cut," "take[] a different title" or be "in some kind of support role," provided she would no longer be working with the people being abusive towards her.  Additionally, she testified that leaving KPMG "wasn't [her] choice, it was KPMG's choice."

Two weeks later, via interrogatory, Kassman stated that "should the discriminatory conditions be satisfactorily remedied[,] . . . reinstatement to the proper role Plaintiff would have held absent discrimination would be appropriate."  In her declaration submitted with the instant motion, Kassman declares that she is seeking reinstatement at KPMG, provided the discrimination she faced there would be abolished, and that when she answered "no" at her deposition it was because she "could not imagine going back to the same KPMG [she] left in 2010 and going back through the same discrimination and torment once again."

### b.  Patterson

Patterson worked at KPMG as an Associate in the Federal Tax and Executive Services ("IES") service lines.  In her positions in both Federal Tax and IES, Patterson prepared tax returns.  Through her work, Patterson was knowledgeable about the rules for filing tax returns, including the rules for declaring a dependent.

6

In June 2009, Patterson's significant other, Jacneil Baker, who is not related to her, moved in with her.  Patterson listed Baker as her dependent nephew on her personal tax returns in 2009, 2010 and 2011.  Patterson represented in these returns that Baker did not have any income during the years at issue, which was untrue.  Patterson later filed amended returns to correct these misrepresentations.  She attests to having made no similar errors or misrepresentations in her work at KPMG.

KPMG has a "Code of Conduct" that requires all of its employees, among other things, to "comply[] with all applicable laws and regulations."  The "Code of Conduct" also states that any employee "may be subject to discipline, up to and including termination of employment" for, among other things, "violating laws, regulations, or KPMG policies."  KPMG also has an "Involuntary Termination of Employment" policy, which states in relevant part that "KPMG reserves the right to terminate an individual's employment with the firm . . . due to . . . misconduct."  Included in the listed examples of "misconduct" are "[v]iolation of any firm policy, rule, or code of conduct" and "[i]mmoral or indecent conduct, as well as conduct that results or could potentially result in embarrassment or other damage to the reputation and/or goodwill of the firm."

The National Managing Partner of KPMG's Tax division, Laura Newinski, testified that KPMG's "Code of Conduct" does not require termination for an employee who violates the law. However, Newinski also testified that according to the facts of Patterson's situation, she does "not believe there's any room for interpretation that termination and non-rehiring is the conclusion" and that she would be the one at KPMG to make that determination.

Newinski further testified that she knew of only two instances, besides Patterson's,  in which current or prospective KPMG tax employees engaged in untruthful conduct in connection

with their personal tax returns, and in both instances, the employees' employment or employment offer was terminated.

## II.    Standard of Review

### A.  Motion for Conditional Certification

"As part of the FLSA, the EPA utilizes the FLSA's enforcement mechanisms and employs its definitional provisions." *Anderson v. State Univ.*, 169 F.3d 117, 119 (2d Cir. 1999), *vacated on other grounds*, 528 U.S. 1111 (2000).  Section 216(b) of the FLSA provides that an action "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "Neither the FLSA nor its implementing regulations define the term 'similarly situated.'"  *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 643 (S.D.N.Y. 2010) (internal quotation marks omitted).

"Certification" under the FLSA is simply "the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n. 10 (2d Cir. 2010).  Although the Second Circuit has never offered a definitive standard for the certification of collective actions under the FLSA, it has endorsed the two-step approach widely used by the district courts in this Circuit and by other circuit courts. *See id.* at 554-55 ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which . . . we think is sensible"); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-62 (11th Cir. 2008); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006).

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to

whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555.  To establish that the named

plaintiffs are "similarly situated" to the potential opt-in plaintiffs in the first stage of the inquiry,

the named plaintiffs must "make a 'modest factual showing' that they and potential opt-in

plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Id.* (quoting

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

 "The modest factual showing cannot be satisfied simply by unsupported assertions, but it

should remain a low standard of proof because the purpose of this first stage is merely to

determine *whether* similarly situated plaintiffs do in fact exist . . . ."  *Id.* (internal citation omitted)

(internal quotation marks omitted); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d

357, 368 (S.D.N.Y. 2007) (describing plaintiff's burden as "very low" and "minimal").  At this

procedural stage, "the court does not resolve factual disputes, decide substantive issues going to

the ultimate merits, or make credibility determinations." *Cunningham*, 754 F. Supp. 2d at 644

(internal quotation marks omitted).

 "Once a court is satisfied that the first-stage inquiry has been satisfied, it conditionally

certifies the class and orders notice to putative class members, who are given the opportunity to

opt in."  *Id.*  The second step, typically taken upon the completion of discovery, requires the court

to determine, "on a fuller record, . . . whether a so-called 'collective action' may go forward by

determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named

plaintiffs." *Myers*, 624 F.3d at 555.  "The action may be 'de-certified' if the record reveals that

they are not . . . ."  *Id.*

  **B.  Motion to Dismiss**

 "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.*  "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff, . . . but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation omitted) (internal quotation marks omitted) (first alteration in original).

"[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]"  *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).  However, where the disputed facts determining jurisdiction are "intertwined with the merits . . . the trial court should employ the standard applicable to a motion for summary judgment."  *London v. Polishook*, 189 F.3d 196, 198 (2d Cir. 1999) (internal quotation marks omitted).  "[T]he district court should dismiss such a claim for lack of jurisdiction only if there are no triable issues of fact."  *Id.* at 198-99.

### III.    Discussion

#### A.  Motion for Conditional Certification

Plaintiffs move for conditional certification of a collective action for their claims brought pursuant to the EPA and to authorize notice to be sent to potential members of the collective. This motion is granted.  Plaintiffs have made a "modest factual showing" that they and the potential opt-in plaintiffs are "similarly situated" and "together were victims of a common policy or plan that violated the law."

Specifically, Plaintiffs have submitted declarations detailing their personal experiences; documentary evidence of KPMG's firm-wide compensation policies and job descriptions; and

statistical evidence of discrimination.[2]  This is sufficient to satisfy Plaintiffs' burden at this stage

of litigation.  *See Moore v. Publicis Groupe SA*, No. 11 Civ. 1279, 2012 WL 2574742, at *10-11

(S.D.N.Y. June 29, 2012) (granting a motion to conditionally certify a nationwide collective

where the plaintiffs submitted evidence of centralized corporate policies regarding compensation

and job responsibilities, as well as statistical evidence of unequal pay based on gender).

Defendant argues that the named Plaintiffs are not proper representatives of the collective

because their own EPA claims are deficient.  At the conditional certification stage, when

discovery is incomplete, however, "a court should not weigh the merits of the underlying claims

in determining whether potential opt-in plaintiffs may be similarly situated."  *Cunningham*, 754

F. Supp. 2d at 644 (internal quotation marks omitted).  "The focus of [the] inquiry [during a

motion for conditional certification] . . . is not on whether there has been an actual violation of

law but rather on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their

allegations that the law has been violated."  *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54

(S.D.N.Y. 2005).

Next, Defendant argues that Plaintiffs have not shown that they are "similarly situated" to

the proposed collective because the named Plaintiffs' experience is too limited in relation to the

proposed collective in terms of geography and job function.  This is incorrect.  As discussed

above, courts require only that plaintiffs make a "modest factual showing" that they and potential

---

[2] Defendant argues that Plaintiffs' expert analysis is facially deficient and should be disregarded because it fails to control for certain variables.  However, "defendant's attacks on plaintiffs' . . . evidence are premature at the notice stage."  *In re Penthouse Exec. Club Compensation Litig.*, No. 10 Civ. 1145, 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010) (internal quotation marks omitted).  "[A]rguments about credibility or the weight of the evidence . . . are out of place in a conditional certification motion."  *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 WL 1040052, at *5 n. 16 (S.D.N.Y. March 15, 2013) (first alteration in original) (internal quotation marks omitted).

collective action members "were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). "Courts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policies." *Diaz v. S & H Bondi's Dept. Store*, No. 10 Civ. 7676, 2012 WL 137460, at *6 (S.D.N.Y. Jan. 18, 2012).

Conditional certification does not require named plaintiffs from each geographical area included in the collective. *See*, *e.g.*, *id.* at *6 (holding that courts may authorize notice to employees at locations where named plaintiffs never worked if named plaintiffs alleged that the same pay policies applied to all of defendants' locations); *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (certifying nationwide collective with two named plaintiffs from Florida); *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 465 (N.D. Cal. 2004) (certifying nationwide collective with three named plaintiffs from California).

"[I]t is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties as the named plaintiffs." *Diaz*, 2012 WL 137460, at *5 n.6 (internal quotation marks omitted). "Plaintiff need not show that his position is or was identical to the putative class members' positions; a class may be certified under the FLSA if the named plaintiff can show that his position was or is similar to those of the absent class members." *Sanchez v. Sephora USA, Inc.*, No. 11–03396, 2012 WL 2945753, at *4 (N.D. Cal. July 18, 2012) (internal quotation marks omitted) (rejecting defendant's argument that conditional certification is inappropriate on the grounds that the potential plaintiffs' duties varied from store to store).

Furthermore, courts "routinely grant conditional certification of multiple-job-title classes. . . ." *Cunningham*, 754 F. Supp. 2d at 651 (internal quotation marks omitted) (finding that "employees in a given job progression are similarly situated to each other"). The "similarly situated" requirement does not mean that plaintiffs must show that all members of the collective have "perfectly identical" job duties; "rather, plaintiffs need only show that they are similar." *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 WL 19379, at *5 (S.D.N.Y. Jan. 3, 2012).

Ultimately, the "proper inquiry" during conditional certification is whether the named plaintiffs and the other potential members of the proposed collective "are similarly situated *with respect to their allegations that the law has been violated*." *Diaz*, 2012 WL 137460, at *5 (internal quotations omitted); *see also Myers*, 624 F.3d at 555. Other "factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Lynch*, 491 F. Supp. 2d at 369; *see also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y.2007). "Such variances are more appropriately analyzed during the second—decertification—stage." *Pippins*, 2012 WL 19379, at *5; *see also Cunningham*, 754 F. Supp. 2d at 651; *Sanchez*, 2012 WL 2945753, at *4.

Finally, Defendant argues that the proposed collective is not part of the same "establishment," as is required by the EPA, because its members are not limited to employees at one physically distinct place of business. This argument fails.

The EPA prohibits an employer from paying wages "at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work . . . ." 29 U.S.C. § 206 (d)(1). The term "establishment" in this context "refers to a distinct physical place of business rather than to an entire business or 'enterprise' which may include several separate places of business." 29 C.F.R. § 1620.9(a). However, "unusual circumstances may call for two

or more distinct physical portions of a business enterprise being treated as a single establishment."  29 C.F.R. § 1620.9(b).  "For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions."  *Id.*

Courts identify "a widely followed standard recognizing that central control and administration of disparate job sites can support a finding of a single establishment for purposes of the EPA."  *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 591 (11th Cir. 1994) (citing *Brennan v. Goose Creek Consol. Indep. Sch. Dist.*, 519 F.2d 53, 57 (5th Cir. 1975)).  "The hallmarks of this standard are centralized control of job descriptions, salary administration, and job assignments or functions."  *Id.* (holding that "[a] reasonable trier of fact could infer that because of centralized control . . . a single establishment exist[ed] for purposes of the EPA").  Courts reason that "narrow construction of the word 'establishment' could make proof of discrimination more difficult, thus frustrating congressional intent."  *Id.* (internal quotation marks omitted).

Here, Plaintiffs have presented sufficient evidence that KPMG's offices nationwide may be considered one establishment for the purposes of conditional certification under the EPA. Specifically, Plaintiffs have presented evidence that job responsibilities were generally the same across offices, compensation policies were firm-wide and ultimate compensation decisions were made by centralized leadership.  Moreover, "there is limited authority that district courts must engage in the establishment analysis when considering the [conditional] certification of a collective action under the EPA."  *Moore*, 2012 WL 2574742, at *11 (citing cases in which the court conditionally certified EPA collectives including employees from geographically diverse offices without discussing the establishment issue).

In sum, Defendant's arguments are more suited to a later, more demanding stage of the proceedings, such as a motion to decertify or for summary judgment. The "modest factual showing" required for conditional certification requires "a low standard of proof." *Myers v. Hertz Corp.*, 624 F.3d at 555. Accordingly, "[a]t this stage, Plaintiffs' assertions are sufficient, but remain vulnerable during a motion for de-certification." *Moore*, 2012 WL 2574742, at *11.

Plaintiffs' Motion for Conditional Certification is granted. Notice shall be issued to all female employees of KPMG who held any of the following positions – Associate, Senior Associate, Manager, Senior Manager/Director and/or Managing Director – in either the Tax or Advisory practice groups from October 17, 2008, to the present. Those who held any of the relevant positions from October 30, 2010, to the present may opt-in to the collective action, pursuant to the EPA's statute of limitations. *See* 29 U.S.C. § 255(a). Additionally, those who held any of the relevant positions from October 17, 2008, through October 30, 2010, may move the Court for equitable tolling of the statute of limitations, pursuant to the Court's previous ruling.

The notices shall include language explaining that it is illegal for employers to retaliate against employees for exercising their federally-protected rights. Because of the large number of potential opt-in plaintiffs and the need for certain of those plaintiffs to move the Court regarding tolling the statute of limitations, the opt-in period shall be 120 days. Potential plaintiffs may submit their opt-in by email, fax or regular mail. Plaintiffs have attached to their reply brief drafts of proposed notices. These drafts will be discussed at the upcoming status conference.

### B. Motion to Dismiss

Kassman and Patterson are the only Plaintiffs asserting Rule 23 class claims in the Third Amended Complaint. Defendant moves to dismiss their Rule 23 class claims for lack of subject

matter jurisdiction.  This motion is denied as to Kassman, but granted as to Patterson.

Plaintiffs previously stated that they would seek Rule 23(b)(2) or "hybrid" Rule 23(b)(2) and 23(b)(3) certification, both of which require that Plaintiffs seek injunctive relief.  Rule 23(b)(2) certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed.R.Civ.P. 23(b)(2).

Defendant previously argued, relying on *Dukes*, 131 S. Ct. 2541, that Plaintiffs lacked standing to pursue relief under Rule 23(b)(2) because they were no longer employed by KPMG.  Judge Furman's Opinion held that Kassman's and Patterson's statuses as former employees did not preclude them from having standing to seek injunctive and declaratory relief because Plaintiffs sought reinstatement at KPMG.  *See Kassman*, 925 F. Supp. 2d at 468.  Defendant now argues that even under the holding of Judge Furman's Opinion, Kassman's and Patterson's Rule 23 class claims must be dismissed in light of admissions made during their respective depositions demonstrating that Kassman is not seeking reinstatement and Patterson is ineligible for reinstatement.

Defendant characterizes its instant motion as a challenge to Kassman's and Patterson's standing, but Defendant is actually making a mootness argument.  "While the standing doctrine evaluates a litigant's personal stake at the onset of a case . . . the mootness doctrine ensures that the litigant's interest in the outcome continues throughout the life of the lawsuit." *Comer v. Cisneros*, 37 F.3d 775, 797-98 (2d Cir. 1994) (internal citation omitted) (internal quotation marks omitted).  Standing is "assessed as of the time the lawsuit is brought."  *Id.* at 787.  On the other hand, "[a] case can become moot at any stage of litigation."  *Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 41 F.3d 62, 65 (2d Cir. 1994).

16

In the instant case, Judge Furman's Opinion has already determined that Kassman and Patterson had standing when the Third Amended Complaint was filed.  *See Kassman*, 925 F. Supp. 2d at 468.  Therefore, Defendant's current challenge to the Court's subject matter jurisdiction over Kassman's and Patterson's Rule 23 claims will be evaluated on mootness grounds.

"[T]he party seeking to have the case dismissed bears the burden of demonstrating mootness and that burden 'is a heavy one.'"  *Etuk v. Slattery,* 936 F.2d 1433, 1441 (2d Cir. 1991) (quoting *County of L.A. v. Davis*, 440 U.S. 625, 631 (1979)); *see also Associated Gen. Contractors of Conn., Inc.*, 41 F.3d at 65 ("[T]he burden on the party alleging mootness is a heavy one." (internal quotation marks omitted)).  A party establishes mootness only by showing that "it is *impossible* for a court to grant any effectual relief whatever to the prevailing party."  *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (emphasis added) (internal quotation marks omitted).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  *Id.*

Thus, here, in order to demonstrate that Kassman's and Patterson's claims for injunctive relief are moot, Defendant must show, respectively, that at the time of class certification, it would be "impossible" for Kassman to be seeking reinstatement and it would be "impossible" for Patterson to be eligible for rehire.  Defendant has not met this burden as to Kassman, but has met this burden as to Patterson.

### i.  Kassman

Defendant argues that Kassman's answer of "no" when asked at her deposition whether she was seeking reinstatement establishes as a matter of law that the Court lacks subject matter jurisdiction over Kassman's Rule 23 claims.  This argument fails.

Kassman's deposition testimony must be construed in the light most favorable to Kassman, the nonmoving party, and all reasonable inferences must be drawn in her favor. Kassman could have reasonably understood the question as asking whether she was seeking reinstatement at that time, under the current conditions at KPMG, and her response could reasonably be interpreted to mean that she was not seeking reinstatement in that narrow circumstance.

Kassman's deposition as a whole makes clear that she wanted to remain at KPMG, but could not do so due to the discrimination she faced there and the fact that the company would not accommodate her with a new assignment away from the discriminatory environment.  The deposition testimony shows that Kassman was so committed to continuing her career at KPMG that she was even willing to take a pay cut or a demotion in order to remain with the firm provided that she would not be working with the people who were discriminating against her. Furthermore, both Kassman's interrogatory response and declaration make it clear that, if the discriminatory conditions at KPMG were to change, then she would want to be reinstated.  This is consistent with her deposition.

Defendant argues that this subsequent evidence should be disregarded as "sham testimony," citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969), which observed that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  However, the *Perma Research* "principle does not apply if the deposition and the later sworn statement are not actually contradictory."  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38,

18

43 (2d Cir. 2000).  "Thus, it does not apply where the later sworn assertion addresses an issue that was not, or was not thoroughly or clearly, explored in the deposition."  *Id.*

A court "should not disregard the [post-deposition] testimony because of an earlier account that was ambiguous, confusing, or simply incomplete."  *Id.* (internal quotation marks omitted) (alteration in original).  Similarly, a court should consider "subsequent sworn testimony that amplifies or explains, but does not merely contradict . . . prior testimony."  *Id.* (internal quotation marks omitted); *see also Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 806 (1999) (holding that subsequent testimony could defeat summary judgment if a reasonable juror could conclude that, "assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless" be telling the truth in her later statement).

In the present case, the declaration at issue does not definitively contradict the prior deposition.  Instead, the declaration works to clarify and explain the deposition on an issue that was not thoroughly explored at the deposition and on which Kassman's answer was incomplete. In other words, assuming good faith on Kassman's part when she answered "no" at her deposition, she still could be telling the truth in her declaration.  As Kassman explained, when she answered "no," it was because she "could not imagine going back to the same KPMG [she] left in 2010 and going back through the same discrimination and torment once again," not because she would not want to return to KPMG under any circumstances.

Thus, Kassman's declaration will not be disregarded.  Consequently, Defendant has not met its burden of establishing that it would be impossible for the Court to order injunctive relief to Kassman.  Defendant's motion to dismiss Kassman's Rule 23 class claims is denied.

### ii.  Patterson

Patterson's admissions at her deposition that she lied on her personal tax returns make her

ineligible for reinstatement and thus establish as a matter of law that the Court lacks subject

matter jurisdiction over Patterson's Rule 23 claims.

Reinstatement is not an appropriate remedy for a plaintiff whom "the employer would

have terminated, and will terminate, in any event and upon lawful grounds." *McKennon v.*

*Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995). "Where an employer seeks to rely upon

after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such

severity that the employee in fact would have been terminated on those grounds alone if the

employer had known of it at the time of the discharge." *Id.* at 362-63. Here, Defendant has so

established.

The evidence is undisputed that Patterson lied on her tax returns. KPMG's policies state

that an individual's employment may be terminated for violating the law and for conduct that

could result in embarrassment or other damage to the reputation of the firm. Plaintiffs argue that

these policies leave room for interpretation on a case by case basis; however, Newinski, who

makes decisions of this type for KPMG, testified that there is no room for interpretation in

Patterson's case, as termination without the possibility of rehiring would be the only possible

outcome for Patterson.

Plaintiffs argue that Newinski's opinion on this matter was given during the course of

litigation and cannot be relied on as unbiased. However, Newinski's statement is credible as a

matter of common sense, and is corroborated by two prior instances in which KPMG found that

an employee and a potential employee had lied to the IRS. KPMG terminated the employee and

revoked the offer to hire the potential employee.

Accordingly, there is no genuine issue of material fact that Patterson, who was employed

as a Tax Associate, would have been fired when KPMG learned that she had lied on her own tax

returns.  *See Wallace v. Dunn Const. Co.*, 62 F.3d 374, 380 (11th Cir. 1995) (finding that there was no genuine issue of material fact that plaintiff would have been fired when the employer learned that she had lied on her job application about her prior conviction where company policy stated that "falsification of records is conduct for which the company will impose a penalty that may include termination[]" and the company testified that it would have fired the plaintiff upon learning of her lie).

A reasonable jury would not order Patterson to be reinstated as a tax professional knowing that she had lied on her tax returns.  Defendant therefore has met its burden of establishing that it would be impossible for the Court to order injunctive relief to Patterson.  Accordingly, Defendant's Motion to Dismiss Patterson's Class 23 claims is granted.

### IV.   Conclusion

For the reasons discussed above, Plaintiffs' Motion to Certify is GRANTED, and Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is directed to close the motions at docket numbers 109 and 144.

SO ORDERED.

Dated: July 8, 2014
   New York, New York


LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE