UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

| | |
|---|---|
| DONNA KASSMAN, SPARKLE PATTERSON, JEANETTE POTTER AND ASHWINI VASUDEVA, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY-SITUATED FEMALE EMPLOYEES, | Hon. Lorna G. Schofield <br> Case No.: 11-cv-03743 (LGS) <br><br> *Civil Action* |
| Plaintiffs, | |
| v. | |
| KPMG LLP, | |
| Defendant. | |

------------------------------------------------------------

**DEFENDANT KPMG LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS LETTER MOTIONS TO REDACT FROM THE PUBLIC RECORD LIMITED PORTIONS OF THE PARTIES' BRIEFING AND EXHIBITS REGARDING PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY <u>AN EQUAL PAY ACT COLLECTIVE ACTION</u>**

Per the Court's order during the July 16, 2014 telephonic hearing (the "Hearing"), Defendant KPMG LLP ("KPMG") respectfully submits this Memorandum in further support of its prior letter motions seeking limited redactions of the following categories of information (as described by the Court at the Hearing) from the parties' briefing and exhibits concerning Plaintiffs' Motion for Conditional Certification and Authorization of Notice as to their Equal Pay Act ("EPA") claims (Plaintiffs' "Motion") (Dkt. No. 109):[1]   (1) information concerning Plaintiffs' own compensation and related information (such as performance history); (2) compensation, performance, and personal information of non-parties, including specific alleged

------------------------------------------------------------

[1] These letter motions include KPMG's November 15, 2013 letter (concerning redactions from Plaintiffs' Motion), December 6, 2013 letter (concerning redactions from KPMG's Opposition thereto), and December 23, 2013 letter (concerning redactions from Plaintiffs' Reply in support of their Motion).  Plaintiffs also submitted a December 19, 2013 letter opposing KPMG's redaction requests, to which KPMG responded by letter on December 20, 2013.

"comparators" to each Named Plaintiff; (3) information concerning KPMG clients, including

without limitation revenue generated with respect to clients, and cost and billing information;

and (4) information concerning KPMG compensation and evaluation strategies.

The Court stated that it did not need the parties to brief the governing legal standard

under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–25 (2d Cir. 2006), but rather

instructed them to focus, with respect to each of the foregoing categories, on whether and "why

the business and privacy interests outweigh the First Amendment right of access and why the

proposed redactions are narrowly tailored to serve the interest."  Hr'g Tr. at 6.

KPMG addresses these issues for each of the above categories in the attached sections,

and respectfully requests that its letter motions be granted.[2]

Dated:  July 28, 2014

Respectfully submitted,                          Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK**      **SIDLEY AUSTIN LLP**
**& STEWART, P.C.**

Attorneys for Defendant KPMG LLP                 Attorneys for Defendant KPMG LLP

By:  /s/ Steven W. Moore                         By:  /s/ Colleen M. Kenney
     Steven W. Moore (admitted *pro hac vice*)        John G. Levi
     OGLETREE, DEAKINS, NASH,                         Colleen M. Kenney
     SMOAK & STEWART, P.C.                            SIDLEY AUSTIN LLP
     Wells Fargo Center                               One South Dearborn
     1700 Lincoln Street, Suite 4650                  Chicago, IL 60601
     Denver, CO 80203                                 jlevi@sidley.com
     steven.moore@ogletreedeakins.com                ckenney@sidley.com
     Peter O. Hughes (admitted *pro hac vice*)        Wendy M. Lazerson
     OGLETREE, DEAKINS, NASH,                         SIDLEY AUSTIN LLP
     SMOAK & STEWART, P.C.                            1001 Page Mill Road, Bldg. 1
     10 Madison Avenue, Suite 400                     Palo Alto, CA  94304
     Morristown, NJ 07960                             wlazerson@sidley.com
     peter.hughes@ogletreedeakins.com

---

[2] Per the Court's order, KPMG has limited each section to no more than four pages.

2

**<u>Category 1</u>:   <u>Compensation and Related Information for the Named Plaintiffs</u>.**[3]

Based on the Court's comments at the Hearing and in light of representations by Plaintiffs' counsel to counsel for KPMG that Plaintiffs do not object to public filing of their own compensation, performance-rating, and certain related personal information, KPMG generally withdraws its redaction request for such information as to the Named Plaintiffs (they can propose whether they want their home addresses or other such personal information redacted).

However, KPMG respectfully submits that all evidence concerning former Named Plaintiff Linda O'Donnell and her purported comparator(s) (including but not limited to compensation and performance information) should be stricken from the record.  This includes the discussion of O'Donnell at pages 11 to 12 of Plaintiffs' Memorandum in Support of their Motion for Conditional Certification, and the Employee Profile information for O'Donnell and an alleged comparator set forth in Exhibit O to Plaintiffs' Motion (Bates nos. KPMG-KASS0012896, 0017284–85).  As the Court is aware, Plaintiff O'Donnell voluntarily withdrew her claims and was dismissed from the case at her request.  In the Court's Stipulated Order of Dismissal with Prejudice of All Claims of Plaintiff Linda O'Donnell, dated November 20, 2013 (the "O'Donnell Stipulation") (Dkt. No. 118), the parties agreed, and the Court ordered, among other things that:  (a) allegations and the Prayer for Relief in the Third Amended Complaint as they pertain to O'Donnell were stricken; (b) "Plaintiffs shall not cite or rely upon any claims, allegations, facts, documents, communications or other evidence pertaining to Linda O'Donnell for any purpose, including without limitation to support any . . . motion . . . in this action, further

---

[3] At the Hearing, the Court phrased this issue as relating to Plaintiff Donna Kassman's compensation and related information.  Hr'g Tr. at 4.  However, KPMG understands that the same principles would apply to the other Named Plaintiffs, except as discussed herein with respect to former Plaintiff Linda O'Donnell.

including, but not limited to, Plaintiffs' pending Motion for Conditional Certification of an Equal Pay Act collective action and any motion the Plaintiffs may make for certification under Fed.R.Civ.P. 23"; and (c) "The Plaintiffs shall not submit, or seek to submit, any affidavit, declaration or other evidence from Linda O'Donnell for any purpose, including without limitation in connection with any motion, application, or other proceeding in this action."[4] Consistent with the foregoing, although the Motion initially purported to be filed on behalf of O'Donnell as well as the other Named Plaintiffs, O'Donnell alone tellingly never submitted a declaration in support of the Motion.

By definition, the O'Donnell Stipulation provides that the Court will not be making any decisions based on evidence concerning O'Donnell, and thus, such evidence does not constitute a "judicial document" to which any presumption of access attaches.  *See Lugosch*, 435 F.3d at 119 ("In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." (internal quotation marks omitted)).  Accordingly, KPMG respectfully submits that all evidence concerning or relating to O'Donnell, including without limitation in connection with Plaintiffs' Motion, should be stricken from the public record, including by redaction as appropriate.[5]

---

[4] Although Plaintiffs filed their Motion with these exhibits on or about October 30, 2013, approximately three weeks before entry of the O'Donnell Stipulation, the O'Donnell Stipulation followed and superseded this filing as to O'Donnell and related evidence.  *See, e.g.*, O'Donnell Stipulation ¶ 3 (quoted in point (b) of the above text).  KPMG noted the O'Donnell Stipulation in its December 6, 2013 Opposition to Plaintiffs' Motion (p.1 n.1), but respectfully submits that it did not explicitly seek "redaction" of O'Donnell-related information in its prior letter motions because it had understood that this information would be eliminated from the case and the public record pursuant to the Stipulated Order.  *See id.*

[5] In the interest of judicial economy and efficiency, such redactions could commence with the Motion and related filings, which are Plaintiffs' first filings (once briefing was complete) following the O'Donnell Stipulation.

**Category 4:     KPMG Compensation and Evaluation Strategy Information.[6]**

      At the Hearing, the Court stated that this category of information, including for example Exhibits I, K, and L to Plaintiffs' Motion, "clearly implicate[s] a business competition privacy interest, but I'm not sure that the proposed redactions are sufficiently narrowly tailored to protect the rights of access, yet at the same time protect the privacy interests."  Hr'g Tr. at 5.   In light of the Court's comments, KPMG has substantially narrowed its proposed redactions to its compensation and other such business strategy information, leaving the vast majority of such materials unredacted.   The remaining redactions are exceedingly narrow, in many instances limited to specific compensation ranges or other data points reflecting KPMG's compensation and related business strategies.

      KPMG's "business competition privacy interest," as recognized by this Court, amply justifies the narrow redactions proposed and strongly outweighs any countervailing interest in public disclosure.   The Declarations of Sylvia Brandes and Eileen Raymond, submitted as exhibits to KPMG's November 15, 2013 letter to this Court, explain in detail and with particularity the factual basis for KPMG's limited redaction request; the substantial measures that KPMG takes to develop and protect such information; and the significant resulting harm to KPMG's competitive interests if such information were made public, including without limitation misuse by competitors of such confidential information to compete unfairly for talent.

      Courts recognize employers' compelling need to maintain the confidentiality of such sensitive competitive-strategy information, and frequently grant requests to seal or redact such information.   For example, in *Overton v. Sanofi-Aventis U.S., LLC*, No. Civ. A 13-05535 DEA,

---

[6] KPMG addresses this Category out of numerical order for ease of organization and efficiency, as the analysis thereof also relates to Category 2 discussed below, non-party compensation and related information.

2014 WL 1554718, at *2 (D.N.J. Apr. 9, 2014), the court granted a motion to seal:

> information regarding Defendant's 2012 Incentive Compensation Plan, Incentive Compensation Plan Policy, and Incentive Compensation Plan Roll-out . . . . According to Defendant, this is highly-sensitive proprietary information, in that it reveals the terms of *Defendant's non-public strategy for compensating its sales representatives, the rules governing the earning and payment of that compensation, and discusses Defendant's confidential considerations in developing its compensation system.* [(Emphasis added.)]

The court agreed with the employer's contention that it had "a strong interest in ensuring that its compensation practices and strategies do not fall into the hands of its competitors." *Id.*; *cf. In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244, 248–52 (S.D.N.Y. 2009) (sealing can be appropriate for "sources of business information that might harm a litigant's competitive standing").

Numerous other cases across the country similarly have sealed compensation or other business strategy information. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2013 WL 163779, at *5 (N.D. Cal. Jan. 15, 2013) (sealing "portions of the Motion for Class Certification and the exhibits" reflecting "compensation and recruiting strategies, policies, and procedures, including quantitative data concerning those topics"); *Hill v. Xerox Corp.*, No. C12-0717-JCC, 2014 WL 1356212, at *2 (W.D. Wash. Apr. 7, 2014) (sealing compensation plan because "details about the compensation plan are sources of business information that might harm [Defendant's] competitive standing if revealed. There are therefore compelling reasons to keep this document sealed.") (internal quotation marks and citation omitted); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 576–77 (D. Md. 2012) (sealing employee handbooks, policy manual, and employee payroll and other personnel records); *GoSmile, Inc. v. Levine*, 769 F. Supp. 2d 630, 650 (S.D.N.Y. 2011) (sealing "material concerning the defendants' marketing strategies" because "the privacy interests of the defendants outweigh the presumption of public access"); *Dynetix Design Solutions Inc. v. Synopsis Inc.*, No. C 11-

6

CV-05973 PSG, 2013 WL 2285210, at *1 (N.D. Cal. May 23, 2013) (sealing "presentations [that] discuss Synopsys' competitive business strategy").

Plaintiffs' contention that such compensation and other strategic information purportedly goes to the "core" of this case does not change this result. *Lugosch* is clear that the public's interest in access is not unqualified. 435 F.3d at 120. As such, courts frequently seal highly sensitive information even when it relates to central issues in the case. For example, the court in *Overton* sealed extensive compensation plan information that it found to reveal the employer's confidential and competitive "compensation practices and strategies," even though that sealed information included the basis for the plaintiff-class's wage claims. *See* 2014 WL 1554718, at *2; *Overton*, 2013 WL 6195316 (D.N.J. Nov. 19, 2013) (Plaintiffs' First Amended Class Action Complaint seeking allegedly unpaid "commissions, bonuses, payments, benefits or other compensation"). And in *Butler*, 876 F. Supp. 2d at 563, 576, the court sealed "employee handbooks and policy manual, payroll and other records" submitted with the parties' briefing of plaintiffs' motion for conditional certification of a Fair Labor Standards Act ("FLSA") collective action, even though such records unquestionably were at the center of their FLSA claims.

Plaintiffs' concerns are even more attenuated in the present case given the exceedingly narrow nature of KPMG's proposed redactions. At base, Plaintiffs seek to use KPMG's compensation planning and strategy information principally to show purported firm-wide "uniformity" in KPMG's decision-making. Plaintiffs are wrong, but the fact remains that, to make their argument, they do not need full disclosure of the last increment of information that KPMG seeks to protect. KPMG's competitive and privacy interests outweigh any interest in public disclosure as to that last increment. KPMG has left the vast majority of such information unredacted, allowing both parties to make their arguments regarding such issues.

Finally, Plaintiffs' argument that KPMG purportedly has raised only "speculative" concerns about what "might" happen is factually and legally incorrect.  KPMG has submitted *factual information under oath* about the intense competition for talent—both attracting it and retaining it—that KPMG *actually faces* each day, as well as facts regarding the *actual* talent losses that it has suffered due to competitor use of compensation information.  *See, e.g.*, Raymond Decl. ¶ 4 (stating "competition among KPMG and its competitors for . . . professionals at all levels generally is intense," that "[c]ompensation is a principal recruitment tool that KPMG and its competitors use to attract and retain talent," and that competitors have used compensation to lure away KPMG talent).  That a given individual may choose to share his or her individual pay information on an ad hoc basis does not warrant exposing KPMG's confidential compensation strategy in its entirety to the scrutiny—and misuse—of its competitors.

The case law also sensibly recognizes that a litigant need not wait until it actually suffers grievous competitive harm before sealing is appropriate, since by then, it may be too late.  *See Overton*, 2014 WL 1554718, at *2 (rejecting plaintiffs' argument that "merely asserting that an injury 'could' or 'might' occur [from disclosure of compensation strategy information] is insufficient to warrant the sealing of documents," and stating that "courts have consistently recognized that publicly exposing a party's business information might harm that party's competitive standing, and that the very possibility of such harm is sufficient to warrant the sealing of documents."); *Agence France Presse v. Morel*, No. 10 Civ. 2730 (AJN)(MHD), 2012 WL 2130883, at *2 (S.D.N.Y. June 11, 2012) ("[T]he stated concern about the *potential* competitive ill effects of the feared disclosures is at least a potentially cognizable basis for sealing . . . ." (emphasis added)).  Thus, KPMG's narrowly tailored redactions to its confidential compensation, evaluation, and other strategy information should be approved.

8

**Category 2**:  **Compensation and Related Information Concerning Non-Parties.**

These same compelling competitive considerations, as well as individual (current and former employee) privacy concerns, warrant redaction of non-party compensation, performance rating, and other such sensitive information.  Just as a competitor could—and would—use KPMG's compensation strategy information to gain an improper advantage in competing for talent, so too would its competitors unfairly use specific non-party individual data to do so.  The widespread disclosures of compensation and related information that Plaintiffs apparently seek (even as to former employees) would give competitors a clear roadmap as to specific compensation levels for specific positions in specific KPMG service lines, offices and markets.

The Brandes and Raymond Declarations, as well as the extensive case law cited above, make clear that such very real and profound competitive harm outweighs any countervailing interest in public access to such competitive information, even where it relates to central issues in the case.  *See supra* pp. 5–8.  For this reason, KPMG respectfully submits that the Court's suggestion of redacting individual names and other identifying information, but publicly filing compensation, performance and other such information, does not solve this problem or appropriately protect KPMG's interests.  Competitors would still have a clear view, for example, of compensation levels by position within specific KPMG offices, markets, and practice areas—all of which is set forth in the Exhibit O "Employee Profiles" and other documents.

 Individual non-party privacy concerns reinforce this conclusion, as Plaintiffs tacitly admit in their December 19, 2013 letter (p.1, n. 2):  "Plaintiffs do not seek to disclose private information, or individual salary information of non-party KPMG employees."  *See Lugosch*, 435 F.3d at 120 (balancing access against "the privacy interests of those resisting disclosure").  It is self-evident (and hardly "speculative") that non-parties, most of whom have no role in this

case other than having the distinction of being identified by Plaintiffs as purported

"comparators," have a legitimate and compelling interest in not having their individual

compensation, performance, and other such information spread across the public record—

including in public filings making assertions that Plaintiffs' own exhibits show to be

demonstrably false.[7]  Again, merely redacting names does not solve this problem or adequately

protect these third parties.  If provided with a non-party's service line, office, and position

information as well as their alleged association (as a "comparator") with a given Plaintiff (or opt-

in), it would not take much for other employees, family members, and others to identify who that

individual is—and thus, know his or her sensitive compensation and performance data.

It therefore is not surprising that courts across the country have sealed employee

compensation and other personal information—again, even in cases where that information is

central to the claims at issue.  *See, e.g.*, *Overton*, 2014 WL 1554718, at *2 (recognizing as

"legitimate," in compensation dispute case, employer's concern "that its compensation practices

and strategies do not fall into the hands of competitors, and that Defendant's employees have

---

[7] For example, citing to Exhibit O of their Motion (Employee Profiles), Plaintiffs erroneously claim that Kassman was paid "nearly $50,000 less" annually than John Montgomery (an allegation that KPMG has not sought to redact solely because it is cited in the Court's July 8, 2014 opinion and, thus, consistent with the Court's prior comments, is already "in the ether").  This allegation is demonstrably false.  Kassman worked and was paid on a part-time schedule (75% in 2008 and 2009 and 80% in 2010), while Montgomery worked full-time.  Decl. of Patricia Watkins ¶ 17 (submitted with KPMG's Opposition to Plaintiffs' Motion).  Their Employee Profiles plainly show that, *even disregarding Kassman's part-time schedule*, at no time was Kassman's pay "nearly $50,000 less" than Montgomery's.  Moreover, when Kassman's part-time salary is annualized to an equivalent full-time salary, she actually made *more* than Montgomery.  Specifically, in 2008 and 2009, Montgomery's full-time salary was ███████, while Kassman's 75% *part-time* salary was $135,000, which annualizes to $180,000 at full-time.  *Id.*  In 2010, Montgomery's full-time salary was ███████, while Kassman's 80% *part-time* salary was $157,267, which annualizes to $196,583.75 at full-time.  *Id.*  Plaintiffs' mischaracterization of salary information, combined with their stated desire to use such flawed assertions to attract additional plaintiffs, provides further strong reasons for the sealing of such sensitive salary information.  *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Raw, *unverified* information should not be as readily disclosed as matters that are verified." (emphasis added)); *id.* at 1048 (sealing corruption allegation information to prevent "the public airing of accusations that are anonymous, *unverified, and, to a degree, of doubtful veracity*." (emphasis added)).  Montgomery's salary information in this footnote has been redacted in the publicly filed version of this letter, and in KPMG's docketed July 23, 2014 letter to the Court regarding the proposed notice forms (Dkt. No. 183), pending the Court's ruling on such redaction issues.

privacy rights against having their salaries and bonuses disclosed to the public," and sealing

same); *Butler*, 876 F. Supp. 2d at 576 (sealing employee "payroll and other personnel records" in

FLSA collective action); *High-Tech Emp.*, 2013 WL 163779, at *5 (sealing "quantitative data

concerning" employer "compensation and recruiting strategies, policies, and procedures" and

"personal information of non-parties"); *Murphy v. Rochester City Sch. Dist.*, No. 00-CV-6038L,

2002 WL 31322639, at *1–4 (W.D.N.Y. Sept. 30, 2002) (sealing salary and other personnel

information); *Dynetix*, 2013 WL 2285210, at *1 (sealing "private data about employees" and

"personal performance review" containing "sensitive personal information").

        Plaintiffs' December 19, 2013 letter fails to address this precedent, nor does it mention

that *none* of their cited cases referencing salary data (*Potash*, *Ellis*, and *Costco*) involved a

motion to seal, and that many others do not involve salary data at all.  *See, e.g.*, *Wolinsky v.

Scholastic Inc.*, 900 F. Supp. 2d 332, 334–38 (S.D.N.Y. 2012) (refusing to seal FLSA settlement

that required court approval by law); *In re Terrorist Attacks on September 11, 2011*, 454 F. Supp.

2d 220, 221–23 (S.D.N.Y. 2006) (refusing to issue "umbrella protective order covering all

materials produced during discovery" in a massive multi-party, multi-national case, but allowing

individualized showings as to the need for sealing).  Again, the fact that other companies, or

individual employees, may decide to disclose their own compensation data has no bearing on the

rights of KPMG to protect *its* competitive interests, or of other KPMG employees who do not

make that choice.  Plaintiffs' reference to "glassdoor.com"—which by the website's own

admission posts only "anonymous salaries," with no information as to the poster, whether the

information is even accurate or complete, or surrounding circumstances—is even more

irrelevant.  This is precisely the type of "anonymous, unverified" data of "doubtful veracity" that

carries no weight in the public disclosure calculus.  *See Amodeo*, 71 F.3d at 1048, 1051.

Finally, KPMG's proposed redactions of compensation, performance and similar information are narrowly tailored and no greater than necessary. KPMG has left unredacted a wealth of other such information with which Plaintiffs can make their arguments and state their position to potential opt-ins. This includes, for example, Professor Vekker's allegations—flawed as they may be—of purported *percentage* differences in compensation between men and women, and allegations of purported *dollar differences* between the pay of specific men and women where such data does not reveal absolute pay levels. As a further accommodation, KPMG also has withdrawn its request to redact alleged *average* national pay differences between men and women in various positions. This compromise similarly allows Plaintiffs to make their legal and factual arguments without disclosing highly competitive, sensitive, and private particularized compensation data concerning specific employees, positions, practice areas, offices, and markets.

Accordingly, KPMG respectfully requests that its proposed redactions of compensation, performance and related information concerning non-parties be approved. Even if the Court decided to permit public filing of such information with identifying information redacted, in no event should it do so for anyone other than *specifically identified comparators* of the *Named Plaintiffs* and *any opt-ins*. Specific data beyond that alleged comparator set has no relevancy to the "core" issues in this case, and KPMG's interests in protecting its competitive compensation strategies and comprehensive data "roadmap" far outweigh any marginal relevancy that Plaintiffs may claim in any event. KPMG emphasizes, however, that it has provided factual and legal support demonstrating that even this approach would cause it significant competitive harm and compromise individual privacy interests, and thus, urges the Court to adopt its position.

**Category 3**:  **Client-Related Information Including Revenues, Costs and Billings.**

KPMG respectfully submits that the Court should permit redaction of all such information, including without limitation client, client-revenue, billing, and cost information. The parties do not appear to be in dispute as to this Category.  *See* Plaintiffs' December 19, 2013 Letter at 1, n.2 ("Plaintiffs agree to redaction of . . . client names and revenue information in Plaintiffs' Ex. P.").[8]  The Court also recognized that:  "[T]he third category I think is information that relates to clients and also the amount of revenue particular clients generated like the proposed redactions on page 34 of 37 in Plaintiff's Exhibit P.  It seems to me that those redactions are appropriate.  They are narrow.  There's a privacy interest in the information.  And they are not central to what the lawsuit is all about."  Hr'g Tr. at 5.

KPMG has provided ample factual and legal support for its narrowly tailored request to redact such information.  Paragraph Eight of the Brandes Declaration (submitted with KPMG's November 15, 2013 letter motion) states, for example:

> I understand that KPMG also takes the foregoing measures (among others) to maintain the confidentiality of information concerning its clients, revenues, billing and cost data, and employee personnel and personal information.  For example, KPMG has contractual and other confidentiality obligations to its clients with respect to the work that it does for them and client information provided to the firm.  As a matter of policy, KPMG also typically does not disclose that it is working on a given project for a given client, as clients generally view such information as private and even competitively sensitive to their businesses. KPMG also keeps its revenue information confidential, including specific revenue goals or achievements for particular employees.  This information, if known by third parties, would, among other things, give competitors insights into the financial expectations that KPMG sets for its personnel and amounts charged to clients for various types of work, which in turn would help them underbid KPMG and compete unfairly for talent and client work.  Similarly, billing and cost information provides insights into how KPMG prices its talent and their services

---

[8] Such client-related information also appears in other places besides Exhibit P to Plaintiffs' Motion, such as certain portions of submitted deposition testimony, but KPMG does not understand Plaintiffs to be objecting to redaction of any such information either.

based on their area, credentials, expertise and other business factors, as well as its cost structure and profitability.

Consistent with these strong competitive and privacy considerations, courts routinely seal such client, revenue and related business information.  *See, e.g.*, *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999) (documents "commonly sealed are those containing trade secrets, . . . revenue information, pricing information, and the like."); *Dynetix*, 2013 WL 2285210, at *1 (sealing information that could be "used by competitors to solicit Synopsis customers" or "to the detriment of Synopsys' relationship with its customers"; also sealing "detailed and confidential financial information that could be used against Synopsys" and "customer information Synopsys is bound to keep confidential"); *GoSmile*, 769 F. Supp. 2d at 649–50 (sealing "highly proprietary material concerning the defendants' marketing strategies . . . costs and budgeting"); *Kowalsky v. Hewlett-Packard Co.*, No. 5:10-cv-02176-LHK, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (sealing sales data that contains "confidential pricing and sales information, the disclosure of which could harm HP's competitive advantage in the marketplace," as well as information that "contains HP's confidential financial data"); *see also Parmalat*, 258 F.R.D. at 248–52 (sealing can be appropriate for "sources of business information that might harm a litigant's competitive standing"); *cf. Ayco Co. v. Frisch*, 795 F. Supp. 2d 193, 208 (N.D.N.Y. 2011) (trade secrets protectable by injunction included "client contact lists, the names of Ayco corporate and individual clients, confidential information regarding accounts held by Ayco clients . . . and Ayco pricing and fee information for its clients").

Accordingly, KPMG respectfully submits that its proposed redactions of client, revenue, and related business information (such as cost and billing information) should be approved.

14

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2014, I caused a copy of **DEFENDANT KPMG LLP'S**

**MEMORANDUM OF LAW IN SUPPORT OF ITS LETTER MOTIONS TO REDACT**

**FROM THE PUBLIC RECORD LIMITED PORTIONS OF THE PARTIES' BRIEFING**

**AND EXHIBITS REGARDING PLAINTIFFS' MOTION TO CONDITIONALLY**

**CERTIFY AN EQUAL PAY ACT COLLECTIVE ACTION** to be served via e-mail and

postage-prepaid, First-Class, U.S. Mail upon the following:

Deepika Bains           dbains@sanfordheisler.com
Jeremy Heisler          jheisler@sanfordheisler.com
Siham Nurhussein      snurhussein@sanfordheisler.com
SANFORD & HEISLER LLP
1350 America of the Americas, 31st Floor
New York, NY  10019

Katherine M. Kimpel     kkimpel@sanfordheisler.com
Katherine E. Lamm      klamm@sanfordheisler.com
Katie Mueting         kmueting@sanfordheisler.com
David W. Sanford       dsanford@sanfordheisler.com
SANFORD & HEISLER LLP
1666 Connecticut Avenue, NW, Suite 300
Washington, DC  20009

/s/  Colleen M. Kenney