```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
DONNA KASSMAN, et al.,                                        :
                                      Plaintiffs,             :
                                                              :
                    -against-                                 :
                                                              :
KPMG LLP,                                                     :
                                      Defendant.              :
                                                              :
------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/04/2015

11 Civ. 03743 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Donna Kassman, Sparkle Patterson, Jeanette Potter and Ashwini Vasudeva (collectively, "Plaintiffs" or "Named Plaintiffs") bring this action against Defendant KPMG LLP ("KPMG") alleging that KPMG paid female client service professionals in its Tax and Advisory Functions less than their male counterparts in violation of the Fair Labor Standards Act as amended by the Equal Pay Act ("EPA"), and alleging other claims not relevant to this motion. Before the Court is Plaintiffs' Motion for Equitable Tolling of the Statute of Limitations for Collective Action Members' Claims under the EPA. For the following reasons, Plaintiffs' motion is granted in part.

**BACKGROUND**

The following facts are those relevant to this motion and are taken from the docket in this case and the parties' submissions in connection with this motion.

Plaintiff Donna Kassman filed this action on June 2, 2011, and four days later filed her First Amended Complaint. Judge Richard J. Holwell was assigned to preside. In September 2011, Kassman moved to file a Second Amended Complaint, adding Plaintiffs Patterson, Potter and Vasudeva and a fourth person who is no longer a party. Defendant filed its opposition on October 17, 2011 -- the date from which Plaintiffs seek to have the statute of limitations tolled --

and the motion was fully briefed on November 3, 2011.  Before deciding the motion, Judge Holwell granted Plaintiffs leave to file a Third Amended Complaint.

In February 2012, Defendant filed a motion to dismiss the Third Amended Complaint, which was fully briefed on March 16, 2012.  In April 2012, Judge Jesse M. Furman was assigned to preside over this matter, replacing Judge Holwell, who had resigned from the bench.  On February 7, 2013, Judge Furman granted in part and denied in part Defendant's motion to dismiss.

In March 2013, Defendant answered the Third Amended Complaint, and this case was reassigned to me.  In April 2013, the parties were ordered to conduct and complete electronic discovery, and a briefing schedule was set for Plaintiffs' equitable tolling motion, with the final brief to be filed on June 10, 2013.  In May 2013, a protective order and an electronic discovery protocol order were signed.

A conference was held on August 1, 2013, to discuss the progress of discovery, the equitable tolling motion, and Plaintiffs' anticipated motion for conditional certification of a collective under FLSA.  Plaintiffs explained that, in order to prepare a "properly tailored motion for conditional certification," they needed Defendant to produce certain class data, which Defendant had resisted producing.  The Court set a schedule for Defendant to produce the necessary information, and then for the parties to brief Plaintiffs' conditional certification motion. Since the equitable tolling motion would apply only to opt-in plaintiffs in the event the conditional certification motion was granted, the Court denied equitable tolling without prejudice to renewal by any future opt-in plaintiffs after the disposition of the conditional certification motion.  The relevant period for purposes of discovery and any notice were to be determined as if

the tolling motion had been granted.  Defendant completed its production of information on October 29, 2013, and Plaintiffs moved for conditional certification and authorization of notice two days later.  Plaintiffs' conditional certification motion was fully briefed on December 16, 2013.

Before a ruling on conditional certification could be issued, in January 2014, Defendant expressed its intent to file a second motion to dismiss.  The Court informed the parties that it would adjudicate the conditional certification motion and the motion to dismiss simultaneously.  Defendant's second motion to dismiss was fully briefed on February 24, 2014.

By opinion and order dated July 8, 2014 (the "July 8 Opinion"), conditional certification of a collective action was granted for Plaintiffs' EPA claims.  The July 8 Opinion also authorized notice to be sent to "all female employees of KPMG who held any of the following positions -- Associate, Senior Associate, Manager, Senior Manager/Director and/or Managing Director -- in either the Tax or Advisory practice groups from October 17, 2008, to the present."  The opinion stated that (1) individuals "who held any of the relevant positions from October 30, 2010" -- three years prior to the filing of the conditional certification motion -- "to the present may opt-in to the collective action, pursuant to the EPA's statute of limitations," and (2) individuals "who held any of the relevant positions from October 17, 2008" -- three years before Defendant's opposition to Plaintiffs' Motion for Leave to Amend -- "through October 30, 2010, may move the Court for equitable tolling of the statute of limitations."  The July 8 Opinion also resolved Defendant's second Motion to Dismiss, which did not affect Plaintiffs' EPA claims.

Plaintiffs represented that on October 3, 2014, notice was sent to 8,966 women who were employed in the relevant positions "for at least one day on or after October 17, 2008."  The opt-in

3

period was originally 120 days, ending on January 31, 2015, but was extended to April 1, 2015, to enable the acceptance of 25 late consent forms from putative plaintiffs as follows: 5 whose claims are not barred, 9 whose claims are partially barred and 11 whose claims are entirely barred by the statute of limitations absent any tolling. The results of the notice, by Defendant's calculation, were approximately as follows:

- In total, 1,292 women opted into the collective action (collectively, "Opt-In Plaintiffs");
- The number whose EPA claims are entirely dependent on equitable tolling is 519;
- The number whose EPA claims are partially dependent on equitable tolling is 543; and
- The number whose EPA claims are unaffected by equitable tolling is 230.

Plaintiffs' calculation is not materially different.

**DISCUSSION**

Plaintiffs seek to toll the statute of limitations for opt-in plaintiffs as of October 17, 2011, under the doctrine of equitable tolling. In other words, they ask that the claims and consent forms of opt-in plaintiffs be deemed filed as of that date. October 17, 2011, is when Defendant filed its opposition to Plaintiffs' motion to file the Second Amended Complaint. For the following reasons, Plaintiffs' motion is granted in part.

**I.   APPLICABLE LAW**

**A.   Statute of Limitations for EPA Collective Actions**

The EPA is a part of the Fair Labor Standards Act ("FLSA") and prohibits gender discrimination in the payment of wages for equal work. *See* 29 U.S.C. § 206(d). The FLSA permits an employee to bring a collective action against an employer for a violation of the EPA "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. §

4

216(b).  To join a FLSA collective action, an employee must file with the court her written consent to become a party.  29 U.S.C. 216(b).  Thus, employees must "opt in" to a FLSA collective action in order to be bound and benefit from its judgment, in contrast to members of a Rule 23 class action, who are bound unless they "opt out."  *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010), *cert. denied*, 132 S. Ct. 368 (2011).

Most courts in this Circuit follow a two-step approach in FLSA collective actions.  First, and typically before extensive discovery, the named plaintiffs move for conditional certification of the collective.  If the motion is granted, plaintiffs provide court-supervised notice to other potential plaintiffs who appear to be similarly situated to the plaintiffs, and invite them to join the collective action by filing a written consent.  After discovery, courts make a determination on a full record whether the opt-in plaintiffs are in fact similarly situated.  *See id*. at 554-55 ("[D]istrict courts of this Circuit appear to have coalesced around a two-step method . . . we think is sensible."); *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 320-21 (E.D.N.Y. 2012); *Cohen v. Gerson Lehrman Group, Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010).  Although FLSA does not mandate notice to potential opt-in plaintiffs, providing them notice of their right to join the action "comports with the broad remedial purpose of the [FLSA] , . . . as well as with the interest of the courts in avoiding multiplicity of suits."  *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978).

In a FLSA collective action, the statute of limitations continues to run until an employee files her consent to be a plaintiff.  29 U.S.C. § 256.  The limitations period for a violation of FLSA is ordinarily two years, but for willful violations it is extended to three years.  29 U.S.C. § 255(a).  "[B]ack pay awards for Equal Pay Act violations are typically limited to damages

sustained within [the limitations] period." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997).

### B. Equitable Tolling

Notwithstanding the EPA's timeliness requirements, district courts have the discretion to apply equitable tolling to the EPA's statute of limitations "as necessary to avoid inequitable circumstances." *Iavorski v. I.N.S.*, 232 F.3d 124, 129 (2d Cir. 2000); *accord Alli-Balogun v. United States*, 281 F.3d 362, 367-68 (2d Cir. 2002) ("We review the district court's ruling on equitable tolling for abuse of discretion."). Equitable tolling "is read into every federal statute of limitation." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1975 (2014) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). "Equitable tolling applies as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights." *Iavorski*, 232 F.3d at 129 (internal quotation marks and alteration omitted).

The Second Circuit seems not to have addressed equitable tolling in a FLSA collective action, but the general principles are well established. The putative plaintiff has the burden of showing that equitable tolling is appropriate. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). To determine whether to apply the principle of equitable tolling, the district court must consider whether the plaintiff (1) "has proved that the circumstances are so extraordinary that the doctrine should apply" and (2) "has acted with reasonable diligence during the time period she seeks to have tolled." *Zerilli-Edelglasss v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003); *accord Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The first test, which requires extraordinary circumstances, stems from the fact that equitable tolling undermines to some extent the interests served by statutes of limitations. "Because statutes of limitations protect important

6

social interests in certainty, accuracy, and repose . . . equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (internal quotation marks, citations and alterations omitted). The second test, which requires reasonable diligence, limits this equitable remedy to litigants who have not contributed to the delay that, without equitable tolling, would bar their claims.

### 1.     **Extraordinary Circumstances**

Plaintiffs have shown that extraordinary circumstances caused the passage of almost four years between June 2, 2011, when this action was commenced and April 1, 2015, the last date on which opt-in plaintiffs could join this action.

This delay was caused by several factors, the most significant of which are attributable to the Court. This case was assigned to three separate judges between its filing and the approval of notice to opt-in plaintiffs. It was first assigned to Judge Holwell, who retired; then to Judge Furman; then to me. These circumstances are by no means part of the ordinary course of litigation and cannot be attributed to Plaintiffs. *Accord, e.g.*, *Gorey v. Manheim Servs. Corp.*, No. 10 Civ. 1132, 2010 WL 5866258, at *5 (S.D.N.Y. Nov. 10, 2010) (applying equitable tolling where district judge's resignation, inter alia, delayed adjudication of conditional certification motion).

In addition, and perhaps exacerbated by the reassignment of judges, the Court spent an extraordinary amount of time considering motions -- including one motion for leave to file an amended complaint, two motions to dismiss, the first iteration of the equitable tolling motion and the conditional certification motion. Motions were pending for approximately 27 months of the

almost four-year delay between the filing of the case and the last date for putative plaintiffs to opt in.  Significant delays attributable to the court may constitute "extraordinary circumstances."  *See, e.g., Hart v. Crab Addison*, No. 13 Civ. 6458, 2015 WL 365785, at *5 (W.D.N.Y. Jan. 27, 2015) (holding that "equitable tolling may be appropriate when a significant delay in ruling on an FLSA motion for conditional certification is attributable to the Court and not the parties," where "the delay . . . may adversely affect the rights of [collective] members who may have no notice of th[e] lawsuit"); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (equitable tolling as of date of filing of conditional certification motion which took seven months to decide); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (equitable tolling as of date of filing of conditional certification motion which took four months to decide); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10 Civ. 935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (equitable tolling as of the dates of service and refiling of conditional certification motion, where -- despite "no trickery or wrongdoing," defendants' actions "frustrated plaintiffs' diligent attempts to ensure that claims did not expire"); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199-200 (S.D.N.Y. 2006) (equitable tolling where "the Court directed Plaintiff after he had filed his Complaint to postpone any motions for collective or class action until after its decision regarding summary judgment"); *see also Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860-61 (N.D. Ill. 2013) (collecting cases).  Accordingly, the delays in this case were exceptional and in large part caused by the Court.

In its opposition briefing, Defendant argues that litigation delays are an unfortunate product of rising caseloads and should not be considered extraordinary.  In support, however, Defendant cites from this Circuit that involved delays far shorter than the delay in this case.  *See,*

*e.g.*, *Arena v. Plandome Taxi Inc.*, No. Civ. 12-1078, 2013 WL 1748451, at *2 (E.D.N.Y. Apr. 23, 2013) (delay of 12 months between plaintiffs' request for leave to file conditional certification motion and adjudication of equitable tolling motion); *Gordon v. Kaleida Health*, No. 08 Civ. 378, 2009 WL 3334784, at *12 (W.D.N.Y. Oct. 14, 2009) (delay of 13 months between plaintiff's motion for expedited notice and adjudication of equitable tolling motion); *Hintergerger v. Catholic Health Sys.*, No. 08 Civ. 380, 2009 WL 3464134, at *13-14 (W.D.N.Y. Oct. 21, 2009) (delay of 13 months between plaintiff's motion for expedited notice and adjudication of equitable tolling motion); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 479 (S.D.N.Y. 2008) (adjudicating equitable tolling motion less than one year after commencement of action). Fortunately, the repeated reassignment of judges and exceptional delays in the present case cannot be viewed as part of the normal litigation process.

Defendant also argues that equitable tolling, as a "rare and exceptional" remedy, "must be strictly construed because Congress has already weighed the equities in setting limitations." Defendant is correct that equitable tolling should not be routinely applied in FLSA collective actions. However, Defendant's plea for the application of a "bright line" rule is misplaced. "[C]ourts do not apply [equitable tolling's] requirements mechanistically," and "'the exercise of a court's equity powers must be made on a case-by-case basis,' mindful 'that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Harper v. Ercole*, 648 F.3d 132, 136 (2d Cir. 2011) (quoting *Holland v. Florida,* 560 U.S. 631, 650 (2010)).

Accordingly, Plaintiffs have satisfied *Zerilli-Edelglass*' "extraordinary circumstances" requirement.

9

### 2. Diligence

In addition to showing "extraordinary circumstances," Plaintiffs have shown that they exercised reasonable diligence during the time period they seek to have tolled. Their failure to commence their own lawsuits or join this one prior to the time notice was given is not attributable to lack of diligence.

Plaintiffs allege that they were paid less than their male counterparts for performing substantially equivalent work. Plaintiffs could not readily discern these pay disparities that are the basis of the EPA claims at the time of the payments. Plaintiffs submit as an example testimony that a Senior Manager did not know how much her peers made or how much her subordinates made because people did not talk about compensation. The difficulties of uncovering the facts giving rise to pay disparity claims have been widely acknowledged. In her dissent in *Ledbetter v. Goodyear Tire & Rubber Co.*, Justice Ginsburg described the "common characteristics of pay discrimination":

> Pay disparities often occur, as they did in Ledbetter's case, in small increments; cause to suspect that discrimination is at work develops only over time. Comparative pay information, moreover, is often hidden from the employee's view. Employers may keep under wraps the pay differentials maintained among supervisors, no less the reasons for those differentials. Small initial discrepancies may not be seen as meet for a federal case, particularly when the employee, trying to succeed in a nontraditional environment, is averse to making waves.

550 U.S. 618, 645 (2007) (Ginsburg, J., dissenting); *see also* Marianne DelPo Kulow, *Beyond the Paycheck Fairness Act: Mandatory Wage Disclosure Laws-A Necessary Tool for Closing the Residual Gender Wage Gap*, 50 Harv. J. on Legis. 385, 434 (2013) ("[M]any women remain unaware that they are victims of wage discrimination and/or lack access to salary data of a male

comparator in their organization -- necessary for an Equal Pay Act claim."); Sarah Lyons, Note, *Why the Law Should Intervene to Disrupt Pay-Secrecy Norms: Analyzing the Lilly Ledbetter Fair Pay Act Through the Lens of Social Norms*, 46 Colum. J.L. & Soc. Probs. 361, 380 (2013) ("Traditional etiquette cautions against discussing salary with co-workers."). Given these difficulties, Defendant's assertion that "nothing prevents an individual from filing her own EPA claim, irrespective of any pending collective action" is incorrect. It was not for lack of diligence that the opt-in plaintiffs relied on court-ordered notice to alert them -- not only to the existence of this litigation -- but to the facts that are the basis for their claims.

Equitable tolling is proper "if despite all due diligence [plaintiff] is unable to obtain vital information bearing on the existence of his claim." *Valdez ex rel. Donely v. U.S.*, 518 F.3d 173, 182 (2d Cir. 2008) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). Courts have applied a reasonable plaintiff test to assess opt-in plaintiffs' knowledge of the facts giving rise to their claims -- "whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action, and despite all due diligence he was unable to obtain vital information bearing on the existence of his claim." *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011); *see Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) ("The relevant question is . . . whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action.").

Defendant argues that an individual inquiry must be made of each of the over 1,000 opt-in plaintiffs who, without equitable tolling, have time barred claims. That argument is misplaced in this case. The record already shows that the delay here was caused by circumstances outside the

control of the opt-in plaintiffs, and was not caused by their lack of diligence.  A further inquiry would be pointless.

As discussed above, extraordinary circumstances were largely responsible for the passage of several years before opt-in plaintiffs were provided notice.  Those circumstances were the reassignment of this case to multiple judges, and the time required to adjudicate the many motions between the filing of the action and providing notice to potential opt-in plaintiffs.  The delay also was caused by not so extraordinary circumstances outside the opt-in plaintiffs' control -- namely Defendant's vigorous opposition at every juncture, as well as Defendant's resistance to providing information necessary for the class certification motion.  Delays caused by a defendant may warrant equitable tolling, even without any evidence of bad faith.  *See Yahraes*, 2011 WL 844963, at *2 ("attribut[ing] no trickery or wrongdoing on the part of defendants" but noting that "defendants' actions -- re-briefing the certification motion, seeking to defer certification in anticipation of dispositive motions, and failing to produce documents . . . -- have frustrated plaintiffs' diligent attempts to ensure that claims did not expire").  Defendants' failure to provide necessary information also may warrant equitable tolling.  *See, e.g., Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012) (applying equitable tolling where early notice to opt-ins was not possible because defendant had "sole possession" of potential opt-ins' contact information) (citing *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 616 (10th Cir. 1988)); *Myers v. Copper Cellar Corp.*, No. 95 Civ. 541, 1996 WL 766505, at *3 (E.D. Tenn. Sept. 27, 1996) (applying equitable tolling from "the date of the filing of the original complaint and plaintiffs' motion for notice to those similarly situated" where defendant delayed production of names of potential FLSA opt-ins).

Equitable tolling requires a showing that the party seeking tolling was diligent. This requirement seeks to ensure that equitable relief is denied claimants whose own actions contributed to the delay that resulted in the filing of an untimely claim. A court may examine the cause of delay. If the delay in filing was caused by circumstances outside the control of the party seeking equitable tolling, then the court need not engage in an individual inquiry. *See, e.g., Jackson*, 298 F.R.D. at 171 (applying equitable tolling to all potentially time-barred collective members where "a piecemeal approach to equitable tolling . . . would waste judicial resources, further delay resolution of this action, and contravene the purposes of FLSA"); *Sexton v. Franklin First Fin., Ltd.*, No. 08 Civ. 4950, 2009 WL 1706535, at *8 (E.D.N.Y. June 16, 2009) (rejecting defendants' argument that equitable tolling analysis required individualized analysis for each opt-in plaintiff where tolling argument was based on defendants' failure to post FLSA-required notices).

Here, the opt-in plaintiffs were unable to learn the facts necessary to bring a claim or even realize one might exist; they filed timely claims (except for the few who did not) and acted diligently to do so; and the cause of the delay was obviously outside their control. Under these circumstances, no good purpose is served by inquiring of each of them about their individual diligence. This sort of mechanistic and unthinking application of the law would be costly, cause further delay and would burden all concerned. No individual inquiry is warranted.

Plaintiffs have therefore satisfied *Zerilli-Edelglass*' diligence requirement.

### B. Remaining Issues

Equitable tolling is a discretionary doctrine that requires the Court to fashion relief that is most appropriate for the facts and circumstances of the particular case. *See Valverde v. Stinson*,

13

224 F.3d 129, 134 (2d Cir. 2000) (as to length of tolling, "equitable tolling does not lend itself to bright-line rules" (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999)); *Carter v. Univ. of Connecticut*, No. 04 Civ. 1625, 2006 WL 2130730, at *2 (D. Conn. July 28, 2006) ("Equitable tolling is a form of discretionary relief that can be awarded upon consideration of all the facts and circumstances."), *aff'd*, 264 F. App'x 111 (2d Cir. 2008).

Plaintiffs request that the statute of limitations be tolled from October 17, 2011 -- the date on which Defendant opposed Plaintiffs' motion for leave to amend -- "to cover claims running back to October of 2008." The date for tolling is March 16, 2012 -- the date on which Defendant's first motion to dismiss became fully briefed, as ordered by Judge Holwell. This date is appropriate as Judge Holwell's resignation and the ensuing delay in adjudicating Defendant's motion to dismiss are the first in a series of "extraordinary circumstances" that delayed the sending of notice. *See Gorey*, 2010 WL 5866258, at *5 (applying tolling as of date on which motion -- whose adjudication was delayed by resignation of presiding judge -- became fully briefed). Claims running back to March 16, 2009 -- assuming willfulness and a three-year statute of limitations -- would therefore be deemed timely.

Second, the statute of limitations is not tolled for the opt-in Plaintiffs who failed to file timely claims by January 31, 2015, the deadline stated in the notice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Equitable Tolling is GRANTED in part. The statute of limitations is equitably tolled from March 16, 2012; claims running back to March 16, 2009, are therefore deemed timely.

The Clerk of Court is directed to close the motion at Docket No. 332.

SO ORDERED.

Dated: September 4, 2015
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**