# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- :

DONNA KASSMAN, SPARKLE
PATTERSON, JEANETTE POTTER,
ASHWINI VASUDEVA, TINA BUTLER,
CHERYL CHARITY, HEATHER INMAN,
NANCY JONES AND CAROL MURRAY,
INDIVIDUALLY AND ON BEHALF OF A
CLASS OF SIMILARLY-SITUATED
FEMALE EMPLOYEES,

           Plaintiffs,

v.

KPMG LLP,

           Defendant.

----------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Hon. Lorna G. Schofiel
Case No.: 11-cv-03743 (LGS)

*Civil Action*

## ANSWER TO FOURTH AMENDED COMPLAINT

       Defendant KPMG LLP ("KPMG"), by and through counsel, answers the Fourth Amended Class Action Complaint ("FAC") of Plaintiffs Donna Kassman, Sparkle Patterson, Jeannette Potter, Ashwini Vasudeva, Tina Butler, Cheryl Charity, Heather Inman, Nancy Jones and Carol Murrary ("Plaintiffs") as follows:

       1.     As one of the "Big Four" accounting firms, KPMG is part of an elite cadre of accountancy and professional services firms that help set industry standards. But rather than use its vast resources and status to stamp out gender discrimination, KPMG actively perpetuates it.

**ANSWER**

       KPMG admits that it is known as one of the "Big Four" accounting firms and that it is an audit, tax, and advisory services firm. KPMG denies the remainder of the allegations set forth in paragraph 1 of the FAC.

       2.     Women are conspicuously absent from KPMG's leadership. Among the 20 members of KPMG's global executive team, only one, or 5%, is female.[1] Similarly, of the 24 members of the global board, only one, or 4%, is female.[2]

---

[1] KPMG International, KPMG International Annual Review 2010: Cutting Through Complexity (2011), at 55.
[2] *Id*. at 56.

**ANSWER**

KPMG denies the allegations set forth in paragraph 2 of the FAC.

3.      Although KPMG's workforce is approximately 50% female, partnership is largely reserved for men.[3] Less than one in five KPMG Partners is female.[4] Managing Directors are also predominately male. Even in lower-level management positions such as Manager and Senior Manager, women only do marginally better, representing approximately one in three managers. Nonetheless, across KPMG's management ranks, the number of female managers never approaches parity with their overall representation at the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 3 of the FAC.

4.      KPMG's gender hierarchy is all the more jarring considering women have entered the accounting industry in record numbers for decades. For the past twenty-five years, women have comprised more than half of all accounting graduates.[5] In 2009, women made up 55% of newly hired accounting graduates and 61.8% of all accountants and auditors.[6] But despite constituting half of the workforce at accounting firms for decades, women are only 23% of all partners industry-wide and 18% at KPMG.[7]

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding women's supposed numbers in the accounting industry, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 4 of the FAC.

5.      At the Big Four – the crème de la crème of accounting firms – women fare even worse than the industry average. Studies show that women are not "moving through the pipeline" as quickly at these larger, more elite firms compared to their smaller counterparts.[8]

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding women at accounting firms other than KPMG, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 5 of the FAC.

---

[3] Catalyst, Women in Accounting (2010), at 1, available at
http://www.catalyst.org/file/178/qt_women_in_accounting.pdf.
[4] *Id.*
[5] AICPA, AICPA Work/Life and Women's Initiatives 2004 Research. A Decade of Changes in The Accounting Profession: Workforce Trends and Human Capital Practices (2006), at 5, available at
http://www.awscpa.org/pdfs_and_docs/ResearchPaperDecadeofChange.pdf.
[6] Catalyst, Women in Accounting, at 1.
[7] *Id.*
[8] AICPA, AICPA Work/Life and Women's Initiatives 2004 Research, at 5.

6.      KPMG is one of the worst offenders. The Company promotes fewer women to Partner (18%) than the industry average (23%).[9] KPMG also promotes fewer women to Senior Manager (35%) positions than the industry average (44%).[10] KPMG's promotion rate falls below its competitors, even though KPMG has a similar number of female non-management employees (48%) as the industry (49%) to groom and mentor for leadership.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the industry average percentage of women promoted to Partner and Senior Manager and promotion rates for KPMG's competitors, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 6 of the FAC.

7.      Rather than reward high-performing female employees with partnership, KPMG tracks a disproportionate number of these women into non-partnership roles as career managers at drastically lower compensation levels. Industry-wide, 60% of female Senior Managers and 36% of female Managers have followed lower paid non-partnership career tracks, compared to only 26% of male Senior Managers and 9% of male Managers.[11]

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding career tracks of female and male Senior Managers and Managers industry-wide, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 7 of the FAC.

8.      These figures make it clear that while male and female accountants may begin their careers on roughly equal footing, their paths sharply diverge as they ascend up the hierarchy, particularly at KPMG. Women in the accounting industry face a number of systemic barriers to promotion, including lack of visible role models and their exclusion from after-work activities and other informal networking opportunities, reflecting the gender bias of "old boys" networks within these firms.[12]

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding barriers to promotion in the accounting industry, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 8 of the FAC.

---

[9] Catalyst, Women in Accounting, at 1.
[10] Public Accounting Report, Public Accounting Report's 2008 Survey of Women in Public Accounting – Percentage of Women by Staff Category (Dec. 15, 2008).
[11] Catalyst, Women in Accounting, at 1.
[12] Catalyst, Women of Color in Accounting (2008), at 31, available at http://www.catalyst.org/file/138/woc_accounting_final_book.pdf.

9.     As one accounting professional noted, as women come within reach of making Partner, "[i]t becomes subtle who's mentored, who's invited out to the important dinners with the important clients [and] who's groomed to participate in AICPA and state society committees. All of these are indicative of who is going to be promoted to Partner a year or two or three or four into the future."[13]

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the quotation set forth in paragraph 9 of the FAC, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 9 of the FAC.

10.     At KPMG, the discrimination is not always so subtle. High-performing female managers are viewed as interlopers by their male Partners, as threats by their male peers, and as individuals unworthy of respect by their male subordinates. As soon as these women come within reach of partnership, they are suddenly – without warning or provocation – chastised and removed from the promotion track before they can infiltrate KPMG's "good old boys" network. By contrast, male employees who "have an issue working with women" effortlessly ascend through the ranks at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 10 of the FAC.

11.     Plaintiff Donna Kassman was a casualty of this discriminatory system. After languishing in a Senior Manager position for a decade, during which she demonstrated stellar performance, Ms. Kassman was finally "put up" for a promotion to Managing Director. At this pivotal juncture, a troika of men – Scott Schapiro ("Principal Schapiro"), Principal in Charge of the National Employment Tax Practice and the person to whom Ms. Kassman reported; John Montgomery ("Senior Manager Montgomery"), another Senior Manager in Ms. Kassman's practice; and Jon Stone ("Associate Stone"), an Associate who worked under Ms. Kassman and Senior Manager Montgomery – conspired to derail her career advancement. Principal Schapiro abruptly removed Ms. Kassman from the promotion track based on unfounded, stereotypical complaints by the other two men about Ms. Kassman's "tone" and "direct" approach – a complaint never before lodged against her during her 17-year tenure at KPMG. Unilaterally adopting the position of the male troika, the Company instead put up Senior Manager Montgomery for the position that had been slated for Ms. Kassman.

**ANSWER**

KPMG admits that Plaintiff Donna Kassman ("Ms. Kassman") was an employee of KPMG for approximately 17 years and held a Senior Manager position at KPMG for over ten years; Scott Schapiro was the Principal in charge of the National Employment Tax Practice for a period of time and Ms. Kassman reported to Schapiro during a period of

---

[13] Liz Gold, "Women in Accounting: How far to the top?" ACCOUNTING TODAY, available at http://www.accountingtoday.comato_issue/2007_18/22549-1.html (last visited May 19, 2011).

Ms. Kassman's employment with KPMG; John Montgomery was another Senior Manager with KPMG during a period of time during Ms. Kassman's employment with KPMG; and Jonathan Stone was an Associate who worked under Ms. Kassman and Montgomery during a period of Ms. Kassman's employment with KPMG. KPMG denies the remainder of the allegations set forth in paragraph 11 of the FAC.

12.     Like Ms. Kassman, Plaintiff Jeanette Potter earned exceptional reviews at KPMG, only to spend a decade stuck in a Senior Manager position. Principal Bruce McLaughlin ("Principal McLaughlin") had only one criticism of Ms. Potter: she did not "schmooze" enough. In fact, Ms. Potter avoided the Company's happy hours – one of the main venues for "schmoozing" – because they were known to be hostile to women; among other things, male Partners did "body shots" off of female employees. Because KPMG's promotion decisions rely substantially on personal relationships built at Company social events that are unwelcoming to women, high-achieving female employees like Ms. Potter are frequently passed over for promotion in favor of their less qualified, but more well-connected, male counterparts.

**ANSWER**

KPMG admits that Plaintiff Jeannette Potter ("Ms. Potter") held a Senior Manager position at KPMG for approximately eleven years and that she received reviews, and refers to those sources for a complete statement of their contents. KPMG denies knowledge or information sufficient to form a belief as to the truth of the allegations that Ms. Potter avoided "happy hours," and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 12 of the FAC.

13.     Until 2010, KPMG utilized a 9-box rating system, ranging from EP-1 (exceptional) to NI-9 (needs improvement), for all of its professional staff, across the Company's spectrum of job titles, practice areas, and offices. Each employee was evaluated "The KPMG Way" – a set of criteria which purported to measure behaviors and values but failed to provide a consistent or reliable measure of performance.

**ANSWER**

KPMG admits that performance evaluations were made on a decentralized basis using a rating system, and refers to that source for a complete statement of its contents including the criteria used. KPMG denies the remainder of the allegations set forth in paragraph 13 of the FAC.

14.     After the initial round of evaluations, the Partners in each group had discretion to change the ratings to ensure that the employees they had taken under their wing – most of whom were male – were ranked higher relative to their peers, and thus stood a greater chance of being promoted.

**ANSWER**

KPMG denies the allegations set forth in paragraph 14 of the FAC.

15.     Upon information and belief, female employees were disproportionately and discriminatorily downgraded and undervalued within KPMG's performance review system, which is uniform throughout the Company. The Company's new 5-point evaluation system, introduced last year, suffers from the same defects.

**ANSWER**

KPMG denies the allegations set forth in paragraph 15 of the FAC.

16.     Upon information and belief, KPMG's performance evaluation system's insufficient standards, quality controls and implementation metrics, coupled with its lack of transparency and opportunities for redress, had a discriminatory and disparate impact on women and caretaking employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 16 of the FAC.

17.     KPMG employees are promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly develop and promote excellent employees. Promotions are not based upon true comparative performance as they lack transparency and sufficient quality controls in their design and implementation.

**ANSWER**

KPMG denies the allegations set forth in paragraph 17 of the FAC.

18.     KPMG's promotion procedures and practices reflect and codify the biases of the Company's mostly male management and, naturally, have a disparate impact on the Company's female employees. Even when ostensibly based on performance, Partners have discretion to promote those within the "good old boys" club based on factors such as friendship and social connections or to otherwise give undue weight to these or other improper factors. Participation in male-dominated social activities—such as golf outings and after-work happy hours (where body shots might be consumed off of female employees) are among criteria that may be considered for evaluation, compensation and advancement within KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 18 of the FAC.

19.     KPMG was able to and systematically did derail the advancement of high-performing female Professionals who were viewed as a threat, who were wrongly cast as less committed to their careers, or who the Company wanted to push out for other discriminatory reasons.

**ANSWER**

KPMG denies the allegations set forth in paragraph 19 of the FAC.

20.    The Company's promotion practices consistently result in males being promoted more rapidly and assigned more frequently to higher positions than women within and across levels Company-wide. Although KPMG has had knowledge of these stark gender disparities for decades, it has been deliberately indifferent towards them.

**ANSWER**

KPMG denies the allegations set forth in paragraph 20 of the FAC.

21.    Countless women have progressed along KPMG's standard career track with rave reviews, only to find their career ambitions shattered by KPMG's glass ceiling.

**ANSWER**

KPMG denies the allegations set forth in paragraph 21 of the FAC.

22.    Upon information and belief, KPMG's female Professionals are not only under-promoted, but underpaid as well.

**ANSWER**

KPMG denies the allegations set forth in paragraph 22 of the FAC.

23.    Recent reports on the accounting industry have found that female Associates, Senior Associates, Managers and Senior Managers are systematically paid less than their male colleagues, with white male Senior Managers out-earning their female counterparts by $53,000 on average.[14] This pay disparity is even greater at the Partner level.[15]

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding unspecified reports, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 23 of the FAC.

24.    Far from disproving this industry-wide trend, KPMG actively perpetuates it. Because KPMG employs a compensation system that has insufficient quality standards, controls, and implementation metrics, and lacks transparency and opportunities for redress or challenge, its compensation practices have had a disparate impact on the Company's female employees.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding any "industry-wide trend," and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 24 of the FAC.

---

[14] Catalyst, Women of Color in Accounting, at 50 (discussing survey results from top 20 revenue-generating U.S. accounting firms).
[15] Id.

25.     Upon information and belief, KPMG management systematically took advantage of the flaws in the system by paying female employees less than similarly situated male employees. This pattern and practice of discrimination stems, in part, from an antiquated adherence to the idea that if there is a husband who acts as a "breadwinner" in the home, then there is no need for a woman to work at all or to be compensated at the same level as a male employee.

**ANSWER**

KPMG denies the allegations set forth in paragraph 25 of the FAC.

26.     For example, in an egregious act of discrimination, KPMG slashed Ms. Kassman's base salary by $20,000 while she was on maternity leave because she was paid "too much." KPMG cited no business justification for slashing her salary – and indeed, could not, as Ms. Kassman was a top-notch performer. When Ms. Kassman complained about the salary cut and wanted to discuss ways for her to earn back the $20,000 that was taken from her, her male supervising Partner asserted that she did not need the money because she "ha[d] a nice engagement ring."

**ANSWER**

KPMG admits that Ms. Kassman's salary was decreased by $20,000 in 2003, and avers that the salaries of other employees in her practice group also were reduced at the same time. KPMG denies the remainder of the allegations set forth in paragraph 26 of the FAC.

27.     Like Ms. Kassman and many other female Professionals, Ms. Potter was told she was "paid too much," even though her less experienced male counterparts earned more than her. Ms. Potter received no pay increases during her last four years of employment at KPMG, despite her consistently strong performance.

**ANSWER**

KPMG admits that Ms. Potter did not receive a salary increase during her last four years of employment with KPMG. KPMG denies the remainder of the allegations set forth in paragraph 27 of the FAC.

28.     Moreover, KPMG's compensation policies and practices regarding flexible workers have a disparate impact on the Company's female employees. Employees who avail themselves of KPMG's flexible work arrangements – the overwhelming majority of whom are working mothers and other women – are forced to accept reduced pay while still working full-time schedules and being held to virtually full-time standards.

**ANSWER**

KPMG denies the allegations set forth in paragraph 28 of the FAC.

29.     At KPMG, salary increases and bonuses are based largely on a performance evaluation system that is insufficiently designed, articulated, explained or implemented to

consistently, reliably or fairly compensate strong-performing employees. Upon information and belief, KPMG's discriminatory performance evaluation system has resulted in the under-payment of female Professionals at all levels throughout the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 29 of the FAC.

30.     In addition, the compensation system as a whole lacks the adequate quality standards and controls and implementation metrics to consistently or reliably result in compensation decisions that correlate with an employee's overall quality or contributions to the Company. The lack of transparency and sufficient opportunities or systems for redress result in women being systematically undercompensated.

**ANSWER**

KPMG denies the allegations set forth in paragraph 30 of the FAC.

31.     In addition to the systematic discrimination faced by female Professionals at KPMG, female employees with children also face discrimination based on their status as caregivers and/or pregnant women.

**ANSWER**

KPMG denies the allegations set forth in paragraph 31 of the FAC.

32.     KPMG promotes a corporate culture whereby female employees are made to feel they cannot have successful careers after they have children. Indeed, at least one Partner explicitly suggested that women should go on part-time schedules or move away from his practice group when they become mothers. Another Partner has stated that he believes pregnant women are incapable of doing their jobs and that he did not see how a working mother could "tend to a child and work at KPMG at the same time."

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding comments allegedly made by unidentified individuals, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 32 of the FAC.

33.     Ms. Kassman hoped to be the one to prove them wrong. As a female manager with an impressive seventeen-year career at KPMG and two children under the age of seven, Ms. Kassman set out to demonstrate that one could be both a good mother and a successful manager at the Company. Indeed, KPMG and Ms. Kassman's supervisors publicly touted her as a role model for other working mothers.

**ANSWER**

KPMG admits that Ms. Kassman was an employee of KPMG for approximately 17 years and reports to have two children. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Kassman's hopes and what she set out to do, and therefore denies the allegations. The allegations set forth in paragraph 33 of the FAC that Ms. Kassman was "publicly touted" as a "role model" by KPMG and her supervisors are too vague to be susceptible to an answer, and KPMG therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 33 of the FAC.

34.     However, Ms. Kassman quickly discovered that KPMG's purported support for female employees and working mothers was just a sham. After she gave birth to her first child in 2003, Ms. Kassman's career advancement at KPMG – which had previously progressed at a steady clip – came to a screeching halt. KPMG abruptly cut her salary while she was on maternity leave and – as if this did not send a clear enough message – placed her on a Performance Improvement Plan ("PIP") upon her return to work.

**ANSWER**

KPMG admits that Ms. Kassman's salary was decreased by $20,000 in 2003, that in 2004 she was placed on a Performance Improvement Plan, and avers that the salaries of other employees in her practice group also were reduced at the same time. KPMG denies the remainder of the allegations set forth in paragraph 34 of the FAC.

35.     Ms. Kassman's experience as a working mother at KPMG is far from unique. Plaintiff Ashwini Vasudeva, a Senior Associate in the Company's Mountain View, California office, faced swift and ongoing retaliation following her decision to go on maternity leave. After she became a mother, Ms. Vasudeva, who had always earned stellar reviews, was abruptly removed from her largest, most lucrative engagement; was assigned to projects without any staff to support her; and was passed over for promotion in favor of a less-experienced male employee.

**ANSWER**

KPMG admits that Plaintiff Ashwini Vasudeva ("Ms. Vasudeva") was a Senior Associate in KPMG's Mountain View, California office. KPMG denies the remainder of the allegations set forth in paragraph 35 of the FAC.

36.     Plaintiff Sparkle Patterson, an award-winning Associate in KPMG's Atlanta office, also fell victim to the Company's pregnancy/caregiver discrimination. Although the standard promotion track at KPMG provides for the promotion of Associates to Senior Associates after two years, Ms. Patterson never received a promotion during her three-and-a-half year tenure with the Company, despite her exceptional performance. When Ms. Patterson returned from maternity leave, her work load was decreased and her repeated requests for work were systematically denied, leaving her with virtually no billable work, even though she was available and willing to work long hours.

**ANSWER**

KPMG admits that Plaintiff Sparkle Patterson ("Ms. Patterson") was an Associate in KPMG's Atlanta office and that she was not promoted to Senior Associate. KPMG denies the remainder of the allegations set forth in paragraph 36 of the FAC.

37.     Although KPMG touts its flexible work schedule plan as proving it supports working mothers, the reality is that working mothers are often forced to take a so-called "reduced" schedule for less pay – but are still expected to shoulder the same responsibilities as their full-time counterparts. These mothers accept reduced pay only to avoid unfair and discriminatory heightened scrutiny and wrongful termination.

**ANSWER**

KPMG denies the allegations set forth in paragraph 37 of the FAC.

38.     KPMG has what amounts to a "don't ask, don't tell" policy regarding flexible schedules for working mothers with young children. Employees who avail themselves of the Company's flex time option – the overwhelming majority of whom are working mothers – rarely discuss it freely and are ultimately penalized for it. One of KPMG's male Partners even commented that women who are on flexible plans "work exactly their x hours and not a minute over" and "you know they're not going to get anywhere [at KPMG]."

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding comments allegedly made by an unidentified male Partner, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 38 of the FAC.

39.     Indeed, when Plaintiff Kassman – the first flex worker in her practice – moved to a "reduced" schedule upon her return from maternity leave, she was made to feel like she had a scarlet "F" on her chest for "flex time benefit taker." As it turns out, flex time as a result of motherhood is not viewed as a badge of honor, but a source of shame and a handicap at KPMG. "Having it all" remains a pipe dream.

**ANSWER**

KPMG denies the allegations set forth in paragraph 39 of the FAC.

40.     KPMG discriminates against its female employees by assuming they are less committed to their careers – a gender stereotype that the Company's male employees do not have to overcome. Upon information and belief, of the few working mothers who have managed to break through KPMG's glass ceiling, most – like Patricia Brown ("Principal Brown"), Principal in Charge of the East for the International Executive Services ("IES") practice – have a stay-at-home spouse, a luxury that the overwhelming majority of KPMG's female employees do not have. Indeed, one study of the accounting industry revealed that 46% of male professionals employed by large national/international firms have stay-at-home spouses, compared to only

11% of female professionals.[16] And, even if men work a flexible work schedule, they can do so free of gender stereotypes and are therefore less likely than their female counterparts to experience a negative career impact as a result.[17]

**ANSWER**

KPMG denies the allegations set forth in paragraph 40 of the FAC.

41.     Given this discriminatory culture, it is no wonder that female employees – especially working mothers – are a rarity in KPMG's upper ranks. Taking leave or going on flex time for pregnancy and caretaking reasons can weigh as a negative factor within KPMG's evaluation, compensation, development and promotion systems, which have insufficient standards, quality controls, implementation metrics, and transparency, and which lack means of redress to prevent or correct this discrimination.

**ANSWER**

KPMG denies the allegations set forth in paragraph 41 of the FAC.

42.     As a recent report noted, "With women… joining the accounting industry at an increasing rate, firms are faced with the job of creating more inclusive environments in a traditionally white, male-dominated, 'up-or-out' culture."[18] KPMG has clearly failed to rise to this challenge.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the report referenced by Plaintiffs, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 42 of the FAC.

43.     At KPMG, female employees routinely experience harassment and unequal treatment. In particular, once they become poised to assume positions of greater authority, female employees frequently encounter gender hostility, including hypocritical and unfounded criticisms and other attempts to derail their career advancement.

**ANSWER**

KPMG denies the allegations set forth in paragraph 43 of the FAC.

44.     Ms. Kassman's experience in many ways typifies that of KPMG's female Professionals. In late 2008, after more than fifteen years of hard work and impressive achievements at the Company, Ms. Kassman was finally told she was next in line for a promotion to Managing Director. But rather than support Ms. Kassman, her male colleagues reacted with overt hostility. One of Ms. Kassman's male subordinates, Associate Stone, suddenly

---

[16] AICPA, AICPA Work/Life and Women's Initiatives 2004 Research, at 39.
[17] *Id.* at 34.
[18] Catalyst, Women of Color in Accounting, at 1.

complained that he "didn't like [her] tone." He and Senior Manager Montgomery, one of Ms. Kassman's peers, complained that Ms. Kassman was "unapproachable" and "too direct," a thinly veiled gender-based criticism – particularly given these two men's "direct" personalities, which are embraced by senior leadership at KPMG.

**ANSWER**

KPMG admits that in late 2008, Ms. Kassman had been employed by KPMG for approximately 15 years. KPMG denies the remainder of the allegations set forth in paragraph 44 of the FAC.

45.    Even though Ms. Kassman's supervisor, Principal Schapiro, acknowledged that Associate Stone "might have an issue working with women," neither Associate Stone nor Senior Manager Montgomery was disciplined for his discriminatory conduct. Instead, the Company took these two male employees' unfounded and gender-biased complaints at face value, and repeatedly interrogated Ms. Kassman about her behavior, ultimately recommending that she consult a "coach" to resolve these trumped up issues.

**ANSWER**

KPMG admits that neither Stone nor Montgomery was disciplined because they did not engage in any discriminatory conduct, and admits that it recommended that Ms. Kassman consult with a coach to help her with her career growth. KPMG denies the remainder of the allegations set forth in paragraph 45 of the FAC.

46.    Rather than address Ms. Kassman's complaints of discrimination, KPMG retaliated against her by removing her from the promotion track, instead "putting up" her harasser (Senior Manager Montgomery) for the Managing Director position once slotted for her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 46 of the FAC.

47.    As a result of KPMG's hostile work environment, Ms. Kassman – a strong, competent manager with a long and distinguished career at KPMG – was reduced to someone who could barely eat or sleep, and took the back elevators at work to avoid running into her tormentors. She was ultimately forced to resign from her position because the work environment at KPMG had become unbearable.

**ANSWER**

KPMG denies the allegations set forth in paragraph 47 of the FAC.

48.    Upon information and belief, other female Professionals have experienced harassment and retaliation similar to what Ms. Kassman experienced at KPMG. In particular, other female managers have suddenly found themselves targeted and elbowed out by the Company's "old boys" network once they come perilously close to infiltrating the upper ranks of

management. At least one Partner has explicitly acknowledged that it is "much harder being a woman" at KPMG.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding a comment allegedly made by an unidentified Partner, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 48 of the FAC.

49.    KPMG has long been on notice regarding its Company-wide gender discrimination, but has taken no steps to remedy it.

**ANSWER**

KPMG denies the allegations set forth in paragraph 49 of the FAC.

50.    Ms. Kassman repeatedly complained about the discrimination and harassment she was experiencing, going through all of the requisite channels, including her performance manager, Principal Schapiro; his boss, Principal Brown; the Office of Ethics and Compliance; the Office of General Counsel; and Human Resources. Every step of the way, the Company reacted with indifference and simply passed the buck.

**ANSWER**

KPMG admits that Ms. Kassman raised purported concerns. KPMG denies the remainder of the allegations set forth in paragraph 50 of the FAC.

51.    Even while acknowledging that the facts presented by Ms. Kassman were undisputed, KPMG sat on its hands and allowed the discrimination and harassment to continue unabated. Throughout the complaint process, the Company seemed more concerned about offending Ms. Kassman's harassers than the harassment itself. In fact, all of the "solutions" proposed by KPMG treated Ms. Kassman as the source of the problem.

**ANSWER**

KPMG denies the allegations set forth in paragraph 51 of the FAC.

52.    Other female employees have also complained about KPMG's discrimination, only to have their complaints fall on deaf ears. For example, Ms. Patterson repeatedly complained over the course of a year about the discrimination she was facing to HR and Ethics and Compliance. However, KPMG failed to do anything to resolve the situation, forcing Ms. Patterson to leave the Company.

**ANSWER**

KPMG admits that Ms. Patterson made internal complaints of alleged discrimination to KPMG Human Resources and Ethics and Compliance. KPMG denies the remainder of the allegations set forth in paragraph 52 of the FAC.

53.     In yet another situation, HR not only failed to investigate the complaints of discrimination but failed to intervene when male managers then retaliated against the female complainant, ultimately forcing her from the Company.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the FAC regarding an unidentified female complainant and unidentified male managers, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 53 of the FAC.

54.     KPMG's mishandling of these repeated complaints highlights various system-wide flaws in the Company's complaint mechanisms, including inadequate reporting mechanisms; the lack of a defined channel to report complaints of discrimination and harassment; insufficiently defined and implemented investigation procedures; inadequate training of HR and other professionals tasked with addressing complaints of discrimination and harassment; and the leadership's willingness to allow discrimination and an "old boys" culture to flourish at the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 54 of the FAC.

55.     The blatant disregard and indifference displayed by KPMG towards complaints of discrimination is all the more shocking given the Company's awareness that these problems are systemic. As Vicki Sweeney ("Principal Sweeney"), Principal in Charge of Ethics and Compliance, told Ms. Kassman, "This is three men ganging up on a woman. *We've had it before*."

**ANSWER**

KPMG denies the allegations set forth in paragraph 55 of the FAC.

56.     Plaintiffs bring this lawsuit on their own behalf and on behalf of a class of similarly situated female employees Company-wide, including but not limited to Associates, Senior Associates, Managers, Senior Managers and Managing Directors, to remedy the gender discrimination they have witnessed and experienced during their years of exemplary service to KPMG. The lawsuit is designed to achieve systemic injunctive relief and to change KPMG's discriminatory employment policies, practices and/or procedures based on gender, including: (1) assigning female Professionals to lower titles than similarly-situated male employees; (2) paying female Professionals less than their male counterparts; (3) denying female Professionals promotion and advancement opportunities in favor of male employees; (4) treating pregnant

employees and mothers differently from non-pregnant employees, male employees, and non-caregivers; and (5) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination and pregnancy/caregiver discrimination in the workplace.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this action as described in paragraph 56 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 56 of the FAC.

57.     Had the changes sought been in place previously, Plaintiffs might still be employed there and might, in fact, be able to pursue careers there moving forward should those changes come about as a result of this action.

**ANSWER**

KPMG denies the allegations set forth in paragraph 57 of the FAC.

**II.     JURISDICTION AND VENUE**

58.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §1332(a)(1), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended ("Title VII"), the Equal Pay Act, 29 U.S.C. § 206, *et seq.*, the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, et seq., as amended, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**ANSWER**

KPMG denies it has violated any of the laws set in paragraph 58 of the FAC. Paragraph 58 of the FAC states legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

59.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. 2000e-5(f) because Defendant KPMG is headquartered and conducts substantial business in this District, and because Plaintiffs Kassman and Potter were employees of KPMG's New York, New York office when the unlawful employment practices were committed.

**ANSWER**

KPMG admits that it is headquartered and conducts business in the Southern District of New York and that Ms. Kassman and Ms. Potter worked in KPMG's New York, New York office during their employment with KPMG. KPMG denies that venue is appropriate for the other named plaintiffs.

60.     Plaintiffs have standing to bring this suit as Plaintiff Kassman has duly filed her administrative charge before the EEOC and received her Notice of Right to Sue on March 9,

2011. Ms. Kassman's administrative charge gave notice of the class-wide nature of the allegations, including those alleged by the other Named Plaintiffs.

**ANSWER**

KPMG admits that Ms. Kassman filed an administrative charge before the EEOC and received a right to sue notice dated March 9, 2011. KPMG denies the remainder of the allegations set forth in paragraph 60 of the FAC.

### III.   THE PARTIES

61.   Plaintiff **DONNA KASSMAN** is a resident of New York. Plaintiff was employed at KPMG in its New York, New York office as an Associate, a Senior Associate, a Manager, and then a Senior Manager from April 1993 until her constructive discharge from the Company in October 2010.

**ANSWER**

KPMG admits that Ms. Kassman was employed in its New York, New York office as an Associate, Senior Associate, Manager and Senior Manager beginning in April 1993 but also worked in Connecticut during her employment with KMPG. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Kassman's state of residence, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 61 of the FAC.

62.   Plaintiff **SPARKLE PATTERSON** is a resident of Georgia. Plaintiff was employed at KPMG in its Atlanta, Georgia office as an Associate from June 2007 until her constructive discharge from the Company in November 2010.

**ANSWER**

KPMG admits that Ms. Patterson was employed in its Atlanta, Georgia office as an Associate from June 2007 until November 2010. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Patterson's state of residence, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 62 of the FAC.

63.   Plaintiff **JEANETTE POTTER** is a resident of Israel. Plaintiff was employed at KPMG in its New York, New York office as a Manager, then a Senior Manager from July 1995 until her constructive discharge in July 2006.

**ANSWER**

KPMG admits that Ms. Potter was employed in its New York, New York office as a Senior Manager from July 1995 until July 2006. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Potter's country of residence, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 63 of the FAC.

64.     Plaintiff **ASHWINI VASUDEVA** is a resident of California. Plaintiff was employed at KPMG in its Mountain View, California office as an Associate, then a Senior Associate, from January 2005 until her constructive discharge from the Company in September 2009.

**ANSWER**

KPMG admits that Ms. Vasudeva was employed in its Mountain View, California office as an Associate and Senior Associate from January 2005 to September 2009. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Vasudeva's state of residence, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 64 of the FAC.

65.     Plaintiff **TINA BUTLER** is a resident of Virginia. Plaintiff is a current employee of KPMG and has been employed at KPMG since October 2004 in its Atlanta, Georgia and Tysons, Virginia offices as an Associate, Senior Associate, and, since 2013, as a Manager.

**ANSWER**

KPMG admits that Plaintiff Tina Butler ("Ms. Butler") has been employed by KPMG since October 2004, that she is currently a Manager in its Tysons, Virginia office and that she previously held the positions of Associate and Senior Associate and worked in KPMG's Atlanta, Georgia office. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Butler's state of residence, and therefore denies the allegations.

66.     Plaintiff **CHERYL CHARITY** is a resident of Virginia. Plaintiff is a current employee of KPMG and has been employed at KPMG since March 2001 in its Washington, D.C. and Tysons, Virginia offices as a Senior Associate, Manager, and, since 2011, as a Senior Manager/Director.

**ANSWER**

KPMG admits that Plaintiff Cheryl Charity ("Ms. Charity") began her employment at KPMG in March 2001 and that she held the positions of Senior Associate and Manager and worked in KPMG's Washington, D.C. and Tysons, Virginia offices. KPMG denies that Ms. Charity is a current employee of KPMG. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Charity's state of residence, and therefore denies the allegations.

67.     Plaintiff **HEATHER INMAN** is a resident of Missouri. Plaintiff was employed at KPMG from August 2005 to October 2014 in its St. Louis, Missouri office as a Manager.

**ANSWER**

KPMG admits that Plaintiff Heather Inman ("Ms. Inman") was employed in its St. Louis, Missouri office as a Manager from August 2005 to November 2014. KPMG lacks

knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Inman's state of residence, and therefore denies the allegations.

68.     Plaintiff **NANCY JONES** is a resident of Georgia. Plaintiff was employed at KPMG in its Atlanta, Georgia office as a Senior Associate from November 2010 until her constructive discharge from the Company in June 2014.

**ANSWER**

KPMG admits that Plaintiff Nancy Jones ("Ms. Jones") was employed in its Atlanta, Georgia office as a Senior Associate from November 2010 to July 2014. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Jones's state of residence, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 68 of the FAC.

69.     Plaintiff **CAROL MURRAY** is a resident of Washington. Plaintiff is a current employee of KPMG and has been employed at KPMG since October 2008 in its Los Angeles, California and Seattle, Washington offices as an Associate, Senior Associate, and, since 2013, as a Manager.

**ANSWER**

KPMG admits that Plaintiff Carol Murray ("Ms. Murray") has been employed by KPMG since September 2008, that she is currently a Manager in KPMG's Seattle office and that she previously held the positions of Associate and Senior Associate and worked in KPMG's Los Angeles office. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Murray's state of residence, and therefore denies the allegations.

70.     Defendant **KPMG LLP** ("KPMG" or the "Company") is an audit, tax, and advisory services firm headquartered in New York, New York. It is the U.S. member firm of KPMG International, which is headquartered in the Netherlands. In 2011, KPMG reported global revenues of $22.7 billion.

**ANSWER**

KPMG admits that it is an audit, tax and advisory firm headquartered in New York, New York and that it is the U.S. member firm of KPMG International Cooperative, which is headquartered in the Netherlands. KPMG denies the remainder of the allegations set forth in paragraph 70 of the FAC.

**IV.     FACTUAL ALLEGATIONS**

**A.     PLAINTIFF DONNA KASSMAN**

71.     Ms. Kassman suffered discrimination in pay, denial of promotional opportunities, discrimination as a result of pregnancy, and a hostile work environment. She was ultimately constructively discharged.

**ANSWER**

KPMG denies the allegations set forth in paragraph 71 of the FAC.

72.     In April of 1993, Ms. Kassman began working at KPMG as an Associate. She had previously earned her Bachelor of Arts in Political Science from the University of Michigan in 1989 and completed her law degree in 1992.

**ANSWER**

KPMG admits that Ms. Kassman began working at KPMG as an Associate in April 1993 and that she purports to hold certain degrees and qualifications. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Kassman's educational history, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 72 of the FAC.

73.     For promotions from entry-level Associates to Senior Managers, KPMG uses a standard career progression track, which advances employees on a schedule of approximately every two years in the following order: Associate, Senior Associate, Manager, and Senior Manager.

**ANSWER**

KPMG denies the allegations set forth in paragraph 73 of the FAC.

74.     In the years after Ms. Kassman began working at KPMG, she steadily progressed along the Company's standard career track. In 1995, Ms. Kassman became a Senior Associate, and two years later, in 1997, she advanced to the position of Manager. In 1999, Ms. Kassman went on to become a Senior Manager – the position in which she would be stuck for eleven years, before ultimately being pushed out of the Company.

**ANSWER**

KPMG admits that Ms. Kassman became a Senior Associate in 1995, that she became a Manager in 1997, that she became a Senior Manager in 1999, and that she remained in the position of Senior Manager for approximately 11 years. KPMG denies the remainder of the allegations set forth in paragraph 74 of the FAC.

75.     Throughout her seventeen-year tenure, Ms. Kassman demonstrated stellar performance at KPMG.

**ANSWER**

KPMG admits that Ms. Kassman was employed by KPMG for approximately 17 years. KPMG denies the remainder of the allegations set forth in paragraph 75 of the FAC.

76.     In Ms. Kassman's Fiscal Year 2006 Year End Performance Review ("Review"), Principal Schapiro, to whom she directly reported, wrote that she "contributed greatly to the overall success of the practice" and that "staff look to her for guidance."

**ANSWER**

KPMG admits that Ms. Kassman reported directly to Scott Schapiro at the time that she received her Fiscal Year End Performance Review, admits that Ms. Kassman received a Fiscal Year 2006 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 76 of the FAC.

77.     The following year, in Ms. Kassman's 2007 Review, he wrote that Plaintiff "had a very strong year."

**ANSWER**

KPMG admits that Ms. Kassman received a Fiscal Year 2007 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 77 of the FAC.

78.     Principal Schapiro wrote in Ms. Kassman's 2008 Review that she "had a very successful FY 2008, and ha[d] shown excellent leadership abilities."

**ANSWER**

KPMG admits that Ms. Kassman received a Fiscal Year 2008 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 78 of the FAC.

79.     He wrote in Ms. Kassman's 2009 Review that she "did all the right things from a business perspective to be successful," that she "ha[d] been a leader in the office, and ha[d] been forward thinking."

**ANSWER**

KPMG admits that Ms. Kassman received a Fiscal Year 2009 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 79 of the FAC.

80.     In Ms. Kassman's 2010 Review, Principal Schapiro wrote that she again had "a very strong year."

**ANSWER**

KPMG admits that Ms. Kassman received a Fiscal Year 2010 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 80 of the FAC.

81.    Upon information and belief, KPMG paid Ms. Kassman less than similarly-situated male employees, despite her exemplary performance; she was paid at a lower rate than men for equal work on jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions.

**ANSWER**

KPMG denies the allegations set forth in paragraph 81 of the FAC.

82.    Ten years after joining KPMG, Ms. Kassman went on maternity leave in May 2003, just before the birth of her first child in June 2003.

**ANSWER**

KPMG admits that Ms. Kassman began employment with KPMG in April 1993, began a maternity leave in May 2003 and that she reports to have given birth to a child thereafter. KPMG denies the remainder of the allegations set forth in paragraph 82 of the FAC.

83.    While Ms. Kassman was on maternity leave, KPMG abruptly cut her base salary by $20,000 because she was paid "too much." Similar cuts were not made to male counterparts' salaries, and as a result, Ms. Kassman was and continued to be paid $20,000 less than her male counterparts during her tenure at KPMG.

**ANSWER**

KPMG admits that Ms. Kassman's salary was decreased by $20,000 in 2003, and avers that the salaries of other employees in her practice group, including male employees, also were reduced at the same time. KPMG denies the remainder of the allegations set forth in paragraph 83 of the FAC.

84.    For example, Senior Manager John Montgomery's pay was not cut in May 2003 or later as a Senior Manager, even though he had joined KPMG after Ms. Kassman, worked under the same Partner, and worked on engagements for similar clients. He performed the same tasks as Ms. Kassman, and upon information and belief, did so with no greater skill or effort than Ms. Kassman, achieving a substantially equivalent level of performance.

**ANSWER**

KPMG admits that John Montgomery joined KPMG after Ms. Kassman joined, and that Mr. Montgomery's pay (which was substantially less than Ms. Kassman's) was not cut in 2003. KPMG denies the remainder of the allegations set forth in paragraph 84 of the FAC.

85.    KPMG cited no business justification for slashing her salary. When Ms. Kassman asked her manager at the time, Gary Rosen ("Partner Rosen"), Partner in Charge of the Northeast State and Local Tax ("SALT") Practice, to reconsider the cut in her salary, he said that she should consider some of her past salary "a loan," implying that she had not earned it for exemplary performance. He also indicated that Ms. Kassman did not need the money because

she had a nice engagement ring. Upon information and belief, KPMG disparately paid Ms. Kassman because of her gender and her status as a working mother.

**ANSWER**

KPMG denies the allegations set forth in paragraph 85 of the FAC.

86.     In addition, KPMG discriminates against flex time workers – the overwhelming majority of whom are women – by reducing their salaries without a commensurate reduction in responsibilities. While Ms. Kassman performed precisely the same tasks after she became a "flex time" employee as male Senior Managers in SALT with her experience level, she received less in salary than male and non-caretaking Senior Managers. These conditions did not change from when she began the flex time plan after returning from maternity leave in 2004 until she departed from the Company in 2010.

**ANSWER**

KPMG denies the allegations set forth in paragraph 86 of the FAC.

87.     Upon information and belief, Ms. Kassman was not the only woman to suffer the effects of the compensation policies and practices at KPMG, which lacked sufficient standards and quality controls, transparency, implementation metrics, and opportunities for redress that would otherwise have ensured there was no disparate impact on female professionals.

**ANSWER**

KPMG denies the allegations set forth in paragraph 87 of the FAC.

88.     Upon information and belief, KPMG management systematically took advantage of the flaws in the system by paying female employees less than similarly situated male employees. KPMG underpays female Professionals at all levels throughout the Company relative to similarly situated male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 88 of the FAC.

89.     Despite Ms. Kassman's stellar qualifications and performance, KPMG denied her promotions in favor of lesser-qualified male employees. The Company's evaluation and promotion systems' insufficient quality standards and controls and implementation metrics, coupled with their lack of transparency and opportunities for redress, had a discriminatory and disparate impact on women and caretaking employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 89 of the FAC.

90.     Throughout Ms. Kassman's last decade as a Senior Manager at KPMG, she consistently expressed interest in a promotion to Managing Director and ultimately to Partner. After several strong performance years and numerous requests for advancement, Principal Schapiro finally told Ms. Kassman she was next in line for a promotion in the employment tax practice. In December 2008, Principal Schapiro confirmed that Ms. Kassman would be put up for a promotion to Tax Managing Director effective for the Fiscal Year 2009/2010 beginning October 1, 2009. The promotion decision was to be made during the summer of 2009. However, Ms. Kassman was not promoted that year, despite her strong performance.

**ANSWER**

KPMG admits that Ms. Kassman expressed interest in a promotion to Managing Director, that Mr. Schapiro sought to put Ms. Kassman forward for promotion in 2009 (to take effect in Fiscal Year 2010, beginning October 1, 2009), and that Ms. Kassman was not promoted in 2009. KPMG denies the remainder of the allegations set forth in paragraph 90 of the FAC.

91.     In early 2009, Ms. Kassman successfully completed the formal Leadership Evaluation & Assistance Program ("LEAP") for the KPMG SALT Practice in preparation for her promotion to Managing Director. According to Ms. Kassman's 2009 Review, she "successfully presented and navigated the SALT LEAP program and received favorable reviews." She presented to the National Partner in Charge of the SALT Practice, Tim Gillis, who told her that she had his vote.

**ANSWER**

KPMG admits that Ms. Kassman completed the Leadership Evaluation and Assistance Program ("LEAP") for KPMG's SALT practice in early 2009, that Ms. Kassman received a Fiscal Year 2009 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 91 of the FAC.

92.     In mid-2009, Principal Schapiro again confirmed that Ms. Kassman was next in line for a promotion in her practice. On at least one occasion in or around summer 2009, Ben Garfunkel ("Partner Garfunkel"), the National Partner in Charge of IES, echoed Principal Schapiro's comments by stating that he knew Ms. Kassman was "in queue" to make Managing Director. Ms. Kassman's status was specifically a point of discussion with Partner Garfunkel since she was leaving the SALT Practice (where she was presented for promotion) and entering the IES practice, of which he was the leader. Ms. Kassman wanted confirmation that she would not lose her "next in line" status by switching practices.

**ANSWER**

KPMG admits that Ben Garfunkel was the National Partner in Charge of IES in 2009 and that Ms. Kassman transferred to IES in October 2009. KPMG denies the remainder of the allegations set forth in paragraph 92 of the FAC.

93.     In Ms. Kassman's 2009 Review, Principal Schapiro wrote that "an effort was made to promote Donna to TMD effective fy '10…," but explained that it did not happen because of the economy. Principal Schapiro also told Ms. Kassman that no one would receive a promotion to Managing Director at that time due to the economy, but that she would remain first in line.

**ANSWER**

KPMG admits that Ms. Kassman received a Fiscal Year 2009 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 93 of the FAC.

94.     Shortly after Ms. Kassman was "put-up" for promotion and proceeded through the formal channels set up by the SALT Practice (*i.e.*, the LEAP program) in 2009, Senior Manager Montgomery and his direct subordinate, Associate Stone, lodged unfounded complaints about her. Although Ms. Kassman had never received a similar complaint in her seventeen years with KPMG, Associate Stone and Senior Manager Montgomery claimed she was considered "unapproachable" and "too direct," a thinly-veiled gender-based criticism, particularly given the abundance of "direct" male personalities in the senior leadership of KPMG.

**ANSWER**

KPMG admits that Stone and Montgomery complained about Ms. Kassman. KPMG denies the remainder of the allegations set forth in paragraph 94 of the FAC.

95.     As a result of Associate Stone's and Senior Manager Montgomery's unfounded and gendered complaints, KPMG removed Ms. Kassman from the promotion track sometime in late 2009 or early 2010, when a candidate is typically put up for promotion.

**ANSWER**

KPMG denies the allegations set forth in paragraph 95 of the FAC.

96.     In December 2009, Ms. Kassman again discussed with Principal Schapiro whether she would be put up for the Managing Director position for the 2010/2011 fiscal year beginning October 1, 2010. Although Principal Schapiro had previously assured Ms. Kassman that she was next in line for the promotion, he claimed that he "[didn't] know anything about making Tax Managing Director in the IES practice," and instead referred Ms. Kassman to Principal Brown.

**ANSWER**

KPMG admits that Mr. Shapiro recommended that Ms. Kassman speak with Ms. Brown for career advice. KPMG denies the remainder of the allegations set forth in paragraph 96 of the FAC.

97.     At Principal Schapiro's suggestion, Ms. Kassman met with Principal Brown in January 2010 to discuss her career. When Ms. Kassman brought up the Managing Director

position, Principal Brown said that Ms. Kassman's name had never come up, that she was not on the list of candidates for that year, and that it was too late for her name to be submitted. Principal Brown later acknowledged that she had lied about the list of candidates being closed.

**ANSWER**

KPMG admits that Ms. Kassman met with Principal Patricia Brown in January 2010, that during that meeting Ms. Kassman discussed her career, and that Ms. Brown told Ms. Kassman that she was not being considered for Tax Managing Director for that year. KPMG denies the remainder of the allegations set forth in paragraph 97 of the FAC.

98.     In April 2010, Ms. Kassman learned from a colleague that Senior Manager Montgomery was up for promotion to Managing Director for the 2010/2011 Fiscal Year – the same position that had previously been slated for Ms. Kassman. Principal Schapiro had apparently – without informing Ms. Kassman – removed her from the promotion track and replaced her with Senior Manager Montgomery, even though he had a shorter tenure with the Company, fewer years as Senior Manager, and less professional experience overall than Ms. Kassman by several years.   Upon information and belief, no male Senior Managers were removed from the Managing Director track in this abrupt fashion.

**ANSWER**

KPMG denies the allegations set forth in paragraph 98 of the FAC.

99.     Ms. Kassman was a victim of Associate Stone's and Senior Manager Montgomery's discriminatory campaign to derail a female employee's advancement to Managing Director – an effort that KPMG's partnership not only failed to stop, but actively carried out.

**ANSWER**

KPMG denies the allegations set forth in paragraph 99 of the FAC.

100.    Upon information and belief, KPMG has perpetrated and/or condoned similar discriminatory campaigns to derail the careers of other successful female Professionals who were poised to assume positions of greater authority and influence within the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 100 of the FAC.

101.    Upon information and belief, KPMG's performance evaluation system's insufficient quality standards and controls and implementation metrics, coupled with its lack of transparency and opportunities for redress, had a discriminatory and disparate impact on women and caretaking employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 101 of the FAC.

102.    Upon information and belief, KPMG management systematically took advantage of the flaws in the system and often undervalued, mismeasured, or otherwise inaccurately captured performance to the particular detriment of women and mothers. In addition, unfounded criticism can be included and legitimate criticism given undue weight. Within this flawed system, leave for pregnancy and caretaking responsibilities can constitute a negative factor in female Professionals' evaluations, compensation decisions and promotion considerations at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 102 of the FAC.

103.    Moreover, KPMG's flawed promotion practices consistently result in males being promoted more rapidly and assigned more frequently to higher positions than women across the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 103 of the FAC.

104.    From 2003 until her constructive discharge in 2010, KPMG discriminated against Ms. Kassman based on her gender due to her caregiving responsibilities as a working mother. Because of Ms. Kassman's status as a working mother, KPMG continuously subjected her to disparate treatment, and also made adverse decisions concerning her employment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 104 of the FAC.

105.    From 1993 until 1999, before Ms. Kassman had her children, she was promoted on KPMG's progressive career track from Associate to Senior Manager. However, after she had her first child in 2003, her advancement abruptly stopped. She was not promoted after she became a Senior Manager and remained in this position for over ten years as she watched men and individuals without primary caretaking responsibilities—who shared her level of experience, responsibility and skill—proceed to Managing Director and Partner positions.

**ANSWER**

KPMG admits that from 1993 to 1999, Ms. Kassman was promoted from Associate to Senior Associate to Manager to Senior Manager, and that Ms. Kassman remained in the Senior Manager position from 1999 until the end of her employment with KPMG. KPMG denies the remainder of the allegations set forth in paragraph 105 of the FAC.

106.    Upon information and belief, there were only a handful of female managers with small children in the Northeast SALT Practice during Ms. Kassman's tenure with the Company. Ms. Kassman was the first in her practice to work a flexible schedule.

**ANSWER**

KPMG denies the allegations set forth in paragraph 106 of the FAC.

107.    Even though Ms. Kassman hit the glass ceiling shortly after having children, KPMG and Principal Schapiro touted her as a role model for working mothers. In practice, however, KPMG and Principal Schapiro in particular did not support Ms. Kassman's efforts to be a successful working mother.

**ANSWER**

KPMG denies the allegations set forth in paragraph 107 of the FAC.

108.    In addition to slashing Ms. Kassman's salary while she was on maternity leave, KPMG took a number of adverse employment actions against her. For example, in March of 2004, shortly after Ms. Kassman's maternity leave ended, Principal Schapiro gave Ms. Kassman her first negative review at the Company for not meeting her goals. Instead of taking her leave into account in measuring Ms. Kassman's goal attainment for the year, Principal Schapiro penalized her for it.

**ANSWER**

KPMG denies the allegations set forth in paragraph 108 of the FAC.

109.    As a further penalty for taking maternity leave, Principal Schapiro put Plaintiff on a 60-day PIP, increasing her goals upon her return from maternity leave. Shortly before being slapped with a PIP, Ms. Kassman told Principal Schapiro that she planned to move to a flexible work schedule. Principal Schapiro placed Ms. Kassman's PIP in between papers on her desk (including the flexible plan paperwork that she was preparing to submit), seemingly in an attempt to avoid drawing attention to the PIP.

**ANSWER**

KPMG admits that Ms. Kassman was put on a Performance Improvement Plan in March 2004, and that also in March 2004, Ms. Kassman informed Schapiro that she planned to move to a reduced work schedule. KPMG denies the remainder of the allegations set forth in paragraph 109 of the FAC.

110.    Before placing Ms. Kassman on a PIP, Principal Schapiro had never indicated to Ms. Kassman that her performance was unsatisfactory or that she was in jeopardy of being placed on a PIP. Shocked and dismayed by this unexpected development, Ms. Kassman spoke to Sharon Katz-Pearlman, another Partner at the Company, who confirmed that there was nothing in Ms. Kassman's performance record that would support the imposition of a PIP before she had her baby.

**ANSWER**

KPMG denies the allegations set forth in paragraph 110 of the FAC.

111.   Two years later, Principal Schapiro again penalized Ms. Kassman for taking maternity leave when she had her second child. He again held her to higher standards than her peers after returning from leave. He also wrote in her 2006 Review that her work was "somewhat abbreviated due to Donna's maternity leave."

**ANSWER**

KPMG admits that Ms. Kassman received a Fiscal Year 2006 Year End Performance Review and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 111 of the FAC.

112.   From 2004 until her constructive discharge in 2010, Ms. Kassman worked a reduced schedule under KPMG's flexible schedule policy. Although the Company reduced Ms. Kassman's pay in proportion to her reduced schedule, it held her to the same or higher performance standards than full-time employees. If she did not meet full-time standards on her reduced schedule, Ms. Kassman was penalized and considered less committed to her career. Her flexible schedule essentially acted as a "penalty" on her employment opportunities at KPMG.

**ANSWER**

KPMG admits that Ms. Kassman worked a reduced schedule from 2004 until 2010, and that KPMG reduced Ms. Kassman's pay in proportion to her reduced schedule. KPMG denies the remainder of the allegations set forth in paragraph 112 of the FAC.

113.   While Ms. Kassman was working on a reduced schedule, KPMG essentially expected her to do the job of a full-time Senior Manager in fewer hours and for less pay. For example, her job requirements related to marketing, teaching, speaking, coaching, administrative, and client development were the same job requirements of full-time Senior Managers. When KPMG evaluated Ms. Kassman's work performance, the Company measured her against the requirements of a full-time employee. Indeed, both of Plaintiff's direct supervisors – Principal Schapiro and Partner Rosen – acknowledged this by writing in her LEAP Nomination Form, "Although she works a reduced hourly schedule, she has the same responsibilities as every other Senior Manager in the Practice."

**ANSWER**

KPMG admits that Scott Schapiro and Gary Rosen were the sponsoring partners of Ms. Kassman's nomination to the LEAP program, and KPMG refers to Ms. Kassman's LEAP Nomination Form for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 113 of the FAC.

114.   Upon information and belief, other female Professionals who took maternity leave and had caregiving responsibilities faced similar systemic barriers to equal employment opportunities at KPMG. In particular, Ms. Kassman's department, the SALT practice, had a poor

track record of retaining working mothers. KPMG fired several working mothers within the SALT practice, including one who was pregnant, and forced others out of the Company under circumstances similar to Ms. Kassman's.

**ANSWER**

KPMG denies the allegations set forth in paragraph 114 of the FAC.

115.   Upon information and belief, taking leave or hours reductions for pregnancy and caretaking reasons is considered a negative factor in employees' evaluations, compensation decisions and promotion considerations, resulting in an adverse impact on women and mothers at the Company. The Company's policies and procedures regarding evaluation, compensation and promotion lack the transparency, standards, quality controls, implementation metrics, and means for redress necessary to prevent this disparate impact on female Professionals who are pregnant or mothers.

**ANSWER**

KPMG denies the allegations set forth in paragraph 115 of the FAC.

116.   KPMG's overwhelmingly female flexible workers are denied not only the pay they deserve, but also various other Company benefits. For example, in early 2010, the Company's Stamford office adopted a policy requiring employees to be in the office a minimum of three days per week in order to qualify for office space. This policy had a disparate impact on female employees such as Ms. Kassman, who had three "in-office" days (per her flex time agreement), one of which was typically spent out of the office generating business.

**ANSWER**

KPMG admits that, due to space constraints, KPMG's Stamford, Connecticut office adopted a policy, and refers to the applicable hoteling policy for a complete statement of its contents; and that in early 2010, Ms. Kassman typically worked out of the Stamford office two days per week. KPMG denies the remainder of the allegations set forth in paragraph 116 of the FAC.

117.   In addition, because most of KPMG's relationship-building activities occur after hours, employees with primary caregiving responsibilities – the majority of whom are women – are at a disadvantage in their career development. For example, when Ms. Kassman expressed concern to Partner Rosen about her $20,000 salary cut, he suggested that she socialize at KPMG's weekly happy hours as a way to ingratiate herself with the Company's leadership and advance her career. Ms. Kassman explained that, because she had young children, she could not attend happy hours, but was more than willing to meet with people over lunch, breakfast or coffee.

**ANSWER**

KPMG denies the allegations set forth in paragraph 117 of the FAC.

118.   The few women who have advanced to the partnership ranks at KPMG have done so by sacrificing their personal lives and abandoning any semblance of work-life balance. For example, KPMG frequently touted a Partner in the Atlanta office, Tammy Hunter, as a role model for other working mothers because she called the Company to discuss work matters on her way to the delivery room to give birth to her child. The Company apparently viewed this as a level of dedication to which other working mothers should aspire.

**ANSWER**

KPMG admits that an individual named Tammy Hunter was a Partner in its Atlanta office. KPMG denies the remainder of the allegations set forth in paragraph 118 of the FAC.

119.   Aside from these rare exceptions, working mothers have been unable to make significant inroads at KPMG – and are unlikely to do so given the Company's discriminatory culture, which, in combination with insufficiently designed and articulated systems of evaluation, compensation, development, and promotion, produces an adverse impact on working mothers. In May 2010, Ms. Kassman was at dinner during an American Payroll Association conference with several colleagues, including the Partner in charge of the West IES practice, Ray Pascuzzi ("Partner Pascuzzi"). At this dinner, Partner Pascuzzi proclaimed that "part time women work exactly their x hours and not a minute over," that "you know you can't make them work anymore," and that "you know they're not going to get anywhere."

**ANSWER**

KPMG denies the allegations set forth in paragraph 119 of the FAC.

120.   From late 2009 until her constructive discharge in October 2010, Ms. Kassman suffered increasing harassment and unequal treatment at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 120 of the FAC.

121   Beginning in October 2009, Associate Stone began complaining that he "didn't like [Ms. Kassman's] tone." Senior Manager Montgomery agreed with these complaints. Together, these two men complained that Ms. Kassman was "unapproachable" and "too direct," a gender-based criticism, particularly given Associate Stone's and Senior Manager Montgomery's "direct" personalities, which are embraced by senior leadership at KPMG. Principal Schapiro, her Performance Manager, conveyed these unfounded criticisms to Ms. Kassman directly in informal evaluations. Nonetheless, KPMG did not correct Associate Stone's or Senior Manager Montgomery's discriminatory behavior.

**ANSWER**

KPMG admits that Associate Stone made complaints about Ms. Kassman's conduct and that Senior Manager Montgomery also identified certain issues. KPMG denies the remainder of the allegations set forth in paragraph 121 of the FAC.

122.    In addition to complaining about Ms. Kassman's "tone," Associate Stone also complained about her flexible work schedule. Consistent with the work-life balance priorities marketed at KPMG, the Company had approved Ms. Kassman's schedule after the birth of her first child. However, Associate Stone disapproved of Ms. Kassman's flexible work schedule and complained – again, without basis – that it forced him to "work harder" from Monday until Thursday.

**ANSWER**

KPMG denies the allegations set forth in paragraph 122 of the FAC.

123.    KPMG did nothing to correct Associate Stone's discriminatory actions, even though Principal Schapiro told Ms. Kassman in March 2010 that Associate Stone "might have an issue working with women." Moreover, when Ms. Kassman complained about Associate Stone's conduct, Principal Schapiro replied that he did not know if Associate Stone was "unprofessional, stupid or vicious." Despite Principal Schapiro's admission regarding Associate Stone's inappropriate and discriminatory behavior, upon information and belief, KPMG took no steps to respond to Ms. Kassman's concerns.

**ANSWER**

KPMG denies the allegations set forth in paragraph 123 of the FAC.

124.    Instead of disciplining Associate Stone, KPMG constantly reprimanded Ms. Kassman as a result of Associate Stone's and Senior Manager Montgomery's gender-based criticisms. For example, KPMG forced Ms. Kassman to participate in an excessive number of stressful meetings and intense interrogations, often occurring on a weekly basis, from late 2009 until mid-2010. During the meetings, Ms. Kassman was questioned about her "tone" and other gendered complaints like her "direct" approach. This harassment and unequal treatment was extremely disruptive and distressing to Ms. Kassman both personally and professionally.

**ANSWER**

KPMG denies the allegations set forth in paragraph 124 of the FAC.

125.    After months of meetings, the Company encouraged Ms. Kassman to consult with a "coach" to resolve issues concerning Associate Stone's and Senior Manager Montgomery's discriminatory complaints and harassment. By issuing such a reprimand to Ms. Kassman, KPMG chose to believe these two men's unfounded complaints over her longstanding "very strong" performance and collaborative work style. At the time, Associate Stone – who was widely regarded as an "asshole" – had only been at the Company for approximately sixteen months, whereas Ms. Kassman had been there for sixteen years.

**ANSWER**

KPMG admits that it encouraged Ms. Kassman to consult with a coach to help with her professional development. KPMG denies the remainder of the allegations set forth in paragraph 125 of the FAC.

126.    Instead of disciplining Mr. Stone for his discriminatory conduct, KPMG promoted Mr. Stone to a Senior Associate position and recently promoted him to Manager.

**ANSWER**

KPMG admits that Jonathan Stone was promoted to Senior Associate and then to Manager. KPMG denies the remainder of the allegations set forth in paragraph 126 of the FAC.

127.    Instead of resolving Ms. Kassman's complaints of discrimination, KPMG removed her from the promotion track as a result of the gender-biased criticisms leveled against her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 127 of the FAC.

128.    When the work environment in KPMG's New York office became unbearable, Ms. Kassman sought to work only from the Company's Stamford office in order to avoid her tormentors. KPMG temporarily granted this request in October 2009, only to effectively rescind the option six months later. Per Ms. Kassman's flex time agreement, she spent three days "in-office" and two working from home. However, at least one of Ms. Kassman's "in-office" days was typically spent out of the office with clients.

**ANSWER**

KPMG admits that it permitted Ms. Kassman to work from its Stamford, Connecticut office (at her request) beginning in approximately October 2009, and that Ms. Kassman typically worked out of the Stamford office two days per week. KPMG denies the remainder of the allegations set forth in paragraph 128 of the FAC.

129.    In early 2010, the Stamford office adopted a policy requiring employees to be "in the office" a minimum of three days per week in order to qualify for office space. Accordingly, the Company forced her to vacate her Stamford office in April 2010. In lieu of an office, KPMG suggested Ms. Kassman could make due with four drawers.

**ANSWER**

KPMG admits that due to space constraints, KPMG's Stamford, Connecticut office adopted a policy and refers to the applicable hoteling policy for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 129 of the FAC.

130.    The loss of office space in Stamford made it considerably harder for Ms. Kassman to perform her work each day. For example, she had to transport and rearrange her work materials and supplies, which was time-consuming and increased her escalating stress level. Moreover, it signified to her colleauges and subordinates that her status within KPMG was diminished, particularly because multiple offices remained unoccupied.

**ANSWER**

KPMG denies the allegations set forth in paragraph 130 of the FAC.

131. Despite available office space, Ken Seal, the Partner in charge of the Stamford office, refused to allow Ms. Kassman to retain an office. The only alternative was for Ms. Kassman to return to a hostile work environment in New York.

**ANSWER**

KPMG admits that Ken Seel was the Managing Partner of its Stamford, Connecticut office in 2010, and that pursuant to Stamford office policy Ms. Kassman was not permitted to retain a permanent office at the Stamford location. KPMG denies the remainder of the allegations set forth in paragraph 131 of the FAC.

132. Thus, KPMG ignored and/or failed to respond to repeated and escalating complaints and concerns regarding discrimination and retaliation and provided her with the Hobson's choice of having no real place at KPMG or returning to the discriminatory environment which KPMG refused to address.

**ANSWER**

KPMG denies the allegations set forth in paragraph 132 of the FAC.

133. These accumulating incidents of harassment, increased scrutiny, and marginalization negatively altered the terms and conditions of Ms. Kassman's employment at KPMG, and caused her significant stress in both her professional and personal life.

**ANSWER**

KPMG denies the allegations set forth in paragraph 133 of the FAC.

134. Upon information and belief, what Human Resources and Ethics and Compliance policies and procedures exist at KPMG, they lack meaningful quality controls, standards, implementation metrics, and means of redress. Concerns about discrimination made to supervising staff and HR itself are allowed to go unaddressed, or worse, to result in further or increased discrimination and retaliation.

**ANSWER**

KPMG denies the allegations set forth in paragraph 134 of the FAC.

135. After Ms. Kassman complained about the harassment and unequal treatment by Associate Stone, Senior Manager Montgomery, and Principal Schapiro, KPMG retaliated against her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 135 of the FAC.

136.    Ms. Kassman complained to both the Office of Ethics and Compliance and the Office of General Counsel in April 2009 about the ongoing discriminatory treatment towards her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 136 of the FAC.

137.    Principal Sweeney, the Principal in Charge of the Office of Ethics and Compliance, told Ms. Kassman, "This is three men ganging up on a woman. We've had it before."

**ANSWER**

KPMG admits that Vicki Sweeney was the Principal in Charge of the Office of Ethics and Compliance in 2010. KPMG denies the remainder of the allegations set forth in paragraph 137 of the FAC.

138.    However, instead of addressing the discrimination, the Office of Ethics and Compliance suggested that Ms. Kassman try to relocate to another position within KPMG or leave the Company with a "package." On one occasion, Principal Sweeney suggested that Ms. Kassman go out on leave for emotional distress, noting that many female employees had done so in the past under similar circumstances.

**ANSWER**

KPMG denies the allegations set forth in paragraph 138 of the FAC.

139.    The Office of General Counsel was equally ineffective in addressing Ms. Kassman's complaints of discrimination. After investigating the matter (through David Burns of Firmwide Security) – and finding the facts undisputed – it simply referred Ms. Kassman to Human Resources because it was unable to come up with an acceptable solution.

**ANSWER**

KPMG denies the allegations set forth in paragraph 139 of the FAC.

140.    Shortly thereafter, Ms. Kassman spoke with Keri Fleming, Human Resources Associate Director, East Region Tax, about the ongoing discrimination and harassment she was experiencing. Together, they decided that Human Resources would be Ms. Kassman's mouthpiece to Principal Schapiro because Ms. Kassman would physically shake every time he called her.

**ANSWER**

KPMG admits that in 2010, Keri Fleming was the Associate Director of Human Resources for the Tax Northeast area, and that Ms. Kassman spoke with Ms. Fleming regarding wanting to be moved to a different part of KPMG. KPMG denies the remainder of the allegations set forth in paragraph 140 of the FAC.

141.    To minimize contact with her harassers, Ms. Kassman decided that she would try to transfer to another position within KPMG, even if it meant taking a pay cut, assuming an administrative position or having to transfer offices. Human Resources assured Ms. Kassman that it would help with this transition, but failed to follow through on its promise.

**ANSWER**

KPMG admits that Keri Fleming in Human Resources spoke with Ms. Kassman about Ms. Kassman wanting to be moved to a different part of KPMG. KPMG denies the remainder of the allegations set forth in paragraph 141 of the FAC.

142.    Moreover, even though Ms. Kassman told Human Resources that she did not want to discuss the matter any further with Principals Schapiro and Brown, she continued to receive calls from them. From the tenor of those conversations, it was clear to Ms. Kassman that Principals Schapiro and Brown thought she simply needed time to "cool off" and would eventually resume working with Senior Manager Montgomery and Associate Stone.

**ANSWER**

KPMG denies the allegations set forth in paragraph 142 of the FAC.

143.    After Principal Schapiro was informed of Ms. Kassman's complaints, she faced a number of adverse employment actions. KPMG reprimanded her with a "coach," forced her to sit through numerous meetings and interrogations in response to Senior Manager Montgomery's and Associate Stone's gender-based criticisms of her, and ultimately removed her from the promotion track.

**ANSWER**

KPMG denies the allegations set forth in paragraph 143 of the FAC.

144.    By contrast, KPMG did not discipline Associate Stone, Senior Manager Montgomery, or Principal Schapiro in any way. In fact, the Company promoted Associate Stone and, adding insult to injury, "put up" Senior Manager Montgomery for the Managing Director position once slotted for Ms. Kassman.

**ANSWER**

KPMG admits that Jonathan Stone was promoted from Associate to Senior Associate and that KPMG did not discipline Stone, Montgomery or Shapiro because they did not engage in any discriminatory conduct. KPMG denies the remainder of the allegations set forth in paragraph 144 of the FAC.

145.    Ms. Kassman was forced to end her career at KPMG on October 1, 2010 because the Company had deliberately made her working conditions so intolerable that she was compelled to resign involuntarily. Although it had been her goal to continue at KPMG and eventually reach the Partnership level, the escalating harassment and hostility she faced from her peers and supervisors – to which HR turned a blind eye – crushed these hopes. It became clear to

her that not only had her career stalled, but that she was being marginalized and ultimately pushed out of the Company against her will. Indeed, the only options provided to her by HR and Ethics and Compliance were to continue working with her harassers or to leave the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 145 of the FAC.

146.    Associate Stone and Senior Manager Montgomery's unfounded criticisms of Ms. Kassman, which were exacerbated and reinforced by the "coaching" and interrogations KPMG forced her to attend, led her to doubt her self-worth and, more important, highlighted what little value the company to which she had dedicated her professional life placed on her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 146 of the FAC.

147.    As a result of KPMG's campaign of discrimination and harassment, Ms. Kassman's work environment became unbearable. She could barely eat or sleep, and she would physically shake when she approached the KPMG building or when Principal Schapiro called her. To avoid running into her tormentors when she worked from the New York office, Ms. Kassman made a habit of taking the back elevators at work.

**ANSWER**

KPMG denies the allegations set forth in paragraph 147 of the FAC.

148.    Because of her torment and desperation at work, anxiety and depression also spread into her home life. Her relationship with her husband became strained, and she lacked the energy to care for her children. She experienced daily headaches, neck pain, back pain, and weight loss.

**ANSWER**

KPMG denies the allegations set forth in paragraph 148 of the FAC.

149.    Working from the Stamford office was Ms. Kassman's only hope for escaping the intolerable conditions of the New York office, but even there she was both marginalized by her colleagues and physically removed from her office space to a mere set of drawers, all while she was expected to maintain the same responsibilities and performance of other Senior Managers.

**ANSWER**

KPMG denies the allegations set forth in paragraph 149 of the FAC.

150.    On at least five occasions, Ms. Kassman contacted Keri Fleming in HR to request a transfer to a different practice. Although Ms. Kassman was willing to work in any division

other than her current one, HR failed to connect her to any opportunities or otherwise address the ongoing and persistent discrimination.

**ANSWER**

KPMG denies the allegations set forth in paragraph 150 of the FAC.

151.    Because Ms. Kassman's previous experience had taught her that KPMG would not properly address its employees' unlawful conduct, she felt that she had no recourse against the pervasive harassment and discrimination. Her repeated requests for assistance were ignored or resulted in further intimidation, and she was left with the choice of returning to an office where she was made physically ill by the treatment of her co-workers, or working in a diminished and disreputable capacity in Stamford. Losing the right to office space in Stamford while other offices remained unoccupied was demoralizing and physically embodied how she was being pushed out of the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 151 of the FAC.

152.    On October 1, 2010, Ms. Kassman resigned from KPMG, stating in her letter of resignation, "By ignoring my requests to put an end to the discriminatory treatment, KPMG has forced me to either continue to endure an intolerable work environment or end my employment. I therefore have no choice but to leave the Firm."

**ANSWER**

KPMG admits that Ms. Kassman submitted a notice of resignation on October 1, 2010, and refers to Ms. Kassman's resignation letter for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 152 of the FAC.

**B.    PLAINTIFF SPARKLE PATTERSON**

153.    Ms. Patterson suffered discrimination in pay, denial of promotional opportunities, and discrimination as a result of gender, pregnancy, and race. She was ultimately constructively discharged.

**ANSWER**

KPMG denies the allegations set forth in paragraph 153 of the FAC.

154.    KPMG employed Ms. Patterson, an African-American mother of two children, from June 2007 until her constructive discharge from the Company in November 2010.

**ANSWER**

KPMG admits that it employed Ms. Patterson from June 2007 to November 2010, and that Ms. Patterson is African American. KPMG lacks knowledge or information

sufficient to form a belief as to the truth of the allegations regarding Ms. Patterson's familial status, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 154 of the FAC.

155.    In June 2007, Ms. Patterson began working at KPMG as an Associate in Atlanta, first in Federal Tax, then in the IES practice, which she joined in August 2008.

**ANSWER**

KPMG admits the allegations set forth in paragraph 155 of the FAC.

156.    Ms. Patterson proved herself to be an excellent performer.

**ANSWER**

KPMG denies the allegation set forth in paragraph 156 of the FAC.

157.    In her 2008 year-end review, Federal Tax Partner Bernard Cates gave Ms. Patterson a "Strong" rating and wrote that she was "trending towards an EP ['Exceptional'] performance level."

**ANSWER**

KPMG admits that Ms. Patterson received a review in 2008 and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 157 of the FAC.

158.    In Ms. Patterson's October 2008 engagement review, IES Manager Greg Woofter ("Manager Woofter") wrote that Ms. Patterson worked "diligently" and that he was "pleased with [her] progress."

**ANSWER**

KPMG admits that Ms. Patterson received an engagement review in October 2008 and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 158 of the FAC.

159.    In her April 2009 review, Manager Woofter wrote that Ms. Patterson "excelled" and "exceeded [his] expectations," and that he wanted to "continue [Ms. Patterson's] career progression within the IES practice."

**ANSWER**

KPMG admits that Ms. Patterson received an engagement review in April 2009 and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 159 of the FAC.

160.    In her 2009 year-end review, Senior Manager Yozura Yoshida ("Manager Yoshida") gave Ms. Patterson a "Strong" rating and wrote that she was "pr[o]fessional,

commit[t]ed, motivated and eager to learn" and that he "expect[ed] her to continue this positive trend."

**ANSWER**

KPMG admits that Ms. Patterson received a year-end review in 2009 and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 160 of the FAC.

161.    In April 2008 and October 2008, Ms. Patterson received a "Standing Ovation" award with a $500 American Express Card, one of the highest honors within KPMG's "Encore" award system that recognizes employees who go "above and beyond" in their work.

**ANSWER**

KPMG admits that Ms. Patterson received a Standing Ovation award with a $500 American Express Card in October 2008 and that she was nominated for going "above and beyond." KPMG denies the remainder of the allegations set forth in paragraph 161 of the FAC.

162.    In January 2009, Ms. Patterson received a $200 "Bravo" award, another form of recognition within KPMG's "Encore" award system. Manager Yoshida originally nominated her for the "Standing Ovation" award, but as part of KPMG's effort to manage costs, that award was temporarily unavailable. In the award description, Manager Yoshida wrote that Ms. Patterson had "[gone] the extra mile to get things done."

**ANSWER**

KPMG admits that Ms. Patterson received a $200 Bravo award in January 2009 and that the nomination stated it was for "going the extra mile to get things done. KPMG denies the remainder of the allegations set forth in paragraph 162 of the FAC.

163.    Upon information and belief, KPMG paid Ms. Patterson at a lower rate than men, non-caregivers, and non-African Americans for equal work on jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions.

**ANSWER**

KPMG denies the allegations set forth in paragraph 163 of the FAC.

164.    Although Ms. Patterson was a stellar performer, her total compensation was not commensurate with that awarded to similarly-situated male and non-African-American employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 164 of the FAC.

165.    Ms. Patterson regularly performed the duties of a "Senior Associate" starting in early 2009, though she was not compensated accordingly. For example, Ms. Patterson served as an initial point of contact for clients and met with them directly. She managed engagements

**ANSWER**

KPMG denies the allegations set forth in paragraph 165 of the FAC.

166.    These tasks were not usually assigned to individuals classified as "Associates" like Ms. Patterson, but instead were given to "Senior Associates" who received higher pay than Associates. For example, Stephan Rabbitt and Anna Bankston, who were both white and lacked caretaking responsibilities, also worked under Ms. Patterson's same Managers in IES and performed the same tasks as she did. Upon information and belief, their performance was no stronger than Ms. Patterson's. However, Mr. Rabbitt and Ms. Bankston were assigned and paid as "Senior Associates." Upon information and belief, Senior Associates were paid approximately $10,000 more in base salary than Ms. Patterson, and also received a "promotion bonus" along with the title.

**ANSWER**

KPMG admits that Mr. Stephan Rabbitt and Ms. Anna Bankston both report themselves to be Caucasian and reported to the same Managers as Ms. Patterson. KPMG denies the remainder of the allegations set forth in paragraph 166 of the FAC.

167.    In addition, KPMG refused to pay Ms. Patterson for the entire month of June 2010 following her maternity leave.

**ANSWER**

KPMG denies the allegations set forth in paragraph 167 of the FAC.

168.    In February 2010, Ms. Patterson requested a paid sabbatical following her maternity leave from June 1, 2010 to August 15, 2010 to complete two additional courses for her CPA license, which were important for career growth. KPMG routinely approved paid sabbaticals for other employees to travel overseas, go hiking, run triathlons, or pursue other personal interests. While KPMG promptly approved other employees' paid sabbaticals, Partner Gary Lusk ("Partner Lusk"), who reported up the IES chain to Principal Brown and Partner Garfunkel in New York, ignored Ms. Patterson's sabbatical request.

**ANSWER**

KPMG admits that in February 2010, Ms. Patterson requested a paid sabbatical to complete two additional courses for her CPA license. KPMG denies the remainder of the allegations set forth in paragraph 168 of the FAC.

169.    According to KPMG policy, sabbatical requests must either be approved or formally denied with a written explanation. On March 1, 2010, Ms. Patterson consulted HR Tax

Manager Tammy Woodard ("HR Manager Woodard"), who confirmed that Ms. Patterson could proceed with the sabbatical application process if Partner Lusk did not formally deny the request.

**ANSWER**

KPMG admits that KPMG has a sabbatical policy and refers to that policy for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in Paragraph 169 of the FAC.

170.    From March through May 2010, Ms. Patterson went on maternity leave before the birth of her second child. In March 2010, Partner Lusk finally confirmed that he had received Ms. Patterson's sabbatical request and would review it by mid-April. In April 2010, Ms. Patterson followed up about the status of her sabbatical request. Partner Lusk ignored her request. In May 2010, Ms. Patterson again followed up with Partner Lusk, and once again Partner Lusk refused to approve or deny her request.

**ANSWER**

KPMG admits that Ms. Patterson went on maternity leave from March through May 2010, and that in March 2010 Partner Lusk confirmed that he received Ms. Patterson's sabbatical request and that he told Ms. Patterson that he would review the sabbatical request in mid-April. KPMG further admits that in May 2010, Ms. Patterson followed-up with Partner Lusk regarding her sabbatical request. KPMG denies the remainder of the allegations set forth in paragraph 170 of the FAC.

171.    In June 2010, Ms. Patterson did not return to work following her paid maternity leave because her sabbatical request was still pending. Ms. Patterson consulted her informal mentor Partner Milford McGuirt ("Partner McGuirt"), co-chair of KPMG's national African-American Network and one of few African-American partners at the Company. Partner McGuirt confirmed that Ms. Patterson had followed the proper procedure for requesting a sabbatical.

**ANSWER**

KPMG admits that in June 2010 Ms. Patterson did not return to work following her paid maternity leave, and that as of June 2010 Ms. Patterson's sabbatical request had not been approved. KPMG denies the remainder of the allegations set forth in paragraph 171 of the FAC.

172.    In July 2010, after months of ignoring Ms. Patterson's sabbatical request, Partner Lusk verbally denied Ms. Patterson's request and instead approved a sabbatical "beginning" in July 2010. Partner Lusk refused to pay Ms. Patterson for the entire month of June. Thus, while Ms. Patterson's male, non-caregiving, and non-African-American employees received sabbatical pay to pursue recreational activities, Ms. Patterson was only compensated for part of the time she used for career development.

**ANSWER**

KPMG admits that Ms. Patterson's sabbatical request was initially denied and then granted for sabbatical beginning July 1, 2010. KPMG denies the remainder of the allegations set forth in paragraph 172 of the FAC.

173.    Because KPMG employs a compensation system that has insufficient quality standards and controls, and implementation metrics, and lacks transparency and opportunities for redress or challenge, its compensation practices have had a disparate impact on the Company's female employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 173 of the FAC.

174.    Upon information and belief, KPMG management systematically took advantage of the flaws in this system by knowingly and intentionally paying female employees less than similarly situated male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 174 of the FAC.

175.    Upon information and belief, Ms. Patterson was also paid less as compared to non-African-American KPMG employees who performed the same duties or had the same job title as she did within the company. This disparity arose in part because of the disparate career advancement opportunities she was provided in comparison to non-African-American colleagues, described below.

**ANSWER**

KPMG denies the allegations set forth in paragraph 175 of the FAC.

176.    Despite Ms. Patterson's award-winning performance, KPMG denied her a promotion in favor of less-qualified male and non-African-American employees. Although the standard promotion track at KPMG promotes Associates to Senior Associates after two years, Ms. Patterson was never promoted beyond Associate in her three-and-a-half-year tenure with the Company.

**ANSWER**

KPMG admits that Ms. Patterson was not promoted beyond the Associate level during her employment with KPMG. KPMG denies the remainder of the allegations set forth in paragraph 176 of the FAC.

177.    Approximately seven of Ms. Patterson's Associate-level peers in Federal Tax were promoted within two years (*i.e.* by approximately July 2009); all seven were Caucasian and none had children. Ms. Patterson and two other black females were not promoted; Associate

Gayann Greene (also a mother of two small children) resigned, and Associate Avalyn Goodwin was laid off.

**ANSWER**

KPMG admits that Ms. Greene resigned and that Ms. Goodwin was laid off. KPMG denies the remainder of the allegations set forth in paragraph 177 of the FAC.

178.    In July 2009, however, Ms. Patterson was passed up for the promotion usually granted after two years at the Company. Instead, Ms. Bankston and Mr. Rabbitt, who were white and lacked childcare responsibilities, were promoted to Senior Associate. Their educational and experiential backgrounds were equal to Ms. Patterson's, and they performed the same duties as Ms. Patterson under Partner Lusk in IES. Moreover, when Ms. Patterson moved out of the Federal Tax practice and into IES, Partner Lusk had assured her that this change would not affect her progression toward promotion to Senior Associate.

**ANSWER**

KPMG admits that in July 2009 Ms. Bankston and Mr. Rabbit were promoted to Senior Associate. KPMG denies the remainder of the allegations set forth in paragraph 178 of the FAC.

179.    After being passed up in July 2009, Ms. Patterson made Partner Lusk aware of her concern about not being promoted along with her class of Associates. He promised her that she would be promoted the following year, in 2010.

**ANSWER**

KPMG denies the allegations set forth in paragraph 179 of the FAC.

180.    Accordingly, Ms. Patterson believed she was still on track for promotion to Senior Associate in the fall of 2009. Ms. Patterson regularly solicited feedback from her Engagement Managers to ensure she stayed on track for promotion, and her interim reviews in 2009 were excellent.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to what Ms. Patterson believed about whether she was on track for a promotion, and therefore denies the allegations. KPMG admits that she received interim reviews and refers to the source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 180 of the FAC.

181.    However, in November 2009, Ms. Patterson informed Partner Lusk and Manager Yoshida that she was pregnant and would take maternity leave beginning March 2010. Partner Lusk expressed strong disapproval of Ms. Patterson's leave and told her that missing the week before March 15th was like "missing the whole year."

**ANSWER**

KPMG admits that Ms. Patterson informed Partner Lusk and Manager Yoshida that she was pregnant and would take maternity leave beginning March 2010. KPMG denies the remainder of the allegations set forth in paragraph 181 of the FAC.

182.    While Ms. Patterson was on maternity leave in April 2010, Partner Lusk asked Ms. Patterson to take on a lesser role in IES. Partner Lusk suggested that Ms. Patterson return to work "part time" or move to the Japanese practice, even though it was not a good fit for her interests, experience or background. Ms. Patterson told Partner Lusk that neither working part time nor transferring to an entirely new practice was in line with her career goals. Upon information and belief, similarly-situated male employees were not asked to work "part time" or to change practices at this time.

**ANSWER**

KPMG denies the allegations set forth in paragraph 182 of the FAC.

183.    When Ms. Patterson returned from leave and sabbatical in August 2010, Partner Lusk and Manager Yoshida intentionally intimidated Ms. Patterson. In a change from the standard year-end performance review practice where only the Performance Manager would review the evaluation with Ms. Patterson, both men joined together to raise pretextual concerns with her performance. Upon information and belief, there were no other Associates in the Atlanta IES practice whose performance was evaluated by both a Partner and a Manager in their 2010 year-end review.

**ANSWER**

KPMG denies the allegations set forth in paragraph 183 of the FAC.

184.    Specifically, Partner Lusk and Manager Yoshida criticized Ms. Patterson in her fiscal year-end review about concerns that had never been raised before her maternity leave. In Ms. Patterson's interim performance review for the same fiscal year, Manager Yoshida wrote that Ms. Patterson was "eager to perform well" and that she "manage[d] her time well." In her fiscal year-end review, after she returned from maternity leave, Manager Yoshida wrote that Ms. Patterson was "unavailable" and caused her manager to spend more time during the Christmas holidays, though Ms. Patterson had not taken any vacation days during this time and frequently worked overtime. Ms. Patterson had never heard this criticism before her maternity leave.

**ANSWER**

KPMG admits that Ms. Patterson received reviews and refers to the sources for a complete statement as to the contents. KPMG denies the remainder of the allegations set forth in paragraph 184 of the FAC.

185.    In the same fiscal year-end review for 2010, Partner Lusk and Manager Yoshida accused Ms. Patterson of "not mak[ing] herself available to help others" when Ms. Patterson had taken a Saturday, Sunday and Monday out of the office one week in August 2009 to complete the

final portion of her CPA exam. Prior to announcing her pregnancy, both Partner Lusk and Manager Yoshida had approved this time out of the office. Partner Lusk had known Ms. Patterson needed to complete the exam since he accepted her transfer in July 2008 and knew that her passing scores on previous sections would expire if she did not timely complete the final section.

**ANSWER**

KPMG admits that Ms. Patterson received a fiscal year-end review in 2010 and refers to the source for a complete statement of its contents, and further admits that Lusk supported Ms. Patterson obtaining her CPA license. KPMG denies the remainder of the allegations set forth in paragraph 185 of the FAC.

186.    Ms. Patterson's August 2010 review also ignored her notable achievements, such as completing her CPA, achieving all of her performance goals set at the beginning of the fiscal year, being on the Board of Directors for a non-profit organization and participating in KPMG Affinity Networks.

**ANSWER**

KPMG admits that Ms. Patterson received a fiscal year-end review in 2010 and refers to the source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 186 of the FAC.

187.    Upon information and belief, KPMG's performance evaluation system's insufficient quality standards and controls and implementation metrics, coupled with its lack of transparency and opportunities for redress, had a discriminatory and disparate impact on women and caretaking employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 187 of the FAC.

188.    Upon information and belief, KPMG management systematically took advantage of the flaws in the system and often undervalued, mismeasured, or otherwise inaccurately captured performance to the particular detriment of women and mothers. In addition, unfounded criticism can be included and legitimate criticism given undue weight. Within this flawed system, leave for pregnancy and caretaking responsibilities can constitute a negative factor in female Professionals' evaluations, compensation decisions and promotion considerations at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 188 of the FAC.

189.    As a result of the unfounded negative comments in the review, Ms. Patterson was denied a promotion to Senior Associate in 2010 despite her three-year track record of award-winning performance.

**ANSWER**

KPMG denies the allegations set forth in paragraph 189 of the FAC.

190.    In October 2010, Ms. Patterson was removed from her largest client, despite previously winning a "Bravo" award in April 2009 for her work relating to the same client. Partner Lusk and Manager Yoshida told Ms. Patterson she was being removed so she could "get more exposure" to other clients. However, Ms. Patterson was not given work on other clients despite her persistent requests. KPMG generally does not remove employees from their largest clients without clear transfers to new clients.

**ANSWER**

KPMG denies the allegations set forth in paragraph 190 of the FAC.

191.    Partner Lusk and Manager Woofter, both Caucasian males, assigned Associate Sarah Bohman ("Associate Bohman"), a Caucasian recent college graduate with no children, to take Ms. Patterson's place on the client team.

**ANSWER**

KPMG admits that Partner Lusk, Manager Woofter and Associate Bohman report themselves to be Caucasian. KPMG denies the remainder of the allegations set forth in paragraph 191 of the FAC.

192.    This was not the first time Ms. Patterson had been excluded from career-advancement opportunities at KPMG; since the beginning of her employment at KPMG, Ms. Patterson found that white managers would develop friendly, casual relationships with white Associates, but made no such efforts with her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 192 of the FAC.

193.    Upon information and belief, KPMG's development and mentoring systems have insufficient standards, quality controls, and implementation metrics, lack of transparency and opportunities for redress, and have a discriminatory and disparate impact on women and caretaking employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 193 of the FAC.

194.    Further, upon information and belief, KPMG management systematically takes advantage of the flaws in the system, as Partners are allowed to mentor and develop employees selectively, without any standards or guidelines for providing these advancement opportunities.

**ANSWER**

KPMG denies the allegations set forth in paragraph 194 of the FAC.

195.    Upon information and belief, Ms. Patterson was not the only female employee to suffer the effect of the lack of adequate opportunities for mentorship, development (both personal and client-based) and advancement at KPMG. Instead of having transparent and systematic policies and procedures in place based on objective performance and qualifications, how and when such opportunities are provided is shrouded in secrecy, most often to the detriment of women, caregivers, and African-Americans.

**ANSWER**

KPMG denies the allegations set forth in paragraph 195 of the FAC.

196.    Upon information and belief, KPMG's flawed promotion practices consistently result in males and non-caregivers being promoted more rapidly and assigned more frequently to higher-level positions than women across the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 196 of the FAC.

197.    During Ms. Patterson's tenure with KPMG, she was the only employee in the Atlanta IES practice with small children other than Manager Yoshida and Partner Lusk, both of whom had stay-at-home wives or close family members living at home.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 197 of the FAC, and therefore denies the allegations.

198.    KPMG discriminated against Ms. Patterson based on her pregnancy. From July 2007 to November 2009, Ms. Patterson received awards and strong reviews. However, when she became pregnant, she was subjected to hostile comments and her opportunities for advancement disappeared.

**ANSWER**

KPMG denies the allegations set forth in paragraph 198 of the FAC.

199.    When Ms. Patterson informed Manager Yoshida of her pregnancy in November 2009, Manager Yoshida angrily asked, "Did you plan this?"

**ANSWER**

KPMG denies the allegations set forth in paragraph 199 of the FAC.

200.    From February 2010 to July 2010, Partner Lusk actively ignored Ms. Patterson's sabbatical request to complete her CPA licensing requirements while KPMG granted sabbatical requests and facilitated the efforts of similarly situated male and non-caretaking employees, such as Manager Woofter, to become CPAs.

**ANSWER**

KPMG denies the allegations set forth in paragraph 200 of the FAC.

201.    In August 2010, Partner Lusk and Manager Yoshida subjected Ms. Patterson to increased scrutiny when both reviewed her performance, and wrote negative comments in her review that had never been raised as issues prior to Ms. Patterson announcing her pregnancy.

**ANSWER**

KPMG denies the allegations set forth in paragraph 201 of the FAC.

202.    After Ms. Patterson returned from maternity leave, her requests for work were systematically denied by the KPMG managers she approached. Indeed, only one Manager, Cordella Scott ("Manager Scott") – an African-American woman – regularly provided her work. This prevented Ms. Patterson from reaching the 89% target for billable work set by IES Partners in New York. At best, Ms. Patterson was only able to bill twelve hours in a forty-hour work period, which made her 30% chargeable. Prior to her pregnancy, Ms. Patterson did not have difficulty obtaining billable work.

**ANSWER**

KPMG denies the allegations set forth in paragraph 202 of the FAC.

203.    Although Ms. Patterson was available and willing to work long hours, KPMG managers refused to give her work because of the predominant culture at KPMG that assumes working mothers with young children are less effective employees and less committed to their careers.

**ANSWER**

KPMG denies the allegations set forth in paragraph 203 of the FAC.

204.    Because it had become clear that she was not going to advance in IES following her pregnancy, Ms. Patterson requested a transfer to another group in August 2010. However, KPMG glossed over the difficulties Ms. Patterson was experiencing and refused to consider her request for a transfer, despite Ms. Patterson's repeated inquiries. Associates without caretaking responsibilities were regularly considered and often approved for transfers.

**ANSWER**

KPMG denies the allegations set forth in paragraph 204 of the FAC.

205.    In October 2010, Ms. Patterson was removed from her largest client and replaced by Associate Bohman, a Caucasian recent college graduate with no children.

**ANSWER**

KPMG admits that Associate Sarah Bohman reports herself to be Caucasian. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether Sarah Bohman had any children and therefore denies them. KPMG denies the remainder of the allegations set forth in paragraph 205 of the FAC.

206.    Upon information and belief, the Company's policies and procedures regarding evaluation, compensation, development and promotion lack the transparency, standards, quality controls, implementation metrics, and means for redress necessary to prevent this disparate impact on female Professionals who are pregnant or mothers. Within this flawed system, leave for pregnancy and caretaking responsibilities can constitute a negative factor in female Professionals' evaluations, compensation decisions and promotion considerations at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 206 of the FAC.

207.    Upon information and belief, KPMG management systematically took advantage of the flaws in the system and often undervalued, mismeasured, or otherwise inaccurately captured performance to the particular detriment of women and mothers. KPMG has subjected and continues to subject female employees with caregiving responsibilities and/or young children, like Ms. Patterson, to disparate terms and conditions of employment and retaliation.

**ANSWER**

KPMG denies the allegations set forth in paragraph 207 of the FAC.

208.    From December 2009 until her constructive discharge on November 29, 2010, Ms. Patterson complained through various reporting channels, including HR and Ethics and Compliance, about the discrimination and retaliation she was experiencing. However, KPMG failed to address Ms. Patterson's complaints.

**ANSWER**

KPMG admits that Ms. Patterson made internal complaints of alleged discrimination and retaliation to KPMG Human Resources and Ethics and Compliance during the period December 2009 to November 2010. KPMG denies the remainder of the allegations set forth in paragraph 208 of the FAC.

209.    In December 2009, Ms. Patterson contacted HR Manager Tammy Woodard to raise concerns regarding Manager Yoshida's negative and discriminatory response to her pregnancy. Upon information and belief, HR did nothing to investigate or address Ms. Patterson's complaints, despite her repeated attempts to follow up regarding this matter.

**ANSWER**

KPMG admits that in December 2009, Ms. Patterson contacted HR Manager Tammy Woodard regarding Manager Yoshida's response to Ms. Patterson's pregnancy. KPMG denies the remainder of the allegations in paragraph 209 of the FAC.

210.    In March 2010, Ms. Patterson contacted HR Manager Woodard regarding Partner Lusk's failure to address her sabbatical request, but no action was taken until July 2010, after her desired sabbatical was supposed to begin.

**ANSWER**

KPMG admits that Ms. Patterson spoke with HR Manager Woodard regarding her sabbatical request. KPMG denies the remainder of the allegations set forth in paragraph 210 of the FAC.

211.    In July 2010, Ms. Patterson contacted HR Regional Director Chris Beall ("HR Director Beall") about the discriminatory treatment she had received since announcing her pregnancy, including Manager Yoshida and Partner Lusk's comments, and Partner Lusk's refusal to address her sabbatical request. Following a meeting with HR Director Beall, Ms. Patterson sent him an electronic message outlining and detailing her discrimination claims. Without Ms. Patterson's consent, HR Director Beall sent her message to Partner Lusk and requested a meeting.

**ANSWER**

KPMG admits that in July 2010, Ms. Patterson contacted HR Regional Director Chris Beall regarding what Ms. Patterson asserted she believed to be alleged discriminatory treatment. KPMG denies the remainder of the allegations set forth in paragraph 211 of the FAC.

212.    At the end of the month, Ms. Patterson met with HR Director Beall and Partner Lusk to discuss Ms. Patterson's discrimination claims, including the denial of her sabbatical request. Because Ms. Patterson felt intimidated, she brought her mentor, Senior Manager T. Angie Napier to the meeting. At the meeting, HR Director Beall and Partner Lusk ignored Ms. Patterson's discrimination claims and instead focused on her CPA exam in August 2009, telling her that time taken for her CPA exam would not be held against her in her year-end review.

**ANSWER**

KPMG admits that in July 2010 Ms. Patterson met with HR Director Beall and Partner Lusk, and Manager Angie Napier. KPMG denies the remainder of the allegations set forth in paragraph 212 of the FAC.

213.    Following the meeting, Partner Lusk denied Ms. Patterson's initial request for sabbatical from June 1 to August 15 and pressured her to take a sabbatical from August through October, which she feared would have damaged her prospects for a fall promotion. When Ms. Patterson protested, Partner Lusk finally allowed a sabbatical beginning July 1 but still ending

August 15, 2010, thus shortening her sabbatical by one full month and denying her compensation for June.

**ANSWER**

KPMG admits that Ms. Patterson's sabbatical began July 1, 2010 and ended August 15, 2010. KPMG denies the remainder of the allegations set forth in paragraph 213 of the FAC.

214.    In August 2010, Ms. Patterson complained to Ethics and Compliance about the negative comments in her Performance Review – the first negative comments of her career – and the discriminatory denial of her promotion following her pregnancy. During a second performance review meeting, Partner Lusk and Manager Yoshida told newly appointed HR Tax Manager, Rebecca Berry, that Ms. Patterson's review was not negative. HR did not challenge this or otherwise investigate or respond to the situation further.

**ANSWER**

KPMG admits that in August 2010 Ms. Patterson filed a complaint with Ethics and Compliance. KPMG denies the remainder of the allegations set forth in paragraph 214 of the FAC.

215.    Later that month, Ms. Patterson requested a transfer out of IES because the managers in her group refused to give her any work, despite repeated requests. The Ethics officer. Craig DeCampli ("Ethics Officer DeCampli"), told her to "wait," and that the situation in IES would be resolved.

**ANSWER**

KPMG denies the allegations set forth in paragraph 215 of the FAC.

216.    Ms. Patterson continually followed up with HR and Ethics through November, as her work situation had not improved. Although she had been told the investigation would be resolved in October 2010, she was told when she inquired again that it would be resolved in early.

**ANSWER**

KPMG denies the allegations set forth in paragraph 216 of the FAC.

217.    KPMG never granted the transfer out of IES or made any effort to address Ms. Patterson's complaints of discrimination and retaliation.

**ANSWER**

KPMG denies the allegations set forth in paragraph 217 of the FAC.

218.    Upon information and belief, KPMG's HR and Ethics and Compliance offices and procedures lack standards, quality controls, transparency, implementation metrics, means of redress, and requirements that concerns of discrimination be addressed and resolved. Women, mothers, and African-Americans are negatively affected by these insufficiently designed and implemented procedures, as unresponsiveness to complaints about discrimination disproportionately falls upon such employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 218 of the FAC.

219.    Ms. Patterson was forced to end her career at KPMG in November of 2010 because the Company had deliberately made her working conditions so intolerable that she was compelled to resign involuntarily.

**ANSWER**

KPMG denies the allegations set forth in paragraph 219 of the FAC.

220.    When she returned from maternity leave, she was removed from her largest engagement, and, contrary to standard practice at KPMG, was not provided a replacement project. She was reliant on odd jobs and work provided to her by one African-American female Manager, Cordella Scott, to reach even a 30% billable level. She often went to work each day only to suffer the humiliation of sitting at her desk for eight to ten hours with nothing to do, despite her repeated requests for work and the obvious evidence that there was work to be done being deliberately kept from her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 220 of the FAC.

221.    Although Ms. Patterson had always been a strong performer at KPMG, she was not only denied the work and promotions for which she was qualified but also denied support in the advancement she sought through pursuing her CPA.

**ANSWER**

KPMG denies the allegations set forth in paragraph 221 of the FAC.

222.    Because it had become clear to Ms. Patterson that there was no future for her in IES and conditions in the division had become intolerable, she sought a transfer. Even this channel for redress was denied her, though, because KPMG refused even to consider her request, making it impossible for her to escape the discrimination and marginalization she was experiencing in IES. As her options for a future at KPMG were systematically closed, Ms. Patterson became increasingly fearful for her ability to support herself and her children.

**ANSWER**

KPMG denies the allegations set forth in paragraph 222 of the FAC.

223.    These stresses at work carried over to the home, as Ms. Patterson's work situation strained her relationship with her significant other and deteriorated her health. Ms. Patterson's isolation and hopelessness at work made her unable to eat. While she had been nursing her newborn, she stopped producing breast milk as a result of the physical and emotional strains she suffered at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 223 of the FAC.

224.    Ms. Patterson wanted nothing more than to stay at KPMG and further her career. She built a house in Atlanta where she expected to raise her two children. In November 2010, after enduring months of escalating discrimination and retaliation with no hope or resolution whatsoever in light of KPMG's persistent refusal to help, Ms. Patterson had no choice but to resign from KPMG.

**ANSWER**

KPMG admits that Ms. Patterson resigned from KPMG. KPMG denies the remainder of the allegations set forth in paragraph 224 of the FAC.

### C.    PLAINTIFF JEANNETTE POTTER

225.    Ms. Potter suffered discrimination in assignment, discrimination in pay, and denial of promotional opportunities. She was ultimately constructively discharged.

**ANSWER**

KPMG denies the allegations set forth in paragraph 225 of the FAC.

226.    KPMG employed Ms. Potter from July 1995 until her constructive discharge from the Company in July 2006.

**ANSWER**

KPMG admits that it employed Ms. Potter from July 1995 until July 2006. KPMG denies the remainder of the allegations set forth in paragraph 226 of the FAC.

227.    In July 1995, Ms. Potter began working at KPMG as a Manager in the IES Tax practice. She had previously graduated from the Universite Nanterre in France and, while at KPMG, received a Master's degree in Tax from Pace University. In addition, she has earned two other advanced degrees. She had five years of Manager-level experience when she came to KPMG.

**ANSWER**

KPMG admits that in July 1995, Ms. Potter began working for KPMG in the IES Tax Practice, and that Ms. Potter purports to have certain qualifications and degrees. KPMG denies the remainder of the allegations set forth in paragraph 227 of the FAC.

228.   In June 1996, Ms. Potter was promoted to Senior Manager, the position in which she would be stuck for ten years before being pushed out of the company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 270 of the FAC.

229.   Throughout her eleven-year tenure, Ms. Potter demonstrated excellent performance. From 1996 to 2000, Ms. Potter always received "Meets Expectations" or "Exceeds Expectations" on her performance reviews, then, under a new performance rating system, received "Exceptional Performer" ratings in 2001 and 2002.

**ANSWER**

KPMG admits that Ms. Potter received performance reviews during her employment with KPMG and refers to the source for a complete statement of their contents. KPMG denies the remainder of the allegations set forth in paragraph 229 of the FAC.

230.   Ms. Potter received "Strong Performer" ratings from 2003 to 2006, when she was pushed out of the Company. Ms. Potter was applauded for her excellent work and praised as "clearly a leader in the group."

**ANSWER**

KPMG admits that Ms. Potter received performance reviews and refers to the source for a complete statement of their contents. KPMG denies the remainder of the allegations set forth in paragraph 230 of the FAC.

231.   Although Ms. Potter was highly qualified for a Senior Manager position at the time she was hired by KPMG, the Company initially assigned her to the position of Manager.

**ANSWER**

KPMG denies the allegations set forth in paragraph 231 of the FAC.

232.   Ms. Potter's previous employer did not have a "Senior Manager" distinction, so Ms. Potter held the title of Manager even though she performed duties typically performed by Senior Managers at comparable firms, including KPMG. These tasks included, primarily, full responsibility in performing clients' returns and managing staff assigned to work on the returns. At KPMG, the title of "Senior Manager" typically went to individuals with two or more years of Manager experience, and Ms. Potter had a full five years of experience at this level. It was not

until a year after Ms. Potter joined KPMG, however, that she received the title she should have been assigned upon her hire.

**ANSWER**

KPMG admits that Ms. Potter's job duties included preparing returns and managing staff assigned to work on the returns. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Potter's previous employment, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 232 of the FAC.

233     Upon information and belief, KPMG regularly discriminates against female employees by assigning them to lower-level positions than those for which they are qualified or than they would have received had they been men. Women are disparately impacted by the lack of transparency, standards, quality controls and implementation metrics in the Company's practices and procedures in assigning job titles.

**ANSWER**

KPMG denies the allegations set forth in paragraph 233 of the FAC.

234.     Further, KPMG management systematically takes advantage of the flaws in the assignment practices and procedures to place female employees in positions below their level of qualification.

**ANSWER**

KPMG denies the allegations set forth in paragraph 234 of the FAC.

235.     Ms. Potter's excellent performance over the course of her eleven-year career at KPMG was not rewarded with the compensation she deserved. Upon information and belief, the Company paid Ms. Potter at a lower rate than men for equal work on jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions.

**ANSWER**

KPMG denies the allegations set forth in paragraph 235 of the FAC.

236.     Upon information and belief, because of her initial misassignment as "Manager," Ms. Potter's salary continued to be less than that of similarly-situated men throughout her tenure at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 236 of the FAC.

237.    From 1996 to 2001, Ms. Potter received yearly pay increases, but the amounts of these increases were based on a percentage of her base salary, which, upon information and belief, was already lesser than her male peers' because of the initial misassignment.

**ANSWER**

KPMG admits that Ms. Potter received yearly pay increases between 1996 and 2001. KPMG denies the remainder of the allegations set forth in paragraph 237 of the FAC.

238.    In addition, after October 2002, Ms. Potter's pay was frozen when her performance rating was lowered to "Strong Performer," even though there had been no identifiable change in Ms. Potter's performance, or KPMG's assessment of it, beyond the discriminatory instruction to "socialize more."

**ANSWER**

KPMG denies the allegations set forth in paragraph 238 of the FAC.

239.    Similarly situated male employees in her office who had previously been paid at the same rate as or higher than Ms. Potter did not have their pay frozen. Ms. Potter was not aware of any male Senior Managers in the IES Tax practice who ceased to receive pay raises, and, on information and belief, they continued to receive the raises that Ms. Potter expected but was suddenly denied throughout the remainder of her tenure at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 239 of the FAC.

240.    In addition to Ms. Potter, at least two other female Professionals in the IES Tax practice, Senior Manager Elaine Blum ("Senior Manager Blum") and Director Jeanne Jue ("Director Jue"), also had their pay frozen at this time. Both Senior Manager Blum and Director Jue had well over a decade of experience, like Ms. Potter, and both were strong performers.

**ANSWER**

KPMG admits that Director Jue did not receive a pay increase from 2002–2004, but avers that she received pay raises every year from 2005-2008. KPMG admits that Senior Manager Blum did not receive a pay increase from 2002-2005, but avers that she received pay raises in 2006 and 2007. KPMG denies the remainder of the allegations set forth in paragraph 240 of the FAC.

241.    After October 2002, Ms. Potter received no pay increases before her constructive discharge from the Company in July 2006, despite her consistently strong performance. Upon information and belief, comparable men continued to make more than Ms. Potter throughout her employment at KPMG, even though their experience, skills, and responsibilities never exceeded hers. For example, Senior Manager David Buchner, whose qualifications, experience, and responsibilities were no greater than Ms. Potter's or Senior Manager Blum's, continued to receive pay raises after 2002.

**ANSWER**

KPMG admits that Ms. Potter did not receive a pay increase after 2002. KPMG admits that Mr. Buchner received pay raises. KPMG denies the remainder of the allegations set forth in paragraph 241 of the FAC.

242.    When, in May 2006, Ms. Potter asked Principal Ed Gibbons about her frozen pay, he referenced a spreadsheet with pay information and told Ms. Potter she was the fifth highest paid Senior Manager in her practice. When Ms. Potter asked which Senior Managers earned more than her, Principal Gibbons confirmed that the four higher salaries belonged to male employees. No male Senior Managers in IES Tax had comparable tenure at KPMG to Ms. Potter, and, on information and belief, none of them exceeded her in performance or responsibility. Ms. Potter asked why the less-experienced men were paid more than she was, but Principal Gibbons refused to engage on the issue and instead told Ms. Potter she was "paid too much."

**ANSWER**

KPMG admits that Principal Ed Gibbons had a conversation with Ms. Potter about her pay and that he referenced a spreadsheet during the conversation. KPMG denies the remainder of the allegations set forth in paragraph 242 of the FAC.

243.    Although Ms. Potter requested that Principal Gibbons provide her details about salary ranges at the Company – information that was heavily guarded and kept secret for employees – and he indicated that he would do so, he never did so. Rather than taking any steps to address Ms. Potter's concerns about discriminatory compensation, Principal Gibbons became increasingly hostile toward her. He ignored her entirely, even excluding her from discussions about her clients.

**ANSWER**

KPMG denies the allegations set forth in paragraph 243 of the FAC.

244.    Upon information and belief, KPMG's policies regarding voicing complaints of discrimination and subsequent investigations thereof lack transparency, adequate implementation metrics, standards, and quality controls, and fail to require the Company's Partners and Principals to address discrimination. These policies, and the lack of means of redress for unanswered complaints, have a disparate and discriminatory effect on women in the terms and conditions of their employment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 244 of the FAC.

245.    Further, upon information and belief, at least two other female Senior Managers received pay cuts after their pay was initially frozen, while no male Senior Managers in her office received pay cuts. For example, KPMG cut Senior Manager Blum's salary because she was "paid too much," and Director Jue's salary was also cut. Senior Manager Blum's qualifications, tenure, and experience were at least as strong as her male peers'.

**ANSWER**

KPMG denies the allegations set forth in paragraph 245 of the FAC.

246.    Upon information and belief, KPMG also subjects female employees to discriminatory demotions that come with lower salaries. For example, Senior Manager Lu Tseng ("Senior Manager Tseng") was sent on an eighteen-month assignment to Japan. When she returned to the United States, she was told there were no Senior Manager positions available even though her previous position had not been filled. Instead, KPMG offered Senior Manager Tseng a Manager position for a salary cut.

**ANSWER**

KPMG admits that in 2005, Lu Tseng (formerly Lu Wu) was offered a different position at a lower salary upon her return from Japan. KPMG denies the remainder of the allegations in paragraph 246 of the FAC.

247.    Upon information and belief, KPMG underpays female Professionals at all levels throughout the Company relative to similarly-situated male employees. KPMG's opaque evaluation and compensation practices lack sufficient standards, quality controls, implementation metrics, transparency and opportunities for redress or challenge, and create a disparate impact on the Company's female employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 247 of the FAC.

248.    Upon information and belief, KPMG management systematically took advantage of the flaws in these systems and often undervalued, mismeasured, or otherwise inaccurately captured performance to the particular detriment of women.

**ANSWER**

KPMG denies the allegations set forth in paragraph 248 of the FAC.

249.    Despite Ms. Potter's exceptional performance, KPMG denied her promotions in favor of lesser qualified male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 249 of the FAC.

250.    By the summer of 2000, it had become clear to Ms. Potter that she was not going to be promoted at the rate she deserved. Ms. Potter observed that employees who spent a significant amount of time schmoozing and socializing at office happy hours were more likely to advance, while employees who did not were less likely to be promoted. This corporate culture and improper advancement criteria disproportionately harmed female employees like Ms. Potter,

who were less likely to be welcomed into the Company's "good old boys" club and who felt uncomfortable at many social events, which tended to be hostile to women.

**ANSWER**

KPMG denies the allegations set forth in paragraph 250 of the FAC.

251.    Upon information and belief, the Company's evaluation, development, and promotion policies lacked the standards and quality controls to reward excellent performance like Ms. Potter's.

**ANSWER**

KPMG denies the allegations set forth in paragraph 251 of the FAC.

252.    In the summer of 2000, Ms. Potter informed Partner McLaughlin that she planned to resign from KPMG due to the lack of promotional opportunities. She was prepared to accept an offer at Ernst & Young for a comparable position with a $13,000 salary increase and a $17,000 signing bonus. Ms. Potter expected that Ernst & Young would provide greater opportunities for promotion than KPMG. However, Partners McLaughlin, Pete Dolan, Patricia Brown (who also served as Principal in Charge of the East for IES during the time Ms. Kassman experienced discrimination and retaliation), Bill Hibbit, Dan Orchant, Sam Russo and Jeff Stein told Ms. Potter that they refused to accept her resignation and reassured her that she was just about to be promoted. The group of Partners offered her a $20,000 retention bonus (which she had to repay if she left within one year) and sent her a box of chocolates with a card that read, "Please don't leave."

**ANSWER**

KPMG admits that Ms. Potter represented to partners at KPMG that she had an offer with Ernst and Young for more money, that certain partners attempted to dissuade her from leaving KPMG, and that she was given a $20,000 retention bonus. KPMG denies the remainder of the allegations set forth in Paragraph 252.

253.    Because Ms. Potter believed, based on the Partners' representations, that she was about to be promoted, she declined the attractive offer from Ernst & Young and decided to stay at KPMG.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Potter's beliefs about her employment with KPMG or her actions with regard to Ernst & Young, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 253 of the FAC.

254.    In Ms. Potter's May 2001 review, Principal McLaughlin wrote that she "had a fabulous year" and was "clearly a leader in the group." Despite Principal McLaughlin's positive comments and Ms. Potter's "Exceptional Performer" rating, she was not promoted in 2001.

**ANSWER**

KPMG admits that Ms. Potter received a review in May 2001 and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 254 of the FAC.

255. In Ms. Potter's May 2002 performance review, Principal McLaughlin gave Ms. Potter a "Strong Performer" rating, lower than all her previous ratings, despite the review's overwhelmingly positive comments. The only criticism Principal McLaughlin wrote was that Ms. Potter needed to "continue to build relationships" for a promotion to Tax Managing Director.

**ANSWER**

KPMG admits that Ms. Potter received a review in May 2002 and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 255 of the FAC.

256. In May 2002, however, Ms. Potter was abruptly removed from the Managing Director track she had been promised. KPMG denied Ms. Potter the promotion to Managing Director because, according to Principal McLaughlin, she did not "socialize" enough. Principal McLaughlin told Ms. Potter she needed to "schmooze" more. However, Ms. Potter could not attend events on Fridays – when many of the happy hours were scheduled – because her religion dictates that she observe the Sabbath.

**ANSWER**

KPMG denies the allegations set forth in paragraph 256 of the FAC.

257. In addition, Ms. Potter did not attend many of the Company's other informal social events because she strongly disapproved of male Partners' overtly sexual conduct toward female staff at the events. Upon information and belief, KPMG Partners accosted and manhandled junior female employees at the Company happy hours. Male Partners regularly took "body shots" off of female employees, during which Partners would put salt or sugar on a female employee's neck and lick it off. Senior leadership including Principal Brown were present and witnessed these events and, through their inaction, tacitly condoned the behavior of their male counterparts and subordinates.

**ANSWER**

KPMG denies the allegations set forth in paragraph 257 of the FAC.

258. Accordingly, these socializing events were much more amenable to fostering male employees' sense of belonging and ownership than women. Nonetheless, KPMG's promotion decisions rely heavily on personal relationships built at Company social events that are hostile to, or that tend to exclude, female employees. Indeed, upon information and belief, the Company's evaluation, development, and promotion practices lack the transparency, standards, quality controls, implementation metrics and means for redress necessary to reward rather than

disadvantage successful female employees. Upon information and belief, Ms. Potter was not the only woman who was forced to choose between submitting to hostile social activities or allowing her career to stagnate.

**ANSWER**

KPMG denies the allegations set forth in paragraph 258 of the FAC.

259.    When Ms. Potter expressed her concerns about his assessment of her potential for promotion with Principal McLaughlin, he was unresponsive, consistent with the treatment she later received from Principal Gibbons. When she questioned the justification for why she was not promoted, Principal McLaughlin told her this was the way things were at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 259 of the FAC.

260.    Following this discussion, Principal McLaughlin ignored Ms. Potter, excluding her from decisions about clients and staff, ceasing to direct any new clients to her, and instead focusing his attention on Senior Manager Buchner.

**ANSWER**

KPMG denies the allegations set forth in paragraph 260 of the FAC.

261.    Because Ms. Potter did not engage in or otherwise support these hostile social events, she was marginalized, downgraded in her review, and denied a promotion. While Ms. Potter hit a glass ceiling, she witnessed males of her same educational and experiential.

**ANSWER**

KPMG denies the allegations set forth in paragraph 261 of the FAC.

262.    Indeed, upon information and belief, after Ms. Potter was removed from the partnership track, Senior Managers Tom Condon and Roger Koferl – who lacked Ms. Potter's years of experience, advanced degree in Tax, and record of exceptional performance – were prioritized in her place. Both were eventually promoted, and both took part in the male-dominated after-hours culture that Principal McLaughlin criticized Ms. Potter for avoiding.

**ANSWER**

KPMG admits that Tom Condon and Roger Koferl became partners after Ms. Potter left KPMG. KPMG denies the remainder of the allegations set forth in paragraph 262 of the FAC.

263.    Upon information and belief, because of their lack of clearly defined and implemented standards and transparency, KPMG's promotion practices consistently result in

males being promoted more rapidly, developed more purposefully, and assigned more frequently to higher level positions than women across the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 263 of the FAC.

264.    Upon information and belief, KPMG took advantage of the professional development and performance evaluation systems' lack of transparency, quality standards and controls, implementation metrics, and opportunities for redress by including unfounded criticism against many female employees, resulting in their exclusion from promotion opportunities.

**ANSWER**

KPMG denies the allegations set forth in paragraph 264 of the FAC.

265.    Ms. Potter was forced to end her career at KPMG in July of 2006 because the Company had deliberately made her working conditions so intolerable that she was compelled to resign involuntarily. While she had hopes to continue building a long career at KPMG, and to become a Partner, it became clear that she was not valued and would always be subject to discrimination.

**ANSWER**

KPMG denies the allegations set forth in paragraph 265 of the FAC.

266.    Ms. Potter found her situation at KPMG increasingly intolerable as she witnessed men who were no more qualified than she surpass her in pay and status within the Company. This, along with the explicit devaluing of her contributions through comments like Principal Gibbons' that she was "paid too much," made her feel worthless. KPMG's failure to provide her a legitimate justification for her stagnant pay caused her particular distress as she saw her performance reviews altered downward for the first time in her tenure. She foresaw being pushed out of the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 266 of the FAC.

267.    Because the Company provided her with no suggestions for becoming eligible for pay increases or promotion beyond submitting to social activities that were degrading to women, Ms. Potter saw no avenue for a continued role at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 267 of the FAC.

268.    Her experience of Principal Gibbons' and Principal McLaughlin's unresponsiveness and hostility to her concerns about discriminatory pay and advancement

opportunities led her to believe there would be no recourse within the Company. Not only did the latter individuals fail to respond to her concerns, but they also responded with open hostility, which went beyond just unkindness to freezing Ms. Potter out of assignments and information about her clients that was necessary for her to succeed at work.

**ANSWER**

KPMG denies the allegations set forth in paragraph 268 of the FAC.

269.     Reaching out to Human Resources within her division would be a fruitless exercise, as she had been provided no literature about the Company's policies and procedures, and had observed that HR was controlled by the very Principals who tormented her. An atmosphere of hostility pervaded the office, such that she feared any complaints would result in the retaliation and marginalization she experienced from Principals Gibbons and McLaughlin, which led her to fear termination.

**ANSWER**

KPMG denies the allegations set forth in paragraph 269 of the FAC.

270.     As doors closed for Ms. Potter at KPMG in 2006, she became increasingly anxious and depressed. She had persistent headaches, which escalated at this time, along with back pain and frequent sleeplessness.

**ANSWER**

KPMG denies the allegations set forth in paragraph 270 of the FAC.

271.     Thus, after more than a decade as a Senior Manager with no hope for promotion and four years with no salary increase, Ms. Potter had no choice but to resign from KPMG in July 2006. Ms. Potter was forced to accept a job for half her exiting salary before finding permanent employment in the financial services industry.

**ANSWER**

KPMG denies the allegations set forth in paragraph 271 of the FAC.

### D.     **PLAINTIFF ASHWINI VASUDEVA**

272.     Ms. Vasudeva suffered discrimination in pay, denial of promotional opportunities, and discrimination as a result of pregnancy. She was ultimately constructively discharged.

**ANSWER**

KPMG denies the allegations set forth in paragraph 272 of the FAC.

273.     KPMG employed Ms. Vasudeva, the mother of a young child, full-time from January 2005 until her constructive discharge from the Company in September 2009.

**ANSWER**

KPMG admits that Ms. Vasudeva was a full-time employee from January 2005 until September 2009, and that she reports to have had a child while employed by KPMG. KPMG denies the remainder of the allegations set forth in paragraph 273 of the FAC.

274.    In the summer of 2004, Ms. Vasudeva began working at KPMG's Mountain View office as an Intern. She returned to KPMG as a full-time Associate in the same office in January of 2005, first working in the External Audit practice, then in Contracts Compliance Services within the Advisory practice approximately a year and a half later. In June 2007, Ms. Vasudeva was promoted to Senior Associate.

**ANSWER**

KPMG admits the allegations set forth in paragraph 274 of the FAC.

275.    Prior to working at KPMG, Ms. Vasudeva earned her first Bachelor's Degree in Commerce and Economics from University of Mumbai in India, then worked for two years in India in accounting and sales. Ms. Vasudeva then earned a second Bachelor of Science Degree in Accounting from California State University, Hayward in 2005.

**ANSWER**

KPMG admits that Ms. Vasudeva purports to have certain education and job experience. KPMG denies the remainder of the allegations set forth in paragraph 275 of the FAC.

276.    Throughout her nearly five-year tenure, Ms. Vasudeva proved herself to be a stellar performer. During her reviews, Ms. Vasudeva's performance managers consistently rated her as a "strong" or "exceptional performer." In or around 2005 and 2006, KPMG also awarded Ms. Vasudeva "Encore" awards, reserved for employees who go "above and beyond the call of duty."

**ANSWER**

KPMG admits that Ms. Vasudeva received performance reviews during her employment and refers to that source for a complete statement of its contents. KPMG also admits that Encore awards are reserved for employees who go above and beyond the call of duty and that Ms. Vasudeva received a performance award in 2005. KPMG denies the remainder of the allegations set forth in paragraph 276 of the FAC.

277.    Upon information and belief, KPMG paid Ms. Vasudeva at a lower rate than men for equal work on jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions.

**ANSWER**

KPMG denies the allegations set forth in paragraph 277 of the FAC.

278.    For example, KPMG paid Ms. Vasudeva less than her male peer Ryan Wood-Taylor, who had started at KPMG around the same time as Ms. Vasudeva after graduating from University, and had similar job duties as a Senior Associate in Contracts Compliance Services. For example, both Ms. Vasudeva and Mr. Wood-Taylor managed projects for clients, managed staff and travelled to client sites to perform their work. Indeed, Mr. Wood-Taylor even lagged behind Ms. Vasudeva in key respects, having performed fewer audits in less diverse settings than Ms. Vasudeva.

**ANSWER**

KPMG denies the allegations set forth in paragraph 278 of the FAC.

279.    Although Ms. Vasudeva and Mr. Wood-Taylor held the same roles on projects, often working under the same supervisor, and although were both strong performers, she came to believe during the time that they were both Senior Associates that he was paid more than her. Eventually, she learned from her colleague, Manager Sarabdeep Narang, that Mr. Wood-Taylor's salary was in fact $10,000 higher than hers.

**ANSWER**

KPMG denies the allegations set forth in paragraph 279 of the FAC.

280.    Mr. Wood-Taylor was not the only similarly situated male Senior Associate paid more than Ms. Vasudeva. Upon information and belief, Ms. Vasudeva's salary has been lower than that of other similarly situated male colleagues throughout her employment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 280 of the FAC.

281.    Upon information and belief, KPMG underpays female Professionals at all levels throughout the Company relative to similarly situated male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 281 of the FAC.

282.    For example, while Ms. Vasudeva was an Associate, she saw the pay stub of male Senior Associate Nishant Shah, who was working with her and Senior Associate Kathryn Harris ("Senior Associate Harris") on a project. She was shocked to discover that he earned approximately $10,000 more than Senior Associate Harris though both held MBA degrees and had the same job duties.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding what Ms. Vasudeva believes she observed, and what her reaction

was, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 282 of the FAC.

283.     Moreover, KPMG also discriminates in bonus pay. In 2008, when Ms. Vasudeva took maternity leave, KPMG denied Ms. Vasudeva a bonus despite the fact that her overall performance did not decrease. With the same level of performance in previous years, Ms. Vasudeva had received a bonus.

**ANSWER**

KPMG denies the allegations set forth in paragraph 283 of the FAC.

284.     When she questioned her Performance Manager, Director Abhijit Joshi ("Director Joshi"), about the reason she had been denied a bonus, Director Joshi told her she was denied a bonus due to "economic" reasons. However, upon information and belief, Ms. Vasudeva's male peers, including Mr. Wood-Taylor, received bonuses.

**ANSWER**

KPMG admits that Mr. Wood-Taylor received variable compensation in 2008. KPMG denies the remainder of the allegations set forth in paragraph 284 of the FAC.

285.     The only difference was that Ms. Vasudeva is a woman who had taken maternity leave. In addition and upon information and belief, women and women with child-rearing responsibilities were primarily those who did not receive bonuses for 2008.

**ANSWER**

KPMG denies the allegations set forth in paragraph 285 of the FAC.

286.     Despite Ms. Vasudeva's stellar qualifications and performance, KPMG denied her promotions in favor of lesser qualified male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 286 of the FAC.

287.     Initially, Ms. Vasudeva progressed along KPMG's standard career track, receiving a promotion to Senior Associate in June 2007. However, her career progression suddenly stalled once she became pregnant.

**ANSWER**

KPMG admits that Ms. Vasudeva was promoted to Senior Associate in 2007. KPMG denies the remainder of the allegations set forth in paragraph 287 of the FAC.

288.     After Ms. Vasudeva returned from maternity leave, KPMG placed a number of obstacles in her path, in a seeming attempt to derail her advancement. Among other things, Ms. Vasudeva's supervising Principal Matt Behan ("Principal Behan") abruptly removed her from

her largest engagement, assigned her to a client an hour and a half away, and regularly imposed unrealistic demands on her.

**ANSWER**

KPMG admits that Ms. Vasudeva was assigned to an engagement approximately an hour and a half away. KPMG denies the remainder of the allegations in paragraph 288 of the FAC.

289.    In May 2009, KPMG promoted Senior Associate Ryan Wood-Taylor, a less-experienced male, to Manager instead of Ms. Vasudeva. As a result, Ms. Vasudeva had to report to Manager Wood-Taylor, who had previously been her peer. Manager Wood-Taylor did not have comparable audit experience to Ms. Vasudeva. Manager Wood-Taylor had only worked on one or two software engagements, while Ms. Vasudeva had diverse experiences in a variety of audits.

**ANSWER**

KPMG admits that Ryan Wood-Taylor was promoted to a Manager position in 2009. KPMG denies the remainder of the allegations set forth in paragraph 289 of the FAC.

290.    Senior Associate Bryan Dillon, another male employee, was also promoted to Manager in May 2009 over Ms. Vasudeva, even though the two had comparable experience. Senior Associate Dillon had also joined KPMG after receiving his Bachelor of Science degree. He held her same role within Contracts Compliance Services under the same Partners and generally performed her same job duties. On information and belief, his performance was not substantially or meaningfully better than Ms. Vasudeva's.

**ANSWER**

KPMG admits that Bryan Dillon was promoted to a Manager position in 2009. KPMG denies the remainder of the allegations set forth in paragraph 290 of the FAC.

291.    When Ms. Vasudeva asked Director Joshi, her male Performance Manager, why her male colleagues were promoted instead of her, Director Joshi told her that Managers Wood-Taylor and Dillon were "friends" with the management, and that was "how things work around KPMG." When asked, he was unable to provide Ms. Vasudeva any ways in which she could improve her performance or develop her skill set to better position herself for a promotion.

**ANSWER**

KPMG denies the allegations set forth in paragraph 291 of the FAC.

292.    Ms. Vasudeva also asked Partner Vanessa Lo why she was not promoted, and was told that management counted her six months of maternity leave against her tenure and considered her "too inexperienced" with Manager duties. However, Ms. Vasudeva had ample exposure to Manager-level work. She had regularly performed Manager-level tasks such as

budgeting and forecasting and had even trained new Managers on their duties for certain projects.

**ANSWER**

KPMG denies the allegations set forth in paragraph 292 of the FAC.

293.    Upon information and belief, Ms. Vasudeva was not the only woman to suffer the effects of the evaluation, development, and promotion systems at KPMG, which lacked sufficient standards, quality controls, implementation metrics, transparency, and opportunities for redress that would otherwise have ensured there was no disparate impact on female professionals who took FMLA leave.

**ANSWER**

KPMG denies the allegations set forth in paragraph 293 of the FAC.

294.    Upon information and belief, KPMG management systematically took advantage of the flaws in these systems and often undervalued, mismeasured, or otherwise inaccurately captured performance to the particular detriment of women.

**ANSWER**

KPMG denies the allegations set forth in paragraph 294 of the FAC.

295.    Indeed, Senior Associates Dillon and Wood-Taylor, like other male employees at KPMG, were regularly invited to "client-building" events, while their female counterparts toiled away in the office. For example, in 2008 and 2009, when Ms. Vasudeva was staffed on an audit for Engagement Manager Jared Collins ("Manager Collins"), the Partners, Managers and other Senior Associates working on the project, all of whom were male, often went golfing on the Company dime to develop relationships with clients and senior management. Ms. Vasudeva, the sole female Senior Associate who had taken FMLA leave was systematically excluded. For example, on one occasion, Manager Collins, Senior Associate Dillon, Senior Associate Wood-Taylor and three male Team Leads went golfing with the audit client. Ms. Vasudeva, the only other Team Lead, was not informed about the event until it was already underway.

**ANSWER**

KPMG denies the allegations set forth in paragraph 295 of the FAC.

296.    From 2007 until her constructive discharge in 2009, KPMG discriminated against Ms. Vasudeva based on her gender and her caregiving responsibilities as a working mother. Because of Ms. Vasudeva's status as a working mother, and her decision to take maternity leave, KPMG made a number of adverse decisions concerning her employment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 296 of the FAC.

297.    In January 2008, Ms. Vasudeva told her Engagement Partner, Principal Behan, that she planned to take maternity leave. Principal Behan told her that, if she took maternity leave, she might not come back at the same level or same pay.

**ANSWER**

KPMG denies the allegations set forth in paragraph 297 of the FAC.

298.    When Ms. Vasudeva noted that it was illegal to penalize her for taking maternity leave, Principal Behan replied that "in England that is not the case."

**ANSWER**

KPMG denies the allegations set forth in paragraph 298 of the FAC

299.    In July 2008, when Ms. Vasudeva returned from maternity leave, Principal Behan abruptly removed her from her largest, most lucrative engagement, to which she had been assigned for over a year. Though Ms. Vasudeva had previously trained staff to work on the client, Principal Behan claimed it was "fully staffed" without her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 299 of the FAC.

300.    Principal Behan reassigned Ms. Vasudeva to a new client in Stockton, CA, nearly an hour and a half from Ms. Vasudeva's home in Union City, CA. The Stockton client required high volumes of unchallenging work and was not in need of Ms. Vasudeva's skill set. Further, Ms. Vasudeva had to drive to and from Stockton each day, making her commute three hours per day. While other employees staffed to the client stayed in Stockton during the week and returned home for the weekends, Ms. Vasudeva had to return home daily to care for her newborn. Ms. Vasudeva's similarly situated male counterparts in Contracts Compliance Services were not reassigned to new clients at this time or in this abrupt fashion.

**ANSWER**

KPMG admits that Ms. Vasudeva was assigned to an engagement in Stockton, California that was approximately one and one-half hours from her home and that she reports to have commuted each day. KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Vasudeva's need to return home daily, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 300 of the FAC.

301.    Two weeks after being reassigned to the Stockton client, Ms. Vasudeva told Principal Behan that she believed the reassignment was unfair. She asked to be removed from the client, but Principal Behan refused to do so. Ms. Vasudeva's request for release was only granted when she asked the Engagement Partner on the Stockton client.

**ANSWER**

KPMG admits that Ms. Vasudeva asked to be removed from the client engagement in Stockton. KPMG denies the remainder of the allegations set forth in paragraph 301 of the FAC.

302.    Ms. Vasudeva also expressed her concerns to her Performance Manager, Director Joshi. Shortly after her complaints she was placed on a new project, on which KPMG expected Ms. Vasudeva to achieve results as "Team Lead" for a software audit under Partner Ron Brill ("Partner Brill") and Manager Collins, but provided her no staff to fill her "team." During the ten-month period that Ms. Vasudeva was staffed on the project, she only received assistance for two weeks, while she was traveling overseas for a client site visit.

**ANSWER**

KPMG admits that Ms. Vasudeva was placed on a new engagement. KPMG denies the remainder of the allegations set forth in paragraph 302 of the FAC.

303.    Typically, such a project would have been staffed with at least two or three other members of the team. Indeed, the three additional "Team Leads" on the client, all of whom were male, had at least two staff members reporting to them. Further, Senior Associates Wood-Taylor and Dillon, who were given informal promotions to "Super Senior Associates" on the same audit, had two to three Senior Associates reporting them, who in turn had three to four Associates reporting to them. Unlike Ms. Vasudeva, who was left to fend for herself on her audit, male Senior Associates had teams of Associates conducting analysis and performing other support tasks for them. Although Manager Collins was directly responsible for Ms. Vasudeva's engagement, he claimed he had "no expertise" and refused to support her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 303 of the FAC.

304.    Once again, the Company was setting Ms. Vasudeva up for failure. On Manager Collins' project, Ms. Vasudeva was the only female Senior Associate. All Managers and Partners were male. Ms. Vasudeva, without a team to lead, was put at a distinct disadvantage compared to her male peers, who had several people on their teams.

**ANSWER**

KPMG denies the allegations set forth in paragraph 304 of the FAC.

305.    Not only did Ms. Vasudeva's maternity leave affect the assignments she received, but it also permeated her year-end performance review. The final and only comment in the Year End Overall Performance Rating Comments for Ms. Vasudeva's 2008 Fiscal Year review was that "Ashwini was on Maternity Leave for most of this performance year."

**ANSWER**

KPMG admits that Ms. Vasudeva received Year End Overall Performance Review in 2008 and refers to that source for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 305 of the FAC.

306.    After the Company had set Ms. Vasudeva up for failure, in her 2009 fiscal year end review, KPMG included unjust criticisms of her software-related skills, though her work required only business, accounting and audit skills. Upon information and belief, these criticisms came from Managers Collins and Wood-Taylor. In fact, Ms. Vasudeva did not need software-related skills to fulfill her job duties. Ms. Vasudeva addressed this concern to Director Joshi, and he indicated that he understood the problem, yet declined to remove this irrelevant criticism from her evaluation.

**ANSWER**

KPMG refers to Ms. Vasudeva's year end review for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 306 of the FAC.

307.    While recognizing her "excellent" work product, Director Joshi made unfounded, gendered criticisms of Ms. Vasudeva's communication style, stating that she should develop a "softer approach." Upon information and belief, these criticisms also came from Managers Collins and Wood-Taylor.

**ANSWER**

KPMG refers to Ms. Vasudeva's year end review for a complete statement of its contents. KPMG denies the remainder of the allegations set forth in paragraph 307 of the FAC.

308.    Upon information and belief, KPMG's promotion system's insufficient quality standards and controls and implementation metrics, coupled with its lack of transparency and opportunities for redress, had a discriminatory and disparate impact on women and caretaking employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 308 of the FAC.

309.    Upon information and belief, KPMG management systematically took advantage of the flaws in the system by allowing isolated, pretexual criticisms to infiltrate promotion decisions, overwhelmingly to the disadvantage of female employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 309 of the FAC.

310.    In December 2008, Manager Collins told Ms. Vasudeva that she should sign up for a flex schedule because she was "working only from 9 a.m. to 5:00 p.m." Although Manager

Collins assumed Ms. Vasudeva was working less or otherwise underperforming as a new mother, this was not true. While Ms. Vasudeva would leave work at 5:00 p.m. to pick up her child from daycare, she would work late at night to compensate for any lost time. Indeed, she typically worked twelve hours per day, and had no desire to work a reduced schedule or otherwise participate in the flex time program.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the time Ms. Vasudeva left work to pick up her child, the hours she typically worked, and her desire to work a reduced schedule. KPMG denies the remainder of the allegations set forth in paragraph 310 of the FAC.

311.    After female Partner Vanessa Lo reassured her that she should not go on a flexible plan if she was working full-time hours, Ms. Vasudeva told Manager Collins that she saw no need for her to go on a flex schedule, which would have come with reduced pay and lessened her chances for her promotion to manager. Manager Collins appeared to disapprove of her decision when Ms. Vasudeva told him.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Vasudeva's conversations with Mr. Collins, and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 311 of the FAC.

312.    Like Ms. Vasudeva, many female Professionals at KPMG are pressured to move to a flexible schedule after having children because of the predominant culture at KPMG that assumes working mothers with young children are less effective employees and less committed to their careers. Upon information and belief, taking leave or hours reductions for pregnancy and caretaking reasons is considered a negative factor in employees' evaluations, compensation decisions and promotion considerations, resulting in an adverse impact on women and mothers at the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 312 of the FAC.

313.    In June 2009, Ms. Vasudeva requested a ninety-day sabbatical because of stress from the unrealistic demands being imposed on her and the lack of opportunities and support. While Principal Behan—who was no longer Ms. Vasudeva's direct supervisor—approved the sabbatical requests of an employee who had not taken maternity leave in order to engage in recreational activities, he persuaded HR to reject Ms. Vasudeva's because "his client need[ed] [her]." At the time, however, Ms. Vasudeva had no work pending. Indeed, Partner Brill, Ms. Vasudeva's Engagement Partner at the time, had previously approved her sabbatical request because Ms. Vasudeva had completed all her deliverables.

**ANSWER**

KPMG denies the allegations set forth in paragraph 313 of the FAC.

314.    In June 2009, after Principal Behan rejected her sabbatical request, Ms. Vasudeva complained to HR. In addition to discussing her denied sabbatical request, Ms. Vasudeva complained about the ongoing discrimination she was experiencing. She also discussed her complaints of discrimination with Ethics and Compliance. However, KPMG never addressed Ms. Vasudeva's complaints prior to her constructive discharge.

**ANSWER**

KPMG denies the allegations set forth in paragraph 314 of the FAC.

315.    Upon information and belief, during Ms. Vasudeva's tenure with KPMG, she was the only pregnant female at the Associate or Senior Associate level in both the Audit and Advisory Practices at KPMG Mountain View. The only other pregnant female employee in either practice who Ms. Vasudeva was aware of was Shanti Krishnaswamy, a Director whom Principal Behan asked to leave approximately a year after her she gave birth to her child.

**ANSWER**

KPMG denies the allegations set forth in paragraph 315 of the FAC.

316.    Upon information and belief, KPMG has subjected and continues to subject female employees with caregiving responsibilities and/or young children like Ms. Vasudeva to disparate terms and conditions of employment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 316 of the FAC.

317.    Ms. Vasudeva was forced to end her career at KPMG in September of 2009 because the Company had deliberately made her working conditions so intolerable that she was compelled to resign involuntarily.

**ANSWER**

KPMG denies the allegations set forth in paragraph 317 of the FAC.

318.    When Ms. Vasudeva began at KPMG, building a career at the Company was her lifelong dream. However, despite her hard work, her dream steadily grew more and more elusive. During Ms. Vasudeva's tenure at KPMG, she was paid less than male counterparts, denied opportunities for mentorship and advancement, and experienced discrimination and retaliation when she became pregnant and took maternity leave. Although she continued to be a top performer, she bore the burden of unrealistic demands, insufficient resources to complete her work, and regular hostility from male superiors such as Principal Behan.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Vasudeva's "lifelong dream" and therefore denies the allegations. KPMG denies the remainder of the allegations set forth in paragraph 318 of the FAC.

319.    For example, in 2007, when Principal Behan noticed that Ms. Vasudeva worked well with her female colleague, Senior Associate Kathryn Harris, he attempted to sabotage their working relationship. Speaking with each woman privately, Principal Behan told Ms. Vasudeva and Ms. Harris that one had made negative comments about the other, though neither had done so. Ultimately, the two women reconciled and discovered that Principal Behan had lied to them both. Upon information and belief, Principal Behan's divide-and-conquer strategy was intended to further marginalize the female Professionals in his group, who already constituted a minority.

**ANSWER**

KPMG denies the allegations set forth in paragraph 319 of the FAC.

320.    In another example of Principal Behan's hostility to women, in July 2009, Principal Behan made overt sexual innuendos to Ms. Vasudeva including a suggestion that, to women, the flavor of certain Indian food was similar to semen "in their mouth[s]." The comment made Ms. Vasudeva extremely uncomfortable. Upon information and belief, Principal Behan regularly made degrading comments to and about other women.

**ANSWER**

KPMG denies the allegations set forth in paragraph 320 of the FAC.

321.    Even once he was no longer her direct supervisor, Principal Behan saw to it that Ms. Vasudeva would not be able to take sabbatical, compounding the retaliation to which he had already subjected her to in moving her to the Stockton project.

**ANSWER**

KPMG denies the allegations set forth in paragraph 321 of the FAC.

322.    Manager Collins, too, made it clear that he disapproved of Ms. Vasudeva's status as a full-time working mother, and, accordingly, increased demands on her by declining to provide her support in working on his software audit.

**ANSWER**

KPMG denies the allegations set forth in paragraph 322 of the FAC.

323.    While Ms. Vasudeva had originally hoped that things might get better with time – as she proved herself and her skills to the Company – her treatment upon her return from maternity leave proved that to be a false hope. Although Ms. Vasudeva had long experienced

hostility at KPMG, these conditions escalated dramatically when she returned from maternity leave. She was not only singled out for overly-burdensome unchallenging work, but also was denied adequate resources, excluded from opportunities for further advancement, subjected to criticisms regarding an assumed lack of commitment to the company, and otherwise isolated and devalued.

**ANSWER**

KPMG denies the allegations set forth in paragraph 323 of the FAC.

324.    Ms. Vasudeva found herself constantly unhappy and irritable, detrimentally affecting her relationships with her family. Her misery at work suffused not only her life at KPMG, but also her home life. Ms. Vadudeva was frequently unhappy and overcome by anxiety about work, disrupting even the simplest of moments at home.

**ANSWER**

KPMG denies the allegations set forth in paragraph 324 of the FAC.

325.    As a result of ongoing discrimination, hostility and retaliation, Ms. Vasudeva also developed stress-induced pain in her neck and lower and middle back, severe enough eventually to necessitate treatment by a physician.

**ANSWER**

KPMG denies the allegations set forth in paragraph 325 of the FAC.

326.    KPMG took no action whatsoever in response to her concerns despite the fact that she voiced them to senior management, Human Resources, and Ethics and Compliance. KPMG's deliberate and purposeful indifference to her concerns, and its active steps to deny her a sabbatical, exacerbated and otherwise contributed to her distress. Once it became clear to Ms. Vasudeva that even HR and Ethics and Compliance were not going to ameliorate the situation, her work environment became more oppressive. Eventually, she could not even think about going to work day to day; resignation was her only option.

**ANSWER**

KPMG denies the allegations set forth in paragraph 326 of the FAC.

327.    Once it became clear to Ms. Vasudeva that HR and Ethics and Compliance were not going to step in—and that they were going to be indifferent to her concerns and even complicit in her torment—she could not even think about going to work day to day. Resignation became her only option.

**ANSWER**

KPMG denies the allegations set forth in paragraph 327 of the FAC.

328.    Like Ms. Vasudeva, other female employees in Ms. Vasudeva's practice group have complained to HR and/or through other reporting channels about the Company's "old boys' club." Upon information and belief, since Ms. Vasudeva's constructive discharge from KPMG, at least four female Associates and one female Senior Associate from her practice group have left the Company due to frustration about the lack of opportunities. Upon information and belief, only one male employee has left Ms. Vasudeva's group, while most of the other men have been swiftly and steadily promoted.

**ANSWER**

KPMG denies the allegations set forth in paragraph 328 of the FAC.

329.    Upon information and belief, KPMG's flawed evaluation, development, mentoring and promotion practices consistently result in males being promoted more rapidly and assigned more frequently to higher-level positions than women across the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 329 of the FAC.

### E.    PLAINTIFF TINA BUTLER

330.    Ms. Butler, a current employee of the Company, has suffered and continues to suffer discrimination in pay and denial of promotional opportunities.

**ANSWER**

KPMG admits that Ms. Butler is a current KPMG employee. KPMG denies the remainder of the allegations set forth in paragraph 330 of the FAC.

331.    In October of 2004, Ms. Butler transitioned from her Client Services Support role to an Associate role in Business Performance Services Advisory, which became Performance Advisory Services in 2009. When she joined KPMG in 1999, she brought with her eight years of relevant work experience. She was promoted to Senior Associate in 2007 and to Manager in Federal Advisory Services in 2013.

**ANSWER**

KPMG admits that Ms. Butler was promoted to Senior Associate in 2007 and promoted to the position of Manager in 2013 in Federal Financial Management Services, Advisory. KPMG denies the remainder of the allegations set forth in paragraph 331 of the FAC.

332.    Ms. Butler worked out of KPMG's Atlanta, Georgia and Tysons, Virginia offices during her tenure at the Company.

**ANSWER**

KPMG admits the allegations set forth in paragraph 332 of the FAC.

333.    Ms. Butler's experiences at KPMG have been similar to those of the other Named Plaintiffs and the class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 333 of the FAC.

334.    Ms. Butler has been paid less than similarly situated men during the class period. She has consistently earned less than similarly or worse performing men in her position, function, and service line, despite having the same or more experience and tenure in job.

**ANSWER**

KPMG denies the allegations set forth in paragraph 334 of the FAC.

335.    Despite her stellar performance ratings, Ms. Butler has been denied promotions at KPMG. In 2009, for example, Ms. Butler's male colleague Jesse Traylor was promoted to Manager. Though the two performed similar work at the time, Ms. Butler was forced to wait until 2013 to be similarly promoted.

**ANSWER**

KPMG denies the allegations set forth in paragraph 335 of the FAC.

336.    As she languished in the Senior Associate position, Ms. Butler saw less qualified and less experienced men promoted over her.

**ANSWER**

KPMG denies the allegations set forth in paragraph 336 of the FAC.

337.    Upon information and belief, Ms. Butler is not the only woman to suffer the effects of the compensation and promotion policies and practices at KPMG, which lack sufficient standards and quality controls, transparency, implementation metrics, and opportunities for redress that would otherwise have ensured there was no disparate impact on female professionals. Other women were similarly underpaid and underpromoted relative to men.

**ANSWER**

KPMG denies the allegations set forth in paragraph 337 of the FAC.

338.    Upon information and belief, KPMG management systematically takes advantage of the flaws in the system by paying female employees less than similarly situated male employees. KPMG underpays female Professionals at all levels throughout the Company relative to similarly situated male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 338 of the FAC.

339.    Moreover, KPMG's flawed promotion practices consistently result in males being promoted more rapidly and assigned more frequently to higher positions than women across the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 339 of the FAC.

340.    Ms. Butler is a member of the opt-in EPA collective and would be a member of any Rule 23 class. She alleges both disparate impact and treatment claims consistent with the other Named Plaintiffs in this action.

**ANSWER**

KPMG admits that Ms. Butler has filed a consent to join the conditionally certified EPA collective, that she claims she would be a member of an undefined putative Rule 23 class and that she alleges certain claims against KPMG. KPMG denies the remainder of the allegations set forth in paragraph 340 of the FAC.


F.      **PLAINTIFF CHERYL CHARITY**

341.    Ms. Charity, a current employee of the Company, has suffered and continues to suffer discrimination in pay and denial of promotions at KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 341 of the FAC

342.    In March of 2001, Ms. Charity began working at KPMG as a Senior Associate in IT Advisory, bringing with her a decade of prior work experience. She had previously earned her Bachelor of Science from Virginia Commonwealth University in 1991. She earned her Master's in Management Information Systems from the University of Maryland University College in 2003 and her MBA from the same in 2004. Ms. Charity was promoted to Manager in 2004 and to Senior Manager/Director in July 2010.

**ANSWER**

KPMG admits that Ms. Charity began working for KPMG in March 2001 in the position of Senior Consultant (now Senior Associate) in IT Advisory and that she was promoted to Manager in October 2004 and to Senior Manager (Director) in July 2010.  KPMG further admits that Ms. Charity purports to have certain degrees and work experience. KPMG denies the remainder of the allegations set forth in paragraph 342 of the FAC.

343.    Ms. Charity has worked out of KPMG's Washington, DC and Tysons, Virginia offices during her tenure with the Company.

**ANSWER**

KPMG admits the allegations set forth in paragraph 343 of the FAC.

344.   Ms. Charity's experiences at KPMG have been similar to those of the other Named Plaintiffs and the class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 344 of the FAC.

345.   Ms. Charity has been paid less than similarly situated men at KPMG during the class period. She has consistently earned less than similarly or worse performing men in her position, function, and service line, despite having more experience, qualifications, and tenure in job.

**ANSWER**

KPMG denies the allegations set forth in paragraph 345 of the FAC.

346.   At the same time, poorly designed and implemented performance management and promotion systems systematically undervalue women's contributions to KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 346 of the FAC.

347.   Ms. Charity's performance ratings at KPMG have also been unfairly lower than those of her male colleagues who performed similar work at the same level, which has led to her being denied promotions and fair compensation increases. These discriminatory reviews have consistently barred her from receiving promotions the first year she was eligible, and have limited her compensation.

**ANSWER**

KPMG denies the allegations set forth in paragraph 347 of the FAC.

348.   Upon information and belief, KPMG's performance management system's insufficient quality standards and controls and implementation metrics, coupled with its lack of transparency and opportunities for redress, has a discriminatory and disparate impact on women.

**ANSWER**

KPMG denies the allegations set forth in paragraph 348 of the FAC.

349.   Upon information and belief, Ms. Charity is not the only woman to suffer the effects of the compensation and promotion policies and practices at KPMG, which lack sufficient standards and quality controls, transparency, implementation metrics, and opportunities for

redress that would otherwise have ensured there was no disparate impact on female professionals. Other women were similarly underpaid and underpromoted relative to men.

**ANSWER**

KPMG denies the allegations set forth in paragraph 349 of the FAC.

350.    Upon information and belief, KPMG management systematically takes advantage of the flaws in the system by paying female employees less than similarly situated male employees. KPMG underpays female Professionals at all levels throughout the Company relative to similarly situated male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 350 of the FAC.

351.    Moreover, KPMG's flawed promotion practices consistently result in males being promoted more rapidly and assigned more frequently to higher positions than women across the Company. KPMG management systematically takes advantage of the flaws in the system to exclude and undervalue women's contributions.

**ANSWER**

KPMG denies the allegations set forth in paragraph 351 of the FAC.

352.    For example, a male Principal frequently invited his male counselees and the men on his projects to golf with him on the weekends. No women were invited. While the men who accompanied him on these trips were rated highly in their performance evaluations and promoted quickly, excluded women, like Ms. Charity, were left to languish for years without promotion. Similarly, another male Partner told Ms. Charity that he was "surprised [she] was still with the firm" because of his view that "single women" did not stay in the same job for long.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the unnamed Principal and Partner and therefore denies them. KPMG denies the remainder of the allegations set forth in paragraph 352 of the FAC.

353.    Finally, Ms. Charity has firsthand experience with how KPMG not only ignores concerns regarding unfair treatment but actively dissuades women from reporting them. For example, when Ms. Charity raised the possibility of filing a formal HR complaint, a Partner told her, "if you go to HR, it will turn on you."

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the unnamed Partner and therefore denies them. KPMG denies the remainder of the allegations set forth in paragraph 353 of the FAC.

354.    Upon information and belief, KPMG's HR and Ethics and Compliance offices and procedures lack standards, quality controls, transparency, implementation metrics, means of redress, and requirements that concerns of discrimination be addressed and resolved. Concerns about discrimination made to supervising staff and HR itself are allowed to go unaddressed, or worse, to result in further or increased discrimination and retaliation. Women and mothers are negatively affected by these insufficiently designed and implemented procedures, as unresponsiveness to complaints about discrimination disproportionately falls upon such employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 354 of the FAC.

355.    Ms. Charity is a member of the opt-in EPA collective and would be a member of any Rule 23 class. She alleges both disparate impact and treatment claims consistent with the other Named Plaintiffs in this action.

**ANSWER**

KPMG admits that Ms. Charity filed a consent to join the conditionally certified EPA collective, that she claims she would be a member of an undefined putative Rule 23 class and that she alleges certain claims against KPMG. KPMG denies the remainder of the allegations set forth in paragraph 355 of the FAC.

### G.    PLAINTIFF HEATHER INMAN

356.    Ms. Inman suffered discrimination in pay and denial of promotional opportunities until she left the KPMG in October 2014.

**ANSWER**

KPMG denies the allegations set forth in paragraph 356 of the FAC.

357.    In August of 2005, Ms. Inman began working at KPMG as a Manager in IT Advisory, bringing with her over twelve years of work experience. She previously earned her Bachelor of Science in Accounting in 1991 from University of Missouri-Columbus School of Business.

**ANSWER**

KPMG admits that Ms. Inman began working at KPMG in August 2005 as a Manager. KPMG further admits that Ms. Inman purports to have certain degrees and work experience. KPMG denies the remaining allegations in paragraph 357 of the FAC.

358.    Ms. Inman worked out of KPMG's St. Louis, Missouri office during her tenure at the Company.

**ANSWER**

KPMG admits the allegations set forth in paragraph 358 of the FAC.

359.    Ms. Inman's experiences at KPMG have been similar to those of the other Named Plaintiffs and the class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 359 of the FAC.

360.    Ms. Inman was paid less than similarly situated men during the class period. She consistently earned less than similarly or worse performing men in her position, function, and service line, despite having the same or more experience and tenure in her job.

**ANSWER**

KPMG denies the allegations set forth in paragraph 360 of the FAC.

361.    Upon information and belief, Ms. Inman is not the only woman to suffer the effects of the compensation policies and practices at KPMG, which lack sufficient standards and quality controls, transparency, implementation metrics, and opportunities for redress that would otherwise have ensured there was no disparate impact on female professionals. Other women were similarly underpaid relative to men.

**ANSWER**

KPMG denies the allegations set forth in paragraph 361 of the FAC.

362.    Despite her positive performance ratings, Ms. Inman was denied a promotion at KPMG. Though she worked at KPMG as a Manager for over nine years, she was never promoted to Senior Manager. During that time period, Ms. Inman saw less qualified and less experienced men be promoted over her.

**ANSWER**

KPMG admits that Ms. Inman was not promoted to Senior Manager. KPMG denies the remainder of the allegations set forth in paragraph 362 of the FAC.

363.    Upon information and belief, Ms. Inman is not the only woman to suffer the effects of the promotion policies and practices at KPMG, which lack sufficient standards and quality controls, transparency, implementation metrics, and opportunities for redress that would otherwise have ensured there was no disparate impact on female professionals. Other women were similarly passed over for promotion compared to male peers.

**ANSWER**

KPMG denies the allegations set forth in paragraph 363 of the FAC.

364.    Ms. Inman was also denied professional opportunities due to her status as a mother. After she returned from maternity leave in 2007, Ms. Inman's manager, Rob Wolf, denied her opportunities to work on the best accounts, which included travel. Ms. Inman was willing to travel, but Mr. Wolf told her that she could not because she had young children. When Ms. Inman pointed out that a male colleague was given these assignments despite having a young child, Mr. Wolf responded that it was different because "you're the mom."

**ANSWER**

KPMG admits that Ms. Inman returned from what she purported to be maternity leave in 2007. KPMG denies the remainder of the allegations set forth in paragraph 364 of the FAC.

365.    Finally, Ms. Inman has firsthand experience with how KPMG ignores concerns regarding unfair treatment. For example, Ms. Inman submitted multiple complaints of sexual harassment from male Partners while working for KPMG. In one instance, the Partner received a verbal warning. In two instances, KPMG took no action in response to her complaints. In addition, Ms. Inman also observed her male colleagues frequently having lunch at a local restaurant where the waitresses dressed in skimpy lingerie or body paint, and taking clients to strip clubs. They told Ms. Inman she could not accompany them on such outings. As a result, she lost out on valuable networking opportunities with her peers and with clients.

**ANSWER**

KPMG admits that Ms. Inman made complaints regarding what she alleged was inappropriate conduct by male Partners at KPMG. KPMG denies the remainder of the allegations set forth in paragraph 365 of the FAC.

366.    Upon information and belief, KPMG's HR and Ethics and Compliance offices and procedures lack standards, quality controls, transparency, implementation metrics, means of redress, and requirements that concerns of discrimination be addressed and resolved. Concerns about discrimination made to supervising staff and HR itself are allowed to go unaddressed, or worse, to result in further or increased discrimination and retaliation. Women and mothers are negatively affected by these insufficiently designed and implemented procedures, as unresponsiveness to complaints about discrimination disproportionately falls upon such employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 366 of the FAC.

367.    Ms. Inman is a member of the opt-in EPA collective and would be a member of any Rule 23 class. She alleges both disparate impact and treatment claims consistent with the other Named Plaintiffs in this action.

**ANSWER**

KPMG admits that Ms. Inman filed a consent to join the conditionally certified EPA collective, that she claims she would be a member of an undefined putative Rule 23 class and that she alleges certain claims against KPMG. KPMG denies the remainder of the allegations set forth in paragraph 367 of the FAC.

**H.   PLAINTIFF NANCY JONES**

368.   Ms. Jones suffered discrimination in pay and denial of promotions until her constructive discharge from KPMG in June 2014.

**ANSWER**

KPMG denies the allegations set forth in paragraph 368 of the FAC.

369.   In November of 2010, Ms. Jones began working at KPMG as a Senior Associate in Performance Advisory, bringing with her five years of previous work experience. She had previously received her Bachelor of Business Administration in Actuarial Science and Finance from Georgia State University.

**ANSWER**

KPMG admits that Ms. Jones began working at KPMG in November 2010 as a Senior Associate. KPMG further admits that Ms. Jones purports to have certain degrees and work experience. KPMG denies the remainder of the allegations set forth in paragraph 369 of the FAC.

370.   Ms. Jones worked out of KPMG's Atlanta, Georgia office during her tenure at the Company. She worked with employees from the Chicago, Boston, and New York offices, and her mentor was based in KPMG's Dallas office. Ms. Jones also spent time working in KPMG's San Francisco, Houston, and Chicago offices.

**ANSWER**

KPMG admits that Ms. Jones worked out of KPMG's Atlanta, Georgia office. KPMG lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding the employees with whom she worked and the offices she spent time working in and KPMG therefore denies the remainder of the allegations set forth in paragraph 370 of the FAC.

371.   Ms. Jones' experiences at KPMG have been similar to those of the other Named Plaintiffs and the class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 371 of the FAC.

372.    Ms. Jones was paid less than similarly situated men at KPMG during the class period, despite her stellar performance and additional experience.

**ANSWER**

KPMG denies the allegations set forth in paragraph 372 of the FAC.

373.    Ms. Jones was eligible for promotion, but despite her stellar performance ratings, and the fact that she was consistently performing work at or above the level of her male peers, Ms. Jones was not promoted during her tenure at KPMG.

**ANSWER**

KPMG admits that Ms. Jones was not promoted while employed at KPMG. KPMG denies the remainder of the allegations set forth in paragraph 373 of the FAC.

374.    Ms. Jones asked her PML repeatedly about her denied promotion and lack of advancement opportunities. While her PML assured her she would be promoted, Ms. Jones was not promoted during her tenure at KPMG. She also raised her concerns with the leader of her department, who failed to take any action in response.

**ANSWER**

KPMG denies the allegations set forth in paragraph 374 of the FAC.

375.    Ms. Jones found herself constantly unhappy and stressed, detrimentally affecting her relationships with her family and loved ones. As a result of ongoing discrimination and hostility, Ms. Jones began taking anti-depressants in January 2012.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Ms. Jones's mental state, relationships and use of anti-depressants and therefore denies them.  KPMG denies the remainder of the allegations set forth in paragraph 375 of the FAC.

376.    KPMG took no action in response to her concerns despite the fact that she repeatedly voiced them to management. KPMG's deliberate and purposeful indifference to her concerns contributed to her distress. Once it became clear to Ms. Jones that KPMG was not going to ameliorate the situation, her work environment became more oppressive. Eventually, she could not even think about going to work day to day; resignation was her only option.

**ANSWER**

KPMG denies the allegations set forth in paragraph 376 of the FAC.

377.    Having been repeatedly denied opportunities for advancement and faced with a stalled career, Ms. Jones had no choice but to leave KPMG in June 2014.

**ANSWER**

KPMG denies the allegations set forth in paragraph 377 of the FAC.

378.    Upon information and belief, Ms. Jones is not the only woman to suffer the effects of the compensation and promotion policies and practices at KPMG, which lack sufficient standards and quality controls, transparency, implementation metrics, and opportunities for redress that would otherwise have ensured there was no disparate impact on female professionals. Other women were similarly underpaid and underpromoted relative to men.

**ANSWER**

KPMG denies the allegations set forth in paragraph 378 of the FAC.

379.    Upon information and belief, KPMG management systematically takes advantage of the flaws in the system by paying female employees less than similarly situated male employees. KPMG underpays female Professionals at all levels throughout the Company relative to similarly situated male employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 379 of the FAC.

380.    Moreover, KPMG's flawed promotion practices consistently result in males being promoted more rapidly and assigned more frequently to higher positions than women across the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 380 of the FAC.

381.    Ms. Jones is a member of the opt-in EPA collective and would be a member of any Rule 23 class. She alleges both disparate impact and treatment claims consistent with the other Named Plaintiffs in this action.

**ANSWER**

KPMG admits that Ms. Jones filed a consent to join the conditionally certified EPA collective, that she claims she would be a member of an undefined putative Rule 23 class and that she alleges certain claims against KPMG. KPMG denies the remainder of the allegations set forth in paragraph 381 of the FAC.

**H.    PLAINTIFF CAROL MURRAY**

382.    Ms. Murray, a current employee of the Company, has suffered and continues to suffer discrimination in pay at KPMG.

**ANSWER**

KPMG admits that Ms. Murray is currently employed by KPMG. KPMG denies the remainder of the allegations set forth in paragraph 382 of the FAC.

383.    After working at KPMG as an Intern in the summer of 2007, Ms. Murray completed her Bachelor of Science (Finance) and Bachelor of Arts (Philosophy) degrees summa cum laude from Azusa Pacific College in May 2008. She returned to KPMG in October 2008 as an Associate in Financial Risk Management Advisory. Ms. Murray was promoted to Senior Associate in 2010. In March 2011, Ms. Murray transferred to become a Senior Associate in Economic and Valuation Services Tax, and she was promoted to Manager in October 2013.

**ANSWER**

KPMG admits that Ms. Murray was an intern at KPMG in the summer of 2007 and that she claims to have certain degrees. KPMG further admits that Ms. Murray began employment with KPMG in 2008 as an Associate in Advisory and was promoted to Senior Associate in 2010. KPMG further admits that Ms. Murray transferred to Economic Valuation Services in 2011 and was promoted to Manager in October 2013.

384.    Ms. Murray has worked out of KPMG's Los Angeles, California and Seattle, Washington offices during her tenure with the Company.

**ANSWER**

KPMG admits the allegations set forth in paragraph 384 of the FAC.

385.    Ms. Murray's experiences at KPMG have been similar to those of the other Named Plaintiffs and the class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 385 of the FAC.

386.    Ms. Murray has been paid less than similarly situated men during the class period. She has consistently earned less than similarly or worse performing men in her position, function, and service line, despite having the same or more experience and tenure in job.

**ANSWER**

KPMG denies the allegations set forth in paragraph 386 of the FAC.

387.    Upon information and belief, Ms. Murray is not the only woman to suffer the effects of the compensation policies and practices at KPMG, which lack sufficient standards and quality controls, transparency, implementation metrics, and opportunities for redress that would otherwise have ensured there was no disparate impact on female professionals. Other women were similarly underpaid relative to men.

**ANSWER**

KPMG denies the allegations set forth in paragraph 387 of the FAC.

388.    Ms. Murray is a member of the opt-in EPA collective and would be a member of any Rule 23 class. She alleges both disparate impact and treatment claims consistent with the other Named Plaintiffs in this action.

**ANSWER**

KPMG admits that Ms. Murray filed a consent to join the conditionally certified EPA collective, that she claims she would be a member of an undefined putative Rule 23 class and that she alleges certain claims against KPMG. KPMG denies the remainder of the allegations set forth in paragraph 388 of the FAC.

## V.    CLASS ACTION ALLEGATIONS

389.    Class Representatives Donna Kassman, Tina Butler, Cheryl Charity, Heather Inman, Nancy Jones, Carol Murray and the class of female employees they seek to represent have been subjected to a pattern and practice of gender discrimination, and employment policies and practices which have had a continuing, unlawful disparate impact on them and their employment opportunities. Such gender discrimination includes (a) assigning female Professionals to lower titles and classifications than their male counterparts; (b) paying female Professionals less than their male counterparts; (c) denying female Professionals promotion and advancement opportunities in favor of male employees; (d) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers; and (e) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination and pregnancy/caregiver discrimination in the workplace.

**ANSWER**
KPMG denies the allegations set forth in paragraph 389 of the FAC and denies that a class action is appropriate in this case.

390.    KPMG, in effect, bars female employees from better and higher-paying positions which have traditionally been held by male employees. The systemic means of accomplishing such gender-based stratification include, but are not limited to, KPMG's assignment, development, promotion, advancement, compensation and performance evaluation policies, practices and procedures. These practices and procedures all suffer from a lack of: transparency, adequate quality standards and controls; sufficient implementation metrics; upper management/HR review; and opportunities for redress or challenge. As a result, employees are assigned, evaluated, compensated, developed, and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage or reward employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 390 of the FAC.

391.    Within these flawed structures, specific practices negatively affect KPMG's female Professionals. For example, assignments do not reflect female employees' experience and qualifications, and promotions are not based upon true comparative performance. The evaluation system lacks sufficient standards or quality controls and metrics to accurately and reliably measure performance. Within this system, unfounded criticisms may be lodged against KPMG Professionals who are female, pregnant or mothers, and legitimate criticisms given undue weight. Participation in male-dominated and exclusive social activities can improperly control or influence an employees' standing and prospects within KPMG. Partners, Managing Directors, Senior Managers and Managers mentor and develop employees selectively, without the appropriate standards or guidelines or transparency necessary to ensure an equitable workplace. Moreover, taking leave or flex time for pregnancy and caretaking reasons can constitute a negative factor in employees' evaluations, compensation and promotion prospects; and HR and management has failed to curb a corporate culture that presumes being a mother makes an employee less dedicated or productive.

**ANSWER**

KPMG denies the allegations set forth in paragraph 391 of the FAC.

392    These problems are systemic and Company-wide, because, upon information and belief, all stem from flawed policies, practices and procedures which emanate from the Company's New York headquarters.

**ANSWER**

KPMG denies the allegations set forth in paragraph 392 of the FAC.

393.    Where Human Resources and Ethics complaint and compliance policies exist, they lack meaningful quality controls, standards, implementation metrics, and means of redress. Concerns about discrimination made to supervising staff and HR itself are allowed to go unaddressed. Worse, there is no meaningful separation between HR/Ethics complaint processes and the Managers and Partners who create discriminatory or hostile work conditions toward women and mothers, such that victims of discrimination often face retaliation or are dissuaded from voicing concerns altogether.

**ANSWER**

KPMG denies the allegations set forth in paragraph 393 of the FAC.

394.    Thus, KPMG tolerates and even cultivates a hostile environment in which women and mothers are openly devalued and where (a) retaliation for voicing gender discrimination complaints is the norm and (b) women mothers who question or even inadvertently disrupt the gendered norms are routinely pushed out of the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 394 of the FAC.

395.    In all, KPMG demonstrates a reckless disregard – a deliberate indifference – to its female employees by overlooking or otherwise dismissing even blatant evidence of gender discrimination.

**ANSWER**

KPMG denies the allegations set forth in paragraph 395 of the FAC.

396.    KPMG's assignment, evaluation, development, compensation, promotion and maternity/flexible schedule policies, practices, and procedures, as well as its failure to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender and pregnancy/caregiver discrimination, have had a disparate impact on the Class Representatives and the members of the class. Such policies, practices and procedures are not valid, job-related, or justified by business necessity.

**ANSWER**

KPMG denies the allegations set forth in paragraph 396 of the FAC and denies that a class action is appropriate in this case.

397.    Because of Defendant's pattern-or-practice of gender discrimination, the Class Representatives and class they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, promotion and other advancement opportunities, employment benefits and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 397 of the FAC and denies that a class action is appropriate in this case.

398.    KPMG has failed to impose adequate discipline on managers and employees who violate equal employment opportunity laws and has failed to create adequate incentives for its managerial and supervisory personnel to comply with such laws regarding the employment policies, practices, and procedures described above.

**ANSWER**

KPMG denies the allegations set forth in paragraph 398 of the FAC.

399.    The Class Representatives and the class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief. The Class Representatives and the class have suffered, and will continue to suffer, irreparable injury from KPMG's ongoing, unlawful policies, practices, and procedures as set forth herein unless those policies, practices, and procedures are enjoined by this Court.

**ANSWER**

KPMG denies the allegations set forth in paragraph 399 of the FAC and denies that a class action is appropriate in this case.

### A.    General Facts Relevant to Class Claims and Class Definition

400.    The Class Representatives seek to maintain claims on their own behalf and on behalf of a class of current and former female exempt Client Service and Support Professionals at KPMG.

**ANSWER**

KPMG admits that Plaintiffs seek to maintain claims as described in paragraph 400 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 400 of the FAC and denies that a class action is appropriate in this case.

401.    The class consists of all female exempt Client Service and Support Professionals, including but not limited to Associates, Senior Associates, Managers, Senior Managers/Directors and Managing Directors (collectively "Professionals"), who are, or have been, employed by KPMG nationwide during the applicable liability period until the date of judgment. Upon information and belief, there are thousands of such employees in the proposed class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 401 of the FAC and denies that a class action is appropriate in this case.

402.    The Class Representatives seek to represent all of the female employees described above. The systemic and disparate impact gender discrimination described in this Complaint has been, and is, continuing in nature.

**ANSWER**

KPMG admits that Plaintiffs purport to maintain claims as described in paragraph 402 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 402 of the FAC and denies that a class action is appropriate in this case.

### B.    Efficiency of Class Prosecution of Common Claims

403.    Certification of a class of female Professionals is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class.

**ANSWER**

KPMG denies the allegations in paragraph 403 of the FAC and denies that a class action is appropriate in this case.

404.     The individual claims of the Class Representatives require resolution of the common question of whether KPMG has engaged in a systemic pattern and/or practice of gender discrimination against female Professionals. The Class Representatives seek remedies to eliminate the adverse effects of such discrimination in their own lives, career and working conditions, and in the lives, careers and working conditions of the proposed class members, and to prevent continued gender discrimination in the future.

**ANSWER**

KPMG admits that Plaintiffs purport to represent a class as described in paragraph 404 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 404 of the FAC and denies that a class action is appropriate in this case.

405.     Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on female employees generally. KPMG caused Plaintiffs' injuries through its discriminatory practices, policies, and procedures, as well as its disparate treatment of employees who are female, pregnant, and/or have caregiving responsibilities. These injuries are redressible through systemic relief, such as an injunction, and other appropriate class-wide and individual remedies sought in this action.

**ANSWER**

KPMG denies the allegations set forth in paragraph 405 of the FAC and denies that a class action is appropriate in this case.

406.     In addition, proper relief for Plaintiffs' individual constructive discharge and wrongful termination claims can include reinstatement. As such, each has a personal interest in the policies, practices and procedures implemented at KPMG moving forward.

**ANSWER**

KPMG denies the allegations set forth in paragraph 406 of the FAC.

407.     In order to gain relief for themselves, as well as for the class members, Plaintiffs will first establish the existence of systemic gender discrimination as the premise for the relief they seek.

**ANSWER**

KPMG lacks knowledge or information sufficient to form a belief as to Plaintiffs' intentions. KPMG denies that Plaintiffs are entitled to relief of any kind. KPMG denies the allegations set forth in paragraph 407 of the FAC and denies that a class action is appropriate in this case.

408.     Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the proposed class of females is the most efficient

and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the proposed class, and Defendant KPMG.

**ANSWER**

KPMG denies the allegations set forth in paragraph 408 of the FAC and denies that a class action is appropriate in this case.

### C.    Numerosity and Impracticability of Joinder

409.    The class which the Class Representatives seek to represent is too numerous to make joinder practicable. Upon information and belief, the proposed class consists of thousands of current and former female Professionals during the liability period.

**ANSWER**

KPMG admits that Plaintiffs purport to seek relief as described in paragraph 409 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 409 of the FAC and denies that a class action is appropriate in this case.

410.    KPMG's pattern and/or practice of gender discrimination also makes joinder impracticable by discouraging females from applying for or pursuing promotional, training, or transfer opportunities, thereby making it impractical and inefficient to identify many members of the class prior to determination of the merits of KPMG's class-wide liability.

**ANSWER**

KPMG denies the allegations set forth in paragraph 410 of the FAC and denies that a class action is appropriate in this case.

### D.    Common Questions of Law and Fact

411.    The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the putative class they seek to represent.

**ANSWER**

KPMG denies the allegations set forth in paragraph 411 of the FAC and denies that a class action is appropriate in this case.

412.    The common questions of law include, *inter alia*: (a) whether KPMG has engaged in a pattern and practice of unlawful, systemic gender discrimination in its compensation, assignment, selection, performance evaluation, promotion, advancement, transfer, training and discipline policies, practices and procedures, and in the general terms and conditions of work and employment; (b) whether the failure to institute adequate standards, quality controls, implementation metrics, or oversight in assignment, compensation, evaluation, development, maternity and flex/time, and promotion systems violate Title VII, and/or other statutes; (c)

whether the lack of transparency and of opportunities for redress in those systems violates Title VII, and/or other statutes; (d) whether senior management and HR's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates Title VII, and/or other statutes; and (e) whether KPMG is liable for a continuing systemic violation of Title VII, and/or other statutes; and a determination of the proper standards for proving a pattern or practice of discrimination by KPMG against its female Professionals.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 412 of the FAC and denies that a class action is appropriate in this case.

413.    The common questions of fact include, *inter alia*: whether KPMG has: (a) used a system of assignment that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (b) through the use of that system of assignment placed female Professionals in job titles or classifications lower than similarly-situated male employees; (c) systematically, intentionally or knowingly placed female Professionals in job titles or classifications lower than similarly-situated male employees; (d) used a compensation system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (e) through the use of that compensation system compensated female Professionals less than similarly-situated males in salary, bonuses, and/or other perks; (f) systematically, intentionally or knowingly compensated female Professionals less than similarly-situated males; (g) used a system of development and mentoring that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress (h) through the use of that development and mentoring system failed to develop or mentor female Professionals in a commensurate manner to their similarly-situated male counterparts; (i) systematically, intentionally or knowingly failed to develop or mentor female Professionals in a commensurate manner to their similarly-situated male counterparts; (j) used a promotion system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (k) through use of that promotion system precluded or delayed the promotion of female Professionals into higher level jobs traditionally held by male employees; (l) systematically, intentionally or knowingly precluded or delayed the promotion of female Professionals into higher level jobs traditionally held by male employees; (m) used a system for performance evaluations which lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency and opportunities for redress; (n) through use of that performance evaluation system inaccurately, unfairly or disparately measured and classified female and male employee performance; (o) systematically, intentionally or knowingly subjected female employees to inaccurate, unfair, or discriminatorily lowered performance evaluations; through its policies, practices, and procedures, developed male and female employees equitably; (p) used maternity and flex time policies, practices, and procedures that lack meaningful or appropriate standards, implementation metrics, quality controls, transparency or opportunities for redress; (q) through use of those policies, practices and procedures treated pregnant employees and mothers differently and discriminatorily from non-pregnant employees, male employees, and non-caregivers; (r) systematically, intentionally or knowingly subjected pregnant employees and mothers to disparate and discriminatory terms and conditions of employment; (s) used HR, EEO, and Ethics systems that lack meaningful or appropriate standards, implementation metrics,

95

quality controls, transparency or opportunities for redress; (t) through use of those systems minimized, ignored, or covered up evidence of gender discrimination and harassment in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination and harassment brought to the attention of senior management, the human resources department, or other reporting channels; (u) systematically, intentionally, knowingly or deliberately showed an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints about gender and pregnancy discrimination and harassment in the workplace; and (v) failed to adequately or meaningfully train, coach, or discipline senior management on EEO principles and compliance.

**ANSWER**

KPMG denies the allegations set forth in paragraph 413 of the FAC and denies that a class action is appropriate in this case.

414.    The employment policies, practices, and procedures to which the Class Representatives and the class members are subjected are set at KPMG's corporate level, which is headquartered in and directed from New York, and apply universally to all class members. These employment policies, practices and procedures are not unique or limited to any department; rather, they apply to all departments and, thus, affect the Class Representatives and class members in the same ways no matter the facility, department, or position in which they work.

**ANSWER**

KPMG denies the allegations set forth in paragraph 414 of the FAC and denies that a class action is appropriate in this case.

415.    Throughout the liability period, a disproportionately large percentage of the managers and officers at KPMG have been male.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 415 of the FAC.

416.    The systemic means of accomplishing such gender-based stratification include, but are not limited to, KPMG's assignment, development, promotion, advancement, compensation and performance evaluation policies, practices and procedures. These policies, practices and procedures all suffer from a lack of: transparency, adequate quality standards and controls; sufficient implementation metrics; upper management/HR review; and opportunities for redress or challenge. As a result, employees are assigned, evaluated, compensated, developed,

**ANSWER**

KPMG denies the allegations set forth in paragraph 416 of the FAC.

417.    As a result, male employees have advanced and continue to advance more rapidly to better and higher-paying jobs than do female employees. KPMG's policies, practices, and procedures have had an adverse impact on female Professionals seeking selection for, or

advancement to, better and higher-paying positions. In general, the higher the level of the job classification, the lower the percentage of female employees holding it.

**ANSWER**

KPMG denies the allegations set forth in paragraph 417 of the FAC.

**E.      Typicality of Claims and Relief Sought**

418.    The claims of the Class Representatives are typical of the claims of the class. The relief sought by the Class Representatives for gender discrimination complained of herein is also typical of the relief which is sought on behalf of the class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 418 of the FAC and denies that a class action is appropriate in this case.

419.    Like the members of the class, the Class Representatives are Professionals who worked at KPMG during the liability period.

**ANSWER**

KPMG denies the allegations set forth in paragraph 419 of the FAC and denies that a class action is appropriate in this case.

420.    Discrimination in selection, assignment, performance evaluation, promotion, advancement, and training affects the compensation of the Class Representatives and all the employee class members in the same or similar ways.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 420 of the FAC and denies that a class action is appropriate in this case.

421.    KPMG has failed to create adequate incentives for its management to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, practices, and procedures referenced in this Complaint, and has failed to discipline adequately its managers and other employees when they violate the Company policy or discrimination laws. These failures have affected the Class Representatives and the class members in the same or similar ways.

**ANSWER**

KPMG denies the allegations set forth in paragraph 421 of the FAC and denies that a class action is appropriate in this case.

422.    The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the class members in this case.

**ANSWER**

KPMG denies the allegations set forth in paragraph 422 of the FAC and denies that a class action is appropriate in this case.

423.    The Class Representatives seek the following relief for their individual claims and for those of the members of the proposed class: (a) a declaratory judgment that KPMG has engaged in systemic gender discrimination against female Professionals by (1) paying female Professionals less than their male counterparts, (2) denying female Professionals promotion and advancement opportunities in favor of male employees, (3) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers, and (4) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination and pregnancy/caregiver discrimination in the workplace; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of KPMG's assignment, promotion, transfer, training, performance evaluation, compensation, and discipline policies, practices, and procedures – so that female Professionals will be able to compete fairly in the future for promotions, transfers, and assignments to better and higher-paying classifications with terms and conditions of employment traditionally enjoyed by male employees; (d) back pay, front pay, reinstatement and/or other equitable remedies necessary to make the female Professionals whole from the Defendant's past discrimination; (f) punitive and nominal damages to prevent and deter KPMG from engaging in similar discriminatory practices in the future; (g) compensatory damages; (h) pre- and post-judgment interest; and (i) attorneys' fees, costs and expenses.

**ANSWER**

KPMG admits that Plaintiffs seek the relief identified in paragraph 423 of the FAC. KPMG denies that Plaintiffs are entitled to relief of any kind. KPMG denies the allegations set forth in paragraph 423 of the FAC and denies that a class action is appropriate in this case.

**F.    Adequacy of Representation**

424.    The Class Representatives' interests are co-extensive with those of the members of the proposed class which they seek to represent in this case. The Class Representatives seek to remedy KPMG's discriminatory employment policies, practices, and procedures so that female Professionals will no longer be prevented from advancing into higher-paying and/or more desirable higher-level positions. Plaintiffs are willing and able to represent the proposed class fairly and vigorously as they pursue their individual claims in this action.

**ANSWER**

KPMG denies the allegations set forth in paragraph 424 of the FAC and denies that a class action is appropriate in this case.

425.    The Class Representatives have retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests,

experience, and resources of Plaintiffs' counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

**ANSWER**

KPMG admits that Plaintiffs have retained counsel. KPMG denies the remainder of the allegations set forth in paragraph 425 of the FAC and denies that a class action is appropriate in this case.

### G. Requirements of Rule 23(b)(2)

426.    KPMG has acted on grounds generally applicable to the Class Representatives and the class by adopting and following systemic policies, practices, and procedures which are discriminatory. Gender discrimination is KPMG's standard operating procedure rather than a sporadic occurrence. KPMG has refused to act on grounds generally applicable to the class by, *inter alia*: (a) assigning female Professionals to job titles and classifications lower than proper for their qualifications and/or actual job duties and responsibilities; (b) failing to pay female Professionals on par with similarly-situated male employees; (c) denying female Professionals promotion and advancement opportunities in favor of male employees; (d) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers; and (e) failing to prevent, respond to, adequately investigate, and/or appropriately resolve claims of gender discrimination and pregnancy/caregiver discrimination.

**ANSWER**

KPMG denies the allegations set forth in paragraph 426 of the FAC and denies that a class action is appropriate in this case.

427.    The systemic means of accomplishing such gender-based stratification include, but are not limited to, KPMG's assignment, development, promotion, advancement, compensation and performance evaluation policies, practices and procedures. These practices and procedures all suffer from a lack of: transparency, adequate quality standards and controls; sufficient implementation metrics; upper management/HR review; and opportunities for redress or challenge. As a result, employees are assigned, evaluated, compensated, developed, and promoted within a system that is insufficiently designed, articulated, explained or implemented to consistently, reliably or fairly manage or reward employees.

**ANSWER**

KPMG denies the allegations set forth in paragraph 427 of the FAC.

428.    KPMG's systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the class as a whole.

**ANSWER**

KPMG denies the allegations set forth in paragraph 428 of the FAC and denies that a class action is appropriate in this case.

429.    Injunctive, declaratory and affirmative relief are the predominant relief sought in this case because they are the culmination of the proof of KPMG's individual and class-wide liability and the essential predicate for the Class Representatives' and the class members' entitlement to monetary and non-monetary remedies at Stage II of such trial. Entitlement to declaratory, injunctive and affirmative relief flows directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female Professionals at KPMG.

**ANSWER**

KPMG admits that Plaintiffs seek the relief identified in paragraph 429 of the FAC. KPMG denies that Plaintiffs are entitled to any of the relief, denies the allegations set forth in Paragraph 429 of the FAC and denies that a class action is appropriate in this case.

430.    In addition, entitlement to declaratory, injunctive and affirmative relief forms the factual and legal predicate for recovery by the Class of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 430 of the FAC and denies that a class action is appropriate in this case.

**H.      Requirements of Rule 23(b)(3)**

431.    The common issues of fact and law affecting the claims of the Class Representatives and proposed class members, including, but not limited to, the common issues previously identified herein, predominate over any issues affecting only individual claims. These issues include whether KPMG has engaged in gender discrimination against female Professionals by (a) assigning female Professionals to lower job titles and classifications than their male counterparts; (b) paying female Professionals less than their male counterparts, (c) denying female Professionals promotion and advancement opportunities in favor of male employees, (d) treating pregnant employees and mothers differently from non-pregnant employees, male employees, and non-caregivers, and (e) failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination and pregnancy/caregiver discrimination in the workplace.

**ANSWER**

KPMG denies the allegations set forth in paragraph 431 of the FAC and denies that a class action is appropriate in this case.

432.   A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the proposed class.

**ANSWER**

KPMG denies the allegations set forth in paragraph 432 of the FAC and denies that a class action is appropriate in this case.

433.   The cost of proving KPMG's pattern and practice of discrimination makes it impracticable for the Class Representatives and members of the proposed class to prosecute their claims individually.

**ANSWER**

KPMG denies the allegations set forth in paragraph 433 of the FAC and denies that a class action is appropriate in this case.

434.   By virtue of the pattern and practice of discrimination at KPMG, Class Representatives and Class members are eligible for monetary remedies for losses caused by the systemic discrimination, including backpay, frontpay, reinstatement, compensatory damages, and other nominal and punitive damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 434 of the FAC and denies that a class action is appropriate in this case.

## VI.   COLLECTIVE ACTION ALLEGATIONS (EQUAL PAY ACT)

435.   Plaintiffs incorporate by reference the allegations from the previous paragraphs of this Complaint alleging class-based discrimination against similarly-situated female employees.

**ANSWER**

In response to paragraph 435 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

436.   Plaintiffs bring collective violations of the Equal Pay Act ("EPA") as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) on behalf of all members of the gender class – e.g. current, former, and future female Managers, during the liability period. The EPA action includes female Professionals who (a) were not compensated equally to males who had substantially similar job classifications, functions, families, titles and/or duties, (b) were not compensated equally to males who performed substantially similar work, and (c) who were denied promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified male employees.

**ANSWER**

KPMG admits that Plaintiffs purport to bring a collective action as described in paragraph 436 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 436 of the FAC and denies that a collective action is appropriate in this case.

437.    Questions of law and fact common to the EPA Collective Action Plaintiffs as a whole include but are not limited to the following: (a) whether Defendant unlawfully failed and continues to fail to compensate female Professionals at a level commensurate with similarly situated male employees; (b) whether Defendant unlawfully failed and continues to fail to promote and advance female Professionals in a fashion commensurate with similarly qualified males; (c) whether Defendant's policy and practice of failing to compensate female Professionals on a par with comparable male employees as a result of (a) and (b) violates applicable provisions of the EPA; and (d) whether Defendant's failure to compensate female Professionals on a par with comparable male employees as a result of (a) and (b) was willful within the meaning of the EPA.

**ANSWER**

KPMG denies the allegations set forth in paragraph 437 of the FAC.

438.    Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA Collective Action Plaintiffs because the claims of Plaintiff are similar to the claims of the EPA Collective Action Plaintiffs.

**ANSWER**

The allegations set forth in paragraph 438 of the FAC purport to state a legal conclusion to which no response is required. To the extent a response is required, KPMG denies the allegations set forth therein and denies that a collective action is appropriate in this case.

439.    Plaintiffs and the EPA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar job classifications, functions, families, titles and/or duties; and (c) are subject to Defendant's common policy and practice of gender discrimination in (i) failing to compensate female Professionals on par with men who perform substantially equal work and/or hold equivalent levels and positions, and (ii) failing to provide female Professionals equal pay by denying opportunities for promotion and advancement to them comparable to those afforded to males who perform substantially equal work.

**ANSWER**

KPMG denies the allegations set forth in paragraph 439 of the FAC and denies that a collective action is appropriate in this case.

## INDIVIDUAL, CLASS AND COLLECTIVE ACTION COUNTS
## COUNT I

**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") – PAY DISCRIMINATION**

**42 U.S.C. § 2000e, *et seq.***

440.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 440 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

441.    This Count is brought on behalf of Ms. Kassman, Ms. Patterson, Ms. Butler, Ms. Charity, Ms. Jones, Ms. Inman, Ms. Murray, and all members of the class.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 441 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 441 of the FAC.

442.    This Count is brought on behalf of Ms. Patterson only in her capacity as an individual Plaintiff, and not as a Class Representative.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 442 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 442 of the FAC.

443.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting them to different treatment on the basis of their gender. Plaintiffs have suffered both disparate impact and disparate treatment as a result of Defendant's wrongful conduct.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 443 of the FAC.

444.    Defendant has discriminated against Plaintiffs and all members of the class by subjecting them to discriminatory pay, discriminatory denials of pay raises, and discriminatory performance evaluations that affect pay, in violation of Title VII.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 444 of the FAC.

445.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiffs and all members of the class, entitling Plaintiffs and all members of the class to punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 445 of the FAC.

446.    By reason of the continuous nature of Defendant's discriminatory conduct, which persisted throughout the employment of Plaintiffs and the members of the class, Plaintiffs and the members of the class are entitled to application of the continuing violations doctrine to all violations alleged herein.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 446 of the FAC.

447.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and the members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 447 of the FAC.

448.    Defendant's policies, practices and/or procedures have produced a disparate impact on Plaintiffs and the members of the class with respect to the terms and conditions of their employment.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 448 of the FAC.

449.    By reason of Defendant's discrimination, Plaintiffs and the members of the class are entitled to all remedies available for violations of Title VII, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 449 of the FAC.

450.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**ANSWER**

KPMG denies the allegations set forth in paragraph 450 of the FAC.

## COUNT II

## (INDIVIDUAL AND CLASS CLAIMS)

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") – PROMOTION DISCRIMINATION

## 29 U.S.C. § 2000e, *et seq.*

451.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 451 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

452.    This Count is brought on behalf of Ms. Kassman, Ms. Patterson, Ms. Butler, Ms. Charity, Ms. Jones, Ms. Inman, and all members of the class.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 452 of the FAC. KPMG denies the remainder of the allegations set forth in paragraph 452 of the FAC.

453.    This Count is brought on behalf of Ms. Patterson only in her capacity as an individual Plaintiff, and not as a Class Representative.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 453 of the FAC.  KPMG denies the remainder of the allegations set forth in paragraph 453 of the FAC.

454.    Defendant KPMG has discriminated against Plaintiffs and all members of the class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting them to different treatment on the basis of their gender. Plaintiffs have suffered both disparate impact and disparate treatment as a result of Defendant's wrongful conduct.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 454 of the FAC.

455.    Defendant has discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees, and by subjecting them to discriminatory denials of promotions, discriminatory denials of developmental opportunities, and discriminatory performance evaluations that affect promotions in violation of Title VII.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 455 of the FAC.

456.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiffs and all members of the class, entitling Plaintiffs and all members of the class to punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 456 of the FAC.

457.    By reason of the continuous nature of Defendant's discriminatory conduct, which persisted throughout the employment of Plaintiffs and the members of the class, Plaintiffs and the members of the class are entitled to application of the continuing violations doctrine to all violations alleged herein.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 457 of the FAC.

458.    As a result of Defendant's conduct alleged in this complaint, Plaintiffs and the members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 458 of the FAC.

459.    Defendant's policies, practices and/or procedures have produced a disparate impact on Plaintiffs and the members of the class with respect to the terms and conditions of their employment.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 459 of the FAC.

460.    By reason of Defendant's discrimination, Plaintiffs and the members of the class are entitled to all remedies available for violations of Title VII, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 460 of the FAC.

461.     Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**ANSWER**

KPMG denies the allegations set forth in paragraph 461 of the FAC.

**COUNT III**

**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") – PREGNANCY AND CAREGIVER DISCRIMINATION**

**29 U.S.C. § 2000e,** *et seq.*

462.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 462 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

463.     This Count is brought on behalf of Ms. Kassman, Ms. Patterson, Ms. Inman, and all similar members of the class.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 463 of the FAC, but denies the remainder of the allegations set forth therein.

464.     This Count is brought on behalf of Ms. Patterson only in her capacity as an individual Plaintiff, and not as a Class Representative.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 464 of the FAC, but denies the remainder of the allegations set forth therein.

465.     Defendant KPMG has discriminated against Plaintiffs and all members of the Class in violation of Title VII by subjecting them to different treatment on the basis of their gender. The members of the Class have been disparately impacted and disparately treated as a result of KPMG's wrongful conduct and its policies, practices and procedures.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 465 of the FAC.

466. KPMG has discriminated against the class members bringing this claim by treating them differently from and less preferably than similarly-situated male employees and female employees without primary caregiving responsibilities, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotional and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of Title VII.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 466 of the FAC.

467. KPMG's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of the Plaintiffs and the members of the proposed class, entitling the Plaintiffs and the members of the class to punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 467 of the FAC.

468. As a result of Defendant's conduct alleged in this complaint, Plaintiffs and the members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 468 of the FAC.

469. By reason of Defendant's discrimination, Plaintiffs and members of the class are entitled to all legal and equitable remedies available for violations of Title VII, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 469 of the FAC.

470. Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**ANSWER**

KPMG denies the allegations set forth in paragraph 470 of the FAC.

<u>**COUNT IV**</u>

**(INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938,**

**AS AMENDED BY THE EQUAL PAY ACT OF 1963 – 29 U.S.C. §§ 206,** *et seq***.**

**DENIAL OF EQUAL PAY FOR EQUAL WORK**

471.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

**ANSWER**

In response to paragraph 471 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

472.    This Count is brought on behalf of Ms. Kassman, Ms. Patterson, Ms. Vasudeva, Ms. Butler, Ms. Charity, Ms. Jones, Ms. Inman, Ms. Murray, and the EPA Collective Action Class, including all EPA Collective Action Plaintiffs who "opt in" to this action.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 472 of the FAC. KPMG denies the remainder of the allegations set forth therein.

473.    Defendant, an employer of Plaintiffs and the EPA Collective Action Plaintiffs within the meaning of the Equal Pay Act, has discriminated against Plaintiff and EPA Collective Action Plaintiffs in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, et seq., as amended by the Equal Pay Act of 1963 ("EPA"), by subjecting them to unequal pay on the basis of sex.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 473 of the FAC.

474.    Defendant has discriminated against Plaintiffs and EPA Collective Action Plaintiffs by treating them differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions. Defendant so discriminated by subjecting them to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, discriminatory denials of promotions and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the Equal Pay Act.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 474 of the FAC.

475.    Defendant caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the Equal Pay Act. Moreover,

Defendant knew of or showed reckless disregard for the fact that its conduct was in violation of the Equal Pay Act.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 475 of the FAC.

476.     As a result of Defendant's conduct alleged in this Complaint and/or Defendant's willful, knowing and intentional discrimination, Plaintiffs and EPA Collective Action Plaintiffs have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 476 of the FAC.

477.     Plaintiffs and EPA Collective Action Plaintiffs are therefore entitled to all remedies available for violations of the EPA, including liquidated damages for all willful violations.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 477 of the FAC.

478.     Attorneys' fees should be awarded under 29 U.S.C. §§ 216, et seq.

**ANSWER**

KPMG denies the allegations set forth in paragraph 478 of the FAC.

## COUNT V

### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296, subd. 1(a) –

### PAY DISCRIMINATION

479.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 479 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

480.     This Count is brought on behalf of Ms. Kassman and all members of the class who live or lived and or work or worked in New York at any point after September 29, 2005.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 459 of the FAC. KPMG denies that this count can be brought on behalf of putative class members not working in the State of New York. KPMG denies the remainder of the allegations set forth in paragraph 480 of the FAC.

481.    Defendant KPMG has discriminated against Plaintiff and all members of the class in violation of Section 296, subdivision 1(a) of the New York Executive Law, by subjecting them to different treatment on the basis of their gender.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 481 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

482.    Defendant has discriminated against Plaintiff and all members of the class by subjecting them to discriminatory pay, discriminatory denials of pay raises, and discriminatory performance evaluations that affect pay, in violation of the New York Executive Law.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 482 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

483.    As a result of Defendant's conduct alleged in this complaint, Plaintiff and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 483 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

484.    By reason of Defendant's discrimination, Plaintiff and all members of the class are entitled to all remedies available for violations of the New York Executive Law.

**ANSWER**

KPMG denies the allegations set forth in paragraph 484 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

**COUNT VI**

111

(INDIVIDUAL AND CLASS CLAIMS)

**VIOLATION OF NEW YORK EXECUTIVE LAW § 296, subd. 1(a) –**

**PROMOTION DISCRIMINATION**

485.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 485 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

486.    This Count is brought on behalf of Ms. Kassman and all members of the class who live or lived and or work or worked in New York at any point after September 29, 2005.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 486 of the FAC. KPMG denies that this count can be brought on behalf of putative class members not working in the State of New York. KPMG denies the remainder of the allegations set forth in paragraph 486 of the FAC.

487.    Defendant KPMG has discriminated against Plaintiff and all members of the class in violation of Section 296, subdivision 1(a) of the New York Executive Law, by subjecting them to different treatment on the basis of their gender.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 487 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

488.    Defendant has discriminated against Plaintiff and all members of the class by treating them differently from and less preferably than similarly-situated male employees, and by subjecting them to discriminatory denials of promotions, discriminatory denials of developmental opportunities, and discriminatory performance evaluations that affect promotions in violation of the New York Executive Law.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 488 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

489.    As a result of Defendant's conduct alleged in this complaint, Plaintiff and all members of the class have suffered and continue to suffer harm, including but not limited to lost

earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 489 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

490.   By reason of Defendant's discrimination, Plaintiff and all members of the class are entitled to all remedies available for violations of the New York Executive Law.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 490 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

<u>**COUNT VII**</u>

**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF NEW YORK EXECUTIVE LAW § 296, subd. 1(a) –**

**PREGNANCY AND CAREGIVER DISCRIMINATION**

491.   Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 491 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

492.   This Count is brought on behalf of Ms. Kassman and all similar members of the class who live or lived and or work or worked in New York at any point after September 29, 2005.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 492 of the FAC, but denies the remainder of the allegations set forth therein. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

493.   Defendant KPMG has discriminated against Plaintiff and all members of the class in violation of Section 296, subdivision 1(a) of the New York Executive Law, by subjecting them to different treatment on the basis of their gender.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 493 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

494.    KPMG has discriminated against the class members bringing this claim by treating them differently from and less preferably than similarly-situated male employees and female employees without primary caregiving responsibilities, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotions and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of the New York Executive Law.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 494 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

495.    As a result of Defendant's conduct alleged in this complaint, Plaintiff and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 495 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

496.    By reason of Defendant's discrimination, Plaintiff and all members of the class are entitled to all remedies available for violations of the New York Executive Law.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 496 of the FAC. KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

## COUNT VIII

## (INDIVIDUAL AND CLASS CLAIMS)

**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 1(a) –**

**PAY DISCRIMINATION**

497.     Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 497 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

498.     This Count is brought on behalf of Ms. Kassman and all members of the class.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 498 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG denies that this count can be brought on behalf of putative class members not working in New York City. KPMG denies the remainder of the allegations set forth in paragraph 498 of the FAC.

499.     Defendant KPMG has discriminated against Plaintiff and all members of the class in violation of Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting them to different treatment on the basis of their gender.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 499 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

500.     As a result of Defendant's conduct alleged in this complaint, Plaintiff and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 500 of the FAC.  Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

501.     As a result of Defendant's conduct alleged in this complaint, Plaintiff and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 501 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

502.    By reason of Defendant's discrimination, Plaintiff and all members of the class are entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 502 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

## COUNT IX

### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 1(a) –

### PROMOTION DISCRIMINATION

503.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 503 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

504.    This Count is brought on behalf of Ms. Kassman and all members of the class.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 504 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG denies that this count can be brought on behalf of putative class members not working in New York City. KPMG denies the remainder of the allegations set forth in paragraph 504 of the FAC.

505.    Defendant KPMG has discriminated against Plaintiff and all members of the class in violation of Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting them to different treatment on the basis of their gender.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 505 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

506.    Defendant KPMG has discriminated against Plaintiff and all members of the class in violation of Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting them to different treatment on the basis of their gender.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 506 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

507.    As a result of Defendant's conduct alleged in this complaint, Plaintiff and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 507 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

508.    By reason of Defendant's discrimination, Plaintiff and all members of the class are entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 508 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

## COUNT X

### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 1(a) –

### PREGNANCY AND CAREGIVER DISCRIMINATION

509.    Plaintiffs re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 509 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

510.    This Count is brought on behalf of Ms. Kassman and all similar members of the class.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 489 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG denies that this count can be brought on behalf of putative class members not working in New York City. KPMG denies the remainder of the allegations set forth in paragraph 510 of the FAC.

511.    Defendant KPMG has discriminated against Plaintiff and all members of the class in violation of Section 8-107, subdivision 1(a) of the New York City Administrative Code, by subjecting them to different treatment on the basis of their gender.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 511 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

512.    KPMG has discriminated against the class members bringing this claim by treating them differently from and less preferably than similarly-situated male employees and female employees without primary caregiving responsibilities, and by subjecting them to differential and substandard terms and conditions of employment including but not limited to discriminatory denials of fair compensation, discriminatory denials of promotions and discriminatory treatment with respect to work responsibilities and other terms and conditions of employment in violation of the New York City Administrative Code.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 512 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

513.    As a result of Defendant's conduct alleged in this complaint, Plaintiff and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 513 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

514.    By reason of Defendant's discrimination, Plaintiff and all members of the class are entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 514 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in New York City.

**COUNT XI**

**(INDIVIDUAL AND CLASS CLAIMS)**

**VIOLATION OF THE NEW YORK EQUAL PAY LAW –**

**N.Y. LABOR LAW § 194**

**DENIAL OR EQUAL PAY FOR EQUAL WORK**

515    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

**ANSWER**

In response to paragraph 515 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

516.    This Count is brought on behalf of Plaintiffs and all members of the class.

**ANSWER**

KPMG admits that Plaintiffs purport to bring this count as described in paragraph 516 of the FAC. KPMG denies that this count can be brought on behalf of putative class members not working in the State of New York. KPMG denies the remainder of the allegations set forth in paragraph 495 of the FAC.

517.    Defendant, an employer of Plaintiffs and all members of the class within the meaning of the New York Equal Pay Law, has discriminated against Plaintiffs and all members of the class in violation of the New York Labor Law § 194, by subjecting them to unequal pay on the basis of sex.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 517 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

518.    Defendant has discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions. Defendant so discriminated by subjecting them to discriminatory pay, discriminatory denials of promotions and other advancement opportunities

that would result in higher compensation, and other forms of discrimination in violation of the New York Equal Pay Law.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 518 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

519.    Defendant caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the New York Equal Pay Law. Moreover, Defendant willfully violated the New York Equal Pay Law by intentionally paying women less than men.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 519 of the FAC.

520.    Plaintiffs and all members of the class are therefore entitled to all remedies available for violations of N.Y. Labor Law § 194, including liquidated damages and attorneys' fees and costs for all willful violations.

**ANSWER**

KPMG denies the allegations set forth in Paragraph 520 of the FAC. Pursuant to the Court's Order, dated February 7, 2013, KPMG further denies that this count can be brought on behalf of putative class members not working in the State of New York.

## INDIVIDUAL ONLY COUNTS

## COUNT XII

## (INDIVIDUAL CLAIM – PLAINTIFFS KASSMAN AND PATTERSON)

## VIOLATION OF TITLE VII - RETALIATION

### 42 U.S.C. § 2000e-3

521.    Plaintiffs Kassman and Patterson re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 521 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

522.    In their final years of employment with Defendant, Ms. Kassman and Ms. Patterson repeatedly voiced concerns about KPMG's discriminatory treatment of them,

complaining through various reporting channels, including the Office of Ethics and Compliance, the Office of General Counsel, and Human Resources.

**ANSWER**

KPMG admits Ms. Kassman and Ms. Patterson voiced purported concerns. KPMG denies the remainder of the allegations set forth in paragraph 522 of the FAC.

523.     In retaliation for their complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against Ms. Kassman and Ms. Patterson.

**ANSWER**

KPMG denies the allegations set forth in paragraph 523 of the FAC.

524.     Defendant retaliated against Ms. Kassman by, *inter alia*, giving her a disciplinary "coach," failing to provide her equal pay or promote her, and subjecting her to stressful meetings and interrogations based on baseless accusations. Defendant ultimately bullied Ms. Kassman into resigning by subjecting her to escalating gender discrimination and harassment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 524 of the FAC.

525.     Defendant retaliated against Ms. Patterson by, *inter alia*, subjecting her to unfounded criticism, refusing to give her billable work, and denying her the pay and promotion she deserved.

**ANSWER**

KPMG denies the allegations set forth in paragraph 525 of the FAC.

526.     Upon information and belief, other women at KPMG who opposed or complained about unlawful gender discrimination were similarly retaliated against.

**ANSWER**

KPMG denies the allegations set forth in paragraph 526 of the FAC.

527.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Ms. Kassman and Ms. Patterson, entitling them to punitive damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 527 of the FAC.

528.    As a result of Defendant's conduct alleged in this Complaint, Ms. Kassman and Ms. Patterson have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 528 of the FAC.

529.    By reason of Defendant's retaliation, Ms. Kassman and Ms. Patterson are entitled to all remedies available for violations of Title VII, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 529 of the FAC.

530.    Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

**ANSWER**

KPMG denies the allegations set forth in paragraph 530 of the FAC.

## COUNT XIII

### (INDIVIDUAL CLAIM – PLAINTIFFS KASSMAN, PATTERSON AND VASUDEVA)

### VIOLATIONS OF THE EQUAL PAY ACT

### U.S.C. § 215(a)(3) - RETALIATION

531 to 537. No response is necessary to paragraphs 531 through 537 of the FAC, as Plaintiffs' individual claims under the Equal Pay Act have been dismissed.

**ANSWER**

No answer.

## COUNT XIV

### (INDIVIDUAL CLAIM – PLAINTIFF KASSMAN)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296

### RETALIATION

538.    Plaintiff Kassman re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 538 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

539.    In the final year of her employment with Defendant, Ms. Kassman repeatedly voiced concerns about KPMG's discriminatory treatment of her, complaining to the Office of Ethics and Compliance, the Office of General Counsel, and Human Resources.

**ANSWER**

KPMG admits that, Ms. Kassman voiced purported concerns, but denies the remainder of the allegations set forth in paragraph 539 of the FAC.

540.    In retaliation for Ms. Kassman's complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against her, including giving her a disciplinary "coach," failing to provide her equal pay or promote her, and subjecting her to stressful meetings and interrogations based on baseless accusations. Defendant ultimately bullied Ms. Kassman into resigning by subjecting her to escalating gender discrimination and harassment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 540 of the FAC.

541.    By reason of Defendant's conduct as alleged herein, Ms. Kassman is entitled to all remedies available under the New York Executive Law.

**ANSWER**

KPMG denies the allegations set forth in paragraph 541 of the FAC.

## COUNT XV

### (INDIVIDUAL CLAIM – PLAINTIFF KASSMAN)

### VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 7 – RETALIATION

542.    Plaintiff Kassman re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 542 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

543.    In the final year of her employment with Defendant, Ms. Kassman repeatedly voiced concerns about KPMG's discriminatory treatment of her, complaining to the Office of Ethics and Compliance, the Office of General Counsel, and Human Resources.

**ANSWER**

KPMG admits that Ms. Kassman voiced purported concerns. KPMG denies the remainder of the allegations set forth in paragraph 543 of the FAC.

544.    In retaliation for Ms. Kassman's complaints regarding KPMG's unlawful employment practices, Defendant took adverse employment actions against her, including giving her a disciplinary "coach," failing to provide her equal pay or promote her, and subjecting her to stressful meetings and interrogations based on baseless accusations. Defendant ultimately bullied Ms. Kassman into resigning by subjecting her to escalating gender discrimination and harassment.

**ANSWER**

KPMG denies the allegations set forth in paragraph 544 of the FAC.

545.    By reason of Defendant's retaliation, Ms. Kassman is entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

**ANSWER**

KPMG denies the allegations set forth in paragraph 545 of the FAC.

## COUNT XVI

### (INDIVIDUAL CLAIM – PLAINTIFFS PATTERSON AND VASUDEVA)

### VIOLATION OF FAMILY AND MEDICAL LEAVE ACT ("FMLA")

### 29 U.S.C. § 2601, *et seq*.

546.    Ms. Vasudeva and Ms. Patterson re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER**

In response to paragraph 546 of the FAC, KPMG restates and incorporates herein all prior paragraphs in this Answer.

547.    KPMG discriminated against Ms. Vasudeva and Ms. Patterson on the basis of their pregnancy, childbirth, and related conditions in violation of the Family and Medical Leave Act ("FMLA").

**ANSWER**

KPMG denies the allegations set forth in paragraph 547 of the FAC.

548.    Under the FMLA, an employee must be restored by the employer to the same position held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

**ANSWER**

The allegations set forth in paragraph 548 of the FAC purport to state a legal conclusion to which no response is required. To the extent a response is required, KPMG denies the allegations set forth in paragraph 548 of the FAC.

549.    After Ms. Patterson returned from maternity leave, KPMG refused to give her billable work, suggested she work part-time or move to a different practice, and denied her equal pay and promotional opportunities, ultimately forcing Ms. Patterson to leave the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 549 of the FAC.

550.    After Ms. Vasudeva returned from maternity leave, KPMG reassigned her to less desirable projects, refused to provide her with staffing support, and denied her equal pay and promotional opportunities, ultimately forcing Ms. Vasudeva to leave the Company.

**ANSWER**

KPMG denies the allegations set forth in paragraph 550 of the FAC.

551.    Defendants acted willfully, intentionally, and with reckless disregard for Ms. Vasudeva and Ms. Patterson's rights under the FMLA.

**ANSWER**

KPMG denies the allegations set forth in paragraph 551 of the FAC.

552.    As a direct and proximate result of defendants' actions, Ms. Vasudeva and Ms. Patterson suffered injury and monetary damages, including but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, expenses and costs, and are entitled to all legal and equitable remedies available.

**ANSWER**

KPMG denies the allegations set forth in paragraph 552 of the FAC.

553.    By reason of KPMG's discrimination, Ms. Vasudeva and Ms. Patterson are entitled to all legal and equitable remedies available for violations of the FMLA, including an

award of liquidated damages for all willful violations, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 2617.

**ANSWER**

KPMG denies the allegations set forth in paragraph 553 of the FAC.

## PRAYER FOR RELIEF

KPMG denies all other allegations not specifically set forth herein.

KPMG denies each and every prayer for relief set forth in Plaintiffs' Prayer for Relief, and each and every sub-paragraph thereof, in its and their entirety, and denies that either Plaintiffs or the putative class are entitled to any relief whatsoever.

## JURY DEMAND

KPMG admits that Plaintiffs purport to demand a trial by jury in this action, but deny the remainder of the allegations set forth in Plaintiffs' jury demand.

## AFFIRMATIVE AND OTHER SEPARATE DEFENSES[19]

## GENERAL

1. Plaintiffs' FAC fails to state a claim upon which relief may be granted, as to the individual Plaintiffs' claims as well as those on behalf of the alleged class.

2. Some or all of Plaintiffs' claims are barred by the applicable statutes of limitations.

3. Some or all of Plaintiffs' claims are barred by the equitable doctrines of laches, waiver, estoppel, res judicata, release, unclean hands and/or after acquired evidence.

4. Defendant did not act with malice or reckless indifference to Plaintiffs' federally protected rights within the meaning of Section 102(b)(1) of the Civil Rights Act of 1991.

---

[19] All affirmative and other defenses are asserted as to the respective named Plaintiffs as well as opt-in plaintiffs and all putative class members.

5.    Venue is inappropriate for one or more of the Plaintiffs in this civil action, requiring dismissal of their claims.

6.    Some of the Plaintiffs and/or their claims are misjoined and should be dismissed or alternatively transferred.

### ADMINISTRATIVE REMEDIES/TITLE VII/NYCHRL/NYSHRL

7.    To the extent Plaintiffs or any of them failed to comply with the enforcement provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), their Title VII claims are barred as untimely and/or for failure to exhaust administrative remedies.

8.    To the extent Plaintiffs or any of them failed to satisfy all of the conditions precedent to filing suit under the New York State Human Rights Law, New York Executive Law § 290, *et seq.* ("NYSHRL"), or the New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL"), including failure to exhaust administrative remedies, their claims are barred.

9.    To the extent any of Plaintiffs' purported Title VII claims concern events alleged to have occurred more than 300 days before the filing of their Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), such claims are barred as untimely.

10.    To the extent Plaintiffs' FAC purports to assert or attempts to assert any Title VII, NYSHRL or NYCHRL claims other than those contained in any Plaintiff's Charge of Discrimination filed with the EEOC, NYSDHR or NYCCHR, such claims are barred for failing to fulfill all the conditions precedent to maintaining such claims and otherwise are time-barred.

11.    To the extent Plaintiffs' NYCHRL or NYSHRL claims concern events alleged to have occurred more than three years before the filing of this suit, such claims are barred.

12.     To the extent any particular Plaintiff's Charge of Discrimination filed with the EEOC, NYSDHR or NYCCHR failed to assert claims on behalf of a class of allegedly similarly situated women, the existence of which KPMG expressly denies, commensurate with the claims alleged in Plaintiffs' FAC, that charge cannot serve as the foundation for any putative class alleged by Plaintiffs with respect to such unasserted claims.

## CLASS CLAIMS

13.     One or more Plaintiffs lack standing to assert some or all of the claims of the putative class members they purport to represent, the existence of which class KPMG expressly denies.

14.     Plaintiffs' claims on behalf of the purported class, the existence of which class KPMG expressly denies, are barred by Plaintiffs' failure to meet all four of the mandatory requirements of Fed. R. Civ. P. 23(a).

15.     Plaintiffs' claims on behalf of the purported class, the existence of which class KPMG expressly denies, are barred by Plaintiffs' failure to meet all four of the mandatory requirements of Fed. R. Civ. P. 23(b).

16.     The claims alleged by Plaintiffs are neither common nor typical of those, if any, of the members of the putative class of persons whom they purport to represent, the existence of which KPMG expressly denies.

17.     Plaintiffs are inadequate representatives of the putative class and collective group of persons whom they purport to represent, the existence of which KPMG expressly denies.

18.     The types of claims alleged by Plaintiffs and/or the types of relief sought by Plaintiffs are matters in which individual questions predominate and, accordingly, are not appropriate for class treatment.

19.     Plaintiffs have not shown and cannot show that class treatment of the claims alleged in the FAC is superior to other methods of adjudicating this action.

20.     Certain of the interests of Plaintiffs and members of the putative class and collective group of persons whom they purport to represent are in conflict with the interests of all or some of the members of the proposed class and collective group, the existence of which KPMG expressly denies.

21.     The claims of alleged individuals included in the proposed class, the existence of which KPMG expressly denies, are subject to individualized defenses, and class treatment would not only violate the due process rights of absent class members but also KPMG's rights to due process and a jury trial.

22.     Plaintiffs have failed to identify a practice of discrimination against Plaintiffs or the putative class of persons whom they purport to represent, the existence of which KPMG expressly denies, including, *inter alia*, a policy causing the alleged discrimination.

**GENERAL DEFENSES RE: EMPLOYMENT DECISIONS/DISPARATE IMPACT/
TITLE VII/NYCHRL**

23.     Plaintiffs and members of the putative class of persons whom they purport to represent, the existence of which KPMG expressly denies, cannot identify similarly situated male individuals who work or worked for KPMG as Associates, Senior Associates, Managers, Senior Managers or Directors/Managing Directors, and received more favorable treatment based on gender.

24.     Plaintiffs' claims on behalf of themselves and members of the putative class of persons whom they purport to represent, the existence of which KPMG expressly denies, are not actionable under Title VII because any pay differences between them and similarly-situated male

individuals who work or worked for KPMG as Associates, Senior Associates, Managers Senior Managers or Directors/Managing Directors were based on one or more factors other than gender.

25.     The employment actions taken by KPMG with respect to Plaintiffs were based solely on legitimate, non-discriminatory factors other than gender. Alternatively, in the event that the Court or a jury ever were to conclude that gender was a motivating factor in any employment decisions challenged by Plaintiffs, which KPMG expressly denies, KPMG affirmatively avers that the same decisions would have been made for legitimate business reasons and without consideration of gender.

26.     KPMG denies that gender or any impermissible factor played any role in any of KPMG's various performance, promotion or compensation policies, procedures, decisions, or practices, or in any other policy, procedure, decision, or practice that Plaintiffs are or may be challenging.

27.     Insofar as any of KPMG's employment policies, procedures or practices, including but not limited to those related to performance, promotion or compensation, are found to have had a statistically significant adverse impact on any group of female employees, as compared to similarly situated male employees, which KPMG expressly denies, such policies, procedures or practices nevertheless are lawful because they are job-related for the position in question and consistent with business necessity.

28.     Insofar as any of KPMG's employment policies, procedures or practices, including but not limited to those related to performance, promotion or compensation, are found to have had a statistically significant adverse impact on any group of female employees, as compared to similarly situated male employees, which KPMG expressly denies, such policies,

procedures or practices nevertheless are lawful because they bear a significant relationship to a significant business objective of KPMG.

29.     Insofar as any of KPMG's employment policies, procedures or practices, including but not limited to those related to performance, promotion or compensation, are found to have had a statistically significant adverse impact on any group of female employees, as compared to similarly situated male employees, which KPMG expressly denies, such policies, procedures or practices nevertheless are lawful because Plaintiffs have not demonstrated the existence of an alternative employment practice that satisfies the legal standard as it existed on June 4, 1989, and KPMG has not, therefore, refused to adopt any such alternative employment practice.

30.     Insofar as any of KPMG's employment policies, procedures or practices, including but not limited to those related to performance, promotion or compensation, are found to have had a statistically significant adverse impact on any group of female employees, as compared to similarly situated male employees, which KPMG expressly denies, such policies, procedures or practices nevertheless are lawful because Plaintiffs cannot produce substantial evidence that an alternative policy or practice with less disparate impact is available to KPMG.

31.     Insofar as any of KPMG's employment policies, procedures or practices, including but not limited to those related to performance, promotion or compensation, are found to have had a statistically significant adverse impact on any group of female employees, as compared to similarly situated male employees, which KPMG expressly denies, such policies, procedures or practices nevertheless are lawful because such alternative policy or practice would not serve KPMG as well.

32.     If any selection device utilized by KPMG is found to have had any unlawful adverse impact on any group of female employees, which KPMG expressly denies, such consequences were not intentional.

33.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to avail themselves and/or take advantage of any preventative or corrective opportunities including anti-harassment and anti-discrimination policies provided by KPMG, or otherwise failed to avoid harm.

34.     KPMG has taken reasonable care to prevent and remedy promptly any incidents of alleged sex, race or other discrimination brought to management's attention. KPMG has policies banning sex, race or other discrimination in the workplace and a reasonable and available procedure for handling complaints thereof, which provides for prompt and effective responsive action.

35.     Any instances of discriminatory or harassing conduct by managers of KPMG, the occurrence of which KPMG expressly denies, would have contravened KPMG's good faith efforts to enforce and follow Title VII and other anti-discrimination laws. KPMG has issued policies and established procedures for addressing complaints of alleged discrimination and has promulgated, taught, and enforced those policies and procedures in its workforce. KPMG is therefore not liable, and/or is not liable for punitive or liquidated damages, for any such acts.

36.     Plaintiffs are not entitled to recover punitive or liquidated damages because KPMG has made good-faith efforts to comply with and enforce all applicable anti-discrimination and anti-harassment laws and, at all relevant times, has acted reasonably, in good faith and without malice based upon all relevant information and facts and circumstances known by KPMG at the time it acted.

37.     To the extent Plaintiffs allege that one or more of KPMG's employees harassed them, KPMG expressly states that such conduct, if any, as may have occurred: (1) was outside the course and scope of those employees' employment; (2) was not condoned by KPMG; (3) was undertaken without the knowledge or consent of KPMG; and/or (4) was not conduct of a class-based nature.

38.     No resignation from employment on the part of Plaintiffs or the alleged class members they purport to represent, the existence of which class KPMG expressly denies, was because of behavior that was sufficiently severe or pervasive to alter the conditions of that individual's employment or to create an abusive working environment, nor were working conditions so intolerable that a reasonable person would have felt compelled to resign.

39.     To the extent Plaintiffs establish that they were paid at a rate less than the rate at which KPMG paid wages to male employees for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which were performed under similar working conditions, which KPMG expressly denies, any such differential was because of a seniority system, a merit system, a system which measures earnings by quantity or quality of production, location of employees, or a differential based on any other factor other than sex.

40.     To the extent Plaintiffs establish any instances of harassing or discriminatory conduct (the occurrence of which KPMG expressly denies), KPMG took prompt and affirmative action to remedy such acts and therefore has no liability for them.

## PREGNANCY DISCRIMINATION

41.     Plaintiffs' pregnancies and caregiver responsibilities played no role or no impermissible role in any employment decisions related to Plaintiffs. Alternatively, even if some

impermissible motive were a factor in any decision, which KPMG denies, the same decision would have been reached for legitimate non-discriminatory business reasons.

42. Plaintiffs' pregnancy discrimination claims under Title VII, NYSHRL and NYCHRL or any other laws are precluded to the extent they attempt to assert a claim on the basis that Plaintiffs had "primary caregiving responsibilities."

## NYCHRL CLAIMS

43. The NYCHRL does not apply to one or more of the Plaintiffs and/or putative class members.

44. KPMG is not liable with respect to any and/or all of the NYCHRL claims alleged in Plaintiffs' FAC because any employee who allegedly discriminated against Plaintiffs, or against some or all members of the putative class of persons they purport to represent, the existence of which KPMG expressly denies, was not an "agent" for KPMG who "exercised managerial or supervisory responsibility."

45. If any employee of KPMG engaged in any unlawful discriminatory practice, which KPMG expressly denies, KPMG is not liable with respect to any and/or all of Plaintiffs' purported NYCHRL claims because: (1) KPMG did not know of or acquiesce to any employee's or agent's discriminatory conduct; (2) KPMG did not fail to take immediate and appropriate corrective action upon learning of any discriminatory conduct; (3) there is no basis for concluding that KPMG should have known of the employee's or agent's discriminatory conduct; and (4) KPMG did not fail to exercise reasonable diligence to prevent such discriminatory conduct.

## NYSHRL CLAIMS

46.     The NYSHRL does not apply to one or more of the Plaintiffs and/or putative class members.

47.     Punitive damages are not an appropriate remedy under the NYSHRL.

48.     Attorneys' fees are not an appropriate remedy under the NYSHRL.

## EPA/NY EPA CLAIMS

49.     To the extent Plaintiffs establish that they were paid at a rate less than the rate at which KPMG paid wages to male employees for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which were performed under similar working conditions, which KPMG expressly denies, any such differential was because of 1) a seniority system; 2) a merit system; 3) a system which measures earnings by quantity or quality of production; or 4) a differential based on any other factor other than sex.

50.     All actions taken by KPMG with regard to Plaintiffs' rates of pay were for good cause and in good faith and were based on reasonable factors other than gender.

51.     Defendant's actions in employing individuals at a different pay level than Plaintiffs were not done willfully.

52.     Plaintiffs are not similarly situated to each other or to members of the putative collective group they seek to represent.

53.     This case is inappropriate for treatment as a collective action because Plaintiffs cannot satisfy the requirements for maintenance of a collective action under Section 216(b) of the FLSA.

54.     Plaintiffs' Equal Pay Act claims are limited to the establishments or particular offices/facilities where named plaintiffs worked.

55.     The New York Equal Protection Act does not apply to one or more of Plaintiffs and/or putative class members.

56.     To the extent  any Plaintiffs employed by KPMG on or after January 1, 2016 establish under the New York Equal Protection Act that they were paid at a rate less than the rate at which KPMG paid wages to male employees for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which were performed under similar working conditions, which KPMG expressly denies, any such differential was because of 1) a seniority system; 2) a merit system; 3) a system which measures earnings by quantity or quality of production; or 4) a differential based on a bona fide factor other than sex, such as education, training, or experience.

## INDIVIDUAL CLAIMS

### RETALIATION CLAIMS –KASSMAN (TITLE VII, NYSHRL, NYCHRL), PATTERSON (TITLE VII)

57.     Plaintiffs' individual retaliation claims are defective to the extent Plaintiffs did not engage in any protected activity under Title VII, the Family and Medical Leave Act ("FMLA"), the New York or federal Equal Pay Act, the NYSHRL or the NYCHRL or any other law.

58.     Plaintiffs' individual retaliation claims are defective to the extent that any employment-related actions taken subsequent to Plaintiffs' purported protected activity were taken for legitimate non-retaliatory reasons, and/or were not reasonably likely to dissuade a reasonable employee from engaging in protected activity.

### FMLA CLAIMS (DISCRIMINATION) – PATTERSON, VASUDEVA

59.    Plaintiffs' individual FMLA claims are not actionable because the challenged employment actions were justified by legitimate, non-discriminatory and non-pretextual business reasons unrelated to FMLA status.

60.    Any act or omission by KPMG giving rise to Plaintiffs' individual claims for relief under the FMLA was made in good faith and KPMG had reasonable grounds for believing that its act or omission was not a violation of the FMLA within the meaning of the Act.

61.    Plaintiffs exhausted their FMLA leave entitlement; did not immediately return to work after such exhaustion; and therefore forfeited their job reinstatement rights.

**CAUSATION/DAMAGES**

62.    There is no causal relation between the alleged acts of KPMG and any injury or damage allegedly suffered by Plaintiffs, or the putative class of persons they purport to represent, the existence of which KPMG expressly denies.

63.    KPMG is not liable with respect to any and/or all claims of Plaintiffs and the members of the putative class, the existence of which KPMG expressly denies, to the extent that Plaintiffs and the putative class members suffered no adverse employment action.

64.    KPMG has not engaged in unlawful intentional discrimination with respect to Plaintiffs, or any members of the putative class of persons they purport to represent, the existence of which KPMG expressly denies, and KPMG therefore is not liable for either compensatory or punitive damages.

65.    Plaintiffs, and any members of the putative class of persons they purport to represent, the existence of which KPMG expressly denies, may not seek compensatory or punitive damages under the Equal Pay Act or New York Labor Law.

66.     Any and all claims by Plaintiffs, including those on behalf of members of the putative class of persons whom they purport to represent, the existence of which class KPMG expressly denies, based in whole or in part upon any alleged physical or emotional injury or mental distress are barred because no conduct of KPMG was extreme or outrageous or undertaken with the intent of causing, or in reckless disregard of the probability of causing emotional distress.

67.     Any alleged damages under Title VII for alleged pay, promotion or pregnancy/caregiver discrimination, or retaliation, are subject to, and limited by, the damages caps established by 42 U.S.C. § 1981a(b)(3).

68.     Any liabilities and penalties against KPMG, if any, should be mitigated by virtue of the factors set forth in the NYCHRL.

69.     KPMG is not liable for punitive damages under either Title VII, the NYCHRL or any other law because neither KPMG nor any of its officers, directors and/or "managerial agents" and/or "agents" ever: (1) intentionally engaged in any unlawful employment practices with malice or reckless disregard for Plaintiffs' protected rights, or those of any members of the putative class of persons they purport to represent, the existence of which class KPMG expressly denies, or (2) discriminated against Plaintiffs or any members of the putative class of persons they purport to represent, the existence of which KPMG expressly denies, in the face of a perceived risk that such actions would violate applicable law.

70.     KPMG is not liable for punitive damages under Title VII because any employee who allegedly discriminated against Plaintiffs, or any member of the putative class of persons they purport to represent, the existence of which class KPMG expressly denies, was not a "managerial agent" for KPMG and/or was not acting within the scope of his or her employment.

138

Even if an employee who committed any acts found to have been discriminatory was a "managerial agent" and was acting within the scope of his or her employment, the alleged discrimination was contrary to KPMG's good-faith efforts to comply with Title VII, and therefore punitive damages may not be imposed against KPMG under Title VII.

71.     Plaintiffs' claims for punitive or liquidated damages, including those on behalf of members of the putative class of persons they purport to represent, the existence of which class KPMG expressly denies, are barred by the Due Process Clause (Fifth Amendment, Fourteenth Amendment, Section 1) and the Excessive Fines Clause (Eighth Amendment) of the United States Constitution and corresponding provisions of the New York State Constitution.

72.     Plaintiffs' claims for damages, including those on behalf of members of the putative class of persons they purport to represent, the existence of which class KPMG expressly denies, are barred because any imposition of punitive damages under any of the claims would violate the Eighth Amendment to the United States Constitution and/or the Constitution of the State of New York, as the claims seek to impose an excessive fine upon KPMG, are penal in nature, and seek to punish KPMG upon the basis of vague standards.

73.     Plaintiffs' claims for damages, including those on behalf of members of the putative class of persons they purport to represent, the existence of which class KPMG expressly denies, are barred to the extent that said claims are speculative in nature.

74.     Plaintiffs' claims for punitive damages, including those on behalf of members of the putative class of persons they purport to represent, the existence of which class KPMG expressly denies, are barred because any imposition of punitive damages under any of the claims would violate the Fifth Amendment to the United States Constitution and/or the Constitution of

the State of New York, as such claims expose KPMG to multiple punishments and fines for the same conduct.

75.    Plaintiffs have failed to comply with their duty to mitigate and/or to reasonably attempt to mitigate alleged losses (their entitlement to recovery of which is expressly denied); alternatively, any claims for relief for lost earnings and/or benefits, including those on behalf of members of the putative class of persons they purport to represent, the existence of which KPMG expressly denies, must be set off and/or reduced by wages, compensation, pay and benefits, or other earnings or remunerations, profits and benefits received or which would have been earned or received through good faith efforts to mitigate alleged damages.

## MISCELLANEOUS

76.    The entitlement to any relief which otherwise may be held by the Court or the jury to be due in this case to Plaintiffs, or to any member of the putative class of person they purport to represent, the existence of which class, and any entitlement to relief, KPMG expressly denies, is limited by the after-acquired evidence doctrine.

77.    Each and every purported claim alleged by Plaintiffs, including those on behalf of members of the putative class of persons whom they purport to represent, the existence of which class KPMG expressly denies, is barred because any recovery from KPMG would result in a Plaintiff's or putative class member's unjust enrichment.

78.    The claims for injunctive and other prospective equitable relief by Plaintiffs and the members of the putative class, the existence of which KPMG expressly denies, are barred because Plaintiffs and the putative class members have an adequate and complete remedy at law.

79.    To the extent that Plaintiffs and the members of the putative class, the existence of which KPMG expressly denies, seek to recover for injuries, physical and/or emotional,

allegedly incurred in the course of or arising out of employment with KPMG, such recovery is barred by the exclusivity of remedies under the New York Workers' Compensation law.

80.     Because liability and/or damages, if any, to each member of the proposed class and collective group may not be determined by a single jury or on a group-wide basis or on a representative basis, allowing this action to proceed as a class action would violate KPMG's rights under the Seventh and Fourteenth Amendment to the United States Constitution.

81.     Plaintiffs' propose hybrid certification plan (Rule 23(b)(2) on liability and Rule 23(b)(3) on damages) violates the Rules Enabling Act.

82.     Because of the varying and individualized nature of the claims of each proposed class member, the Court cannot fashion a single injunction as a remedy, thereby making Rule 23(b)(2) certification inappropriate.

83.     The claims of any Plaintiffs and the members of the putative class, the existence of which KPMG expressly denies, are barred to the extent any such individuals have executed or, in the future execute, a release of employment-related claims.

84.     To the extent that any Plaintiff or putative class or collective class member has failed to identify her claims in bankruptcy, such h Plaintiff/putative class or collective class member lacks standing and/or her claim such be judicially estopped/barred.

**RESERVATIONS OF RIGHTS TO ASSERT ADDITIONAL DEFENSES**

85.     In the event that the proposed class or collective group, or any other group or sub-group, should be certified in this action, or any individual be allowed to opt into the action, KPMG incorporates by reference and re-alleges all of its defenses to Plaintiffs' individual claims in response to the claims brought on behalf of or asserted by all members of the proposed class or collective group, or other group or sub-group, or opt-in plaintiff.

86.     KPMG has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter. KPMG reserves the right to amend or seek to amend its answer and/or affirmative defenses.

WHEREFORE, KPMG respectfully demands judgment dismissing this action with prejudice together with an award for its costs and disbursements and such other and further relief as the Court deems appropriate.

Dated: June 14, 2016                                    Respectfully submitted,

**OGLETREE, DEAKINS, NASH,**                           **SIDLEY AUSTIN LLP**
**SMOAK & STEWART, P.C.**                              Attorneys for Defendant KPMG LLP
Attorneys for Defendant KPMG LLP

By: s/ Peter O. Hughes                                 By: s/ Colleen M. Kenney
    Diane M. Saunders                                      John G. Levi (admitted *pro hac vice*)
    Peter O. Hughes (admitted *pro hac*                    Colleen M. Kenney (admitted *pro hac*
    *vice*)                                                *vice*)
    OGLETREE, DEAKINS, NASH,                               Wendy M. Lazerson
    SMOAK & STEWART, P.C.                                  SIDLEY AUSTIN LLP
    10 Madison Avenue, Suite 400                           1001 Page Mill Road, Bldg. 1
    Morristown, NJ 07960                                   Palo Alto, CA 94304
    peter.hughes@ogletreedeakins.com                       jlevi@sidley.com
    diane.saunders@ogletreedeakins.com                     ckenney@sidley.com
                                                           wlazerson@sidley.com

**CONSTANGY, BROOKS, SMITH &**
**PROPHETE LLP**
Attorneys for Defendant KPMG LLP

By: s/ Steven W. Moore
    Steven W. Moore (admitted *pro hac*
    *vice*)
    CONSTANGY, BROOKS, SMITH &
    PROPHETE LLP
    600 17th Street, Suite 2700-S
    Denver, Colorado 80202
    moore@constangy.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2016 I caused a copy of the foregoing document to be served via the Court's ECF system upon all counsel of record.

*/s/* Colleen M. Kenney