

| | |
|---|---|
| SIDLEY AUSTIN LLP<br>ONE SOUTH DEARBORN STREET<br>CHICAGO, IL 60603<br>+1 312 853 7000<br>+1 312 853 7036 FAX | BEIJING         HONG KONG      SHANGHAI<br>BOSTON         HOUSTON        SINGAPORE<br>BRUSSELS       LONDON         SYDNEY<br>CENTURY CITY   LOS ANGELES    TOKYO<br>CHICAGO        NEW YORK       WASHINGTON, D.C.<br>DALLAS         PALO ALTO<br>GENEVA         SAN FRANCISCO |
| ckenney@sidley.com<br>(312) 853 4166 | FOUNDED 1866 |

April 27, 2017

**Via ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    <u>Re: *Kassman, et al. v. KPMG, LLP,* Case No. 11-cv-3743</u>

Dear Judge Schofield:

    Pursuant to Local Rule 37.2, and for the reasons set forth in the attached letter, Defendant KPMG LLP ("KPMG") respectfully requests a pre-motion conference regarding its anticipated motion to compel Plaintiffs to pay one-third of the costs KPMG has incurred in the collection, review, and production of the electronically stored information ("ESI") of 5 additional custodians sought by Plaintiffs.

                                                                Respectfully submitted,

                                                                Colleen M. Kenney

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

Case 1:11-cv-03743-LGS   Document 654   Filed 04/27/17   Page 2 of 4



Honorable Lorna G. Schofield
April 27, 2017
Page 1 of 3

  In its December 23, 2015 Order ("Order"), this Court ruled that Plaintiffs could select 5 additional document custodians, but further ruled that Plaintiffs would be required to bear one-third of the cost to KPMG of collecting, reviewing, and producing documents from those custodians. (Dkt No. 467.) Despite this Court's express order, Plaintiffs have refused to pay any portion of their share of the costs incurred by KPMG—including substantial costs they do not dispute.[1] Plaintiffs' objections to the remaining costs are baseless. KPMG therefore seeks an order compelling Plaintiffs to comply with the Court's Order and to remit to KPMG $166,468.82, which represents Plaintiffs' one-third share of the relevant costs.[2]

  Before turning to Plaintiffs' objections, it is worth noting that KPMG's overall costs for the collection, review, and production of this ESI are eminently reasonable. KPMG reviewed over 190,000 documents and produced nearly 35,000 documents.[3] KPMG—which, as the party responsible for two-thirds of the total costs, had every incentive to keep costs down—negotiated favorable rates with vendors and used lower cost alternatives whenever possible. Sidley used staff attorneys who specialize in e-discovery and who have lower billing rates than associates of their seniority, with supervision from Colleen Kenney, the chair of Sidley's E-Discovery Task Force. Simply put, KPMG and Sidley were efficient in managing costs associated with the collection, review, and production of these documents.

  Plaintiffs do not object to $309,865 of the total costs. Yet, as noted, Plaintiffs have not made any payment on their one-third share of the undisputed costs. As set forth below, Plaintiffs' remaining objections to three categories of costs should be overruled.

  <u>KPMG Forensic Technologists' Time</u>. KPMG used its Forensic Technologist group ("FTechs") to collect and process the ESI from the 5 additional custodians. Although KPMG could have hired an outside vendor to perform these services, it used FTechs because KPMG's Office of General Counsel ("OGC") receives a substantial discount from FTechs—60% off standard rates. While they too benefitted from the use of FTechs rather than a more expensive outside vendor, Plaintiffs refuse to pay for the cost of the FTechs' time based on the erroneous assertion that these are "overhead expenses," and therefore are not part of the costs for which Plaintiffs should be responsible. Plaintiffs' argument is wrong in several respects.

  KPMG's FTechs are client service professionals generally engaged in chargeable work

---

[1] KPMG's position is that the Parties have exhausted the meet and confer process. Plaintiffs have expressed a desire to continue to meet and confer, but have not identified any issue in dispute on which they are willing to change their position. As a result, KPMG believes that further meet and confer efforts, which have been ongoing since November 2016, will not be productive.

[2] Although KPMG has incurred additional costs, in an attempt to narrow the issues in dispute and obtain timely payment, KPMG agreed to waive certain of those costs, including, for example, costs related to contract attorney overtime. Despite KPMG's efforts to compromise, Plaintiffs have continued to refuse to pay any of their share.

[3] The large number of documents reviewed was a result of the overly broad search terms insisted upon by Plaintiffs. KPMG informed Plaintiffs during search term negotiations that the search terms were hitting on a large number of unresponsive documents. Plaintiffs nonetheless wished to move forward with the terms.



Honorable Lorna G. Schofield
April 27, 2017
Page 2 of 3

for KPMG's clients. From time to time, as in this case, FTechs are assigned to work on matters for KPMG's OGC. The time FTechs spend on such work is recorded as chargeable time, recognizing that they would otherwise have spent their time on forgone billable client work (at significantly higher rates), and that KPMG's OGC would have had to pay an outside vendor for the work. Indeed, OGC itself is charged for FTech time and the charges contained in the invoices submitted to Plaintiffs reflect the actual amount OGC was charged for its use of KPMG's FTechs. Had KPMG hired an outside vendor to perform the same work (as it was entitled to do), Plaintiffs clearly would have no basis to contest the associated fees, which would certainly have been significantly higher. The fact that KPMG chose a more efficient and less costly means of handling the work does not permit Plaintiffs to avoid paying for the costs KPMG incurred.

In this respect, KPMG's use of in-house forensic technologists is akin to a party's use of in-house counsel to handle certain litigation tasks. In such instances, where a Court has ordered cost-shifting or cost-sharing, "[i]t is well-settled that attorneys' fees and costs should be awarded for litigation performed by in-house counsel if such fees would be awarded for the same work performed by outside counsel." *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 2004 U.S. Dist. LEXIS 1428, *18 (S.D.N.Y. Feb. 3, 2004) (awarding fees and costs for work performed by in-house counsel on litigation) (citing *Blum v. Stenson*, 465 U.S. 886 (1984)); *see also Textor v. Bd. of Regents*, 711 F.2d 1387, 1396-97 (7th Cir. 1983) (permitting recovery of fees for work performed by in-house counsel, which should be valued at "the amount it would require to hire additional counsel to do the neglected work"). Payment for time spent by in-house employees is also justified because, as courts recognize, it comes at the expense of time spent on other matters or, in the case of KPMG's FTechs, other revenue generating work. *See Textor*, 711 F.2d at 1396-97 (criticizing "faulty assumption that in-house counsel would do nothing that would benefit the defendants had they not been involved in this litigation").[4] Accordingly, Plaintiffs have no basis to contest the $32,845 in costs from FTechs and should reimburse KPMG for one-third of those costs ($10,948.33) pursuant to the Court's Order.

Document Hosting Costs. Plaintiffs dispute their obligation to reimburse KPMG for one-third of the fees KPMG was charged by ILS Technologies (an outside vendor) for hosting the ESI collected from the 5 custodians during the months of June and July 2016. Plaintiffs object to these costs on the ground that KPMG did not perform document review during these months, ignoring the other tasks performed to process the data and prepare it for review during that time period. As KPMG has repeatedly explained to Plaintiffs, ESI hosting during June and July was necessary for the performance of essential steps to get the data ready for timely review beginning in August.

Specifically, once ESI is collected, the documents cannot simply be uploaded for

---

[4] While Plaintiffs have argued that these cases involved an award of fees and costs to the prevailing party, this is a meaningless distinction. The underlying principle driving these rulings is the same. Namely, that there is a true cost to a party associated with the work of its in-house team, which forgoes work on other matters. *See Textor*, 711 F.2d at 1396-97 (stating that even if purpose of award is only to compensate defendant for fees it incurred (and not to sanction plaintiff), plaintiff should pay for time spent by in-house counsel).



Honorable Lorna G. Schofield
April 27, 2017
Page 3 of 3

immediate review. Instead, the documents first must be loaded and processed, which includes a multitude of steps, such as running search terms, checking documents for technical issues, and performing quality control checks to ensure the data processed correctly. These are all necessary and customary steps in the collection and processing of ESI for review, and they occurred in June and July. In July, KPMG and Sidley set up searches, layouts, and review fields, prepared review protocols, and started the training of contract attorneys.[5] Plaintiffs are responsible for their share of the data hosting costs incurred by KPMG in those months ($4,783.93).

      <u>Sidley Austin Charges</u>. Finally, Plaintiffs have refused to pay for any of Sidley's fees associated with the collection, review, and production. Plaintiffs do not argue that the total outside counsel charges are unreasonable; they clearly are not. Indeed, Sidley has carefully scrutinized its billings to ensure that any fees arguably not strictly associated with the "collection, review, and production" of the ESI for these five additional custodians are not included in the amounts submitted to Plaintiffs.

      Although Plaintiffs do not contest the overall reasonableness of Sidley's fees, they nonetheless refuse to reimburse KPMG for any of those fees unless Sidley hands over its billing detail. However, providing Plaintiffs with Sidley's invoices would reveal information protected by the attorney-client and work product privileges. *See*, *e.g.*, *Diversified Grp., Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003) (recognizing that "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided … fall within the privilege"). Plaintiffs are simply not entitled to such information, particularly given that the Parties are engaged in on-going and contentious litigation. Sidley has offered to provide Plaintiffs with summary descriptions of the tasks performed by each attorney by date, which should be more than sufficient for Plaintiffs to confirm they are only being asked to reimburse KPMG for fees that fall within the Court's Order. Plaintiffs have rejected this proposal.[6] Plaintiffs should be ordered to pay their one-third share of Sidley's fees.[7]

      For the foregoing reasons, KPMG respectfully requests that the Court order Plaintiffs to promptly pay KPMG's invoices, as explicitly required by the Court's preexisting Order.

---

[5] Moreover, as Plaintiffs are well aware, any delays in the review of the documents in June and July were a direct result of Plaintiffs' delay in proposing custodians and search terms after the Court's Order. Plaintiffs waited until Opt-In discovery and discovery relating to the five new Named Plaintiffs was underway before selecting custodians and proposing search terms. KPMG spent substantial time in June and July reviewing and producing documents relating to Opt-In Plaintiffs (including a large number who later withdrew) as well as the new Named Plaintiffs. These efforts, as could be expected, diverted resources from the review of documents from the 5 new custodians. In the meantime, KPMG kept the data on the review platform so the review could begin as quickly as possible.

[6] Based on continual quality control efforts, including to ensure that Plaintiffs were not charged for time that was not billed to KPMG or did not fall within the Court's Order, KPMG at times revised the amount relating to Sidley's time and, in turn, the amounts owed by Plaintiffs for such costs. The fact that KPMG ultimately reduced *down* the amounts related to Sidley does not provide grounds for Plaintiffs to see Sidley's billing detail.

[7] Concurrent with this letter, KPMG is providing the relevant portions of Sidley's invoices for *in camera* review by the Court.