```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   DONNA KASSMAN, et al.,

 4                  Plaintiffs,

 5             v.                            11 Civ. 3743 (LGS)

 6   KPMG LLP,
                                             Telephone Conference
 7                  Defendant.

 8   ------------------------------x
                                             New York, N.Y.
 9                                           February 21, 2018
                                             11:25 a.m.
10
     Before:
11
                     HON. LORNA G. SCHOFIELD,
12
                                             District Judge
13

14                 APPEARANCES (via telephone)

15   SANFORD HEISLER SHARP, LLP
          Attorneys for Plaintiffs
16   BY:  KATIE MUETING
          THOMAS J. HENDERSON
17
     SIDLEY AUSTIN LLP
18        Attorneys for Defendant
     BY:  COLLEEN M. KENNEY
19        -and-
     OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
20   BY:  PETER O. HUGHES

21

22

23

24

25
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1          (In the robing room)

2          THE COURT: Good morning. Thank you, Ms. Kenny, for
3  responding to our e-mail late yesterday. I realize it's not as
4  late where you are where we are. It's still appreciated.

5          This is a challenge because I don't have the
6  background of what understandings you all had between you
7  regarding discovery. My initial reaction, but for one of the
8  statements in plaintiffs' letter, is that if documents are
9  produced, they ordinarily aren't redacted for relevance unless
10 there is some kind of confidential or sensitive information
11 that's being redacted. This whole idea of redacting for
12 relevance I don't get.

13         On the other hand, if it's been the practice of the
14 parties since the beginning on both sides to redact for
15 relevance, that is a different story. Can someone fill me in
16 on that.

17         MS. KENNEY: Your Honor, speaking on behalf of KPMG,
18 KPMG did do redactions. What was redacted from KPMG's
19 material -- I know you don't recall every time we were before
20 you, but information relating to the selection to the
21 partnership was redacted, and we had a hearing on that that was
22 redacted. There was material, very little actually, redacted
23 from the performance reviews of supervisors and that was the
24 result of a hearing with your Honor. The names of people on
25 the IENM system-generated reports were redacted and that was a

1   result of a hearing with your Honor.

2   And the other information that KPMG redacted would be
3   something -- for example, for nonrelevant, non putative class
4   members. Let's say there was someone who was a
5   paraprofessional and their name and their compensation
6   information shows up in a spreadsheet. Their name and their
7   compensation information was redacted, but their position that
8   they were, such as a paralegal, that would have been left in
9   there. It would only be that kind of confidential information
10  that would need to be redacted other than material we came to
11  the Court for.

12  THE COURT: On plaintiffs' side have there been
13  redactions on relevant grounds? Let me hear from the
14  plaintiffs. Ms. Mueting.

15  MS. MUETING: Thank you, your Honor. I think Ms.
16  Kenney is right that there has been relevance redactions
17  throughout the scope of this case. And I think what is a
18  little bit different here is a redaction to a Word document or
19  an e-mail or not producing an e-mail attachment, as KPMG has
20  done, and components of the production is that this analysis
21  that was ordered by the Court --

22  THE COURT: Keep your voice up. Our court reporter is
23  not like right on top of the phone.

24  MS. MUETING: I was just saying that unlike an e-mail
25  that may include redactions, this analysis that the Court

1   ordered here was located in a program file, which is more akin
2   to a file cabinet or a notebook than it is to say a Word
3   document or an e-mail string.
4           THE COURT:  Let me just ask this question, and I'm
5   sorry to interrupt.  I saw that argument that you had made, but
6   I guess what I don't understand is, this is your expert who
7   analyzed the data for purposes of this case and his opinion,
8   and there is no analysis of other companies for other lawsuits
9   in this program and coding, I presume.  We are only talking
10  about his analysis for purposes of this case.  I don't
11  understand what makes something relevant and not relevant.
12          MS. MUETING:  Your Honor, I would be happy to address
13  that.  I appreciate that question.
14          Also, it has been the practice of this case that the
15  parties have not produced expert analysis that was not related
16  to the expert report.  For example, KPMG has explicitly
17  withheld prior analysis conducted by its experts on the basis
18  that they were a preliminary analysis, unrelated to the expert
19  report, the very same types of evidence, the very same type of
20  information that plaintiffs are not producing here.  It's well
21  beyond the scope of the expert report, outside the merits of
22  the expert report, and it's well beyond the scope of the
23  Court's order.
24          THE COURT:  I guess I would just add that the drafters
25  of the Federal Rules of Civil Procedure changed the rule in

order to protect basically experts' preliminary work and communications with experts, and so it makes sense to me that in general both sides have not been producing work that wasn't related to the final opinion. I know that we have had a journey together to get here, but will someone just remind me of the details of how we are in this particular position with respect to this expert?

I'll hear from Ms. Mueting first. Then I'll hear from Ms. Kenney.

MS. MUETING: First of all, your Honor, the parties exchanged information relating to the opinions offered in the expert report. KPMG then came back to the Court at our last hearing, months after the close of expert discovery, and requested information relating to certain specific analysis and asked whether Dr. Becker had ran the specific analysis; in particular, if he ran pay by title or promotions by year. Dr. Becker answered those questions and provided the only analysis that was even arguably responsive to those questions.

Again, that analysis was located in a larger programming file that did include preliminary analysis, as your Honor alluded to earlier, and analysis and programming that was done at the request of counsel and included attorney work product.

Plaintiffs produced only that information that was responsive to the Court's order, even though it was well beyond

1   the scope of the expert report, and this information that KPMG

2   is now seeking is akin to producing an entire file cabinet or

3   an entire notebook simply because it includes that analysis

4   ordered by the Court.

5           THE COURT:  Ms. Kenney.

6           MS. KENNEY:  Your Honor, I feel a little bit like I'm

7   playing hide and go seek here.  We did consider for material

8   that was related to the analysis that what we had moved to

9   compel, when we found out that we both had reason to believe

10  that Dr. Becker, when he said that he couldn't recall whether

11  he had run these analyses, that's why we moved to compel them.

12  They are clearly related to the analysis that is included in

13  his final report.

14          Ms. Mueting is correct, we have no idea what was

15  redacted.  Unlike any redactions that KPMG made, plaintiffs can

16  always tell what it was that was redacted.  We have no idea

17  what was redacted here.  I can't tell you what's in there and

18  why it is relevant because it's not in there for me to tell you

19  why it is relevant or why it's related to the analysis, but

20  it's in the middle of a program that plaintiffs have produced

21  responsive to the Court's order.

22          MS. MUETING:  Your Honor, if I may make a finer point

23  on one of the points.  KPMG is asserting that it must be

24  related because it's within the same file cabinet, and KPMG is

25  assuming that this is related to a cost center analysis.

           Dr. Becker explained to KPMG during his deposition
that he did not do this analysis by cost center.  Plaintiff
explained to KPMG that this is not an analysis by cost center.
           Again, this is the preliminary analysis, some
preliminary information that was created by Dr. Becker after
request of counsel and is, therefore, is well outside the scope
of what is required to be produced as part of Dr. Becker's
report and well outside the scope of what was required to be
produced by the Court's most recent order.
           THE COURT:  There are times in litigation -- for
example, when a privilege log is generated -- that a party
makes a representation that information should not be
disclosed.  Ordinarily the parties and the Court honor and
respect that representation unless there is some reason to
believe that it is questionable.
           I guess in this case here, because of my unfamiliarity
with programming, I am not in a position to say whether it's
odd or not that what's been redacted is in the middle of a
program that was deemed by plaintiffs to be relevant.
           What I would like to do, and then I'll hear your
comments on it, is what I would do in the context of a
privilege log that had been challenged, and that is, I would
ask for some ex parte explanation and/or examination.  But
since my examination would not be useful, I think explanation
is more appropriate here.  Based on that, I can try to make a

1    judgment about whether this all makes sense to me.

2               I don't want to suggest, Ms. Mueting, that I doubt
3    your representation because I don't, and you've all, on both
4    sides, acted honorably and been honest, as far as I can tell,
5    with both the Court and with each other.  I don't mean to
6    suggest otherwise with my order.  But I would be more
7    comfortable, just given the context, if I could.

8               If you would like to put in your letter, Ms. Mueting,
9    some explanation that you have, after consulting with your
10   technical people, that has an explanation of what these kinds
11   of files, I guess they are stata files, what these kind of
12   files are and either how this is typical, that basically that
13   it's more like a file cabinet and there is all kinds of
14   information sort of intermingled and intermixed in it, I would
15   welcome that.

16              Any thoughts from anyone?

17              MS. KENNEY:  Your Honor, that is acceptable to KPMG.

18              THE COURT:  Ms. Mueting, are you comfortable with
19   that?

20              MS. MUETING:  Yes, your Honor.  I will e-mail our
21   letter separately to chambers.

22              THE COURT:  That's fine, yes.

23              MS. MUETING:  We can do that within a week.

24              THE COURT:  That's fine.

25              The one thing I want to just add here, I know that

1  there have been a couple of bumps in the road as we try to get
2  to the full and final briefing of the class certification
3  motion.
4          I just want to alert you to something schedule wise.
5  As you may know, Mr. Paredes has been my law clerk, one of
6  several in succession on this case, and he has been very
7  involved in this case when his clerkship started in September.
8  I am determined to try to get him to help me with a decision on
9  this class certification motion rather than try to put a
10 brand-new law clerk on that as one of their first assignments.
11 I had extended slightly the schedule as a result of our last
12 discussion.  I just wanted to let you know that, barring
13 hurricanes or bombs, it's just not going to be moved again.
14         Thank you.  A week is fine.
15         I look forward to your letter, Ms. Mueting.
16         We are adjourned.
17                         o0o