```
J1H8KASC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DONNA KASSMAN, et al.,

            Plaintiffs,

      v.                      11 Cv. 3743 (LGS)

KPMG LLP,

            Defendant.

------------------------------x

                              January 17, 2019
                              12:00 p.m.

Before:

                HON. LORNA G. SCHOFIELD,

                              District Judge

                    APPEARANCES

SANFORD WITTELS & HEISLER, LLP
     Attorneys for Plaintiffs
BY:  KATE MUETING
     AIMEE STEWART
        -and-
LIEFF CABRASER HEIMANN & BERNSTEIN
BY:  KELLY DERMODY

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
     Attorneys for Defendant
BY:  PETER O. HUGHES
       -and-
SIDLEY AUSTIN LLP
BY:  COLLEEN M. KENNEY

1           (Case called)
2           THE DEPUTY CLERK:  Counsel, please state your name for
3  the record.
4           MS. MUETING:  Good morning, your Honor.  Kate Mueting
5  for the plaintiffs.
6           THE COURT:  Good morning.
7           MS. DERMODY:  Good morning, your Honor.  Kelly Dermody
8  for the plaintiffs.
9           THE COURT:  Good morning.
10          MS. STEWART:  Good morning, your Honor.  Aimee Stewart
11 for the plaintiffs.
12          THE COURT:  Good morning.
13          MS. KENNEY:  Good morning, your Honor.  Colleen Kenney
14 for KPMG LLP.
15          THE COURT:  Good morning.
16          MR. HUGHES:  Peter Hughes, also for KPMG.
17          THE COURT:  It is still barely morning.  My apologies
18 for being a little bit late.
19          Thank you for your joint status letter.  There is a
20 lot of information there.  Obviously, my concern is trying to
21 figure out how to proceed.
22          I guess my first question is, I know there's a 23(f)
23 appeal.  What is the status of that?  Where does the briefing
24 stand?  Do you have any idea what the Second Circuit's typical
25 time frame is for acting on such appeals?  Anything you can

1  tell me.
2             MS. DERMODY:  So the briefing is completed.  Just
3  based on what we experienced last year in the Goldman Sachs
4  case, that case the court issued an order on March 30th.  The
5  Second Circuit docketed a schedule for reviewing the order as
6  of August 7th, so about four months later.  And then actually
7  held a hearing the very end of August on 23(f), a very short
8  hearing, and within three business days denied the motion.
9             So our experience in Goldman, it was four months to
10 review and five months to decision.  We had done some research
11 prior to that to figure out what the scheduling is generally.
12 It varies, of course.  Three to five months seems to be
13 typical.  It's hard to know what, in fact, the government
14 shutdown or slowdown will have on court staffing and the
15 ability for the panel to get to this decision in a timely
16 manner.  Hopefully it will be the same schedule or no later
17 than that.
18            THE COURT:  Thank you.
19            In terms of the shutdown, I think what we are all
20 anticipating at the moment is that judges of course will
21 continue working, because constitutionally they are required to
22 pay us, or at least Article III judges, and the law clerks will
23 be required to work without pay.  And so I think business will
24 proceed more or less as usual, at least that's what we are
25 hoping.  And hopefully it won't be four or five months that we

1    will have to wait.
2             So given that, there is a question of what we should
3    be doing usefully in the meantime.  One of the things I
4    wondered is whether this might be a good time for you all to
5    talk to each other about a potential settlement.  Tell me what
6    your thoughts are about that.
7             MS. MUETING:  Certainly, your Honor.
8             The parties have already begun the process of meeting
9    and conferring on a possible resolution of the claims of the
10   opt-in plaintiffs.  KPMG has asked plaintiffs for some
11   information, some data on the opt-in plaintiffs.  Plaintiffs
12   are considering that and preparing that.  In the meantime, we
13   realized we needed some updated data from KPMG, so we made that
14   request.  And the parties have agreed to meet and confer again
15   after reviewing those requests and any exchanged information.
16            So at this point we do agree and plaintiffs request
17   that appointment to a special master, as the Court suggested,
18   may make sense here to help the parties think through possible
19   avenues to a resolution, either through negotiated settlement
20   or through some other way to litigate these efficiently.
21            THE COURT:  Thank you.
22            MS. KENNEY:  Your Honor, the parties have been
23   talking.  I will say what we asked of the plaintiffs is that
24   they do what we think is required under the law and look at the
25   cases that they have.  As you know, the only claims that are

1    actually on file right now are those of the nine named
2    plaintiffs; the opt-ins don't actually have complaints on file.
3    So KPMG doesn't actually know what their claims are.  For
4    example, who are their comparators?  We haven't received a
5    single demand.
6            So it's KPMG's position that while we are willing to
7    talk with the plaintiffs, we have always been willing to talk
8    with the plaintiffs on an individual basis, we don't know what
9    the claims are of anyone other than the nine named plaintiffs
10   who have a complaint.  So what we have asked for doesn't have
11   to be a complaint at this stage, maybe at some point it does,
12   but send us, subject to Rule 11, a summary of your claims, tell
13   us what your damages are, tell us who your comparators are.
14           THE COURT:  Have you thought of agreeing to a fact
15   sheet, for example, that the plaintiffs could fill out, and
16   then you would at least have standard information for each one?
17           MS. KENNEY:  That's an excellent idea, your Honor, and
18   I think that's really where we need to start.  I am not saying
19   that we disagree that a special master may be helpful at some
20   point, but we are not there yet.
21           THE COURT:  Well, the special master may be able to
22   help you walk through all of this, and if we are talking about
23   I think 1100 people, there may be issues along the way.
24           MS. KENNEY:  Your Honor, there is no way it's really
25   1100 people.  When the plaintiffs do their good faith on this,

1    many of these women were paid more than every man in their
2    practice in their office.  Many others admitted at depositions
3    that the men that they had named as comparators weren't really
4    comparators.  We have at least one who has a release, that has
5    been approved by a judge in this district, for any claims under
6    the Fair Labor Standards Act.  It's not going to be anywhere
7    near 1100 claims.  They couldn't in good faith bring 1100
8    claims subject to Rule 11.
9              But we really do think the first thing is for
10   plaintiffs to do what they probably should have done before
11   filing consents to join, but at least now at this point
12   certainly, and make sure they have a good faith belief to move
13   forward.  I don't know that a special master is going to help
14   with that.
15             THE COURT:  Let me hear from the plaintiffs on that.
16             MS. MUETING:  We agree with the Court that a special
17   master could help the parties think through these issues.  It
18   sounds like KPMG has suggested to us that there are defenses,
19   like releases or individual opt-in plaintiffs who did not
20   themselves have personal knowledge of comparators, that they
21   are asserting are defenses that would apply in the same way to
22   several groupings of opt-in plaintiffs.  And we are thinking a
23   special master engaging with this and engaging with the parties
24   as we talk through things could help the parties think through
25   whether there are appropriate groupings or appropriate issues

1    that can be decided as a preliminary matter.

2             THE COURT:  I think what I would like to do is at
3    least think about the appointment of a special master.  And I
4    would like suggestions from the parties by, let's say, a week
5    from today.  And I would also like you to confer with each
6    other to see if you can agree on anyone, because if you can't,
7    I am more inclined to just appoint someone I know and trust.
8    Two people whose names I would throw out to you are both former
9    district court judges.  One is Faith Hochberg, who is from New
10   Jersey, who recently stepped down from the bench.  Another one
11   is Shira Scheindlin, who recently stepped down from this court.
12   Anyone else of course I will consider, and particularly if you
13   agree on somebody, I will put particular weight on that.

14            So everything else in your status letter sounded like
15   steps you were considering or things that you might do.  Where
16   do we stand on any of that?

17            Let's start with the plaintiffs.  Is there anything
18   that you intend to do or would like to do between now and
19   whenever this ruling in the Second Circuit happens?

20            MS. MUETING:  Thank you, your Honor.

21            I think at this point, all the things that we would do
22   would be to proceed with individual claims of the opt-in
23   plaintiffs in this jurisdiction.  And I think while we are
24   meeting and conferring on a possible resolution, it may make
25   sense to continue the tolling period so that we can learn

1    whether resolution outside of the court is possible here.

2             THE COURT:  They are not going to like that.

3             MS. KENNEY:  Your Honor has given them four months.

4    They have represented these people, many of them, since 2014.

5    Four months is more than enough time.  If you wanted to issue

6    some kind of stay that doesn't affect tolling, I think we could

7    agree to something like that, a short stay as we work this out,

8    to the extent it can be worked out, but we really see no reason

9    for any further tolling at this point.

10            THE COURT:  I think maybe you should talk to each

11   other about how to deal with this issue.  One of the things,

12   just to go back to what we were talking about before, is in the

13   context of other suits, for example, in a products liability

14   suit, where you have a lot of individual plaintiffs, they fill

15   out fact sheets, and the plaintiffs frankly end up dismissing

16   some percentage of them, just because they don't really have

17   claims or they don't really have documentation.  And then the

18   parties discuss the rest and somehow find a way to some

19   resolution.  And I am wondering and hoping whether you might be

20   able to do something similar to that here.

21            Yes.

22            MS. KENNEY:  Your Honor, I actually work on a lot of

23   product cases so I know what you're talking about.  Most of the

24   time in those cases a complaint is either filed, or a draft

25   complaint is forwarded, so the defendant actually knows what

1  the complaint is. As you know, there could be a lot of alleged
2  side effects from a particular pharmaceutical product. So
3  you're right, this does work that way, many claims do
4  disappear. Plaintiffs file verified fact sheets, as you said,
5  which has information both parties deem important. We do think
6  that that's something that would work. We don't have tolling
7  in those cases. Actually, I don't think any of the cases I
8  worked on had tolling.
9        THE COURT: But there is often a form complaint in
10 those cases. So people put in sort of their form complaint.
11 It's not very specific. It wouldn't stand up if you were
12 litigating under *Iqbal* or *Twombly*, but then you have fact
13 sheets behind it which give you the details, and then you have
14 a way to go forward.
15       Also, the practicality, we have whatever the number
16 is, some large number of plaintiffs, and there is only so much
17 that they can do in any given amount of time, and I don't want
18 to make it an impossibility just because there isn't enough
19 time to do it.
20       Again, what I think I would like you to do is talk to
21 each other. You all have been remarkably good about being able
22 to fashion agreements over many things over the course of these
23 years. See if you could figure out some way to get enough
24 information so that you can have a discussion about these
25 various plaintiffs. Also so that the clock stops running on

1   any statute of limitations, maybe not by tolling, but by
2   exchanging something by some date.  Just talk to each other,
3   see if you could figure that out.  And when you would like to
4   get back to me on that?
5          MS. KENNEY:  We owe you a status letter I think in, is
6   it three weeks?  Is that right, Kate?  I know it's every six
7   weeks.
8          MS. MUETING:  I think 30 days would be fine, your
9   Honor.
10          MS. KENNEY:  Maybe a week after the status letter so
11   you at least have something from us.
12          THE COURT:  Nobody knows when the status letter is.
13          MS. KENNEY:  Just set a date.  We will comply with
14   whatever it is.
15          THE COURT:  I want to see your letter before I do
16   anything on the special master issue.  So why don't we do all
17   of that, the special master letter as well as your status
18   report on these discussions, and anything else you have to tell
19   me, why don't we say three weeks from today, and that should
20   give you a little time to talk.
21          MS. KENNEY:  Thank you, your Honor.
22          THE COURT:  Another thing I am interested in -- well,
23   I don't know if there is any point in discussing these various
24   other motions.  I asked Ms. Mueting what the plaintiffs wanted
25   and intended to do in the near term.

J1H8KASC

1     Ms. Kenney, I will ask you the same question.
2     MS. KENNEY:  Well, your Honor, I don't think I
3 disagree that if what you're suggesting here bears fruit, it
4 probably makes sense to not be diverting resources to any other
5 types of pleading at this particular moment and try to spend
6 the resources where it makes most sense.  It could be in a very
7 short period of time we know it's not going somewhere or it is
8 going somewhere.  As I said, this is individual case by case,
9 so I would say in the short-term we intend on complying with
10 the order you just gave us.
11     THE COURT:  That all sounds good.
12     Is there anything else then we should talk about?
13     I feel bad that all of you who have come from
14 somewhere else have flown here and we have had a pretty short
15 discussion, but maybe we are just efficient.
16     MS. KENNEY:  We aim.
17     THE COURT:  Anything else?
18     All right.  We are adjourned.  Thank you.
19     (Adjourned)