# EXHIBIT A

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is entered into by and among _____ ("Plaintiff") and KPMG LLP ("Defendant" or "KPMG"). Defendant and Plaintiff are each a "Party" and together are the "Parties."

WHEREAS, Plaintiff has asserted certain claims in the action captioned *Kassman, et al. v. KPMG LLP*, Case No. 11-CV-3743 (LGS) (the "Case"), which is pending in the United States District Court for the Southern District of New York (the "Court");

WHEREAS, the Parties have stipulated to withdraw Plaintiffs' appeal to the United States Court of Appeals for the Second Circuit, Case No. 20-3126, of the Court's orders entered on July 15, 2020 (Dkt. 926) and August 12, 2020 (Dkt. 931), pursuant to Local Rule 42.1 and Plaintiffs may reinstate the appeal by May 18, 2021;

WHEREAS, the Case is a multi-plaintiff action, involving nine (9) named plaintiffs (the "Named Plaintiffs") asserting various claims in the Case, and 444 former opt-in plaintiffs (including Plaintiff) each of whom asserted or purported to assert individual claims under the Equal Pay Act by submitting a verified fact sheet to the Court; (together the Named Plaintiffs and the 444 former opt-in plaintiffs are the "Claimants");

WHEREAS, the Claimants are all individually represented by counsel from the law firms of Sanford Heisler Sharp, LLP and Lieff Cabraser Heimann & Bernstein, LLP ("Plaintiffs' Counsel"); and

WHEREAS, Plaintiff and KPMG desire to enter into this Agreement to resolve all claims Plaintiff has asserted in the Case and certain other claims;

NOW THEREFORE, in consideration of the mutual promises and agreements contained herein and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Parties agree as follows:

1. **Total Settlement Amount and Plaintiff's Payment**.

    (a) Subject to the other terms in this Agreement, including those set forth in Section 7 below, and this Agreement becoming effective and enforceable in accordance with Section 7 below, KPMG agrees to settle the Case and all the claims asserted by all of the Claimants and certain additional actual or potential claims in exchange for a release of claims from each Claimant and certain other agreements for a total gross sum of ten million dollars ($10,000,000), inclusive of (not in addition to) all settlement payments to all Claimants and the Total Attorneys' Fees and Costs as defined below (such total gross sum, the "Total Settlement Amount").

    (b) Plaintiff shall be entitled to a portion of the Total Settlement Amount ("Plaintiff's Payment"). The Plaintiffs' Payment shall be determined by Judge Nan R. Shuker, a third-party neutral and retired judge retained by Plaintiffs' Counsel ("Allocation Expert"), according to the methodology described in Section 6(b), and shall be apportioned as follows:

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

      i. fifty-two percent (52%) of the Plaintiff's Payment shall be attributable to the Equal Pay Act claims Plaintiff asserted in the Case (the "EPA Allocation"), half of which will be reported as wages on a Form W-2 and the other half of which shall be attributable to liquidated damages and reported on a Form 1099-MISC;

      ii. thirteen percent (13%) of the Plaintiff's Payment shall be attributable to Plaintiff's agreement to release all other Released Claims (defined below) other than the Equal Pay Act claims and shall be reported as wages on a Form W-2 (the "Other Released Claims Allocation"); and

      iii. thirty-five (35%) percent of the Plaintiff's Payment shall be payable to Plaintiffs' Counsel for Plaintiff's attorneys' fees and costs (the "Attorneys' Fees and Costs") and shall be reported on Forms 1099-MISC to Plaintiff and Plaintiffs' Counsel. For avoidance of doubt, thirty-five percent (35%) of the Total Settlement Amount shall be payable to Plaintiffs' Counsel for attorneys' fees and costs of Plaintiffs' Counsel with respect to all Claimants ("Total Attorneys' Fees and Costs").

(c) Subject to the other terms in this Agreement and this Agreement becoming effective and enforceable in accordance with Section 7 below, including the filing of a joint stipulation of dismissal with prejudice, within sixty (60) days after the Effective Date (defined below): (i) Defendant will pay to Plaintiff the Plaintiff's Payment, minus Attorneys' Fees and Costs by check sent via First-Class U.S. Mail using the mailing address provided by Plaintiffs' Counsel, provided that no later than two (2) weeks after the Effective Date, Plaintiff provides KPMG with a completed Form W-9, and provided further that such payment will be subject to required withholdings and deductions in accordance with Section 10 below except for the fifty percent (50%) of the EPA Allocation that is attributed to liquidated damages; and (ii) the Attorneys' Fees and Costs will be paid to Plaintiffs' Counsel by wire transfer, provided that no later than two (2) business days after the Effective Date, Plaintiffs' Counsel provides KPMG with a completed Form W-9, accurate wire instructions, Plaintiffs' Counsel's taxpayer identification number, and such other information as Defendant may reasonably request. By signing this Agreement, Plaintiff hereby consents to Plaintiffs' Counsel providing KPMG with Plaintiff's current mailing address, social security number, and such other information as KPMG may reasonably request to process Plaintiff's Payment.

(d) Plaintiff hereby acknowledges and agrees: (i) she would not otherwise be entitled to, or receive, the Plaintiff's Payment given the Parties' disputes in the Case if she did not sign this Agreement; and (ii) other than the Plaintiff's Payment, Plaintiff is not entitled to and shall not receive any other payments or amounts of any kind for her release of any claim she asserted in the Case or any of the other Released Claims. To the maximum extent permitted by law, in no event shall any Plaintiff's Payment (y) be considered "compensation" under, create any credit under, require or create any potential entitlement to any contribution or award under, or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation, assumptions or benefit under any compensation, incentive, deferred compensation, pension, retirement, profit sharing or other benefit, plan or program; or (z) otherwise create or modify any

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

entitlements, contributions or coverage under any other employment, compensation, or benefit plan or program.

2. **Released Parties**. "Released Parties" means (a) KPMG and each of its past and present subsidiaries, affiliates, and related entities; (b) the past and present direct and indirect partners, principals, owners, trustees, agents, employees, representatives, officers, directors, benefit plans, plan administrators, insurers, and attorneys of each entity listed in subpart (a) above; and (c) the predecessors, successors, and assigns of each entity and person listed in subparts (a) and (b) above.

3. **Release of Claims**. In consideration for the above, Plaintiff (on her own behalf and on behalf of her successors, assigns, agents, heirs, and attorneys) hereby fully, finally, and forever settles, releases and waives, effective upon the Effective Date, any and all claims, rights, demands, liabilities, and causes of action against or with respect to the Released Parties (or any of them): (i) under the Equal Pay Act, 29 U.S.C. § 201, *et seq*.; and (ii) under any federal, state, local, employment, services or other law, regulation, ordinance, constitutional provision, executive order, or other source of law, arising out of or related to gender, sex, and/or pregnancy, including without limitation all equal pay claims based on gender, sex, and/or pregnancy and all claims under Title VII of the Civil Rights Act of 1964, and/or 42 U.S.C. §1981a based on gender, sex, and/or pregnancy, further including without limitation all statutes and other sources of law prohibiting discrimination, harassment, or retaliation on the basis of sex, gender, and/or pregnancy; in each case, whether known or unknown, suspected or unsuspected, contingent or non-contingent, in existence or arising at any time on or prior to the date Plaintiff signs this Agreement. For the avoidance of doubt, the releases and waivers in this Section 3 shall not apply to any claim for workers' compensation benefits, or a claim that by law is non-waivable.

4. **No Other Pending Lawsuits**. With the exception of the Case, Plaintiff confirms that she has not filed (or had filed on her behalf or through her) any pending legal or other proceeding(s) against any of the Released Parties (provided, however, she need not disclose to KPMG, and the foregoing representation in this Section does not apply to, conduct or matters allowed by the Permitted Disclosures and Actions provision set forth below), is the sole owner of the claims released in this Agreement, has not transferred any such claims to anyone else, and has the full right to grant the releases and agreements in this Agreement. Plaintiff further confirms that except as already disclosed to Plaintiffs' Counsel and to KPMG, she has not filed for bankruptcy after her Equal Pay Act claim arose, her Equal Pay Act claim did not arise during the pendency of her bankruptcy proceedings, and that her claim is not the property of or otherwise part of a bankruptcy estate. In the event of any further proceedings based upon any of the Released Claims, none of the Released Parties shall have any further monetary or other obligation of any kind to Plaintiff, and Plaintiff hereby waives any such monetary or other recovery. Plaintiff further agrees that she shall not at any time become a party to, or otherwise participate in, any class action, collective action, representative action, or other consolidated action asserted against any of the

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

Released Parties that asserts any Released Claim and will take all steps necessary to opt out of any such actions after reasonable notice from KPMG.

5. **Unknown Claims**.

(a) Plaintiff acknowledges that she: (i) is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement and the Court's Orders at Dkt. No. 831 and 926; and (ii) has had the opportunity to communicate with Plaintiffs' Counsel about the aforementioned Orders and Plaintiffs' Counsel's investigation of the facts; and (iii) knowingly waives any claim that this Agreement was induced by any misrepresentation or nondisclosure and any right to rescind or avoid this Agreement based upon presently existing facts, known or unknown. The Parties stipulate that Defendant, in entering into this Agreement, is relying on these representations and warranties, all of which survive the execution of this Agreement.

(b) Plaintiff acknowledges that she understands that she is waiving claims under California Civil Code Section 1542 ("Section 1542") and any and all laws of other states similar to it, and expressly waives such rights as quoted below:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Plaintiff hereby agrees that she is aware of the foregoing Section 1542 and any and all laws of other states similar to it. She further knowingly, intentionally, and expressly waives and relinquishes any and all rights and benefits that she may have under Section 1542 and any other state, federal, or local statutes or common law principles of similar effect. Nothing in this Agreement limits or restricts Section 3 above. In connection with her waiver and relinquishment in this Agreement, Plaintiff acknowledges and agrees that she is aware that after the date she signs this Agreement she may discover claims that are presently unknown or unsuspected, or facts in addition to or different from those which she now knows or believes to be true, with respect to the matters released by this Agreement. Plaintiff hereby expressly acknowledges, agrees to, and reaffirms her intent to be bound by all the releases, waivers, and relinquishments in Sections 3 and 5 of this Agreement notwithstanding such possibility.

6. **Disclosures**. Plaintiff agrees and acknowledges that she has received, read, had the opportunity to discuss with Plaintiffs' Counsel, and fully understands the disclosures provided in this Agreement.

(a) <u>Settlement of the Case</u>.

i. Plaintiff acknowledges that the Case is a multi-plaintiff action, involving nine (9) Named Plaintiffs asserting various claims in the Case, and 444 former opt-in plaintiffs

4

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

(including Plaintiff) each of whom asserted or purported to assert individual claims under the Equal Pay Act by submitting a verified fact sheet to the Court.

      ii.      The Claimants are all individually represented by Plaintiffs' Counsel. Each Claimant authorized Plaintiffs' Counsel to participate on her behalf in a mediation of all claims asserted in the Case. On December 9, 2020, Plaintiffs' Counsel attended a full-day mediation before Dina Jansenson, a mediator with substantial experience in the resolution of complex employment discrimination cases, regarding all such claims and certain additional claims.

      iii.      Plaintiff was informed and hereby acknowledges that she understands that at the mediation, subject to the agreement of every Claimant and certain other conditions set forth in this Agreement with Plaintiff and in the individual settlement agreements between KPMG and each of the other Claimants, Defendant agreed to settle the Case and all the claims asserted by all of the Claimants and certain additional actual or potential claims in exchange for a release of claims from each Claimant and certain other agreements for the Total Settlement Amount. The settlement reached as a result of the mediation is referred to as the "Settlement."

      iv.      Plaintiff also understands, acknowledges, and agrees that if any Claimant (including but not limited to Plaintiff) fails or refuses to sign her individual settlement agreement by [DATE],[1] KPMG shall have, in its sole discretion, the option to terminate this Agreement and the Settlement offered to all Claimants by written notice to Plaintiffs' Counsel and to the Court, in which case this Agreement shall be null and void and of no force and effect. Plaintiff further understands and acknowledges that each Named Plaintiff received a settlement agreement that is substantially similar to this Agreement, except that each Named Plaintiff is executing a general release of all claims against Defendant and certain other parties.

      v.      Plaintiff hereby understands, acknowledges, and agrees that if she filed for bankruptcy, and if her Equal Pay Act claim arose before she filed for bankruptcy or during the pendency of her bankruptcy proceedings, and she failed or fails to disclose her Equal Pay Act claim in those bankruptcy proceedings, she will not receive Plaintiff's Payment unless she receives written authorization from her bankruptcy trustee or court allowing her to participate in the Agreement and provides a copy of such written authorization to Plaintiffs' Counsel by [DATE], which is thirty (30) days from the date of the Court Approval Order (defined below). Plaintiff understands that Plaintiffs' Counsel will provide a copy of such written authorization to KPMG. Notwithstanding anything to the contrary in this Agreement, if this subsection if applicable to Plaintiff, she will not receive Plaintiff's Payment unless such written authorization is provided to KPMG.

      vi.      Plaintiff hereby agrees and acknowledges that, subject to the terms of Section 7 of the Agreement, within seven (7) days after the Effective Date, the Parties will file a joint stipulation of dismissal with prejudice of Plaintiff's claims, in accordance with Federal

---

[1] **Note to Draft:** This date shall be 30 days from the date the Court approves the form of the settlement agreement.

5

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

Rule of Civil Procedure 41(a)(1)(A)(ii), and Plaintiff's claims will be dismissed from the Case with prejudice.

(b) <u>Allocation Expert</u>. Plaintiff acknowledges and understands that Plaintiffs' Counsel retained the Allocation Expert, Judge Nan R. Shuker, a third-party neutral and retired judge, who is responsible for determining the settlement allocation out of the Total Settlement Amount due to each of the Claimants, including without limitation developing a methodology for such allocations. The Allocation Expert will determine a total settlement payment for each Claimant (in Plaintiff's case, the "Plaintiff's Payment" as defined above). Plaintiff acknowledges that the Allocation Expert will individually determine the total settlement payment for each Claimant (including the Plaintiff's Payment payable to Plaintiff) and that the value of these payments will vary amongst Claimants. The costs of the Allocation Expert's services are included in the Total Attorneys' Fees and Costs. As discussed in this Agreement and below, thirty-five percent (35%) of the Total Settlement Amount will be used to pay the Total Attorneys' Fees and Costs. This same percentage is being deducted from the settlement amount offered to each other Claimant, including from Plaintiff's Payment. Plaintiff understands, acknowledges, and agrees that the Plaintiff's Payment offered to her shall be paid out of the Total Settlement Amount, provided that the Agreement becomes effective and enforceable pursuant to its terms. The distribution of the Total Settlement Amount among Claimants is set forth below.

i. The Total Settlement Amount after deduction of Total Attorneys' Fees and Costs, as set forth in Section 6(c), will be distributed among Claimants in accordance with the determination of the Allocation Expert. The Parties agree that the determination of the Allocation Expert shall be final, binding, confidential, and not subject to appeal or judicial review, in each case to the maximum extent permitted by law. The Parties further agree that they will not seek discovery from the Allocation Expert, including subpoenaing the Allocation Expert, unless expressly permitted by a valid court order. While the average amount allocated to a Claimant will be $16,556.29, the individual settlement recovery provided to each Claimant will depend on the factors described in the following subsection. For avoidance of doubt, the factors described in the following subsection to be assessed by the Allocation Expert were not selected by KPMG. No Claimant, however, will be allocated an individual settlement recovery of less than $250 gross (*i.e.*, before tax withholdings and deductions).

ii. The Allocation Expert decided, and Plaintiff acknowledges and agrees, that the Allocation Expert will consider and assess the following information and make the following determinations regarding each Claimant, including without limitation for Plaintiff. KPMG does not object to the foregoing for settlement purposes only. Subject to her discretion, the Allocation Expert will then determine each Claimant's individual settlement recovery, including that of Plaintiff, as a proportion to the Total Settlement Amount after deduction of Total Attorneys' Fees and Costs based on her analysis of the information below and related determinations.

A. A Claimant's individual alleged Equal Pay Act damages as reported to KPMG for that Claimant on her verified fact sheet. Plaintiffs' Counsel has represented that these alleged damages were calculated using the difference between Claimant's salary during the liability period (as alleged by Plaintiffs' Counsel) compared to the highest male

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

salary in the same job title and service line or office. If the Claimant alleged that she had comparators at higher job levels who she claims performed jobs that required substantially equal skill, effort, and responsibility under similar working conditions, her salary during the liability period is also compared to the above-level comparator's salary. In the event that the Allocation Expert determines that the Claimant alleged facts in her verified fact sheet sufficient to establish that the alleged comparators in the higher job levels performed work that required substantially equal skill, effort, and responsibility under similar working conditions, consistent with the Court's July 15, 2020 Order at Dkt. No. 926 in the Case, this damages calculation will be used.

        B.    Whether the Court dismissed a Claimant's verified fact sheet, in which case that Claimant's recovery may be substantially discounted. (Dkt. No. 926).

        C.    Whether a Claimant's verified fact sheet falls within the scope of those factors that would lead to dismissal under the Court's order dismissing verified fact sheets for failure to state a claim. (Dkt. No. 926). A Claimant's recovery may be substantially discounted to the extent her verified fact sheet would likely be subject to dismissal.

        D.    Whether any portion of a Claimant's alleged damages depends on equitable tolling, meaning that her claim would be beyond the legal statute of limitations, or time-barred, in the absence of some equitable exception being made that balances the interests of justice, finality, and/or the knowledge and behavior of the Parties. If so, the Allocation Expert will consider whether the Claimant's verified fact sheet includes facts that may undermine equitable tolling. These facts may include facts that allegedly put such Claimant on notice of her claims before the opt-in period; for example, if the Claimant heard that she was paid less than male counterparts from her supervisor or other employees, if the Claimant signed a release of claims that informed the Claimant or reasonably put her on notice of her Equal Pay Act claim, or if the Claimant raised concerns of purported underpayment. Such a Claimant's recovery may be discounted to the extent her verified fact sheet includes facts that may undermine equitable tolling.

        E.    Whether a Claimant signed a release of claims that arguably released her Equal Pay Act claim. A Claimant's recovery may be discounted to the extent such Claimant signed a release that arguably released her Equal Pay Act claim.

        F.    Whether and the extent to which a Claimant contributed to the litigation of the Case which created a Settlement benefitting all, including whether a Claimant provided written interrogatory responses, produced documents, sat for a deposition, provided informal factual discovery and advice, or whether a Claimant served as a Named Plaintiff and when such a Claimant joined the litigation as a Named Plaintiff. A Claimant's recovery may be increased to the extent such Claimant participated in the litigation commensurate with that participation.

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

G. Whether a Claimant is deceased. The recovery on behalf of a deceased Claimant may be decreased because her representative may have difficulty ultimately proving a case at trial without the Claimant's testimony.

H. Additionally, with respect to the nine (9) Named Plaintiffs (who brought claims beyond the Equal Pay Act claims), the value of the Named Plaintiffs' respective individual alleged damages claims, if any, for claims other than Equal Pay Act damages or the equivalent, which may include alleged pay, gender, sex, pregnancy, and childbirth discrimination and related retaliation, harassment, and constructive discharge claims under Title VII of the Civil Rights Act of 1964, New York Executive Law § 296, New York Administrative Code § 8-107, New York Labor Law § 194, and the Family and Medical Leave Act of 1993 ("Named Plaintiff Claims"). To the extent applicable, any such individual allocations will be calculated by determining the alleged lost wages, benefits, emotional distress, and statutory penalties associated with each Named Plaintiff's specific allegations. In determining the value of the Named Plaintiffs' individual claims, the Allocation Expert will assess the strength of the Named Plaintiff Claims, which may be partially based on a limited written submission made by the Named Plaintiffs, which may include information regarding their claims, damages, and participation in the case.

(c) <u>Attorneys' Fees and Costs</u>. Subject to the terms of the Agreement, thirty-five (35%) percent of Plaintiff's Payment has been allocated to the payment of the Total Attorneys' Fees and Costs. It is agreed and understood by and among all the Claimants, Defendant, and Plaintiffs' Counsel that the Total Attorneys' Fees and Costs shall cover, and payment thereof shall fully, finally, and forever release and discharge Defendant and the other Released Parties from any and all claims and liability of any kind for, the entirety of all the Claimants' and Plaintiffs' Counsel's attorneys' fees, costs, and expenses expended in furtherance of, arising out of or related to the Case or the Settlement, including without limitation to compensate Plaintiffs' Counsel or any other attorney, law firm, or person for all work already performed and all work remaining to be performed in connection with the Case, and further including without limitation all additional time, costs and expenses necessary or expended to: (i) negotiate and finalize this Agreement, all settlement agreements with all other Claimants, and any and all related Court filings and other documentation; (ii) respond to any inquiries from Claimants regarding the Settlement; and (iii) defend the Settlement and secure the Court Approval, including the conduct of any appellate action (if any, it being understood that Plaintiff and all other Claimants are waiving all such appeal rights).

7. **Settlement Approval and Effective Date**. The Parties have sought Court approval of this Agreement and the Parties' Settlement and the Court has entered one or more orders: (i) approving the Settlement of the Case with respect to Plaintiff and all other Claimants in the Case and (ii) approving the forms of settlement agreement applicable to Plaintiff and other Claimants in the Case (the Court's actions in ordering the matters set forth in clauses (i) through (ii) of this sentence are referred to herein as the "Court Approval" and the last such order entered with respect to Court Approval is the "Court Approval Order"). Provided Plaintiff and all other Claimants timely return to Plaintiffs' Counsel an executed copy of the settlement agreement presented to each

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

of them, without deleting or amending any portion thereof, on or before [DATE][2] and comply with its terms, this Agreement shall become effective and enforceable on [DATE][3] (the "Effective Date"). As soon as reasonably practicable, but in any event no later than seven (7) days after the Effective Date, the Parties will file a joint stipulation of dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Upon the filing of the joint stipulation of dismissal, Plaintiff's claims and the claims of all other Claimants will be dismissed from the Case with prejudice. For the avoidance of doubt, if any Claimant (including but not limited to Plaintiff) fails to, refuses to, or otherwise does not sign her individual settlement agreement by [DATE],[4] KPMG shall have, in its sole discretion, the option to terminate this Agreement and the Settlement offered to all Claimants by written notice to Plaintiffs' Counsel, in which case this Agreement shall be null and void and of no force and effect. If this Agreement does not become effective and enforceable for any reason, or this Agreement otherwise terminates as provided herein, then this Agreement shall be null and void in its entirety; any orders entered pursuant to this Agreement shall be vacated; the Case shall be reinstated and continue; all Parties shall retain unaffected all of their respective rights, claims, and defenses with respect to the Case and otherwise; and nothing in this Agreement shall be used or construed by or against any of the Parties as a determination, admission, or concession of any issue of law or fact in the Case or in any other proceeding or matter.

8. **<u>Defendant's Statement of No Admission of Liability; No Evidentiary Effect</u>**. This Agreement does not constitute, is not intended to constitute, and shall not be deemed to constitute, an admission by Defendant or any of the other Released Parties as to the merits of the allegations or claims in the Case or any of the other Released Claims, or of liability or wrongdoing of any kind with respect to Plaintiff, any other Claimant in the Case, or any other person. Defendant denied and continues to deny all such allegations, claims, liability, and wrongdoing. KPMG agrees to the method of allocation of settlement proceeds for purposes of this Agreement only and has had no role or any responsibility in the allocation methodology and process set forth in Section 6, which has been formulated solely by the Allocation Expert working with Plaintiffs' Counsel. While KPMG is not objecting to the content of any representations made by Plaintiffs' Counsel in this Agreement for purposes of this Settlement, its execution of this Agreement does not constitute and shall not be construed as its admission to or agreement with any such representations. Nothing in this Agreement, including without limitation any action taken to implement it, nor any statements, discussions, or communications, nor any materials prepared, exchanged, issued or used during the negotiations of the Agreement, is intended to or shall be introduced, used or admissible in any way in the Case or any other judicial, arbitral, administrative, investigative or other forum or proceeding, including without limitation as evidence of any violation of any law, contract, or other obligation or duty, other than an action in the Court to enforce or resolve a dispute under this Agreement following the Effective Date.

---

[2] **Note to Draft:** This date shall be 30 days from the date the Court approves the form of the settlement agreement.

[3] **Note to Draft:** Effective date to be 14 days after the final date all Claimants have to return the Agreement.

[4] **Note to Draft:** This date shall be 30 days from the date the Court approves the form of the settlement agreement.

9

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

9. **Permitted Disclosures and Actions**. This Agreement does not prohibit or restrict Plaintiff, KPMG, or the other Released Parties from: (i) initiating communications directly with, cooperating with, providing relevant information, or otherwise assisting in an investigation by (A) the U.S. Securities and Exchange Commission ("SEC"), or any other governmental, regulatory, or legislative body regarding a possible violation of any federal law; or (B) the U.S. Equal Employment Opportunity Commission or any other governmental authority with responsibility for the administration of fair employment practices laws regarding a possible violation of such laws, or as compelled or requested by lawful process; (ii) responding to any inquiry from any such governmental, regulatory, or legislative body or official or governmental authority, including an inquiry about the existence of this Agreement or its underlying facts or circumstances; or (iii) participating, cooperating, testifying, or otherwise assisting in any governmental action, investigation, or proceeding relating to a possible violation of any such law, rule or regulation. Plaintiff is, however, waiving any right to recover money in connection with any agency charge or agency or judicial decision based upon any of the Released Claims, including class or collective action rulings, other than bounty money properly awarded by the SEC.

10. **Taxation; No Other Compensation or Benefits**

(a) Defendant is responsible for calculation and remittance of any applicable employer-related taxes associated with the Plaintiff's Payment paid to Plaintiff (including the employer's share of FICA, FUTA, and SDI contributions) (the "Employer Share Payroll Taxes").

(b) Defendant shall be responsible for all applicable tax reporting with respect to the Plaintiff's Payment (and each component thereof) and the Employer Share Payroll Taxes in accordance with applicable law and this Agreement, and shall: (i) issue and report payments of the components of the Plaintiff's Payment (*i.e.*, the EPA Allocation plus the Other Released Claims Allocation), on Forms W-2 or Forms 1099, as provided in Section 1(b) above; (ii) issue and report the payment of the Attorneys' Fees and Costs on Forms 1099 to Plaintiff and Plaintiffs' Counsel; and (iii) remit and report the Employer Share Payroll Taxes to the appropriate taxing authorities. Plaintiffs' Counsel shall be solely and legally responsible to pay any and all applicable taxes on the Attorneys' Fees and Costs, and shall indemnify, defend, and hold harmless Defendant and the other Released Parties from and against any claim, liability, taxes, penalties, interest, attorneys' fees, and other costs at any time arising out of or relating to the Attorneys' Fees and Costs or taxation thereof.

(c) It is intended that any amounts payable under this Agreement will be exempt from or comply with Section 409A of the Internal Revenue Code of 1986, as amended, and the treasury regulations relating thereto, and this Agreement shall be interpreted and construed accordingly.

11. **Jurisdiction; Stay of Case**. The Parties stipulate that the Court shall have, and the Parties have or will move the Court to retain, jurisdiction over the Parties and the subject matter of the Case for the sole purpose of interpreting, implementing, and enforcing this Agreement consistent with its terms.

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

12. **Amendment or Waiver Only in Writing**. This Agreement may be amended or modified only by a written agreement signed by each Party (or such Party's authorized representative(s)) or her or its successors-in-interest. Except as otherwise provided in this Agreement, no rights hereunder may be waived except in writing.

13. **Waiver of Objections and Appeal**. Plaintiff hereby waives any and all rights to appeal from the joint stipulation of dismissal with prejudice, and all other orders and decisions in the Case, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate or set-aside judgment and any extraordinary writ, and the Court Approval Order is final and nonappealable. The Parties retain the ability to enforce this Agreement.

14. **Successors and Assigns**. Upon the Effective Date, this Agreement shall be binding on Plaintiff, on her own behalf and on behalf of her respective attorneys, agents, spouses, executors, estate, representatives, guardians *ad litem*, heirs, successors, assigns, or anyone claiming through them. Further, this Agreement shall inure to the benefit of and be enforceable by Defendant and all other Released Parties.

15. **Interpretation of Agreement; Knowing and Voluntary**. This Agreement will be interpreted and enforced under the laws of the State of New York, without regard to its conflict of laws provisions, except where federal law applies. The Parties believe and agree that the terms of the Agreement are a fair, adequate, and reasonable settlement of the Case and have arrived at this Agreement in arms-length negotiations, taking into account all relevant factors, present and potential. This Agreement has been drafted jointly by counsel for the Parties and has been provided by Plaintiffs' Counsel individually to Plaintiff and all other Claimants in the Case have been provided with a settlement agreement. Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any of the Parties. Before declaring any provision of this Agreement invalid, the Parties propose that the Court shall first attempt to construe it as valid to the fullest extent possible consistent with applicable law so as to deem all provisions of this Agreement valid and enforceable. Plaintiff acknowledges, understands, and agrees that she has read and understands the terms and effect of this Agreement; has had a sufficient period of time in which to consult with Plaintiffs' Counsel and/or another attorney if she so chooses (at her own cost) and to consider whether to sign this Agreement; and releases and waives claims under this Agreement knowingly and voluntarily.

16. **Final Agreement; No Reliance**. This Agreement constitutes the exclusive, final, and entire agreement among the Parties with respect to the Settlement of the Case, and supersedes any and all other agreements, promises, understandings or discussions (oral or written) with respect to such matters. The Parties enter into this Agreement based solely upon its terms and not in reliance upon any representations or promises other than those contained in this Agreement.

17. **Counterparts; Electronic Signatures**. This Agreement may be executed in one or more counterparts and by facsimile. Electronic signatures appearing on this Agreement are the same as handwritten signatures, are intended to authenticate this writing and have the same effect as handwritten signatures. All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

18.     **Extensions of Time**.  The Parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement and the non-requesting party's consent to a request for an extension will not be unreasonably withheld.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS]

**Confidential for Settlement Purposes Only**
**Subject to FRE 408 and Analogous State Laws**
**Not Admissible for Any Purpose**

**STIPULATED AND AGREED TO BY:**

| **Plaintiff:** | **For Defendant:** |
|---|---|
| _____ | _____ |
| **[Name]** | **[Name]** <br> **[Title]** |
| **Dated:** _____ | **Dated:** _____ |

**REVIEWED AND APPROVED BY:**

**PLAINTIFFS' COUNSEL**

_____
**[Name]**
**[Title]**

**Dated:** _____