## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA KASSMAN, SPARKLE PATTERSON, JEANETTE POTTER, ASHWINI VASUDEVA, TINA BUTLER, CHERYL CHARITY, HEATHER INMAN, NANCY JONES AND CAROL MURRAY individually and on behalf of a class of similarly situated female employees, ) ) ) ) ) ) ) ) | Civ. No. 11-CV-3743 (LGS) |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | |
| KPMG LLP, ) ) | |
| **Defendant.** ) ) ) | |

### CORRECTED MOTION FOR APPROVAL OF THE SETTLEMENT AGREEMENT

Plaintiffs respectfully move this Court for review and approval of a settlement agreement that seeks to resolve all pending claims before the Court.  If the Court approves the Settlement Agreement and the conditions therein are met, the Parties will file a binding stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) to dismiss with prejudice the claims of all Plaintiffs who sign the agreement.  Defendant KPMG consents to this motion and will be filing a response in support of Plaintiffs' Motion for Approval of the Settlement Agreement.  A copy of the Settlement Agreement and the reasons and authorities in support of this motion are more fully described in the accompanying Memorandum in Support.

Dated:  April 5, 2021

By:

*Kate Mueting*

Kate Mueting

David Sanford (*admitted pro hac vice*)
Kate Mueting (*admitted pro hac vice*)
Thomas J. Henderson (*admitted pro hac vice*)
Shaun Rosenthal

**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue, Southeast, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
Email: dsanford@sanfordheisler.com
Email: kmueting@sanfordheisler.com
Email: thenderson@sanfordheisler.com
Email: srosenthal@sanfordheisler.com

Jeremy Heisler
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (202) 402-5651
Email: jheisler@sanfordheisler.com

Kelly M. Dermody (*admitted pro hac vice*)
Anne B. Shaver (*admitted pro hac vice*)
Michael Levin-Gesundheit (*admitted pro hac vice*)
Tiseme G. Zegeye
Michelle Lamy (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: kdermody@lchb.com
Email: ashaver@lchb.com
Email: mlevin@lchb.com
Email: tzegeye@lchb.com
Email: mlamy@lchb.com

Rachel Geman
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: rgeman@lchb.com

*Attorneys for the Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **DONNA KASSMAN, SPARKLE PATTERSON, JEANETTE POTTER, ASHWINI VASUDEVA, TINA BUTLER, CHERYL CHARITY, HEATHER INMAN, NANCY JONES AND CAROL MURRAY individually and on behalf of a class of similarly situated female employees,** | ) ) ) ) ) ) ) | |
| | ) | **Civ. No. 11-CV-3743 (LGS)** |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | |
| **KPMG LLP,** | ) ) | |
| **Defendant.** | ) ) ) ) | |

**CORRECTED MEMORANDUM IN SUPPORT**
**OF MOTION FOR APPROVAL OF THE SETTLEMENT AGREEMENT**

I.      **Introduction**

After nearly ten years of litigation, the Parties attended a mediation in December 2020 and have reached a settlement agreement (the "Agreement")[1] that completely and finally resolves the case and settles all claims of the nine Named Plaintiffs and the hundreds of Former Opt-In Plaintiffs.  The Parties seek Court approval of the Agreement, attached as Exhibits A and B.

II.     **Procedural History**

A.      **The Litigation**

Plaintiff Donna Kassman filed this case in June 2011 on behalf of a class of similarly situated employees alleging class and individual claims of gender, pregnancy, and caregiver discrimination in compensation, promotion, and other terms and conditions of employment.  Dkt. No. 1.  The complaint raised claims under the Equal Pay Act of 1963 ("EPA"), Title VII of the Civil Rights Act of 1964, New York Executive Law § 296, New York Administrative Code § 8-107, and New York Labor Law § 194.  *Id.*

Three additional Named Plaintiffs joined the suit later that year and raised additional claims under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C § 1981, *et seq.*, as amended.  Dkt. No. 10.  KPMG moved to dismiss and strike class claims in early 2012, Dkt. No. 36, and its motion was largely denied in February 2013.  Dkt. No. 69.  KPMG denied and continues to deny all wrongdoing.  *See* Dkt. No. 78.  Plaintiffs moved for conditional certification of the EPA claims in November 2013.  Dkt. No. 109.  In July 2014, the Court granted conditional certification of the EPA claims, Dkt. No. 175, and ordered that the conditionally certified collective potentially include employees who worked at KPMG since

---

[1] The Former Opt-In Plaintiff settlement agreement, attached as Exhibit A, is substantively identical to the Named Plaintiff settlement agreement, attached as Exhibit B, except for the release provision in Section 3.  The "Agreement" will refer to both settlement agreements, unless explicitly noted.

October 30, 2010 and include damages dating from March 16, 2009, Dkt. No. 413. The Court also held that KPMG could later challenge this liability and damages period making "individualized challenges to timeliness or equitable tolling." Dkt. No. 429. By February 2015, nearly 1,300 women opted into the collective. *See, e.g.*, Dkt. No. 336, at 1. EPA Opt-In discovery continued in 2015 and 2016, including written discovery for more than 200 women and depositions of more than thirty Opt-In Plaintiffs. Five additional Named Plaintiffs were added in May 2016. Dkt. No. 548.

The Parties engaged in expert discovery in 2017, and in February 2018, Plaintiffs filed a motion to certify a class of similarly situated female employees and to certify a collective of the Equal Pay Act claims of 1,112 Opt-In Plaintiffs. Dkt. No. 797-1. Briefing was complete in July 2018 and the Court heard oral arguments on August 2 and August 8, 2018. Dkt. Nos. 774 and 772. The Court denied class certification and decertified the EPA collective action in November 2018. Dkt. No. 831.

The Court subsequently ordered that each Former Opt-In Plaintiff could continue pursuing her EPA claims in the case if she served a fact sheet on KPMG, and approximately 450 Plaintiffs did so. Dkt No. 862; Dkt. No. 910, at 1. In September 2019, KPMG moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss ten fact sheets that it considered to be exemplars of the alleged deficiencies in other fact sheets, Dkt. No. 909, and in July 2020, the Court dismissed eight of the ten fact sheets. Dkt. No. 926. Plaintiffs sought to amend the fact sheets to conform to the Court's order, and the Court denied Plaintiffs' request in August 2020. Dkt. No. 931. Plaintiffs have appealed this order and the underlying order dismissing the fact sheets to the United States Court of Appeals for the Second Circuit, Case No. 20-3126. Dkt. No. 939. The Parties have stipulated

to withdraw Plaintiffs' appeal pursuant to Local Rule 42.1, and Plaintiffs may reinstate the appeal by May 18, 2021.

The EPA claims of 437 Former Opt-In Plaintiffs remain pending, in addition to the claims of the nine Named Plaintiffs and the pending appeal of seven additional Former Opt-In Plaintiffs. The Court ordered the Parties to meet and confer on whether the remaining fact sheets should be dismissed pursuant to the Court's order.  Dkt. No. 907.  KPMG asserted that nearly 380 fact sheets should be dismissed pursuant to the Court's Order, and KPMG has not yet challenged approximately 50 of the fact sheets.  In addition, the Named Plaintiffs' claims are not yet subject to challenge.

The Parties sought a stay of the case in October 2020 to enable them to pursue mediation in an attempt to resolve all pending claims in this matter, Dkt. No. 943, and the Court granted the stay, Dkt. No. 949.  Each of the Named Plaintiffs and the remaining Former Opt-In Plaintiffs (collectively "Claimants")[2] agreed that: Plaintiffs' Counsel would represent them in settlement negotiations through a mediation (Dkt. No. 951); Plaintiffs' Counsel would receive 35% of the total settlement amount for attorneys' fees and expenses; and the total settlement amount (less attorneys' fees and expenses) would be allocated among the Claimants by a third-party neutral.

**B.     The Settlement**

On December 9, 2020, the Parties attended a mediation before a highly respected Judicial Arbitration and Mediation Services ("JAMS") mediator, Dina Jansenson. After extensive negotiations, the Parties reached a settlement-in-principle.  Under the settlement, KPMG agreed to pay $10 million for settlement of all claims inclusive of attorneys' fees and costs.

---

[2] This includes seven Former Opt-In Plaintiffs whose fact sheets were dismissed by the Court in July 2020. Dkt. No. 926.  The eighth Former Opt-In Plaintiff whose fact sheet was dismissed by the Court voluntarily dismissed her claim on October 21, 2020. *See* Dkt. No. 949.

The Parties have continued to engage in extensive negotiations over the terms of the Agreement, attached as Exhibits A and B.  The Agreement provides that in exchange for the monetary settlement, each of the Former Opt-In Plaintiffs will release her EPA claims and any other claims arising out of or related to gender, sex, and/or pregnancy discrimination.  The Agreement provides that each of the Named Plaintiffs will sign a global release.  The Agreement does not contain provisions applicable to any Claimant for non-disparagement or confidentiality and does not subject any Claimant to a no rehire clause.  Under the Agreement, the settlement amount will be allocated by Retired District of Columbia Superior Court Judge Nan R. Shuker pursuant to factors listed in the Agreement.  The average Claimant recovery, net of attorneys' fees and costs, will be approximately $14,348, and no Claimant will receive less than $250, in each case minus tax withholdings and deductions.

The factors listed in the Agreement and used in determining a given Claimant's settlement allocation are as follows:

- The Claimant's maximum alleged EPA damages using a methodology described in the Agreement, and if a Named Plaintiff, the Named Plaintiff's maximum alleged non-EPA damages;

- Whether the Claimant's fact sheet was dismissed by the Court or she has a fact sheet that shares the same characteristics as the dismissed fact sheets;

- Whether the Claimant's claims are susceptible to challenge on equitable tolling grounds;

- Whether the Claimant signed a release of her claims that arguably released her EPA claim;

4

- Whether and to what extent the Claimant participated in the litigation, including whether the Claimant provided written interrogatory responses, produced documents, sat for a deposition, provided informal factual discovery and advice, or whether the Claimant served as a Named Plaintiff and when the Claimant joined the litigation as a Named Plaintiff; and

- Whether the Claimant is deceased and is represented by her estate in this litigation.

*See* Exh. A, §6(b)ii; Exh. B, §6(b)ii.

To analyze these factors, Judge Shuker will receive and consider the following in making her allocation determinations:

- The completed fact sheets;

- Spreadsheets provided by Plaintiffs' Counsel including information complied in chart form such as whether the Claimant left her fact sheet blank, used substantially similar language to a dismissed Claimant's fact sheet, or only identified a comparator without describing the substantially equal work performed, all of which the Court held were insufficient to state a claim, Dkt. No. 926 at 11-18;

- The Court's Order on KPMG's Motion to Dismiss Certain Equal Pay Act Claims and to Strike Certain Verified Fact Sheets at Docket No. 926;

- Each Claimant's maximum alleged damages calculated using the difference between the Claimant's salary during the liability period compared to the highest male salary in the same job title and service line or office;

5

- Additional maximum damage calculations using an above-level alleged comparator's salary for those Claimants who alleged they performed jobs that required substantially equal skill, effort, and responsibility under similar working conditions as men in higher job titles;

- The Named Plaintiffs' alleged non-EPA damages;

- Which fact sheets KPMG has challenged based on equitable tolling;

- Which Claimants signed a release;

- Which Claimants provided written interrogatory responses, produced documents, and/or sat for a deposition;

- When each Named Plaintiff joined the lawsuit;

- Which Claimants are deceased and represented by an estate; and

- Written submissions, if offered, by the Named Plaintiffs, not to exceed 750 words.

The Agreement also provides for payment out of the total aggregate settlement amount of Plaintiffs' Counsel's attorneys' fees and costs consistent with Plaintiffs' retainer agreements with counsel, equal to 35% of the total settlement value, or $3.5 million.  To date, Plaintiffs' Counsel has expended more than 58,700 hours and $26.6 million in fees and has incurred more than $1.8 million in expenses, a figure that will increase as Plaintiffs' Counsel continues to pay the costs of Judge Shuker.

## III.    Legal Standard

The law does not require court approval to settle the Named Plaintiffs' non-EPA claims individually, but the settlement also resolves their and the other Claimants' individual EPA claims. The EPA is an amendment to the Fair Labor Standards Act of 1938 ("FLSA"), and FLSA settlements require the approval of the district court.  Out of an abundance of caution, and because

6

the Second Circuit has yet to weigh in on whether EPA settlements require court approval, the Parties move this Court to approve the Agreement.

Courts in the Second Circuit review FLSA settlement agreements and approve them after determining they are "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *See Aponte v. Comprehensive Health Mgt., Inc.*, 10-4825, 2013 WL 1364147, at *4 (S.D.N.Y. Apr. 2, 2013)); *Mein v. Smith Fam. Farms, LLC*, 485 F. Supp. 3d 389, 393 (W.D.N.Y. 2020) ("Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."). In addition, "[a]bsent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (internal modifications and citation omitted); *see also id.* at 476 ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23.").

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky*, 900 F. Supp. 2d at 335 (internal marks and citation omitted); *see also Fisher v. SD Protec. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing the *Wolinsky* factors).

In addition to these factors, four public policy factors can weigh against approving the settlement: "(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Wolinsky*, 900 F. Supp. 2d at 336 (internal marks omitted).   Additionally, a court may not approve a settlement agreement that contains confidentiality provisions, non-disparagement provisions, or a release not tailored to plaintiffs' claims. *Santos v. Yellowstone Properties, Inc.*, No. 15-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016).

Courts approve "reasonable" fees and determine reasonableness based on either the amount of fees relative to the total recovery or the lodestar. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Arango v. Scotts Co., LLC*, No. 17-7174, 2020 WL 5898956, at *5 (S.D.N.Y. Oct. 5, 2020) (noting that fees are reasonable where the hourly rates and overall time expended are reasonable).   When the fees are included in a negotiated settlement agreement, there is "a greater range of reasonableness for approving attorney's fees." *Wolinsky*, 900 F. Supp. 2d at 336 (citing *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 8-4377, 2010 WL 2545439, at *5 (E.D.N.Y. May 17, 2010).

Courts approve fees in amounts that represent one-third to fifty percent of the overall settlement. *See, e.g.*, *Mireku v. Red Vision Sys., Inc.*, No. 11-9671, 2013 WL 6335978, at *3 (S.D.N.Y. Dec. 6, 2013) (approving fees and costs of nearly 50% of the overall amount); *see also Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 556–61 (W.D.N.Y. 2018) (approving a fee award of 37.5% of the overall settlement); *Hernandez v. Loco 111 Inc.*, No. 17-

8

666, 2017 WL 6205809, at *4 (S.D.N.Y. Dec. 5, 2017) (awarding 33.8% in fees and an additional 4.7% in costs); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding 33.8% in fees and an additional 4.7% in costs).

Alternatively, courts find fee awards are reasonable where the hourly rates and hours expended were reasonable. The reasonableness of hourly rates is determined based on the attorneys' customary rates and rates in the prevailing market. *See, e.g.*, *Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*, No. 10-1853, 2011 WL 1002439, at *6 (S.D.N.Y. Mar. 16, 2011); *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019). The reasonableness of hours expended is determined by reviewing "the value of the work product." *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018). Courts find that attorneys can recover fees for time spent on unsuccessful claims when the claims "involve[d] a common core of facts" or were "based on related legal theories" as the successful claims. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) (internal modifications and citation omitted).

In determining whether expenses are reasonable, courts approve expenses that are "those reasonable out-of-pocket expenses incurred by the attorney and [] are normally charged fee-paying clients." *Fisher*, 948 F.3d at 600; *see also Torres v. Gristede's Operating Corp.*, No. 4-3316, 2012 WL 3878144, at *5 (S.D.N.Y. Aug. 6, 2012) (affirming costs awarded, including out-of-town travel, meals, photocopying, and other expenses); *Apolinario v. Luis Angie Deli Grocery Inc.*, No. 14-2328, 2015 WL 4522984, at *4 (S.D.N.Y. July 27, 2015) (holding that deposition expenses, filing fees, and other expenses are reimbursable in FLSA cases).

IV.    **Argument**

A.    **The Settlement is Fair and Reasonable.**

Because this settlement was reached with the assistance of a highly respected mediator after nearly ten years of adversarial litigation, this Court may presume that it is fair and reasonable. *See Aponte*, 2013 WL 1364147, at *4 ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes."); *see also, e.g.*, *Mein*, 485 F. Supp. 3d at 393 (same); *Zamora v. One Fifty Fifty Seven Corp.*, No. 14-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (same); *Beckman*, 293 F.R.D. at 476 (same).  Furthermore, each of the *Wolinsky* factors support approving the settlement.

1.    **The Settlement Is Within the Plaintiffs' Range of Possible Recoveries.**

Plaintiffs estimate overall damages to be approximately $49.5 million, which includes $46.5 million for the EPA claims of the Former Opt-In Plaintiffs and $3 million for all claims (EPA and non-EPA) of the Named Plaintiffs.  Plaintiffs developed this exposure by using KPMG's payroll data to identify all alleged potential comparators—higher paid men in the same job title and office or practice group—for each Claimant.  Recognizing the potential for outliers and the substantial obstacles in establishing that Claimants were performing substantially equal work as the highest paid potential comparator, Plaintiffs used the median alleged comparator to establish a benchmark exposure.[3]

In addition to EPA claims, the Named Plaintiffs also have other claims, including Title VII pay claims, promotion claims, and termination or constructive discharge claims.  Plaintiffs' Counsel calculated maximum alleged backpay damages for each Named Plaintiff and estimated

---

[3] Based on a random sample of a subset of all Plaintiffs, the median calculation was approximately 23% of the "maximum" damage calculation (of more than $200 million, before adjusting for risk).

that each Plaintiff would receive approximately six months of damages resulting from constructive discharge as well as $50,000 in emotional distress damages. *See, e.g.*, *Trivedi v. Cooper*, No. 95-2075, 1996 WL 724743, at *9 (S.D.N.Y. Dec. 17, 1996) (awarding $50,000 in emotional distress damages when distress consisted of only "conclusory statements" by the plaintiff and plaintiff did not claim any physical manifestations of the distress).  Using these estimates, the total damages for the nine Named Plaintiffs are approximately $3 million.

These figures assume that all claims are successful in litigation, an assumption that ignores the litigation risks described below.  The estimates also assume that all Claimants will establish that they were underpaid relative to allegedly comparable men with at least the median salary of men in the same job title and office or practice group, and that the Named Plaintiffs will be successful in their individual non-EPA discrimination claims.  Based on these estimates, the $10 million in benefits provided to Claimants represents approximately 20% of their potential damages and is well within the range of settlements routinely approved by courts.  *See, e.g.*, *Santos*, 2021 WL 431451, at *1 (holding settlement reasonable when plaintiffs received approximately 18% of the total alleged damages); *Amhaz v. Booking.com (USA) Inc.*, No. 17-2120, 2019 WL 9122944, at *2 (S.D.N.Y. Oct. 29, 2019), report and recommendation adopted, No. 17-2120, 2020 WL 3498264 (S.D.N.Y. June 29, 2020) (finding 9.4% of potential recovery was fair and reasonable); *Aguilar v. N & A Prods. Inc*., No. 19-1703, 2019 WL 5449061, at *1–*2 (S.D.N.Y. Oct. 24, 2019) (holding settlement of approximately 7% of plaintiff's best-case scenario was fair and reasonable when there were "substantial legal and factual disputes").

Additionally, because the settlement amount will be allocated based in part on each Claimant's alleged individual comparator and damages exposure, as well as her category of potential risk in surviving a motion to dismiss, each Claimant will receive an amount that is tailored

to her circumstances. *See, e.g.*, *Siddiky v. Union Square Hosp. Group, LLC*, No. 15-9705, 2017 WL 2198158, at *1 (S.D.N.Y. May 17, 2017) (approving FLSA allocation that accounted for each class member's claims); *In re Patriot Natl., Inc. Securities Litig.*, 828 F. Appx. 760, 763 (2d Cir. 2020) (summary order) (holding the district court was within its discretion finding the settlement was fair when it relied on a plan of allocation).

For these reasons, the $10 million settlement is within the range of possible recoveries, and this factor weighs in favor of approval.

### 2. The Settlement Enables the Parties to Avoid Anticipated Burdens and Expenses in Establishing their Respective Claims and Defenses.

Absent the Settlement Agreement, KPMG would move to dismiss approximately 380 of the fact sheets including based on claims that they suffer similar pleading deficiencies as the eight dismissed fact sheets; that certain Claimants signed releases; and that certain Claimants had awareness of their gender pay claims beyond the statute of limitations and thus could not benefit from this Court's collective equitable tolling ruling. *See* Dkt. No. 902. While Plaintiffs do not believe that any of these motions should be adjudicated while the appeal on the prior dismissed claims is pending, there remains substantial uncertainty about the outcome of any appeal, which itself would require significant delay. The new motions to dismiss in this Court would also require individual review and analysis of hundreds of fact sheets and, as this Court has suggested, may require the assistance of a Special Master, which would further increase the time and the Parties' costs. Dkt. No. 860.

Because this is a federal Equal Pay Act case after decertification of the collective, merits discovery is expected to be individualized and time-consuming. For the remaining approximately fifty Claimants, and for any Claimants who survive a motion to dismiss, the Parties would need to engage in discovery into the work performed by the Claimants and their potential comparators.

As KPMG has noted, Plaintiffs have identified more than 12,000 potential comparators, Dkt. No. 902, and even discovery into a small fraction of these individuals would require a substantial investment of resources. Plaintiffs would seek performance reviews, emails, and depositions of supervisors and comparators, and KPMG would seek to depose any of the approximately 410 Former Opt-In Plaintiffs who are not dismissed by the Court and who have not already been deposed. Settlement allows the Parties to avoid the foregoing burdensome discovery, as well as potentially hundreds of summary judgment motions and numerous trials.

Avoiding these substantial expenses and burdens also supports settlement approval. *See Chowdhury v. Brioni Am., Inc.*, No. 16-344, 2017 WL 5953171, at *3 (S.D.N.Y. Nov. 29, 2017) (approving a settlement agreement in part because the agreement "avoid[s] the burden, expense and aggravation of litigation," including "several depositions"); *Yunda v. SAFI-G, Inc.*, No. 15-8861, 2017 WL 1608898, at *3 (S.D.N.Y. Apr. 28, 2017) (approving settlement when it avoided "[t]rial preparation [that] would potentially require additional depositions").

### 3. The Parties Face Significant Litigation Risks.

Settlement also allows the Parties to avoid the significant litigation risks. As indicated above, absent settlement, KPMG anticipates filing approximately 380 motions to dismiss, and absent success on appeal, Plaintiffs face a significant risk that some or many of these motions will be granted. *See, e.g.*, *Thornhill v. CVS Pharm., Inc.*, No. 13-5507, 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014) (finding settlement fair and reasonable when there was a "risk that the Court would have granted Defendant's still-pending motion to dismiss"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 58 (E.D.N.Y. 2010) ("Indeed, given the high probability that litigation would yield no recovery whatsoever for most, if not all, of the class members . . . even a lower settlement amount would be within the range of reasonableness here."). This is in addition to risks that Plaintiffs would face on summary judgment or at trial. Settlement also enables

Plaintiffs to avoid the risk that individualized discovery will not uncover facts necessary to establish that they were underpaid relative to men performing jobs that required substantially equal skill, effort, and responsibility under similar working conditions.  *See Ebbert v. Nassau County*, No. 5-5445, 2011 WL 6826121, at \*13 (E.D.N.Y. Dec. 22, 2011) (holding that FLSA class settlement was reasonable when "[t]he risk exists, as it would in any litigation, that the Plaintiffs could obtain back pay in amounts less than the Settlement provides [and] that the Plaintiffs could walk away with nothing at all if a jury found that the jobs being compared are not substantially equal in terms of skill, effort and responsibility").

Settlement also enables KPMG to avoid the risk that Plaintiffs' appeals will be granted and this Court's orders dismissing the fact sheets and denying Former Opt-In Plaintiffs' right to amend will be reversed.  *See, e.g.*, *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (settlement prior to appeal eliminates "risk, expense and delay").

Because settlement enables the Parties to avoid these risks, this factor also favors approval. *See Zamora*, 2016 WL 1366653, at \*1 (settlement approved where "Plaintiffs would face risks in establishing the full amount of liability and damages alleged at trial").

### 4.  The Settlement is the Result of an Arm's Length Agreement Reached Before a Well-Respected Mediator.

This settlement is the result of almost ten years of adversarial litigation—which included four complaints, multiple motions to dismiss, more than sixty depositions, more than one hundred interrogatory responses, a motion for class and collective certification, and more than 450 fact sheets.  In addition, "a settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" *Hernandez v. Anjost Corp.*, No. 11-1531, 2013 WL 4145952, at \*2 (S.D.N.Y. Aug. 14, 2013) (quoting *Johnson v. Brennan*, No. 10-4712, 2011 WL 4357376, at \*8 (S.D.N.Y. Sept. 16, 2011)).

Accordingly, this factor overwhelmingly favors settlement. *See Zamora*, 2016 WL 1366653, at *1 ("[T]he parties reached the settlement as a result of arm's-length negotiations following significant informal and formal discovery, with the assistance of a private mediator experienced in employment law."); *Lliguichuzhca*, 948 F. Supp. 2d at 366 ("[T]he proposed settlement is the result of arm's length bargaining between counsel during contested litigation, the Court finds it to be fair and reasonable."); *Beckman*, 293 F.R.D. at 476 (approving FLSA settlement when "the settlement was the result of arm's-length negotiation involving vigorous back and forth").

### 5.   There was No Fraud or Collusion.

Finally, there is no indication of any fraud or collusion, but rather the settlement here was the result of a mediation with a highly respected JAMS employment mediator, Dina Jansenson, with allocations determined by a respected former Judge.  *See Zamora*, 2016 WL 1366653, at *1.

### B.   The *Wolinsky* Public Policy Factors Support Approval.

Additionally, none of the additional factors that can weigh against approving the settlement are present here.  First, there are no other employees whose rights are affected or who are materially situated similarly to the Claimants.  *Wolinsky*, 900 F. Supp. 2d at 336 (noting a factor that weighs against accepting settlements is if there are "other employees situated similarly to the claimant").  Second, it is unlikely that the Claimants' circumstances would recur as the vast majority are no longer employed by KPMG.  *Santos*, 2016 WL 2757427, at *3 (noting that "because the plaintiffs no longer work for defendants," there was "little concern that defendants used improper leverage to secure the settlement"). The third factor indicates that settlement agreements may not be approved if there is "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region," and there is no indication of that here.  *Wolinsky*, 900 F. Supp. 2d at 336.  Finally, the fourth factor—"the desirability of a mature

record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace"—supports approval. This Court has already addressed the numerous EPA issues, including the pleading standard and certification standards, and at this stage, there are no novel factual or legal issues that would further the development of law in this area. *See, e.g.*, *Santos*, 2016 WL 2757427, at *3 (FLSA case "does not appear to raise novel factual or legal issues that would further the development of law in this area").

### C. The Settlement Agreement Provisions Support Approval.

In addition to the *Wolinsky* factors, the provisions in the Agreement also favor settlement approval. First, the Agreement does not have a confidentiality provision or a non-disparagement provision. *See Zamora*, 2016 WL 1366653, at *2 (approving where agreement did not contain "highly restrictive confidentiality provisions").

Second, the release is not overbroad. *See id.* at *2. The Former Opt-In Plaintiffs' release is limited to their gender-based employment claims. *See* Exh. A, at §3. *Castillo v. Cranes Express Inc.*, 18-1271, 2018 WL 7681356, at *3 (E.D.N.Y. Dec. 12, 2018) ("Accordingly, the release contained in the Agreement is fairly tailored to the instant litigation and should be approved as fair and reasonable."); *see also Yunda*, 2017 WL 1608898, at *3.

While the Named Plaintiffs are agreeing to a general release, courts routinely find that when, like here, plaintiffs are resolving claims in addition to FLSA or EPA claims and are receiving consideration for doing so, general releases are appropriate and do not require judicial approval. *See, e.g.*, *Santos*, 2016 WL 2757427, at *3 (holding that a general release "is appropriate in the context of a separate resolution of non-[FLSA] claims"); *see also Chowdhury*, 2017 WL 5953171 at *5 ("Plaintiffs' discrimination claims, unlike their FLSA claims, do not require judicial approval" and collecting cases).

16

### D.      The Attorneys' Fees and Expenses are Reasonable.

Plaintiffs' request for $3.5 million in attorneys' fees and costs are reasonable given the overall settlement value and the substantial discount represented by this amount.  In almost ten years of intense litigation, Plaintiffs' Counsel have incurred more than $26.6 million in fees and more than $1.8 million in costs.  Nevertheless, the settlement agreement provides that Plaintiffs' Counsel will receive only $3.5 million, or 12% of the fees and expenses counsel incurred.  This illustrates that the settlement regarding fees is an arms-length transaction and that counsel are sharing in the compromise to accomplish a resolution of this litigation.  Accordingly, as described below, the settlement meets all of standards for approval.

### 1.  Attorneys' Fees are Reasonable.

The request for $3.5 million in attorneys' fees and costs is consistent with the retainer agreements executed between each Named or Former Opt-In Plaintiff and Plaintiffs' Counsel, and the fees sought are more than reasonable based on both the percentage of the fund analysis and the lodestar analysis.

### a.      Percentage of the Fund

After Plaintiffs' Counsel are reimbursed for approximately $1.8 million in incurred costs, Plaintiffs' Counsel would recover approximately $1.7 million in attorneys' fees.  This figure represents approximately 17% of the settlement fund before costs are deducted and about 20% of the fund after costs are deducted.

Under either accounting, approval is appropriate here because the requested fee is significantly less than percentages routinely approved in the Second Circuit.  *See, e.g.*, *Snead*, 286 F. Supp. 3d at 561 (W.D.N.Y. 2018) (approving award of 37.5%); *see also, e.g.*, *Mireku*, 2013 WL 6335978, at *3 (S.D.N.Y. Dec. 6, 2013) (approving fees and costs of nearly 50% of the overall

amount); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. at 326 (awarding 33.8% in fees and an additional 4.7% in costs).

### b.   <u>Lodestar Cross-Check</u>

Alternatively, the sought fees are reasonable under a lodestar analysis.  Plaintiffs' Counsel will not receive a windfall for the more than 58,700 hours (and more than $26 million in lodestar) they have invested.  At most, Plaintiffs' Counsel would need to justify only a fraction of these hours to support the requested fee, and Plaintiffs more than satisfy that showing here.

Plaintiffs' Counsel thoroughly investigated the EPA claims, including speaking extensively with each of the more than 450 Claimants and many hundreds more.  Discovery on the EPA claims alone spanned more than fourteen months and required more than sixty depositions.  Plaintiffs' Counsel also served more than 200 interrogatory responses (including responses from at least 110 Former Opt-In Plaintiffs) and approximately 200 responses to requests for production.  *See* K. Mueting Decl. at ¶23(c).

Plaintiffs' Counsel were also required to expend efforts to defeat KPMG's motion to dismiss the Named Plaintiffs' Equal Pay Act claims, Dkt. No. 39, and KPMG's motion to dismiss ten representative fact sheets, Dkt. No. 913.  The Parties also engaged in briefing over numerous issues that have enabled members of the former EPA collective to achieve this result, including whether equitable tolling should apply to members of the EPA collective, *see* Dkt. Nos. 87, 91 and 332, the scope of discovery into the EPA collective, *see, e.g.*, Dkt. Nos. 421, 457, 481 and 641, the form of the EPA notice, *see* Dkt No. 177, 181, and 182, the confidentiality designation of KPMG's payroll data, *see* Dkt. Nos. 522 and 537, Tr. of Hr'g, and whether the Opt-In Plaintiffs should be allowed to continue to prosecute their claims in this Court, *see* Dkt. Nos. 846, 851, 859 and 863.

Plaintiffs' Counsel also represented Claimants at numerous court conferences, including more than ten that addressed the issues of equitable tolling and certification of the Equal Pay Act Collective.[4]  Plaintiffs worked extensively with experts to review data and identify comparators, and moved for conditional certification of the Equal Pay Act collective, which brought these Plaintiffs into Court.  Dkt. Nos. 109 and 797.  In this contentious case, Plaintiffs' Counsel's hours were reasonable.  *See Barbour v. White Plains*, 788 F. Supp. 2d 216, 224 (S.D.N.Y. 2011), aff'd, 700 F.3d 631 (2d Cir. 2012) (holding that time spent on calls conferring with clients was reasonable).

Likewise, although Plaintiffs' Counsel's hourly rates are not at issue in this case, they are also reasonable.  Sanford Heisler Sharp's hourly rates have been approved by many courts.  *See, e.g.*, *Wellens et al. v. Daiichi Sankyo, Inc.*, Case No. C 13-00581, Dkt. 191 at 5 ¶ 20 (N.D. Cal. Feb. 10, 2016) (approving Sanford Heisler Sharp's standard hourly rates of $850-$1,050 for the partners staffed on the case, $700 for senior litigation counsel, and $425-$750 for associates, as "in line with attorneys of comparable skill, experience, and reputation"); *Ha v. Google Inc.*, No. 116-290847, 2018 WL 1052448, at *2 (Cal. Super. Feb. 8, 2018) (approving award of attorneys' fees to Sanford Heisler Sharp and calculating lodestar modifier based on billing rates of $850 for the partners staffed on the case, $750 for senior litigation counsel, up to $500 for associates, and $295 for a senior legal assistant); *see also Barrett v. Forest Labs., Inc.*, No. 1:12- 05224, Dkt. No. 292 (S.D.N.Y. Apr. 26, 2018) (approving requested fee award to Sanford Heisler Sharp); *id.* at Dkt. No. 282 (declaration setting forth counsel's standard hourly rates used in lodestar cross-check calculation, including rates of up to $1,000 for the partners staffed on the case, up to $850 for

---

[4] Plaintiffs' Counsel also notes that time expended pursuing the Title VII discrimination claims is also compensable. *See, e.g.*, *Robinson v. City of New York*, No. 5-9545, 2009 WL 3109846, at *9 (S.D.N.Y. Sept. 29, 2009) (reimbursing hours spent pursuing unsuccessful discrimination claims as those claims were "intertwined with the claims on which [plaintiffs] succeeded" (citation omitted)).

senior litigation counsel, up to $550 for associates, and $295 for senior legal assistants). Furthermore, Plaintiffs' Counsel's lodestar is calculated using hourly rates for Sanford Heisler Sharp that have been discounted from the firm's customary, previously approved rates. K. Mueting Decl. ¶28.

LCHB's customary billing rates, which were used for purposes of calculating LCHB's lodestar, are also consistent with prevailing rates and repeatedly have been approved by federal courts, including courts in this District: *See, e.g. In Re: The Bank of New York Mellon ADR FX Litigation*, No. 16- 00212, Dkt. No. 161 (S.D.N.Y. June 17, 2019) (awarding requested attorneys' fees as "fair and reasonable and consistent with awards in similar cases"); *In Re: Bank of New York Mellon Corp. Forex Transactions Litigation*, No. 12-MD-2335, Dkt. 637 (September 24, 2015) (awarding requested attorneys' fees); *see also In re Intuit Data Litig.*, No. 15-1778, 2019 WL 2166236, at *2 (N.D. Cal. May 15, 2019) (awarding requested attorneys' fees); *Campbell et al. v. Facebook, Inc.*, No. 13-05996, Dkt. No. 253 (N.D. Cal. August 18, 2017) (approving LCHB rates); *Perkins v. LinkedIn Corp.*, No. 13-CV-04303, 2016 WL 613255, at *15 (N.D. Cal. Feb. 16, 2016) (approving LCHB rates); *In re High-Tech Employee Antitrust Litig.*, No. 11-02509, Dkt. No. 1112 (N.D. Cal. Sept. 2, 2015) (approving LCHB rates).

Accordingly, Plaintiffs' Counsel's request for $3.5 million is reasonable and should be approved.[5]  *In re Pfizer Inc. Shareholder Derivative Litig.*, 780 F. Supp. 2d 336, 343 (S.D.N.Y. 2011) (requested $22 million fee "compares favorably with plaintiffs' counsel's lodestar, given the 38,720 hours they report having spent prosecuting this action").

---

[5] If the Court has a serious question whether the fee request is unreasonable, Plaintiffs' respectfully request a hearing to give Plaintiffs and the Court an opportunity to discuss the fee application. *Fisher*, 948 F.3d at 605.

### 2. Attorneys' Costs are Reasonable.

Plaintiffs' Counsel have incurred more than $1.8 million in costs to date, and these costs will continue to increase as Plaintiffs' Counsel pays for Judge Shuker's allocation work. These costs include depositions, expert discovery, ESI expenses, mediation costs, and other administrative non-overhead costs associated with the case. *See* K. Mueting Decl. at ¶¶21, 29 and K. Dermody Decl. at ¶14. These costs are recoverable under the FLSA and under the Named Plaintiffs' claims under other employment discrimination statutes. *See, e.g.*, *Fisher*, 948 F.3d at 601 (process fees, filing fees, hotels, transportation, and working meals were reimbursable costs).

## V.   Conclusion

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the attached proposed Order approving the Agreement.


Dated:  April 5, 2021

By:

Kate Mueting

David Sanford (*admitted pro hac vice*)
Kate Mueting (*admitted pro hac vice*)
Thomas J. Henderson (*admitted pro hac vice*)
Shaun Rosenthal
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue, Southeast, Suite 300 Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
Email: dsanford@sanfordheisler.com
Email: kmueting@sanfordheisler.com
Email: thenderson@sanfordheisler.com Email: srosenthal@sanfordheisler.com

Jeremy Heisler
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor New York, NY 10019

21

Telephone: (646) 402-5650
Facsimile: (202) 402-5651
Email: jheisler@sanfordheisler.com

Kelly M. Dermody (*admitted pro hac vice*)
Anne B. Shaver (*admitted pro hac vice*)
Michael Levin-Gesundheit (*admitted pro hac vice*)
Tiseme G. Zegeye
Michelle Lamy (*admitted pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: kdermody@lchb.com
Email: ashaver@lchb.com
Email: mlevin@lchb.com
Email: tzegeye@lchb.com
Email: mlamy@lchb.com

Rachel Geman
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-9592
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
Email: rgeman@lchb.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing and all documents attached hereto were served April 5, 2021 upon the following counsel of record via electronic mail:

Peter O. Hughes, Esq.
**OGLETREE, DEAKING, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, NJ 07960
peter.hughes@ogletreedeakins.com

Chris R. Pace, Esq.
**OGLETREE, DEAKINS, NASH,**
**SMOAK &STEWART, P.C.**
4520 Main Street, Suite 400
Kansas City, MO 64111
chris.pace@ogletree.com

Diane M. Saunders, Esq.
**OGLETREE, DEAKINS, NASH,**
**SMOAK &STEWART, P.C.**
One Boston Place, Suite 320
Boston, MA 02108
diane.saunders@ogletreedeakins.com

Stephanie L. Aranyos, Esq.
**OGLETREE, DEAKINS, NASH,**
**SMOAK &STEWART, P.C.**
1745 Broadway, 22nd Floor,
New York, NY, 10019
stephanie.aranyos@ogletree.com

Colleen M. Kenney, Esq.
John G. Levi, Esq.
Melanie E. Walker, Esq.
**SIDLEY AUSTIN LLP**
One South Dearborn St.
Chicago, IL 60603
ckenney@sidley.com
jlevi@sidley.com
mewalker@sidley.com

Wendy M. Lazerson, Esq.
**SIDLEY AUSTIN LLP**
1001 Page Mill Road
Building 1
Palo Alto, CA 94304
wlazerson@sidley.com

Eric G. Hoffman
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
eric.hoffman@sidley.com

*s/Zoe Kozlowski*
Zoe Kozlowski