```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
DONNA KASSMAN, et al.,                                      :
                                                            :
                                   Plaintiffs,              :     11 Civ. 3743 (LGS)
                                                            :
              -against-                                     :     **OPINION AND ORDER**
                                                            :
KPMG LLP,                                                   :
                                                            :
                                   Defendant.               :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Defendant KPMG, LLP and Plaintiffs -- current or former employees of Defendant, including nine named Plaintiffs (the "Named Plaintiffs") and 437 former opt-in Plaintiffs (the "FOIPs") -- reached a settlement agreement that seeks to resolve all pending claims, including the FOIPs' claims pursuant to the Equal Pay Act of 1963 ("EPA") (the "Settlement Agreement"). As required by the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015), on March 30, 2021, Plaintiffs filed a motion for the approval of the Settlement Agreement and Defendant filed a response in support of the motion. For the reasons stated below, the motion is granted.

**I.     BACKGROUND**

On June 2, 2011, Plaintiff Donna Kassman filed this action on behalf of a class of similarly situated female employees of Defendant. The Fourth Amended Complaint alleges class and individual claims of gender discrimination in compensation, promotion and other terms and conditions of employment, in violation of the EPA, Title VII of the Civil Rights Act of 1964, New York Executive Law § 296, New York Administrative Code § 8-107 and New York Labor Law § 194, and also alleges individual claims of discrimination on the basis of pregnancy,

childbirth and related conditions and on the basis of race, in violation of the Family Medical Leave Act and the Civil Rights Act of 1866, respectively. Less than three weeks after this action was filed, the United States Supreme Court issued its decision in *Wal-Mart Stores, Inc. v. Dukes*; the Supreme Court's decision made it extremely difficult for a gender discrimination suit to proceed as a class action where, as is the case for many of the claims in this action, the alleged discriminatory treatment was the product of local supervisors exercising their discretion in awarding pay and promotions. *See* 564 U.S. 338, 355 (2011).

In July 2014, conditional certification of an EPA collective was granted. Almost 1,300 women opted into the conditionally certified collective. In February 2018, Plaintiffs filed a motion to certify a class of similarly situated female employees and to certify the conditionally certified EPA collective. Class certification was denied and the conditionally certified EPA collective was decertified. However, FOIPs were permitted to pursue their EPA claims by serving verified fact sheets on Defendant. Approximately 450 Plaintiffs pursued this option, and following Defendant's motion to dismiss certain verified fact sheets, 437 FOIPs remain. Now, after almost ten years of litigation, the remaining claims in this action are (1) the EPA claims of the 437 remaining FOIPs and (2) the claims of the Named Plaintiffs.

On September 30, 2020, the parties filed a letter stating that they had agreed to pursue mediation in an attempt to resolve all claims, and on October 21, 2020, the case was stayed pending the outcome of mediation. Plaintiffs' counsel represented both the Named Plaintiffs and the FOIPs throughout the mediation. On December 9, 2020, the parties attended a mediation session before an experienced Judicial Arbitration and Mediation Services ("JAMS") mediator and reached a settlement-in-principle of all claims. On March 30, 2021, after formalizing the terms of the settlement-in-principle and seeking approval from all Plaintiffs, Plaintiffs filed a

motion for approval of the Settlement Agreement[1] and Defendant filed a letter in support of the motion.  On April 5, 2021, Plaintiffs filed a corrected motion for the approval of the Settlement Agreement, which included one substantive revision as to the average claimant recovery under the Settlement Agreement.

Based on a review of the payroll data for KPMG male employees in the same job title and office or practice group as each Plaintiff, Plaintiffs estimate overall damages to be approximately $49,500,000, which includes $46,500,000 million for the FOIPs' EPA claims and $3,000,000 for all of the Named Plaintiffs' claims (EPA and non-EPA).  Pursuant to the Settlement Agreement, Defendant agrees to pay $10,000,000 for the settlement of all claims, including those for attorneys' fees and costs.  In exchange for this monetary settlement, the FOIPs will release their EPA claims and any additional claims arising out of or related to gender, sex and/or pregnancy discrimination against Defendant.  In addition, the Named Plaintiffs will sign a global release of all claims against Defendant.

Plaintiffs contend that under the Settlement Agreement, the average claimant recovery, net of attorneys' fees and costs, will be approximately $14,348.79, and no claimant will receive less than $250.00, minus tax withholdings and deductions.  The Settlement Agreement provides that Retired District of Columbia Superior Court Judge Nan R. Shuker will allocate settlement funds based on an evaluation of the following factors: (1) the claimant's maximum alleged EPA damages and for Named Plaintiffs, maximum alleged non-EPA damages; (2) whether the claimant's fact sheet was dismissed or shares the same characteristics as a dismissed fact sheet;

---

[1] Plaintiffs' motion includes copies of both a FOIP settlement agreement as well as a Named Plaintiff settlement agreement.  These agreements are substantively identical, except for Section 3 of the agreements, which covers Plaintiffs' release of claims against Defendant.  For the purposes of this opinion, "Settlement Agreement," refers to both the FOIPs' settlement agreement and the Named Plaintiffs' settlement agreement.

(3) whether the claimant's claims are susceptible to challenge on equitable tolling grounds; (4) whether the claimant signed a release of her claims that arguably released her EPA claims; (5) whether and to what extent the claimant participated in this litigation, including whether the claimant provided written interrogatory responses, produced documents, sat for a deposition, provided informal factual discovery and advice or whether and when the claimant served as a Named Plaintiff; and (6) whether the claimant is deceased and is represented by her estate in this litigation.

Pursuant to the Settlement Agreement, Plaintiffs' counsel will receive thirty-five percent of the settlement fund, for a total of $3,500,000. Since 2011, Plaintiffs' counsel has spent more than 47,100 hours on this matter, for a total lodestar of over $26,475,000. These hours were devoted to tasks including drafting the complaint and amended complaints, and conducting fact discovery, expert discovery and motion practice. In addition, Plaintiffs' counsel has also incurred over $1,800,000 in costs for depositions, expert discovery, ESI expenses, mediation costs, and other administrative non-overhead costs associated with the case.

## II.     STANDARD

In the Second Circuit, "parties cannot privately settle [Fair Labor Standards Act ("FLSA")] claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 200, 206 (explaining that FLSA claims fall within the "applicable federal statute" exception of Federal Rule of Civil Procedure 41(a)(1)(A)(ii))); *see also Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 286 (S.D.N.Y. 2018) (explaining that the EPA is "part of" FLSA). As a result, district courts must evaluate whether a proposed settlement of FLSA claims is "fair and reasonable." *Cheeks*, 796

F.3d at 201.  To make this determination, courts consider "the totality of the circumstances," *Chevalier v. Staffpro, Inc.*, No. 20 Civ. 7006, 2021 WL 949749, at * 1 (S.D.N.Y. Mar. 12, 2021), including the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal citation omitted); *accord Chevalier*, 2021 WL 949749 at *1.  In addition, the following four public policy factors can weigh against approval:  "(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Wolinsky*, 900 F. Supp. 2d at 336.

Where a settlement agreement provides for attorneys' fees and costs, district courts "also evaluate the reasonableness of the fees and costs." *Fisher*, 948 F.3d at 600; *accord Flores Galloso v. 3821 Food Corp.*, 20 Civ. 1940, 2021 WL 860343, at *2 (S.D.N.Y. Mar. 8, 2021) (finding that fees totaling one-third of the settlement were reasonable and explaining that, "[i]n an FLSA case, the Court must independently ascertain the reasonableness of the fee request.") (internal citation and quotation marks omitted).  The reasonableness of attorneys' fees is assessed based on the attorneys' "efforts in litigating th[e] case and [] success in negotiating a favorable settlement." *Id*. at 607.  "Although there is not a proportionality requirement, attorney fees

settlements generally amount to a third of the settlement award." *Perez v. Sixth Ave. Rest. Mgmt. LLC*, No. 19 Civ. 9316, 2021 WL 827768, at * 3 (S.D.N.Y. Mar. 3, 2021). "[E]ven when the proposed fees do not exceed one third of the total settlement amount, courts in this Circuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Santos v. YMY Mgmt. Corp.*, No. 15 Civ. 3986, 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (internal citation and quotation mark omitted). In addition, costs are acceptable where they are "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (citation omitted).

"Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Mein v. Smith Fam. Farms, LLC*, 485 F. Supp. 3d 389, 393 (S.D.N.Y. 2020). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id*.

### III. DISCUSSION

#### A. Range of Recovery

The Settlement Agreement's provision for a $10,000,000 settlement fund, to be allocated based on each claimant's individual comparator, damages exposure and likelihood of surviving a motion to dismiss, is fair and reasonable. Ten million dollars is approximately 20% of Plaintiffs' alleged potential damages.[2] Recovery of this percentage of potential damages is within the range of settlements approved by courts in this District. *See, e.g.*, *Santos,* 2021 WL 431451 at *1 (approving a settlement where plaintiffs received approximately 18% of total alleged damages);

---

[2] $10,000,000 \div 49,500,000 = 0.2020$.

*Amhaz v. Booking.com (USA) Inc.*, No. 17 Civ. 2120, 2019 WL 9122944, at *2 (S.D.N.Y. Oct. 29, 2019), *report and recommendation adopted*, No. 17 Civ. 2120, 2020 WL 3298264 (S.D.N.Y. June 29, 2020) (approving a settlement where plaintiffs received 9.4% of total alleged damages). In addition, the proposed allocation plan, accounting for each claimant's circumstances, helps to ensure recovery will be fair and reasonable. *See Siddiky v. Union Square Hosp. Grp., LLC*, No. 15 Civ. 9705, 2017 WL 2198158, at *1 (S.D.N.Y. May 17, 2017) (approving a settlement of FLSA claims providing for allocation based on "a point system derived from the number of hours . . . worked during the class period").

      **B.**      **Burden and Risks of Litigation**

In this instance, the potential burden and risks of litigation support a finding that the Settlement Agreement is fair and reasonable. Settlement enables the parties to avoid the burden of continued, protracted litigation, including approximately 380 potential motions to dismiss the verified fact sheets of FOIPs, individualized merits discovery regarding the FOIPs' EPA claims, dispositive motions and trials. The parties have engaged in litigation for almost ten years and continued litigation could substantially increase the already significant amounts of time and resources the parties have devoted to this matter. *See, e.g.*, *Kim v. Choi*, No. 19 Civ. 8911, 2021 WL 510156, at *3 (S.D.N.Y. Feb. 10, 2021) ("Settlement enables the parties to avoid the burden and expense of preparing for trial.").

      **C.**      **Arm's-Length Negotiation**

The posture and nature of the negotiations also support a finding that the Settlement Agreement is fair and reasonable. Broadly speaking, the Plaintiffs contend that "[t]his settlement is the result of almost ten years of adversarial litigation -- which included four complaints, multiple motions to dismiss, more than sixty depositions, more than one hundred interrogatory

responses, a motion for class and collective certification, and more than 450 fact sheets." More narrowly speaking, the parties represent that the Settlement Agreement is the product of an arm's-length agreement reached before an experienced JAMS mediator. *See Grullon v. Justin Pharmacy Inc.*, No. 20 Civ. 6122, 2021 WL 76386, at *2 (S.D.N.Y. Jan. 8, 2021) (approving a proposed settlement that "was a product of an arm's-length, extended mediation session by a mediator assigned by the Southern District of New York's mediation program."). Throughout the mediation, all parties, including the FOIPs, were represented by competent and experienced counsel. In light of the clarity the parties gained through years of litigation and the professional guidance the parties had throughout the mediation, this factor favors approval of the Settlement Agreement.

### D. Risk of Fraud of Collusion

There is nothing in the record to suggest that the Settlement Agreement is the product of fraud or collusion.

### E. Additional Factors

The public policy factors articulated in *Wolinsky* do not weigh against approval of the Settlement Agreement. *See Wolinsky*, 900 F. Supp. 2d at 336. First, there are no other employees whose rights are affected or who are similarly situated to the Named Plaintiffs or FOIPs. Second, it is unlikely that the Named Plaintiffs' or FOIPs' injury would recur, as most of these individuals no longer work for Defendant. Third, apart from this lawsuit, there is no indication that Defendant has a history of FLSA or EPA non-compliance. And fourth, in light of the parties' extensive litigation that has occurred to date, there are no additional novel factual or legal issues that would warrant rejection of the Settlement Agreement for the purpose of developing the law. In addition, the proposed Settlement Agreement contains neither a

confidentiality provision nor a non-disparagement provision, which are "objectionable provisions that courts have found fatal in other proposed FLSA settlements." *Perez*, 2021 WL 827768 at *2 (citing *Thallapaka v. Sheridan Hotel Assocs. LLC*, No. 15 Civ. 1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015); *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727, 2016 WL 206474, *1 (S.D.N.Y. Jan. 15, 2016)).

The Settlement Agreement's requirement that the nine Named Plaintiffs generally release claims against Defendant is also reasonable under the circumstances of this case. "In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (internal citation omitted); *accord Chevalier*, 2021 WL 949749 at *1. However, where the parties are also resolving non-FLSA claims, a general release may be appropriate. *Santos v. Yellowstone Properties, Inc.*, 15 Civ. 3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016). Here, the Named Plaintiffs are accepting compensation to resolve both non-FLSA claims, for which the parties need not seek Court approval of settlement terms, and EPA claims, subject to the *Cheeks* approval requirement. In addition, the protracted nature of this particular litigation and the parties' mutual efforts to resolve cooperatively these claims, weigh against the substitution of the Court's judgment for that of the parties and the rejection of the proposed general release for Named Plaintiffs. *See Mein*, 485 F. Supp. 3d at 393 ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.").

### F. Attorneys' Fees and Costs

The proposed attorneys' fees and costs of $3,500,000 are reasonable. Here, the Settlement Agreement provides that Plaintiffs' counsel is entitled to 35% of the settlement fund. This percentage is within the range of fee awards that courts in this District have approved. *See, e.g.*, *Perez*, 2021 WL 827768 at *3 (approving attorneys' fees amounting to 36% of the total settlement fund); *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 556-61 (W.D.N.Y. 2018) (approving attorneys' fees amounting to 37.5% of the total settlement fund). The requested fee amount is unquestionably reasonable in the particular circumstances of this case. Since 2011, Plaintiffs' counsel has spent more than 47,100 hours on this matter, for a total lodestar of over $26,475,000. They persisted in their zealous representation of clients they had undertaken to represent, even after it became obvious they would never recoup anywhere near the value of the time expended. They now seek to recover only a fraction (13%) of that amount. Counsel to both parties are commended for their cooperative efforts in the litigation to resolve their differences and ultimately to resolve the case with professionalism, flexibility and creativity.

## IV. CONCLUSION

For the reasons stated above, the motion is granted and the Settlement Agreement is approved. Once the settlement fund has been disbursed, the parties are directed to provide a general accounting to the Court as to how the monies were spent, the range of recoveries and any other pertinent information. The parties shall provide a status letter to the Court every six months until the final accounting is provided.

The Clerk of the Court is respectfully directed to close the motions at docket numbers 963 and 965. The parties shall file a proposed stipulation of dismissal with prejudice, pursuant to Rule 41(a)(1)(A)(ii).

Dated:  April 12, 2021
       New York, New York

                                                **LORNA G. SCHOFIELD**
                                         **UNITED STATES DISTRICT JUDGE**