```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
 DONNA KASSMAN et al.,                      :
                              Plaintiffs,   :
                                            :        11 Civ. 3743 (LGS)
               -against-                    :
                                            :        OPINION AND ORDER
                                            :
 KPMG LLP,                                  :
                              Defendant.    :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff C. Anne Macedonio, a former employee of KPMG, LLP ("KPMG"), brings an Equal Pay Act ("EPA") claim against Defendant KPMG. Defendant moves to dismiss Ms. Macedonio's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion is granted.

I.     BACKGROUND

  A. Procedural History

This case began in July 2011 as a putative class and collective action. The Court conditionally certified an EPA collective of approximately 1,100 opt-in plaintiffs in 2014, *see Kassman v. KPMG LLP*, No. 11 Civ. 3743, 2014 WL 3298884, at *9 (S.D.N.Y. July 8, 2014), and decertified the collective in 2018, *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 290 (S.D.N.Y. 2018). Following decertification, the parties negotiated a streamlined process for claimants to assert their individual EPA claims, which required the submission of a Verified Fact Sheet ("VFS"), which would operate in all respects as if it were a complaint. In May 2019, KPMG filed a pre-motion letter proposing a motion to dismiss certain VFSs for failure to state a claim. In its pre-motion letter, KPMG argued, among other things, that many VFSs failed to state a claim because they did not identify any comparator(s), admitted that the plaintiffs had no personal knowledge of any male doing equal work and/or did not allege any facts regarding

potential comparators' job duties. On June 3, 2019, the Court permitted Plaintiffs to serve any amended VFSs by July 1, 2019, and directed KPMG to answer or move in response to any VFS thereafter. Ms. Macedonio did not file an amended VFS. After Defendant renewed its pre-motion letter, the Court directed KPMG to move to dismiss ten VFSs pursuant to Federal Rule of Procedure 12(b)(6), whose purported defects were representative of the challenged VFSs as a whole. The Opinion and Order dated July 15, 2020, dismissed eight of the ten VFSs. On April 12, 2021, the Court approved a settlement agreement resolving all pending claims, which was signed by all Plaintiffs except Ms. Macedonio and Shardae Tarkington. Ms. Tarkington's claims were subsequently dismissed, leaving Ms. Macedonio (hereafter "Plaintiff") as the only remaining plaintiff with unresolved claims.

Defendant renewed its pre-motion letter in June 2021 regarding a proposed motion to dismiss Plaintiff's VFS for failure to allege sufficient facts to support an EPA claim. Specifically, Defendant argued that Plaintiff's VFS suffered from the same deficiencies as the representative VFSs that had been dismissed, including a failure to plead that Plaintiff performed equal work to her comparators. At a pre-motion conference on June 17, 2021, the Court explained that to allege an EPA claim, the VFS must set forth specific facts regarding Plaintiff's job titles and the work she performed in relation to her male comparators. Following the conference, Plaintiff was granted leave to file an addendum to her VFS and did so on July 7, 2021. On August 12, 2021, Defendant again renewed its pre-motion letter, arguing that the VFS did not allege facts sufficient to suggest Plaintiff performed equal work to any male employee. Defendant's arguments in the renewed pre-motion letter largely mirror the arguments made in the instant motion, including that (i) the allegations in the VFS showed that Plaintiff performed work that was different than the work performed by male employees, (ii) the VFS did not

identify male comparators for several projects, with the expectation that Defendant could provide such information and (iii) for some projects, Plaintiff was not aware of any men who also worked on those projects.  Plaintiff filed a response, which is considered a part of, and a supplement to, her pleading for purposes of this motion.  KPMG subsequently filed the instant motion.  Plaintiff opposed, and KPMG replied.

  B. Facts

The Court assumes familiarity with the facts.  *See, e.g.*, *Kassman v. KPMG LLP*, No. 11 Civ. 3743, 2020 WL 4003367, at *1-3 (S.D.N.Y. July 15, 2020) (granting in part Defendant's motion to dismiss VFSs); *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 257-67 (S.D.N.Y. 2018) (denying Plaintiffs' motions for Rule 23 class certification and EPA collective certification); *Kassman v. KPMG LLP*, No. 11 Civ. 03743, 2014 WL 3298884, at *2-4 (S.D.N.Y. July 8, 2014) (granting Plaintiffs' motion for conditional certification and granting in part Defendant's motion to dismiss); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 457-59 (S.D.N.Y. 2013) (granting in part Defendant's motion to strike or dismiss).  The summary below is taken from Ms. Macedonio's VFS and recounts the facts most pertinent to her EPA claim.  These facts are accepted as true for purposes of this motion.  *See Chamberlain ex rel. Chamberlain v. City of White Plains*, 960 F.3d 100, 103 n.8 (2d Cir. 2020).

Plaintiff is a licensed CPA and received her Master's Degree in Business Administration from Tulane University.  In 2011, Plaintiff was hired as a senior associate in Defendant's Compliance and Monitoring division in San Francisco, California.  The office work environment was hostile and unsupportive, and Plaintiff struggled to maintain billable work.  The VFS alleges that KPMG intentionally and recklessly discriminated against Plaintiff on the basis of her sex and age and provides examples.

Because teams were comprised of staff with varying degrees and experience, it was rare for Plaintiff to do work that was identical to the work of other team members. During her tenure at KPMG, Plaintiff billed 1,000 hours of work on the following seven projects, which are described in more detail below.[1]

### 1. Project 1

Plaintiff worked on this forensic assignment for several weeks and is unsure whether other senior associates with a CPA license and "like experience" worked with her on this assignment.

### 2. Project 2

On this project, Plaintiff was responsible for document review and "identifying items that could lead to solving this financial fraud." Plaintiff's prior experience as a stockbroker and valuation analyst placed her in a unique position for problem-solving, though her input was disregarded during a conference call on one occasion. Plaintiff is not aware of the names of other male CPAs who worked on this assignment, but believes prior experience working with valuations and an investment advisory license would have been required.

### 3. Project 3

Plaintiff was responsible for document review and factfinding. The project was led by a male senior associate who was also a CPA and whose father was a partner at KPMG. In Plaintiff's opinion, her leadership on this project would have been as good if not better than the project leader's due to the fact that she had more professional work experience. Plaintiff believes the project leader would be a "good candidate to analyze equal pay."

---

[1] The VFS was subsequently sealed, at Defendant's request, and the names of clients are redacted in the public version of the VFS. To protect the identities of those clients, the project names are anonymized in this opinion.

### 4. Project 4

Plaintiff was part of a national team that was conducting a forensic audit. In the San Francisco office, Plaintiff worked on a two-person team with a young associate, whose gender is not specified in the VFS. Plaintiff is not aware of the names of the male CPAs at the senior associate level who worked on this project nationally, but hopes KPMG can provide this information.

### 5. Project 5

Team members in Plaintiff's position were required to be licensed CPAs and United States citizens. As a result of her prior experience in healthcare and master's degree, Plaintiff was comfortable working in various healthcare settings in connection with this project, including a physical therapy office in Pennsylvania, where she worked alone. Plaintiff's workload was akin to the workload of a team of three or five members, and she was required to submit workpapers at the end of each week. Plaintiff does not know the names of other male CPAs working on this project, but believes that KPMG can obtain this information from the Federal Practice unit in Washington, D.C. where she was assigned during that time, and that individuals with experience in healthcare would be comparators.

### 6. Project 6

This project was a short assignment involving a records review contract. Plaintiff is not aware of any other male senior associate CPA or male CPA with investment advisory experience who worked on this assignment, but believes that KPMG can provide this information. Plaintiff had no prior experience in records management but believes her credentials and prior investment advisory work experience added value to the team.

7. Project 7

This project consisted of royalty review audits that were primarily conducted by "big data analytic IT staff" using computer programming and Structured Query Language, a programming language. Though Plaintiff is "not an IT person," she contributed to this project "in a unique way." On this project, Plaintiff reviewed complex contracts, developed a spreadsheet matrix summarizing pertinent variables and compiled workpapers. Plaintiff worked with two men on this project, who were not CPAs and worked in the "data analytic area."

In addition to her billable work on the above projects, Plaintiff provided accounting and audit staff training at an annual conference. Though Plaintiff received positive feedback on her training presentation from many individuals in her class, two male colleagues disregarded her contribution, and one questioned her qualification to lead such a training.

Plaintiff was terminated from her employment in Compliance and Monitoring in the San Francisco office in 2012. Although she was encouraged to seek other work within KPMG, her supervisor refused to make calls on her behalf within the firm.

**II.   STANDARD**

As this Court previously held, a VFS, like a complaint, is governed by the Federal Rules of Civil Procedure, including the general rules of pleading, and is subject to applicable defenses and objections by Defendant. *Kassman*, 2020 WL 4003367, at *4. To withstand a motion to dismiss, "a complaint must contain sufficient matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It

is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

A pro se litigant's papers must be construed liberally "to raise the strongest arguments that they suggest." *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1074 (2d Cir. 2021).

**IV. DISCUSSION**

The allegations in the VFS and supporting papers are insufficient to state a claim under the EPA. To state a claim under the "demanding" standard of the EPA, a complaint must allege that "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2d Cir. 2014) (alterations omitted); *accord Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 580-81 (2d Cir. 2020) (summary order). "At the pleading stage . . . a plausible EPA claim must include 'sufficient factual matter, accepted as true' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal.'" *Port Auth. of New York & New Jersey*, 768 F.3d at 256 (alteration in original) (quoting *Iqbal,* 556 U.S. at 678). "To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Id*. at 255.

A. Projects 1, 2, 4, 5 and 6

For five out of the seven projects Plaintiff worked on during her tenure at KPMG, the VFS does not allege any information about male comparators. Specifically, as to Projects 1, 2, 4, 5 and 6, the VFS states that Plaintiff either was not aware of or did not know the names of potential male comparators, or, with respect to Project 6, was not aware of any other male, senior associate CPA or male CPA with investment advisory experience working on the project. In her Opposition, Plaintiff asserts that there were male comparators on two teams where she did not previously identify such comparators, but does not identify the project or provide any factual detail illustrating how the male comparators performed substantially equal work. "[A] successful EPA claim depends on the comparison of actual job content." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256. Because the allegations do not identify any male comparators nor describe the work they performed on those projects, the VFS fails to state a claim under the EPA. *See Wu*, 815 F. App'x at 581 (affirming dismissal of EPA claim where complaint failed to allege "anything about her actual job duties or the actual job duties of her putative comparators").

According to the VFS, Plaintiff hoped that KPMG could provide information to enable her to identify male comparators. But the law requires that claims be sufficiently pleaded in order for a plaintiff to be entitled to discovery. *Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *accord Trump v. Vance*, 480 F. Supp. 3d 460, 502 (S.D.N.Y. 2020). These minimum pleading requirements apply to all plaintiffs, regardless of whether they are represented by counsel. *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (internal quotation marks omitted) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

As part of her Opposition, Plaintiff included "a list of male counterparts" that includes employee ID, name and fiscal year. This Court previously held that such a list is insufficient to allege that male comparators engaged in substantially equally work because there is no factual information about the male employees' job content. *Kassman*, 2020 WL 4003367, at *7 ("Naming possible comparators is not sufficient on its own to plead an EPA claim without sufficient 'factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal.'") (internal quotation marks omitted) (quoting *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256).

B. Project 3

The allegations regarding Project 3 are also insufficient to state an EPA claim. According to the VFS, a younger male CPA, who was also a senior associate, led the project. The male senior associate's role as the project leader indicates that he performed different work and had a different level of responsibility than Plaintiff and, therefore, could not be considered a male comparator who performed substantially equal work. *See Kairam v. West Side GI,* LLC, 793 F. App'x 23, 26 (2d Cir. 2019) (summary order) (affirming dismissal of EPA claim where putative competitor allegedly ran the practice). The fact that the project leader and Plaintiff shared the same job title of senior associate does not mean they performed substantially equal work, as "[a] successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions . . . cannot suffice." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 258. The VFS alleges that Plaintiff was better equipped to lead the project based on her education and prior work experience. As this Court previously held, "allegations that solely relate to 'experience, training, education, or ability'" such as these, are

9

"insufficient to plead an EPA claim." *Kassman*, 2020 WL 4003367, at *9 (quoting *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256-57).

Plaintiff argues that the project leader is a comparator because he was a peer, CPA and office mate "privy to nepotism" because his father was a partner in the firm. According to Plaintiff, the project leader was given numerous assignments that were "near identical" to her own assignments, but there are no factual allegations to support the claim that they were identical or performed under the same work conditions. Conclusory allegations of "equal" or "identical" work that are unsupported with factual information are insufficient to state an EPA claim. *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256; *see also Wu*, 815 F. App'x at 581 (affirming dismissal of EPA claim where plaintiff did "not allege[] anything about her actual job duties or the actual job duties of her putative comparators."); *Dass v. City Univ. of N.Y.*, No. 18 Civ. 11325, 2020 WL 1922689, at *6 (S.D.N.Y. Apr. 21, 2020) ("Plaintiff's mere parroting that other employees are 'similarly situated' to her coupled with conclusory allegations are insufficient to state an EPA claim."); *Suzuki v. State Univ. of N.Y. Coll. at Old Westbury*, No, 8 Civ. 4569, 2013 WL 289135, at *4 (E.D.N.Y. June 13, 2013) (dismissing the complaint because it contained no factual allegations about plaintiff's comparator's positions and noting that "[d]istrict courts have also dismissed EPA claims where a plaintiff failed to allege how his or her position and the comparison position were substantially similar.").

C. Project 7

The allegations relating to Project 7 do not state an EPA claim because they allege that Plaintiff performed different work from the putative comparators. Specifically, the VFS identifies two men Plaintiff worked with on the project who worked in the "data analytic area." The VFS highlights the difference in skillsets and work, stating that Plaintiff is "not an IT

10

person" and she "contributed in a unique way" to the project. Accordingly, the VFS fails to plead that similarly situated male employees performed work that was substantially equal to Plaintiff's. *See, e.g.*, *Solomon v. Fordham University*, No. 18 Civ. 4615, 2020 WL 7711697, at *14 (S.D.N.Y. Dec. 29, 2020) (dismissing EPA claim where the allegations indicated comparators' job duties were different from plaintiff's); *Martinez v. Davis Polk & Wardwell LLP*, 713 F. App'x 53, 55 (2d Cir. 2017) (summary order) (affirming district court's grant of summary judgment to defendant where, among other things, plaintiff admitted to not being qualified to do the jobs of most of the comparators and that she "holds a unique position and there is no point of comparison.").

In her Opposition,[2] Plaintiff included a "general list" of tasks an auditor engages in, that Defendant claims was taken from various job postings by a staffing agency in Youngstown, Ohio and Sacramento, California. Plaintiff contends that all of her engagements were audits and that the "general list" of audit tasks encompasses "the type of work we all do." These allegations are insufficient to state a claim under the EPA's demanding standard. The tasks on the list are generic and bear no connection to the projects or putative comparators described in the VFS. Additionally, the claim that all auditors or senior associates performed those tasks conflicts with the allegations in the VFS that Nick Hall led the project, that it was rare for identical work to be performed within the same team for purposes of efficiency, and that on at least one project, Plaintiff contributed in her own "unique" way. *See Solomon*, 2020 WL 1272617, at *13 (dismissing EPA claims where pleading alleged that comparators "perform the same Professor

---

[2] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). However, "those allegations must be consistent with the complaint." *Shkoza v. NYC Health & Hosps. Corp.*, No. 20 Civ. 3646, 2021 WL 4340787, at *7 n.5 (S.D.N.Y. Sept. 22, 2021) (internal quotation marks omitted).

job" as plaintiff but "the remainder of the Amended Complaint conflicts with this bare assertion"). Although the "general list" of tasks is helpful in understanding the role of an auditor at a high level, such "broad generalizations drawn from job titles, classifications, or divisions" are insufficient. *Port Auth. of N.Y. & N.J.*, 768 F.3d at 256; *compare Eng v. City of New* York, 715 F. App'x 49, 52 (2d Cir. 2017) (summary order) (affirming dismissal of EPA claims for failure to provide factual allegations about comparators' job duties, skills, efforts or responsibilities to demonstrate they were substantially equal beyond a "generic 'NYPD Careers' advertisement") *with Lenzi v. Systemax, Inc.*, No. 14 Civ. 7509, 2015 WL 6507842, at *4 (E.D.N.Y. Oct. 26, 2015) (denying motion to dismiss EPA claim where plaintiff pleaded "specific, nonconclusory allegations that she was paid less . . .[and] also pleaded numerous similarities between her job content and [her comparators']").

Plaintiff argues that she has adequately alleged that male comparators performed equal work because audit work, by its nature, is identical and reproducible. This is essentially the same argument that the Second Circuit rejected in *Port Auth. of N.Y. & N.J.* -- i.e., that at the Port Authority, "an attorney is an attorney is an attorney." 768 F.3d. at 249. The Second Circuit rejected that argument because the "allegations did not touch upon the attorneys' *actual* job duties and thus could not give rise to an inference that the attorneys' jobs required 'substantially equal' work." *Id.* at 252.

## V.  LEAVE TO AMEND

Although some of the allegations suggest that Plaintiff may be asserting individual claims of sex or age discrimination, including ongoing retaliation, she states in her opposition that "[w]hile I have listed numerous discriminatory actions engaged by KPMG against me -- from agism [sic], to harassment, to sexism, to witness intimidation -- I am here today to highlight their wage discrimination." To the extent that Plaintiff seeks leave to amend to add any such claims,

12

leave is denied as the claims are beyond the scope of the EPA claim which has been the sole claim in this action since it was filed in 2011.

Although "Federal Rule of Civil Procedure 15(a) provides that courts should 'freely give leave [to amend] when justice so requires,'" *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. June 23, 2021) (quoting Fed. R. Civ. Pro. 15(a)), "[a] district court may in its discretion deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *id.* (internal quotation marks omitted). Although "a pro se complaint should not be dismissed without granting leave to amend at least once," *Elder v. McCarthy,* 967 F.3d 113, 132 (2d Cir. 2020), "'repeated failure to cure deficiencies by amendments previously allowed' is a valid reason to deny leave to amend." *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend is denied due to repeated failure to cure deficiencies by amendments previously allowed. Here, Plaintiff was granted leave to amend at least twice, and on two occasions filed a supplement to her VFS. The core deficiency -- that the VFS lacks sufficient factual allegations identifying sufficiently comparable male employees by which to measure whether Plaintiff received equal pay -- has remained the same throughout the pleading process. Plaintiff has already amended the VFS twice, after having the benefit of pre-motion letters and a pre-motion conference explaining the grounds on which Defendant would move to dismiss. These deficiencies were discussed with Plaintiff during a conference on June 17, 2021, and following Plaintiff's filing of an addendum, were again raised in Defendant's renewed pre-motion letter, to which Plaintiff responded with a supplement her pleading. A party's failure to remedy deficiencies in a pleading is sufficient ground to deny leave to amend. *Sprague*, 969 F.3d at 101; *see, e.g.*, *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28-29 (2d Cir. 2016) (affirming district court's denial of leave to

amend where plaintiff was fully aware of the challenges to the pleading and asked and received an opportunity to file an amended complaint). This principle applies even where the plaintiff is proceeding pro se. *See, e.g., Madej v. Yale Univ.*, No. 21-353, 2022 WL 710905, at *4 (2d Cir. Mar. 10, 2022) (summary order) (affirming district court's denial of leave to amend where pro se plaintiff had filed two amended complaints); *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 69 (2d Cir. 1998).

## VI. CONCLUSION

For the reasons stated above, KPMG's motion to dismiss is granted.

The Clerk of Court is respectfully requested to mail a copy of this Opinion and Order to Pro se Plaintiff and close the motion at Dkt. No. 1021. By June 22, 2022, Defendant shall file a letter regarding the status of settlement payments and whether the case can be closed.

Dated: June 8, 2022
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE